ANDREW HAWLEY (CA Bar No. 229274)
Western Environmental Law Center
1402 3rd Avenue, Ste. 1022
Seattle, Washington 98101
hawley@westernlaw.org
tel: 206-487-7250

DANIEL JAMES CORDALIS (CA Bar No. 321722)
Cordalis Law, P.C.
2910 Springer Drive
McKinleyville, California 95519
dcordalislaw@gmail.com
tel: 303-717-4618

PETER M. K. FROST, *pro hac vice application forthcoming*
SANGYE INCE-JOHANNSEN, *pro hac vice application forthcoming*
Western Environmental Law Center
120 Shelton McMurphey Boulevard, Ste. 340
Eugene, Oregon 97401
frost@westernlaw.org
sangyeij@westernlaw.org
tel: 541-359-3238 / 541-778-6626

Attorneys for Plaintiffs American Rivers,
American Whitewater, California Trout, Idaho Rivers United

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN RIVERS; AMERICAN WHITEWATER; CALIFORNIA TROUT; IDAHO RIVERS UNITED, | Case No. |
| | **COMPLAINT** |
| Plaintiffs, | Administrative Procedure Act Case |
| vs. | |
| ANDREW R. WHEELER; U.S. ENVIRONMENTAL PROTECTION AGENCY, | |
| Defendants. | |

Complaint                                    1

**INTRODUCTION**

1.      This lawsuit concerns the public's right to clean water, free-flowing rivers, abundant fish and wildlife, and properly functioning aquatic systems. When Congress passed the Clean Water Act amendments of 1972, it confirmed a national effort to reverse the rampant degradation and destruction of the Nation's oceans, rivers, lakes, watersheds, and wetlands. The Clean Water Act establishes a comprehensive regulatory framework that protects these waters that all Americans rely on to support for drinking water and for activities like boating, swimming, and fishing.

2.      Congress declared a single objective for the Clean Water Act: "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To this end, although Congress intended an integration of both state and federal authority, states retain primary authority to abate water pollution. 33 U.S.C. § 1251(b) ("It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution . . . .").

3.      The states' authority to protect and manage their waters to benefit not only their citizens but all Americans is replete throughout the Act. An essential component of this structure is the states' and authorized tribes' authority under Section 401 of the Clean Water Act to determine whether and how a prospective federally-permitted or -licensed activity complies with requirements of state law. 33 U.S.C. § 1341. Section 401 empowers states and tribes to protect the people, fish, wildlife, and ecosystems that rely on clean, healthy, and resilient rivers, lakes, wetlands, oceans, and other waters.

4.      Under Section 401, no federal permit or license may be issued for any activity that may result in a discharge into waters of the United States, unless the state or authorized tribe where the discharge would originate either certifies the discharge will comply with state water quality requirements, or waives certification. 33 U.S.C. § 1341(a)(1). As a result, state certification is required for a range of projects that require federal approval, including natural gas pipelines, hydropower development and relicensing, industrial plants, municipal facilities, and wetland development.

5.      Notably, the Section 401 certification process provides the public with the opportunity to participate meaningfully in decision-making concerning activities that may result in discharges to our nation's waters, through the public notice and comment procedures implemented by the states and tribes. 33 U.S.C. § 1341(a)(1). This allows people to have a voice in the decisions that will affect how they may use and enjoy their waters for the many recreational, spiritual, aesthetic benefits they provide.

6.      On July 13, 2020, Defendant Andrew R. Wheeler and Defendant U.S. Environmental Protection Agency ("the EPA"), published a final rule revising the regulations implementing Section 401. Clean Water Act Section 401 Certification Rule, 85 Fed. Reg. 42,210 (July 13, 2020) ("Final Rule"). Among the many flaws in the Final Rule, the EPA unlawfully narrows the applicability of Section 401; circumscribes the scope of review of the certifying state or tribe; limits the information on the proposed federal project made available to states, tribes, and the public to inform the certification determination; restricts the conditions the state or tribe may impose to ensure state or tribal laws are met; and empowers the federal licensing or permitting agency to effectively overrule a state or tribal determination of whether such laws are met.

7.      When it promulgated the Final Rule, the EPA violated the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* ("APA") and the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* As a result, Plaintiffs seek an order declaring the Final Rule, in whole or in part, unlawful, and setting it or its unlawful provisions aside, because they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §§ 706(2)(A) & (C).

## JURISDICTION & VENUE

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question). The Final Rule constitutes final agency action subject to judicial review. 5 U.S.C. § 704. This Court has authority to grant the requested relief pursuant to 28 U.S.C. §§ 2201, 2202; and 5 U.S.C. §§ 706(2)(A) & (C).

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1)(C) because Defendants are officers or agencies of the United States, and one or more Plaintiffs has its

Complaint                                      3

1   principal place of business within this district. Venue is also proper in this District pursuant to 28

2   U.S.C. § 1391(e)(1)(A), because Defendant U.S. Environmental Protection Agency resides in the

3   district within the meaning of 28 U.S.C. § 1391(c)(2).

