# EXHIBIT 7



# E. SCOTT PRUITT
## ADMINISTRATOR

**TO:** Assistant Administrators
Regional Administrators
Office of General Counsel

**FROM:** E. Scott Pruitt
Administrator

**DATE:** October 16, 2017

**SUBJECT:** Adhering to the Fundamental Principles of Due Process, Rule of Law, and Cooperative Federalism in Consent Decrees and Settlement Agreements

In the past, the U.S. Environmental Protection Agency has sought to resolve litigation through consent decrees and settlement agreements that appear to be the result of collusion with outside groups.[1] Behind closed doors, EPA and the outside groups agreed that EPA would take an action with a certain end in mind, relinquishing some of its discretion over the Agency's priorities and duties and handing them over to special interests and the courts.[2] When negotiating these agreements, EPA excluded intervenors, interested stakeholders, and affected states from those discussions. Some of these agreements even reduced Congress's ability to influence policy.[3] The days of this regulation through litigation are terminated.

"Sue and settle," as this tactic has been called, undermines the fundamental principles of government that I outlined on my first day: (1) the importance of process, (2) adherence to the rule of law, and (3) the applicability of cooperative federalism. The process by which EPA adopts regulations sends an important message to the public: EPA values the comments that it receives from the public and strives to make informed decisions on regulations that impact the lives and livelihoods of the American people. The rule of law requires EPA to act only within the confines of the statutory authority that Congress has conferred to the Agency, and thereby avoid the uncertainty of litigation and ultimately achieve better outcomes.

---

[1] When litigants enter into a consent decree, they agree to resolve the litigation through a judicially enforceable court order; if one party fails to abide by the terms of a consent decree, that party risks being held in contempt of court. A settlement agreement generally resolves legal disputes without a court order; if one party fails to abide by the terms of a settlement agreement, the aggrieved party must petition a court for a judicial remedy.

[2] These outside groups often file lawsuits in federal district courts that the litigants believe will give them the best chance of prevailing – not necessarily in the forum where the agency action at issue is most applicable – and ask the court to enjoin the agency action on a nationwide basis. Nationwide injunctions, in general, raise serious concerns about the validity and propriety of these district court actions.

[3] The sue-and-settle phenomenon results in part from statutes that empower these outside groups to file a lawsuit against a federal agency when that agency fails to meet a statutory deadline and then reward these individuals by allowing them to recover attorney's fees for "successful" lawsuits.

1200 PENNSYLVANIA AVE. NW • MAIL CODE 1101A • WASHINGTON, DC 20460 • (202) 564-4700 • FAX: (202) 501-1450

1

This paper is printed with vegetable-oil-based inks and is 100-percent postconsumer recycled material, chlorine-free-processed and recyclable.



E. Scott Pruitt
Administrator

Finally, EPA must honor the vital role of the states in protecting the public health and welfare under the principle of cooperative federalism as prescribed by the Constitution and statutory mandate.

\* \* \*

This memorandum explains the sue-and-settle directive that I established within the Agency and also describes how the past practice of regulation through litigation has harmed the American public.

**Regulation Through Litigation Violates Due Process, the Rule of Law, and Cooperative Federalism**

When an agency promulgates a new regulation or issues a decision, the agency should take that action consistent with the processes and substantive authority that the law permits. An agency, therefore, should ordinarily zealously defend its action when facing a lawsuit challenging that action. If an agency agrees to resolve that litigation through a consent decree or settlement agreement, however, questions will necessarily arise about the propriety of the government's determination not to defend the underlying regulation or decision. Indeed, sue and settle has been adopted to resolve lawsuits through consent decrees in a way that bound the agency to judicially enforceable actions and timelines that curtailed careful agency consideration. This violates due process, the rule of law, and cooperative federalism.

A.     **The Importance of Process**

EPA risks bypassing the transparency and due process safeguards enshrined in the Administrative Procedure Act[4] and other statutes[5] when it uses a consent decree or a settlement agreement to bind the Agency to proceed with a rulemaking with a certain end in mind on a schedule negotiated with the litigants. Congress enacted the Administrative Procedure Act to provide the American public with notice of a potential agency action, to encourage public participation in the rulemaking process, and to afford federal agencies with the framework to perform careful consideration of all the associated issues before taking final agency action. Following the legal processes for agency action provides predictability for all stakeholders, ensures that the agency will receive input from all interested parties, and increases the defensibility of an action when facing a procedural challenge.

---

[4] Pursuant to the Administrative Procedure Act, an agency must publish a general notice of proposed rulemaking in the Federal Register and include the following information: "(1) a statement of the time, place, and nature of public rulemaking proceedings; (2) reference to the legal authority under which the rule is proposed; and (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b). Additionally, the agency "shall give interested persons an opportunity to participate in the rulemaking through a submission of written data, views, or arguments with or without opportunity for oral presentation." *Id.* § 553(c).

[5] The statutes include the Paperwork Reduction Act (44 U.S.C. § 3506), the Regulatory Flexibility Act (5 U.S.C. § 603), and the Unfunded Mandates Reform Act (2 U.S.C. § 1535).