4                            **INTRADISTRICT ASSIGNMENT**

5   10.    Assignment to the San Francisco Division is appropriate because the Final Rule will

6   affect numerous federal projects or activities located within the division, and because one or

7   more plaintiffs is headquartered or has an office within the division, and has diverted its

8   resources in response to the Final Rule. Civil L.R. 3-2(c).

9                                      **PARTIES**

10  11.    Plaintiffs, along with their members, are committed to protecting the chemical, physical,

11  and biological integrity of the Nation's waters.

12  12.    Plaintiff American Rivers works to protect wild rivers, restore damaged rivers, and

13  conserve clean water for people and nature. Since 1973, American Rivers has protected and

14  restored more than 150,000 miles of rivers through educational and advocacy efforts, on-the-

15  ground projects, and an annual America's Most Endangered Rivers campaign. Headquartered in

16  Washington, D.C., American Rivers has offices across the country, including in Berkeley,

17  California, and has approximately 100,000 members, supporters, and volunteers, including

18  approximately 10,000 in California.

19  13.    Plaintiff American Whitewater is a national non-profit organization, founded in 1954,

20  whose mission is to conserve and restore America's whitewater resources and to enhance

21  opportunities to enjoy them safely. American Whitewater is a membership organization

22  representing a broad diversity of individual whitewater enthusiasts, river conservationists, and

23  more than 100 local paddling club affiliates across America. American Whitewater is a primary

24  advocate for preserving and protecting whitewater rivers throughout the United States, and

25  connects the interests of human-powered recreational river users with ecological and science-

26  based data to achieve the goals within its mission.

27  14.    Plaintiff California Trout was founded in 1971 and is a non-profit conservation

28  organization that strives to solve the state's resource issues while balancing the needs of wild

Complaint                                    4

fish and people. California Trout is driven by science to restore vibrance and abundance to California's freshwater ecosystems by working to ensure resilient wild fish thrive in healthy waters. California Trout believes that abundant wild fish indicate healthy waters and healthy waters benefit all Californians. Through strong partnerships in key geographies where wild fish influence the community, California Trout drives innovative, science-based solutions that work for the diverse interests of fish, farms, commerce, and people. California Trout is headquartered in San Francisco, California, with a field office in Arcata, California. California Trout has approximately 10,000 members in California.

15.     Plaintiff Idaho Rivers United is a conservation organization, founded in 1990, with a mission to protect and restore the rivers of Idaho on behalf of all who love the freedom, adventure and solitude they provide. Idaho Rivers works to safeguard Idaho's imperiled wild steelhead and salmon, protecting and enhancing stream flows and riparian areas, and defending and promoting the wild and scenic qualities of our wild rivers. Idaho Rivers involves its 5,000 volunteers and members to protect wild rivers, keep drinking water clean, defend at-risk populations of fish, establish in-stream flows, and minimize the impacts of dams on Idaho's rivers.

16.     Plaintiffs are national, regional, and state public-interest environmental organizations with a combined membership numbering thousands of members. On behalf of these members, Plaintiffs advocate to protect rivers and streams, and for the people and animal and plant species that depend on clean and abundant water. Plaintiffs frequently participate in state certification determinations under Section 401, and are directly injured by the Final Rule's attempt to narrow the applicability, scope, and outcome of Section 401 certifications.

17.     Plaintiffs as organizations monitor and comment on projects requiring federal licenses or permits that may affect water quality across the country. Because the Final Rule will severely undercut the state's authority to review these projects, many projects will pollute and fill more waters than they would under the prior rule, and many would-be permit applicants will dredge, fill, and pollute without undergoing meaningful review of their impacts. This will undercut the organizations' ability to, on behalf of and for the benefits of their members, protect water quality,

cripple their ability to monitor the development of harmful projects and participate in the permitting process of such projects, and deprive the organizations of information they rely on to educate their members, propose legislation, and consider litigation. As a result, the Final Rule will stymie Plaintiffs' ability to provide these vital services to their members.

18.     In response, the organizations have been forced to and will need to continue to divert limited resources from key programs to assess the Final Rule's harms and develop new strategies to defend the waters their members use and enjoy. For example, under the restrictions the Final Rules place on the information that must be provided to support the initiation of a review under Section 401, and the limited time the state has to complete its review, in order to continue carrying out their missions the organizations must now obtain, organize, and provide additional information on the impacts of proposed projects necessary to allow the state to make a reasoned decision on whether the project complies with state law. Collecting, organizing, and submitting this information, which otherwise should be provided by the project proponent, requires significant time and resources.