1200 Pennsylvania Ave. NW • Mail Code 1101A • Washington, DC 20460 • (202) 564-4700 • Fax: (202) 501-1450

This paper is printed with vegetable-oil-based inks and is 100-percent postconsumer recycled material, chlorine-free-processed and recyclable.



# E. SCOTT PRUITT
## ADMINISTRATOR

A sue-and-settle agreement, however, undermines these safeguards. Using this tactic, the agency and the party that filed the legal challenge agree in principle on the terms of a consent decree or settlement before the public has the opportunity to review the terms of the agreement.[6] An agency can also use consent decrees and settlement agreements as an end-run around certain procedural protections of the rulemaking process. Even when an agency attempts to comply with these procedural safeguards, the agency typically agrees to an expedited rulemaking process that can inhibit meaningful public participation. This rushed rulemaking process can lead to technical errors by the agency, insufficient time for stakeholders to submit rigorous studies that assess the proposal, the inability of the agency to provide meaningful consideration of all the evidence submitted to the agency, a lack of time for the agency to reconsider its initial proposal and issue a revised version, and the failure to take into account the full range of potential issues related to the proposed rule.

Sue and settle, therefore, interferes with the rights of the American people to provide their views on proposed regulatory decisions and have the agency thoughtfully consider those views before making a final decision. By using sue and settle to avoid the normal rulemaking processes and protections, an agency empowers special-interests at the expense of the public and parties that could have used their powers of persuasion to convince the agency to take an alternative action that could better serve the American people.[7]

**B.      Adherence to the Rule of Law**

As an agency in the executive branch of the United States, EPA must faithfully administer the laws of the land and take actions that are tethered to the governing statutes. The authority that Congress has granted to EPA is our *only* authority. EPA must respect the rule of law. The Agency must strive to meet the directives and deadlines that Congress set forth in our governing environmental statutes. But we must not

---

[6] In certain circumstances, the Agency must permit the public to comment on the proposed settlement. *See, e.g.*, Clean Air Act Section 113(g), 42 U.S.C. § 7413(g) (requiring that "[a]t least 30 days before a consent decree or settlement agreement of any kind under [the Clean Air Act] to which the United States is a party (other than enforcement actions) . . . is final or filed with a court, the Administrator shall provide a reasonable opportunity by notice in the *Federal Register* to persons who are not named as parties or intervenors to the action or matter to comment in writing"). While the Agency has made changes to proposed consent decrees in response to comments receiving during this process, the Agency understands that numerous stakeholders lack faith in the effectiveness of this comment opportunity because the Agency and the settling litigants have already agreed in principle to the proposed settlement.

[7] "The greatest evil of government by consent decree . . . comes from its potential to freeze the regulatory processes of representative democracy. At best, even with the most principled and fair-minded courts, the device adds friction. . . . As a policy device, then, government by consent decree serves no necessary end. It opens the door to unforeseeable mischief; it degrades the institutions of representative democracy and augments the power of special interest groups. It does all of this in a society that hardly needs new devices that emasculate representative democracy and strengthen the power of special interests." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1136-37 (D.C. Cir. 1983) (Wilkey, J., dissenting).

1200 PENNSYLVANIA AVE. NW • MAIL CODE 1101A • WASHINGTON, DC 20460 • (202) 564-1700 • FAX: (202) 501-1450

This paper is printed with vegetable-oil-based inks and is 100-percent postconsumer recycled material, chlorine-free-processed and recyclable.



# E. SCOTT PRUITT
## ADMINISTRATOR

surrender the powers that we receive from Congress to another branch of government – lest we risk upsetting the balance of powers that our founders enshrined in the Constitution.[8] Sue and settle disrespects the rule of law and improperly elevates the powers of the federal judiciary to the detriment of the executive and legislative branches.[9]

In the past, outside groups have sued EPA for failing to act by a deadline prescribed under the law. EPA would then sign a consent decree agreeing to take a particular action ahead of other Agency actions that the public and other public officials considered to be higher priorities. We should not readily cede our authority and discretion by letting the federal judiciary dictate the priorities of the Administration and the Agency.

Taken to its extreme, the sue-and-settle strategy can allow executive branch officials to avoid political accountability by voluntarily yielding their discretionary authority to the courts, thereby insulating agency

---

[8] In The Federalist Number 47, James Madison wrote:

> One of the principal objections inculcated by the more respectable adversaries to the constitution, is its supposed violation of the political maxim, that the legislative, executive and judiciary departments ought to be separate and distinct. In the structure of the federal government, no regard, it is said, seems to have been paid to this essential precaution in favor of liberty. The several departments of power are distributed and blended in such a manner, as at once to destroy all symmetry and beauty of form; and to expose some of the essential parts of the edifice to the danger of being crushed by the disproportionate weight of other parts.
>
> No political truth is certainly of greater intrinsic value or is stamped with the authority of more enlightened patrons of liberty than that on which the objection is founded. *The accumulation of all powers legislative, executive and judiciary in the same hands, whether of one, a few or many, and whether hereditary, self appointed, or elective, may justly be pronounced the very definition of tyranny.* Were the federal constitution therefore really chargeable with this accumulation of power or with a mixture of powers having a dangerous tendency to such an accumulation, no further arguments would be necessary to inspire a universal reprobation of the system. I persuade myself however, that it will be made apparent to every one, that the charge cannot be supported, and that the maxim on which it relies, has been totally misconceived and misapplied. *In order to form correct ideas on this important subject, it will be proper to investigate the sense, in which the preservation of liberty requires, that the three great departments of power should be separate and distinct.*

The Federalist No. 47 (James Madison) (emphasis added).