19.     In addition, as the Final Rule works to undermine how the states use Section 401 to impose the terms and conditions necessary to ensure compliance with the state's laws, the organizations will be left to rely on other state and federal laws and permitting programs to advocate for similar protections. These efforts have required, and will continue to require, the reallocation of staff time and resources to research the potential local, state, and federal laws that address the impacts to local waters, and understand the procedures, requirements, and limitations of these laws in order to assess how they might be used to replace the process and protections offered under Section 401. However, based on the organizations' experience and belief, these mechanisms will likely prove to be inadequate substitutes.

20.     Moreover, the organizations will be required to expend additional time and resources on educating and engaging their members on how to participate in the state process under the new regulations. This work will require the organizations to educate their members on both the new federal rules and any changes to the states' rules that may occur as a result. In addition, at the same time, the organizations will be working to educate and inform their members on how best

Complaint                                    6

to use alternative processes, under federal, state, and local laws, that may be used to fill in the gap in protections for waterbodies left by the Final Rule.

21.     The Final Rule will also harm the aesthetic, recreational, educational, spiritual and financial interests of Plaintiffs' members. Plaintiffs' members regularly visit local rivers, streams, and wetlands, for birding, wildlife observation, fishing, paddling, kayaking, hiking, and photography. Some of Plaintiffs' members regularly travel through the country to participate in these activities. Some of Plaintiffs' members rely on clean water for their livelihoods, including for businesses that provide kayak tours, paddleboard rentals, and boat charters.

22.     By restricting the applicability, scope of review, scope of permissible conditions, and finality of state certifications, the Final Rule restricts Plaintiffs' and their members' participation in certification determinations. By restricting the applicability, scope of review, scope of permissible conditions, and finality of state certifications, the Final Rule restricts Plaintiffs' and their members' access to information about federally-permitted or -licensed activities. By severely limiting the information required for a valid certification request, the Final Rule deprives Plaintiffs and their members of information critical to their organizational missions. By accelerating the certification process and limited the range of actions that state and tribes may take to respond to a request for certification, the Final Rule threatens to deprive Plaintiffs and their members of the opportunity to participate in full and complete state certification decisions.

23.     Defendant Andrew R. Wheeler is the Administrator of the U.S. Environmental Protection Agency. Mr. Wheeler is sued in his official capacity. Mr. Wheeler oversees the EPA's implementation of the Clean Water Act.

24.     Defendant U.S. Environmental Protection Agency is an agency of the U.S. Government that has primary responsibility for implementing the Clean Water Act.

LEGAL BACKGROUND

**I.     The Clean Water Act**

25.     In 1972, Congress adopted comprehensive amendments to the Clean Water Act in an effort "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

26.     In the Clean Water Act, Congress stated its policy "to recognize, preserve, and protect the primary responsibilities of the States … to plan the development and use … of land and water resources … ." 33 U.S.C. § 1251(b). Congress added further, that "[e]xcept as expressly provided in this Act, nothing in this Act shall … be construed as impairing or in any manner affecting any right or jurisdiction of the States with respect to the waters (including boundary waters) of such States." 33 U.S.C. § 1370.

27.     Federally-recognized Indian tribes may be authorized by the EPA under Section 518 of the Clean Water Act to carry out certain of the same functions as states, including Section 401 certification authority. 33 U.S.C. § 1377(e).

28.     The EPA administers the Clean Water Act, and is authorized to promulgate "such regulations as are necessary to carry out [its] functions" under the Act. 33 U.S.C. § 1361(a).

**II.     Section 401 of the Clean Water Act**

29.     Under Section 401 of the Clean Water Act, no federal permit or license may issue for any activity that may result in a discharge into waters of the United States, unless the state or authorized tribe ("certifying authority") where the discharge would originate either certifies that the discharge will comply with state water quality requirements, or waives certification. 33 U.S.C. § 1341(a)(1).

30.     The EPA acts as the certifying authority on behalf of tribes it has not authorized to administer Section 401, and where the discharge would originate on lands under exclusive federal jurisdiction.

31.     Section 401 applies broadly to any proposed federally licensed or permitted activity that may result in any discharge into a water of the United States. 33 U.S.C. § 1341(a)(1).

32.     Section 401 instructs states and authorized tribes to establish procedures for public notice of all certification applications. 33 U.S.C. § 1341(a)(1).

33.     If the certifying authority fails or refuses to act on a request for certification "within a reasonable period of time (which shall not exceed one year) after receipt of" a request for certification, certification is deemed waived. 33 U.S.C. § 1341(a)(1).

Complaint                                          8

34.     Section 401 mandates that any certification issued pursuant thereto "shall set forth any effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant for a Federal license or permit will comply with any applicable effluent limitations, … and with any other appropriate requirement of State law set forth in such certification." 33 U.S.C. § 1341(d). Any such limitation or requirement "shall become a condition on any Federal license or permit subject to the provisions of this section." *Id.*

**III.     The Administrative Procedure Act**

35.     The APA provides a private cause of action to any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.

36.     Final agency actions are reviewable under the APA. 5 U.S.C. § 704. Promulgation of a final rule is "final agency action" under the APA. 5 U.S.C. § 551(13).