[9] "*The leading principle of our Constitution is the independence of the Legislature, Executive and Judiciary of each other.*" Thomas Jefferson to George Hay, 1807. FE 9:59 (emphasis added). "*The Constitution intended that the three great branches of the government should be co-ordinate and independent of each other. As to acts, therefore, which are to be done by either, it has given no control to another branch. . . . Where different branches have to act in their respective lines, finally and without appeal, under any law, they may give to it different and opposite constructions. . . . From these different constructions of the same act by different branches, less mischief arises than from giving to any one of them a control over the others.*" Thomas Jefferson to George Hay, 1807. ME 11:213 (emphasis added).

---

This paper is printed with vegetable-oil-based inks and is 100-percent postconsumer recycled material, chlorine-free-processed and recyclable.



E. SCOTT PRUITT
ADMINISTRATOR

officials from criticisms of unpopular actions. Equally troubling, sue and settle can deprive Congress of its ability to influence agency policy through oversight and the power of the purse. Sue-and-settle agreements can also prevent subsequent administrations from modifying a particular policy priority, approach, or timeline.[10] The founders of our nation did not envision such an imbalance of power among the federal branches of government.

EPA must always respect the rule of law and defend the prerogatives of its separate powers. EPA, therefore, shall avoid inappropriately limiting the discretion that Congress authorized the Agency, abide by the procedural safeguards enumerated in the law, and resist the temptation to reduce the amount of time necessary for careful Agency action.

### C.     Embracing Cooperative Federalism

Many environmental statutes empower the states to serve as stewards of their lands and environments.[11] Embracing federalism, EPA can work cooperatively with states to encourage regulations instead of compelling them and to respect the separation of powers.[12] Past sue-and-settle tactics, however, undermined this principle of cooperative federalism by excluding the states from meaningfully participating in procedural and substantive Agency actions.

When considering a consent decree or settlement agreement to end litigation against the Agency, EPA should welcome the participation of the affected states and tribes, regulated communities, and other interested stakeholders. This should include engagement even before lodging the decree or agreement, where appropriate. These additional participants to the negotiations can voice their concerns that the

---

[10] "The separation of powers inside a government – and each official's concern that he may be replaced by someone with a different agenda – creates incentives to use the judicial process to obtain an advantage. The consent decree is an important element in the strategy. . . . It is impossible for an agency to promulgate a regulation containing a clause such as 'My successor cannot amend this regulation.' But if the clause appears in a consent decree, perhaps the administrator gets his wish to dictate the policies of his successor." Frank Easterbrook, *Justice and Contract in Consent Judgments*, 1987 U. Chi. L. Forum 19, 33-34 (1987).

[11] Both the Clean Air Act and the Clean Water Act contain specific provisions that enlist the states to take primary responsibility of environmental protection.

[12] In Federalist Number 51, James Madison wrote:

> *In the compound republic of America, the power surrendered by the people is first divided between two distinct governments, and then the portion allotted to each subdivided among distinct and separate departments. Hence a double security arises to the rights of the people. The different governments will control each other, at the same time that each will be controlled by itself.* Second. It is of great importance in a republic not only to guard the society against the oppression of its rulers, but to guard one part of the society against the injustice of the other part. Different interests necessarily exist in different classes of citizens. If a majority be united by a common interest, the rights of the minority will be insecure.

The Federalist No. 51 (James Madison) (emphasis added).

This paper is printed with vegetable-oil-based inks and is 100-percent postconsumer recycled material, chlorine-free-processed and recyclable.



E. Scott Pruitt
Administrator

agreed-upon deadlines will be reasonable and fair, permitting adequate time for meaningful public participation and thoughtful Agency consideration of comments received. EPA must also seek to collaborate with the states and remain flexible when ensuring compliance with environmental protections.

### Conclusion

By emphasizing the importance of process, adhering to the rule of law, and embracing cooperative federalism, EPA increases the quality of, and public confidence in, its regulations. Through transparency and public participation, EPA can reassure the American public that the rules that apply to them have been deliberated upon and determined in a forum open to all. Finally, the federal government must continue to improve engagement with the states, tribes, interested stakeholders, and regulated communities, especially when resolving litigation. The steps outlined in my directive today will help us achieve these noble goals and continue to improve us as an Agency.

This paper is printed with vegetable-oil-based inks and is 100-percent postconsumer recycled material, chlorine-free-processed and recyclable.