37.     Under the APA, a court shall "hold unlawful and set aside agency actions, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

**FACTS**

**I.     Application of Section 401**

38.     For the past 50 years, states have exercised the certification authority preserved by Section 401 for activities that require federal approval, such as hydropower licenses and relicensing, natural gas pipelines, fossil fuel plants and export terminals, industrial and municipal facilities, and the development of wetlands.

39.     These reviews consider and address impacts from such activities in making certification determinations under Section 401, including impacts to water quality and quantity, ecosystems, sensitive species and their habitat, watershed hydrology, water and non-water related recreation, and aesthetic value.

Complaint                                        9

40.     States have imposed a broad array of conditions on activities subject to the Section 401 certification requirement—including conditions not related to the triggering discharge—that are necessary to ensure compliance with state law requirements.

41.     States have denied certification for activities that would cause violations of state law requirements, including state law requirements that were not promulgated pursuant to the Clean Water Act.

42.     States have enacted laws and regulations establishing the rules and processes for public notification and participation in determinations concerning requests for certification under Section 401.

43.     Plaintiffs and their members have participated and intend to continue participating in state certification determinations, including in areas within the Northern District of California.

44.     Plaintiffs and their members rely on information obtained through state certification procedures to better understand proposed projects and activities that may impact their interests.

45.     On April 10, 2019, President Trump issued Executive Order 13,868, directing EPA to review Section 401; issue new guidance to states, tribes, and federal agencies; and propose new regulations implementing Section 401. Executive Order No. 13,868: Promoting Energy Infrastructure and Economic Growth, 84 Fed. Reg. 15,495 (April 10, 2019).

46.     The stated purpose of Executive Order 13868 was to "fully realize th[e] economic potential" of the United States' coal, oil, natural gas, and other energy resources, by "promot[ing] efficient permitting processes and reduce regulatory uncertainties that currently make energy infrastructure projects expensive and that discourage new investment." 84 Fed. Reg. at 15,495. According to the executive order, "[o]utdated Federal guidance and regulations regarding section 401 … are causing confusion and uncertainty and are hindering the development of energy infrastructure." 84 Fed. Reg. at 15,496.

47.     On June 7, 2019, the EPA issued its "Clean Water Act Section 401 Guidance for Federal Agencies, States and Authorized Tribes." This guidance offered the EPA's opinion on the time within which a state or tribe must make a certification decision; the grounds for denying or

conditioning a certification to water quality requirements; and the type of information that the state needs to make its certification decision.

48.     In August, 2019, the EPA published an economic analysis of existing Section 401 processes, and its proposed Section 401 rulemaking. EPA, *Economic Analysis for the Proposed Clean Water Act Section 401 Rulemaking*, NEPIS 810R19001A (Aug. 2019). In its economic analysis, the EPA summarized four "denials and other high-profile section 401 certification cases." The EPA relied on these four "case studies," which were based on the proponent's failure to address significant water resource impacts, failure to adequately mitigate impacts to water quality, and unavoidable adverse impacts to the local environment as a result of not meeting state water quality standards, to highlight the cost of certification denial on project proponents. In particular, the EPA stated in its economic analysis that denial can delay proposed projects increasing costs above original estimates, cause the project proponent to forego a project after investing funds and staff time, and entail legal costs and further resources in challenging a denial in court. The EPA stated further that recent denials of large infrastructure projects have "highlighted the potential for certification 401 certification denials to have broader economic impacts," suggesting that such denials "could jeopardize the reliability of gas-fired electric generators." In its economic analysis, the EPA suggested that requiring a "complete application" before starting the clock for 401 certification "has caused confusion and delays," and represents "an opportunity cost to the project proponent." According to a Western States Water Council report cited by the EPA in its economic analysis, "incomplete requests are the most common cause of section 401 review delay." The EPA further suggested that certifying authorities and project proponents engage in a "withdrawal and resubmit" process, effectively extending the project timeline beyond one year.

49.     The EPA's economic analysis recounts the outcome of survey given to 50 states about their section 401 certification processes. According to the EPA's economic analysis, responses to this survey "indicate that the average length of time for states to issue a certification decision once they receive a complete request is 132 days," and that "denials are uncommon, with 17 states averaging zero denials per year and other states issuing denials rarely." Information from

another survey made available to EPA by the Western States Water Council "further suggests that denials are uncommon, and most decision [sic] are made between 40-90 days."

**II.    The EPA's Rulemaking**

50.    On August 22, 2019, the EPA published in the Federal Register a proposed rule entitled "Updating Regulations on Water Quality Certification" ("Proposed Rule"). 84 Fed. Reg. 44,080–44,122 (Aug. 22, 2019).

51.    The Proposed Rule provided the public with an opportunity to file comments until October 21, 2019.

52.    Over 125,000 public comments were submitted on the proposed rule. Plaintiffs American Rivers, American Whitewater, and Idaho Rivers United submitted comments on the Proposed Rule during the public comment period, including in a letter dated October 21, 2019, and submitted electronically to EPA Docket No. EPA-HQ-OW-2019-0405 on behalf of the Hydropower Reform Coalition and its member organizations. EPA-HQ-OW-2019-0405-0803. In addition, American Whitewater commented separately. EPA-HQ-OW-2019-0405-0783.

53.    The EPA received numerous extensive critiques of the proposed rule, including from states, tribes, and Plaintiffs, detailing the many flaws in it.

54.    For example, numerous comments, including from the states and tribes, explained that the delay in processing 401 certification requests, when they occurred, often were the result of a lack of information provided by the project applicant. Many of these comments explained that the limited information required under the proposed rule would exacerbate these problems by limiting the information that must be provided by to the certifying entity. Other comments noted that by failing to require more, detailed information in a certification application, or allowing the states to decide what information should be required, is inconsistent with the Clean Water Act and some state laws.

55.    Similarly, many commenters noted that the proposal process would allow project proponents to dictate the timing of a certification review, potentially beginning the process before the certifying agency is able (because of resources, staffing, or available information) to properly review the application, and upsetting the long-standing relationships between states and

federal agencies on how applications are noticed and processed. In addition, many commenters noted that proposed regulations would lead to more uncertainty, not less, on when an application was received.

56.     Other comments noted the Clean Water Act authorizes the certifying authorities, not the federal agencies, to set the reasonable period of time for a review of an application. These comments highlighted that the proposed rule did not account for the suite of factors that the certifying authority would need to consider in making these decisions, included but not limited to: requirements of state law; the need for administrative review; the underlying license or permit; agency resources; and individual project needs such as studies that require seasonal field work.

57.     Several commenters also objected to the limitations placed on the certifying authorities' ability to manage the time for review, noting that the proposed rule did not account for significant projects, changes in the project, and other factors that may require the state to adjust the time necessary to review a project.

58.     Other comments noted that the additional justifications and documentation requirements imposed for granting certification with conditions and denials would be burdensome and add to the complexity of and time required for decisions. Many commenters noted that the provisions allowing the federal agencies to review these decisions and effectively "veto" a certification conditions and denials is inconsistent with the plain language of the Clean Water Act, would undermine the authority of the states and tribes to protect their waters and communities, and would add a potential second round of litigation—in the federal courts—to each certification decision, thus further complicating and delaying the review process.

59.     In sum, these comments, particularly from the states and tribes, demonstrated how the proposed rule would add significant uncertainty to the 401 review process, and make it more difficult—not less—for a certifying authority to complete the necessary review.

60.     Notably, despite recognizing that "Congress enacted section 401 of the CWA to provide States and authorized Tribes with an important tool to help protect the water quality of federally regulated waters within their borders in collaboration with federal agencies," nowhere in the

Complaint                                        13

EPA's explanation of or justifications for the Final Rule does the agency explain how this rule will work to better protect waters of the United States. Further, many commenters noted that the restrictions placed on the scope of analysis permitted under the Final Rules would undermine the states' and tribes' ability to protect water quality. Indeed, as several commenters pointed out, the EPA failed to undertake any analysis of what impact this rule will have on water quality.

61.     Despite these many critiques and concerns raised by the states, tribes, and public, the EPA retained most of the most problematic components in the Final Rule. As a result, this rule will not address any of the legitimate concerns about the current 401 regulations and, in fact, will sow further confusion about the process for obtaining a 401 certification, while at the same time unlawfully curtailing state and tribal authority under the law. As a result, the Final Rule is both inconsistent with and unresponsive to the comments submitted, and the record does not support EPA's stated rationales for the Final Rule.

**III.    The Final Rule**

62.     On July 13, 2020, the EPA published the Final Rule in the Federal Register. 85 Fed. Reg. 42,210 (July 13, 2020).

63.     The Final Rule provides that Section 401 certification is triggered when any federally-licensed or -permitted activity "may result" in "a discharge from a point source into a water of the United States." Final Rule at 42,285 (to be codified at 40 C.F.R. §§ 121.2, 121.1(f)).

64.     The Final Rule provides that the timetable for certification starts immediately upon receipt of a "certification request," rather than upon receipt of a "complete application." Final Rule at 42,243 & 42,285 (to be codified at 40 C.F.R. §§ 121.1(c), 121.1(m), 121.6(a)). The Final Rule states that a "certification request" must be a written, signed and dated communication that requests the review of the project under Section 401, and certifies that it correctly and accurately identifies: the proposed project; its proponents; the applicable underlying federal license or permit; and the location and nature of any potential discharge that may result from the proposed project and the location of receiving waters; includes: a description of any methods and means proposed to monitor the discharge and the equipment or measures planned to treat, control, or manage the discharge; a list of all other federal, interstate, tribal, state, territorial, or local agency

authorizations required for the proposed project, including all approvals or denials already received; and documents that a pre-filing meeting request was submitted to the certifying authority at least 30 days prior to submitting the certification request. Final Rule at 42,285 (to be codified at 40 C.F.R. § 121.5(b)–(c)).

65.     The Final Rule limits the scope of a certifying authority's review to "assuring that a discharge from a Federally licensed or permitted activity will comply with water quality requirements." Final Rule at 42,285 (to be codified at 40 C.F.R. § 121.3).

66.     Under the Final Rule, the term "discharge" is defined as "a discharge from a point source into a water of the United States." Final Rule at 42,285 (to be codified at 40 C.F.R. § 121.1(f)).

67.     Under the Final Rule, "water quality requirements" means "applicable provisions of §§ 301, 302, 303, 306, and 307 of the Clean Water Act, and state or tribal regulatory requirements for point source discharges into waters of the United States." Final Rule at 42,285 (to be codified at 40 C.F.R. § 121.1(n)).

68.     The Final Rule directs federal agencies that issue permits or licenses requiring Section 401 certification to establish the "reasonable period of time" for a certifying authority to act on a certification request, "either categorically or on a case-by-case basis." Final Rule at 42,285 (to be codified at 40 C.F.R. § 121.6(a)).

69.     The Final Rule provides that once the timeline for certification has been triggered by receipt of a certification request, it cannot be stopped or restarted, even if the project proponent fails to provide requested information. Final Rule at 42,286 (to be codified at 40 C.F.R. § 121.6(e)).

70.     The Final Rule allows certification decisions to be based only on the impacts of point source discharges associated with the proposed project or activity, and not on other impacts of the activity as a whole. Final Rule at 42,251 & 42,285 (to be codified at 40 C.F.R. §§ 121.3, 121.1(e), 121.1(n)).

71.     The Final Rule empowers the federal permitting or licensing agency to determine whether a certifying authority's denial complied with the rule's procedural requirements, and to deem the certification requirement waived where it concludes that the certifying authority's

Complaint                                          15

1   denial did not comply with the rule's procedural requirements. Final Rule at 42,286 (to be

2   codified at 40 C.F.R. § 121.9(a)(2)).

3   72.     The Final Rule empowers the federal permitting or licensing agency to determine

4   whether a condition imposed by the certifying authority complied with the rule's requirements,

5   before incorporating it in the underlying federal permit or license. Final Rule at 42,286 (to be

6   codified at 40 C.F.R. §§ 121.9(b), 121.10(a)).

7   **FIRST CLAIM FOR RELIEF**

8   **Violation of the Clean Water Act**

9   ***(The Final Rule unlawfully restricts powers Congress preserved for the States)***

10  73.     Plaintiffs reallege all previous paragraphs.

11  74.     The Clean Water Act authorizes the EPA to promulgate "such regulations as are

12  necessary to carry out [its] functions under the [Clean Water Act]." 33 U.S.C. § 1361(a).

13  75.     The Clean Water Act provides that "[e]xcept as expressly provided in this Act, nothing in

14  this Act shall … be construed as impairing or in any manner affecting any right or jurisdiction of

15  the States with respect to the waters (including boundary waters) of such States." 33 U.S.C. §

16  1370.

17  76.     The EPA has limited "functions" to "carry out" under Section 401, namely: to act as the

18  certifying authority where the discharge triggering Section 401 occurs on land under exclusive

19  federal jurisdiction or on behalf of a tribe it has not authorized to administer Section 401; and to

20  determine whether a discharge may affect the water quality of another state, and take certain

21  actions following such a determination. 33 U.S.C. §§ 1341(a)(1)–(2). The EPA has no other

22  "functions" to "carry out" under Section 401, and therefore has no statutory authority to

23  prescribe regulations interpreting or implementing the rest of Section 401.

24  77.     The Final Rule narrows the applicability of Section 401, circumscribes the scope of the

25  states' and authorized tribes' review, limits the conditions a state or authorized tribe may impose

26  in granting certification, and empowers federal licensing or permitting agencies to effectively

27  overrule a state or authorized tribe's certification determination.

28

78.     The EPA's decision to impose limits on state and tribal certification authority is arbitrary; capricious; not in accordance with law; and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. §§ 706(2)(A) & (C).

### SECOND CLAIM FOR RELIEF

### Violation of the Clean Water Act

***(The Final Rule's unlawful provisions concerning the timeline for certification)***

79.     Plaintiffs reallege all preceding paragraphs.

80.     Section 401 provides that states and authorized tribes "shall establish procedures for public notice in the case of all applications for certification by it and, to the extent it deems appropriate, procedures for public hearings in connection with specific applications." 33 U.S.C. § 1341(a)(1).

81.     The Final Rule establishes requirements governing the states' and authorized tribes' implementation of their certification processes under Section 401, including but not limited to:

    a)     mandating when the certification timeline shall begin (Final Rule at 42,243 & 42,285 (to be codified at 40 C.F.R. §§ 121.1(c), 121.1(m), 121.6(a)));

    b)     limiting the type and scope of information the applicant must provide (Final Rule at 42,285 (to be codified at 40 C.F.R. § 121.5(b)–(c)));

    c)     restricting the state's or tribe's authority to require the submission of additional information (Final Rule at 42,262);

    d)     restricting the state's or tribe's authority to manage the timing of its review process (Final Rule at 42,285 (to be codified at 40 C.F.R. § 121.6)); and

    e)     preventing the state or tribe from identifying the amount of time it will need to conduct its certification review (Final Rule at 42,285 (to be codified at 40 C.F.R. § 121.6)).

82.     The EPA's decision to interpret and regulate the timeline for certification, which is the sole prerogative of the certifying authority, is arbitrary, capricious, and not in accordance with law; and also in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. §§ 706(2)(A) & (C).

Complaint                                    17

83.     The EPA's interpretation of "certification request" as requiring only limited information about the proposed project or activity is arbitrary, capricious, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

84.     The EPA's decision to limit the types of actions the certifying authorities may take in response to a request for certification is arbitrary, capricious, or not in accordance with law; and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. §§ 706(2)(A) & (C).

85.     The EPA's decision to allow other federal agencies to define the "reasonable period of time" for acting on a certification request is arbitrary, capricious, or not in accordance with law; and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. §§ 706(2)(A) & (C).

### THIRD CLAIM FOR RELIEF

### Violation of the Clean Water Act

***(The Final Rule unlawfully limits Section 401's applicability to activities that may result in point source discharges)***

86.     Plaintiffs reallege all preceding paragraphs.

87.     Section 401 requires certification for any federally-licensed or -permitted activity "may result in any discharge into the navigable waters." 33 U.S.C. § 1341(a)(1).

88.     The Clean Water Act provides that "[t]he term 'discharge' when used without qualification includes a discharge of a pollutant, and a discharge of pollutants." 33 U.S.C. § 1362(16).

89.     The terms "discharge of a pollutant" and "discharge of pollutants," in turn, mean "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

90.     The Final Rule limits the application of Section 401 to activities that may result in a "discharge from a point source." Final Rule at 42,285 (to be codified at 40 C.F.R. §§ 121.1(f), 121.2).

Complaint                                    18

91.     The EPA's decision to limit the certification requirement to activities that may result in point source discharges is arbitrary, capricious, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

## FOURTH CLAIM FOR RELIEF

### Violation of the Clean Water Act

*(The Final Rule unlawfully limits the scope of—and permissible conditions on—certification to impacts of point source discharges on water quality)*

92.     Plaintiffs reallege all preceding paragraphs.

93.     Section 401(a) requires "the State in which the discharge originates or will originate" to certify that "any such discharge will comply with the applicable provisions of" specified sections of the Clean Water Act. 33 U.S.C. § 1341(a).

94.     Section 401(d) instructs the certifying authority to "set forth any effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant for a federal license or permit will comply" with applicable provisions of the Clean Water Act and "any other appropriate requirement of State law." 33 U.S.C. § 1341(d). Any such limitations become a condition on the federal license or permit. *Id*.

95.     The Final Rule limits the scope of a certifying authority's review to water quality-related impacts from point source discharges. Final Rule at 42,285 (to be codified at 40 C.F.R. § 121.3).

96.     The Final Rule limits the scope of a certifying authority's review to assuring compliance with "state or tribal regulatory requirements for point source discharges into waters of the United States." Final Rule at 42,285 (to be codified at 40 C.F.R. §§ 121.1(n), 121.3).

97.     The Final Rule prohibits a certifying authority from imposing conditions unrelated to water quality-related impacts from point source discharges. Final Rule at 42,230 & 42,286 (to be codified at 40 C.F.R. §§ 121.7(d), 121.9(b), 121.10(a)).

98.     The EPA's decision to limit the scope of a certifying authority's review to water quality-related impacts from point source discharges is arbitrary, capricious, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

99.     The EPA's decision to limit the scope of a certifying authority's review to compliance with "state or tribal regulatory requirements for point source discharges into waters of the United States" is arbitrary, capricious, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

100.    The EPA's decision to prohibit a certifying authority from imposing conditions unrelated to water quality-related impacts from point source discharges is arbitrary, capricious, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

101.    The EPA's decision to limit the scope of state and tribal certifications and the conditions they may impose, on account of constitutional limits applicable only to the federal government, is arbitrary and capricious. 5 U.S.C. § 706(2)(A).

### FIFTH CLAIM FOR RELIEF

### Violation of the Clean Water Act

***(The Final Rule unlawfully prohibits the certifying authority from considering or relying on State law in making a certification decision)***

102.    Plaintiffs reallege all preceding paragraphs.

103.    Section 401(d) instructs the certifying authority to "set forth any effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant for a federal license or permit will comply" with applicable provisions of the Clean Water Act and "any other appropriate requirement of State law." 33 U.S.C. § 1341(d). Any such limitations become a condition on the federal license or permit. *Id*.

104.    The Final Rule limits the scope of a certifying authority "to assuring that a discharge from a Federally licensed or permitted activity will comply with water quality requirements." Final Rule at 42,285 (to be codified at 40 C.F.R. § 121.3).

105.    The Final Rule defines "water quality requirements" to mean the "applicable provisions of §§ 301, 302, 303, 306, and 307 of the Clean Water Act, and state or tribal regulatory requirements for point source discharges into waters of the United States." Final Rule at 42,285 (to be codified at 40 C.F.R. § 121.1(n)).

Complaint                                    20

106.    As a result, the Final Rule effectively prohibits a certifying authority from considering or relying on any other requirements of state law it considers "appropriate" when making its certification decision.

107.    The EPA's decision to limit the scope of a certifying authority's review in a manner that will prohibit the state from relying on any other appropriate requirement of state law is arbitrary, capricious, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

108.    The EPA's decision to limit the scope of state and tribal certifications and the conditions they may impose, on account of constitutional limits applicable only to the federal government, is arbitrary and capricious. 5 U.S.C. § 706(2)(A).

## SIXTH CLAIM FOR RELIEF

### Violation of the Clean Water Act

*(The Final Rule unlawfully authorizes federal permitting and licensing agencies to review and overrule certification decisions)*

109.    Plaintiffs reallege all preceding paragraphs.

110.    Section 401(a)(1) provides that where the certifying authority "fails or refuses to act on a request for certification, within a reasonable period of time … after receipt of such request," the certification requirement "shall be waived." 33 U.S.C. § 1341(a)(1).

111.    Section 401(a)(1) prohibits the issuance of any federal license or permit before certification has either been granted or waived, and prohibits the issuance of any federal license or permit where certification has been denied. 33 U.S.C. § 1341(a)(1).

112.    Section 401(d) requires that any terms or conditions that the certifying authority includes as part of a certification "shall become a condition on any Federal license or permit subject to the provisions of this section." 33 U.S.C. § 1341(d).

113.    The Final Rule empowers federal permitting and licensing agencies to overturn the denial of a certification request upon determining that the certifying authority did not comply with the Final Rule's procedural requirements. Final Rule at 42,286 (to be codified at 40 C.F.R. § 121.9(a)(2)).

Complaint                                              21

114.    Moreover, the Final Rule empowers the federal permitting and licensing agencies to refuse to include the terms and conditions imposed in a certification, upon determining that the certifying authority did not comply with the Final Rule's procedural requirements. Final Rule at 42,286 (to be codified at 40 C.F.R. § 121.10(a)).

115.    The EPA's decision to authorize federal permitting and licensing agencies to review and overrule certification decisions is arbitrary, capricious, or not in accordance with law; and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. §§ 706(2)(A) & (C).

### SEVENTH CLAIM FOR RELIEF

### Violation of the Administrative Procedure Act

116.    Plaintiffs reallege all preceding paragraphs.

117.    A rulemaking is arbitrary and capricious if the agency relied on factors which Congress did not intend for it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

118.    EPA's underlying rationale for the Final Rule is to remove the "confusion and uncertainty" that "are hindering the development of energy infrastructure."

119.    The Final Rule introduces new regulatory uncertainty for project proponents and the interested public; runs counter to the evidence presented by the states, tribes, and public on the root causes of any delays that may occur under the current regulations, and thus will not result in more efficient certification reviews; is based on the interest of developing of energy infrastructure and development projects at the expense of protecting water quality; fails to protect the primacy of the states and tribes in protecting and restoring waters within their boundaries; and otherwise is premised on rationales that are inconsistent with the mandates, goals, and intent of the Clean Water Act.

120.    As a result, the EPA acted arbitrarily, capriciously, or not in accordance with law in violation of the APA, 5 U.S.C. § 706(2)(A), by adopting the Final Rule.

**REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully request that the Court:

(1) Declare the Final Rule, or portions thereof, are unlawful because they are in excess of the EPA's statutory jurisdiction, authority, or limitations, or short of its statutory right;

(2) Declare the Final Rule, or portions thereof, are unlawful because they are arbitrary, capricious, or otherwise not in accordance with law;

(3) Enter an order vacating the Final Rule or those portions determined to be unlawful;

(4) Enjoin the EPA from implementing, applying, or enforcing the Final Rule or those portions of the Final Rule determined to be unlawful;

(5) Grant Plaintiffs such additional and further relief as the Court may deem just, proper, and necessary.

Date:   July 13, 2020.                    Respectfully submitted,

                                          */s/ Andrew Hawley*
                                          Andrew Hawley
                                          Daniel James Cordalis
                                          Peter M. K. Frost
                                          Sangye Ince-Johannsen

                                          Attorneys for Plaintiffs