1   **JEFF LANDRY**
      **ATTORNEY GENERAL OF LOUISIANA**
2   ELIZABETH B. MURRILL (*pro hac vice forthcoming*)
      *Solicitor General*
3   JOSEPH S. ST. JOHN (*pro hac vice forthcoming*)
      *Deputy Solicitor General*
4   LOUISIANA DEPARTMENT OF JUSTICE
    1885 N. Third Street
5   Baton Rouge, LA 70804
    Tel: (225) 326-6766
6   emurrill@ag.louisiana.gov
    stjohnj@ag.louisiana.gov
7
    *Counsel for the State of Louisiana*
8
    SEE SIGNATURE PAGE FOR
9   ADDITIONAL PARTIES AND COUNSEL

10                  **UNITED STATES DISTRICT COURT**

11                **NORTHERN DISTRICT OF CALIFORNIA**

12  AMERICAN RIVERS; AMERICAN            No.  3:20-cv-4636
    WHITEWATER; CALIFORNIA TROUT;
13  IDAHO RIVERS UNITED

14          Plaintiffs,                  **ANSWER OF STATE INTERVENORS**
                                         **LOUISIANA, MONTANA, ARKANSAS,**
15       v.                             **MISSISSIPPI, MISSOURI, TEXAS, WEST**
                                         **VIRGINIA, AND WYOMING**
16  ANDREW R. WHEELER; U.S.
    ENVIRONMENTAL PROTECTION
17  AGENCY,

18          Defendants.

19

20

21

22

23

24

25

26

27

28

                                    1

**STATE INTERVENORS' ANSWER TO COMPLAINT**

Intervenors Louisiana, Montana, Arkansas, Mississippi, Missouri, Texas, West Virginia, and Wyoming ("State Intervenors"), make this Answer to Plaintiffs' Complaint in the above-captioned case. Pursuant to Federal Rule of Civil Procedure 8(b), State Intervenors deny each and every allegation contained in Plaintiffs' Complaint except for those expressly admitted herein. For the avoidance of doubt, State Intervenors deny (a) all summations, characterizations, etc. of legal authorities on the basis that such allegations state a legal conclusion as to which no response is required and that legal authorities speak for themselves and (b) all headings.

**INTRODUCTION**

1.    Admitted that Congress passed the Federal Water Pollution Control Act Amendments of 1972, Pub. L. 92-500, 86 Stat. 816 (Oct. 16, 1972). Otherwise denied.

2.    Admitted that 33 U.S.C. § 1251(a) states, in part: "The objective of this chapter is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." Admitted that states retain primary authority to abate water pollution. Admitted that 33 U.S.C. § 1251(b) states, in part: "It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources, and to consult with the Administrator in the exercise of his authority under this chapter." Intervenor States further answer that the statutory text speaks for itself. Otherwise denied.

3.    Denied.

4.    Admitted that 33 U.S.C. § 1341(a)(1) states, in part: "No license or permit shall be granted until the certification required by this section has been obtained or has been waived as provided in the preceding sentence. No license or permit shall be granted if certification has been denied by the State, interstate agency, or the Administrator, as the case may be." Admitted that, as a result, state certification is required for a range of projects that require federal approval. Otherwise denied.

5.    Admitted that 33 U.S.C. § 1341(a)(1) states, in part: "Such State or interstate agency

shall establish procedures for public notice in the case of all applications for certification by it and, to the extent it deems appropriate, procedures for public hearings in connection with specific applications." Otherwise denied.

6.      Admitted that on July 13, 2020, Defendant Andrew R. Wheeler and Defendant U.S Environmental Protection Agency ("the EPA"), published a final rule revising the regulations implementing Section 401, and that the final rule was published as Clean Water Act Section 401 Certification Rule, 85 Fed. Reg. 42,210 (July 13, 2020) ("Final Rule"). Otherwise denied.

7.      Admitted that Plaintiffs seek an order declaring the Final Rule, in whole or in part, unlawful, and setting it or its provisions aside. Otherwise denied.

**JURISDICTION & VENUE**

8.      Admitted that the Final Rule constitutes final agency action. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of Plaintiffs' standing and, on that basis, deny that this Court has authority to grant the requested relief. Otherwise denied.

9.      Admit that the EPA has an office within this district. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remaining factual allegations; they are therefore denied.

**INTRADISTRCT ASSIGNMENT**

10.      Denied.

**PARTIES**

11.      The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this allegation; it is therefore denied.

12.      The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this allegation; it is therefore denied.

13.      The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this allegation; it is therefore denied.

14.      The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this allegation; it is therefore denied.

15.      The Intervenor States lack knowledge or information sufficient to form a belief about

the truth of this allegation; it is therefore denied.

16.     Denied that Plaintiffs are directly injured by the Final Rule. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remainder of this allegation; it is therefore denied.

17.     Denied that the Final Rule will undercut any state's authority. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remainder of this allegation; it is therefore denied.

18.     Denied.

19.     Admitted that the Final Rule limits the use of Section 401 to impose unlawful and unconstitutional conditions. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remainder of this allegation; it is therefore denied.

20.     Denied.

21.     The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this allegation; it is therefore denied.

22.     The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this allegation; it is therefore denied.

23.     Admitted.

24.     Admitted.

## LEGAL BACKGROUND

### I.    The Clean Water Act

25.     Admitted that Congress passed the Federal Water Pollution Control Act Amendments of 1972, Pub. L. 92-500, 86 Stat. 816 (Oct. 16, 1972). Admitted that 33 U.S.C. § 1251(a) states, in part: "The objective of this chapter is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." Admitted that states retain authority to abate water pollution. Otherwise denied.

26.     Admitted that 33 U.S.C. § 1251(b) states, in part: "It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and

4

1  enhancement) of land and water resources, and to consult with the Administrator in the exercise of
2  his authority under this chapter." Admitted that 33 U.S.C. § 1370 states, in part: "Except as expressly
3  provided in this chapter, nothing in this chapter shall . . . (2) be construed as impairing or in any
4  manner affecting any right or jurisdiction of the States with respect to the waters (including boundary
5  waters) of such States."

6  27.  Admitted that 33 U.S.C. § 1377(e) states, in part, "The Administrator is authorized to
7  treat an Indian tribe as a State for purposes of subchapter II of this chapter and sections 1254, 1256,
8  1313, 1315, 1318, 1319, 1324, 1329, 1341, 1342, 1344, and 1346 of this title to the degree necessary
9  to carry out the objectives of this section, but only if" certain conditions are met.

10  28.  Admitted.

11  **II.    Section 401 of the Clean Water Act**

12  29.  Admitted that 33 U.S.C. § 1341(a)(1) provides, in part: "Any applicant for a Federal
13  license or permit to conduct any activity . . . which may result in any discharge into the navigable
14  waters, shall provide the licensing or permitting agency a certification from the State in which the
15  discharge originates or will originate, or, if appropriate, from the interstate water pollution control
16  agency having jurisdiction over the navigable waters at the point where the discharge originates or
17  will originate, that any such discharge will comply with the applicable provisions of sections 1311,
18  1312, 1313, 1316, and 1317 of this title." Further admitted that 33 U.S.C. § 1341(a)(1) states, in part
19  "No license or permit shall be granted until the certification required by this section has been
20  obtained or has been waived as provided in the preceding sentence" and "No license or permit shall
21  be granted if certification has been denied by the State, interstate agency, or the Administrator, as the
22  case may be." Otherwise denied.

23  30.  Admitted that 33 U.S.C. § 1377(e) provides, in part: "The Administrator is authorized
24  to treat an Indian tribe as a State for purposes of subchapter II of this chapter and sections sections
25  1254, 1256, 1313, 1315, 1318, 1319, 1324, 1329, 1341, 1342, 1344, and 1346 of this title to the degree
26  necessary to carry out the objectives of this section, but only if [certain conditions are met]." Further
27  admitted that 33 U.S.C. § 1341(a)(1) provides, in part: "In any case where a State or interstate agency
28  has no authority to give such a certification, such certification shall be from the Administrator."

5

31.     Denied as written.

32.     Admitted that 33 U.S.C. § 1341(a)(1) provides, in part: "Such State or interstate agency shall establish procedures for public notice in the case of all applications for certification by it[.]"

33.     Admitted that 33 U.S.C. § 1341(a)(1) states, in part: "If the State, interstate agency, or Administrator, as the case may be, fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application."

34.     Admitted that 33 U.S.C. § 1341(d) states, in part: "Any certification provided under this section shall set forth any effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant for a Federal license or permit will comply with any applicable effluent limitations and other limitations, under section 1311 or 1312 of this title, standard of performance under section 1316 of this title, or prohibition, effluent standard, or pretreatment standard under section 1317 of this title, and with any other appropriate requirement of State law set forth in such certification, and shall become a condition on any Federal license or permit subject to the provisions of this section."

**III.    The Administrative Procedure Act**

35.     Admitted that 5 U.S.C. § 702 states, in part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

36.     Admitted that 5 U.S.C. § 704 states, in part: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." Admitted that promulgation of a final rule is a final agency action under the APA.

37.     Admitted.

FACTS

I.    **Application of Section 401**

38.     Admitted that for the past 50 years, certain states have exercised the certification

6

authority provided in Section 401 for activities that require a federal license or permit. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remainder of this allegation; it is therefore denied.

39.     Admitted that certain states have considered and addressed impacts unrelated to water quality in making certifications under Section 401. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remaining factual allegations; they are therefore denied.

40.     Admitted that certain states have imposed a broad array of conditions on activities subject to the Section 401 certification requirement—including conditions not related to the triggering discharge. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remaining factual allegations; they are therefore denied.

41.     Admitted that certain states have denied certification based on requirements that were not promulgated pursuant to the Clean Water Act. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remaining factual allegations; they are therefore denied.

42.     Admitted that certain states have enacted laws and regulations establishing rules and processes for public notification and participation in determinations concerning requests for certification under Section 401.

43.     The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this allegation; it is therefore denied.

44.     The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this allegation; it is therefore denied.

45.     Admitted that on April 10, 2019, President Trump issued Executive Order 13, 868. The text of the executive order speaks for itself. Otherwise denied.

46.     Admitted that Executive Order 13868 states, in part:

Purpose. The United States is blessed with plentiful energy resources, including abundant supplies of coal, oil, and natural gas. Producers in America have demonstrated a remarkable ability to harness innovation and to cost-effectively unlock new energy supplies, making our country a dominant energy force. In fact, last year the United States surpassed production records set nearly 5 decades ago and is in

7

all likelihood now the largest producer of crude oil in the world. We are also the world's leading producer of natural gas, and we became a net exporter in 2017 for the first time since 1957. The United States will continue to be the undisputed global leader in crude oil and natural gas production for the foreseeable future.

These robust energy supplies present the United States with tremendous economic opportunities. To fully realize this economic potential, however, the United States needs infrastructure capable of safely and efficiently transporting these plentiful resources to end users. Without it, energy costs will rise and the national energy market will be stifled; job growth will be hampered; and the manufacturing and geopolitical advantages of the United States will erode. To enable the timely construction of the infrastructure needed to move our energy resources through domestic and international commerce, the Federal Government must promote efficient permitting processes and reduce regulatory uncertainties that currently make energy infrastructure projects expensive and that discourage new investment. Enhancing our Nation's energy infrastructure, including facilities for the transmission, distribution, storage, and processing of energy resources, will ensure that our Nation's vast reserves of these resources can reach vital markets. Doing so will also help families and businesses in States with energy constraints to access affordable and reliable domestic energy resources. By promoting the development of new energy infrastructure, the United States will make energy more affordable, while safeguarding the environment and advancing our Nation's economic and geopolitical advantages.

Admitted that the executive order states, in part: "Outdated Federal guidance and regulations regarding section 401 of the Clean Water Act, however, are causing confusion and uncertainty and are hindering the development of energy infrastructure."

47.     Admitted that on June 7, 2019, the EPA issued guidance titled "Clean Water Act Section 401 Guidance for Federal Agencies, States and Authorized Tribes." On its face, the guidance addressed "1. Statutory and regulatory timelines for review and action on Section 401 certifications; 2. The appropriate scope of Section 401 certification review and conditions; and 3. Information within the scope of a state or tribe's Section 401 certification review." Otherwise denied.

48.     Admitted that in August 2019, the EPA published an economic analysis of existing section 401 processes, and its proposed Section 401 rulemaking. Admitted that in its economic analysis, the EPA summarized four "denials and other high-profile section 401 certification cases." Admitted that EPA stated "recent section 401 certification denials on large infrastructure projects, such as natural gas pipelines and export terminals, highlighted the potential for section 401 certification denials to have broader economic impacts" and "[w]hile data to quantify these effects are limited, studies have noted that recurring section 401 certification denials of FERC-approved natural gas pipelines affects transportation of natural gas and could jeopardize the reliability of gas-

8

fired electric generators." Admitted that in its economic analysis, EPA stated "[r]ecent New York State natural gas pipeline case studies . . . demonstrate that the 'complete application' standard for starting the clock has caused confusion and delays" and "[e]xtended delay while waiting for a certification decision is an opportunity cost to the project proponent." Admitted that in its economic analysis, EPA stated that "[b]ased on recent survey results (ACWA, 2019), incomplete requests are the most common cause of section 401 review delay." Admitted that the economic analysis references a "'withdrawal and resubmit' process which allowed for a project timeline to be informally extended beyond one year." Otherwise denied.

49.    Admitted that the EPA's economic analysis recounts the outcome of a survey given to 50 states about their section 401 certification processes, but the State Intervenors further answer that the survey was not performed by EPA, only 31 states provided responses, and EPA stated that the  survey data do not adhere to the EPA's requirements regarding data and information quality. Admitted that according to the EPA's economic analysis, responses to this survey "indicate that the average length of time for states to issue a certification decision once they receive a complete request is 132 days," and the survey responses indicate "denials are uncommon, with 17 states averaging zero denials per year and other states issuing denials rarely." Admitted that according to EPA's economic analysis, "[a]dditional summary survey information was made available by the Western States Water Council," and "[t]his survey further suggests that denials are uncommon, and most decision are made between 40-90 days," but Intervenor States further answer that EPA stated that the survey data does not adhere to the EPA's requirements regarding data and information quality. Otherwise denied.

**II.    The EPA's Rulemaking**

50.    Admitted.

51.    Admitted.

52.    Admitted that regulations.gov states that 125,097 comments were received in Docket EPA-HQ-OW-0405 as of August 10, 2020. Admitted that Docket EPA-HQ-OW-0405-0803 appears to be a letter dated October 21, 2019, and submitted by the Hydropower Reform Coalition. Admitted that Docket EPA-HQ-OW-2019-0405-0783 appears to be a letter submitted by American Whitewater.

53.     Admitted that the EPA received numerous critiques of the proposed rule, including from states and tribes. Admitted that EPA received critiques of the proposed rule purporting to be on behalf of Plaintiffs. Denied that the critiques "detailed the many flaws" in the proposed rule.

54.     The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this allegation; it is therefore denied.

55.     The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this allegation; it is therefore denied.

56.     The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this allegation; it is therefore denied.

57.     The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this allegation; it is therefore denied.

58.     The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this allegation; it is therefore denied.

59.     The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this allegation; it is therefore denied.

60.     Intervenors States answer that the text of the EPA's explanation of or justifications for the Final Rule speak for themselves. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remainder of this allegation; it is therefore denied.

61.     Denied.

**III.     The Final Rule**

62.     Admitted.

63.     Admitted the Final Rule provides that Section 401 "Certification is required for any license or permit that authorizes and activity that may result in a discharge," with "discharge" defined as "a discharge from a point source  into a water of the United States."

64.     Admitted that the Final Rule provides that "[t]he Federal agency shall establish the reasonable period of time either categorically or on a case-by-case basis," and "[i]n either event, the reasonable period of time shall not exceed one year from receipt." Further admitted that "certification request" is defined as "a written, signed, and dated communications that satisfies the

10

requirements of § 121.5(b) or (c)" and "receipt" is defined as "the date that a certification request is documented as received by a certifying authority in accordance with applicable submission procedures." Admitted that the Final Rule states, in part:

> (b) A certification request for an individual license or permit shall:
> (1) Identify the project proponent(s) and a point of contact;
> (2) Identify the proposed project;
> (3) Identify the applicable federal license or permit;
> (4) Identify the location and nature of any potential discharge that may result from the proposed project and the location of receiving waters;
> (5) Include a description of any methods and means proposed to monitor the discharge and the equipment or measures planned to treat, control, or manage the discharge;
> (6) Include a list of all other federal, interstate, tribal, state, territorial, or local agency authorizations required for the proposed project, including all approvals or denials already received;
> (7) Include documentation that a pre-filing meeting request was submitted to the certifying authority at least 30 days prior to submitting the certification request;
> (8) Contain the following statement: 'The project proponent hereby certifies that all information contained herein is true, accurate, and complete to the best of my knowledge and belief'; and
> (9) Contain the following statement: 'The project proponent hereby requests that the certifying authority review and take action on this CWA 401 certification request within the applicable reasonable period of time.'
>
> (c) A certification request for issuance of a general license or permit shall:
> (1) Identify the project proponent(s) and a point of contact;
> (2) Identify the proposed categories of activities to be authorized by the general license or permit for which certification is requested;
> (3) Include the draft or proposed general license or permit;
> (4) Estimate the number of discharges expected to be authorized by the proposed general license or permit each year;
> (5) Include documentation that a pre-filing meeting request was submitted to the certifying authority at least 30 days prior to submitting the certification request;
> (6) Contain the following statement: 'The project proponent hereby certifies that all information contained herein is true, accurate, and complete to the best of my knowledge and belief '; and
> (7) Contain the following statement: 'The project proponent hereby requests that the certifying authority review and take action on this CWA 401 certification request within the applicable reasonable period of time.'

65.   Admitted that the Final Rule provides that "[t]he scope of a Clean Water Act section 401 certification is limited to assuring that a discharge from a Federally licensed or permitted activity will comply with water quality requirements."

66.   Admitted.

67.   Admitted.

68.   Admitted that the Final Rule provides, in part: "The Federal agency shall establish the

11

reasonable period of time either categorically or on a case-by-case basis," and "[i]n either event, the reasonable period of time shall not exceed one year from receipt."

69. Admitted that the Final Rule provides, in part: "The certifying authority is not authorized to request the project proponent to withdraw a certification request and is not authorized to take any action to extend the reasonable period of time other than specified in § 121.6(d)."

70. Admitted that the Final Rule provides, in part: "The scope of a Clean Water Act section 401 certification is limited to assuring that a discharge from a Federally licensed or permitted activity will comply with water quality requirements." Further admitted that the Final Rule defines "certifying authority" as "the agency responsible for certifying compliance with applicable water quality requirements in accordance with Clean Water Act section 401." Further admitted that the Final Rule defines "water quality requirements" as "applicable provisions of §§ 301, 302, 303, 306, and 307 of the Clean Water Act, and state or tribal regulatory requirements for point source discharges into waters of the United States."

71. Admitted that the Final Rule provides, in part: "The certification requirement for a license or permit shall be waived upon . . .

> (2) The certifying authority's failure or refusal to act on a certification request, including:
> (i) Failure or refusal to act on a certification request within the reasonable period of time;
> (ii) Failure or refusal to satisfy the requirements of § 121.7(c);
> (iii) Failure or refusal to satisfy the requirements of § 121.7(e); or
> (iv) Failure or refusal to comply with other procedural requirements of section 401.

72. Admitted that the Final Rule provides, in part: "A condition for a license or permit shall be waived upon the certifying authority's failure or refusal to satisfy the requirements of § 121.7(d)" and "All certification conditions that satisfy the requirements of § 121.7(d) shall be incorporated into the license or permit."

## FIRST CLAIM FOR RELIEF

### Violation of the Clean Water Act

73. The State Intervenors reallege their answers to all previous paragraphs.

74. Admitted that 33 U.S.C. § 1361(a) provides that "The Administrator is authorized to prescribe such regulations as are necessary to carry out his functions under this chapter."

75.     Admitted that 33 U.S.C. § 1370 provides, in part: "Except as expressly provided in this chapter, nothing in this chapter shall . . . (2) be construed as impairing or in any manner affecting any right or jurisdiction of the States with respect to the waters (including boundary waters) of such States."

76.     This paragraph states a legal conclusion as to which no response is required. To the extent a response is required, it is denied.

77.     This paragraph states a legal conclusion as to which no response is required. To the extent a response is required, it is denied.

78.     Denied.

**SECOND CLAIM FOR RELIEF**

**Violation of the Clean Water Act**

***(The Final Rule's unlawful provisions concerning the timeline for certification)***

79.     The State Intervenors reallege their answers to all previous paragraphs.

80.     Admitted that 33 U.S.C. § 1341(a)(1) provides, in part: "Such State or interstate agency shall establish procedures for public notice in the case of all applications for certification by it and, to the extent it deems appropriate, procedures for public hearings in connection with specific applications."

81.     This paragraph states a legal conclusion as to which no response is required. To the extent a response is required, it is denied.

82.     This paragraph states a legal conclusion as to which no response is required. To the extent a response is required, it is denied.

83.     This paragraph states a legal conclusion as to which no response is required. To the extent a response is required, it is denied.

84.     This paragraph states a legal conclusion as to which no response is required. To the extent a response is required, it is denied.

85.     This paragraph states a legal conclusion as to which no response is required. To the extent a response is required, it is denied.

**THIRD CLAIM FOR RELIEF**

**Violation of the Clean Water Act**

***(The Final Rule unlawfully limits Section 401's applicability to activities that may result in point source discharges)***

86.     The State Intervenors reallege their answers to all previous paragraphs.

87.     Admitted that 33 U.S.C. § 1341(a)(1) provides, in part: "Any applicant for a Federal license or permit to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate" unless certification is waived.

88.     Admitted that 33 U.S.C. § 1362(16) provides: "The term 'discharge' when used without qualification includes a discharge of a pollutant, and a discharge of pollutants."

89.     Admitted that 33 U.S.C. § 1362(12) provides: "The term "discharge of a pollutant" and the term "discharge of pollutants" each means (A) any addition of any pollutant to navigable waters from any point source, (B) any addition of any pollutant to the waters of the contiguous zone or the ocean from any point source other than a vessel or other floating craft."

90.     Admitted that the Final Rule provides, in part: "Certification is required for any license or permit that authorizes an activity that may result in a discharge," and "discharge for purposes of this part means a discharge from a point source into a water of the United States."

91.     This paragraph states a legal conclusion as to which no response is required. To the extent a response is required, it is denied.

**FOURTH CLAIM FOR RELIEF**

**Violation of the Clean Water Act**

**(The Final Rule unlawfully limits the scope of—and permissible conditions on—certification to impacts of point source discharges on water quality)**

92.     The State Intervenors reallege their answers to all previous paragraphs.

93.     Admitted that 33 U.S.C. § 1341(a) provides, in part: "Any applicant for a Federal license or permit to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters, shall provide the licensing or

14

permitting agency a certification from the State in which the discharge originates or will originate, or, if appropriate, from the interstate water pollution control agency having jurisdiction over the navigable waters at the point where the discharge originates or will originate, that any such discharge will comply with the applicable provisions of sections 1311, 1312, 1313, 1316, and 1317 of this title."

94.     Admitted that 33 U.S.C. § 1341(d) provides:

> Any certification provided under this section shall set forth any effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant for a Federal license or permit will comply with any applicable effluent limitations and other limitations, under sections 1311 or 1312 of this title, standard of performance under section 1316 of this title, or prohibition, effluent standard, or pretreatment standard under section 1317 of this title, and with any other appropriate requirement of State law set forth in such certification, and shall become a condition on any Federal license or permit subject to the provisions of this section.

95.     Admitted that the Final Rule provides, in part: "The scope of a Clean Water Act section 401 certification is limited to assuring that a discharge from a Federally licensed or permitted activity will comply with water quality requirements."

96.     Admitted that the Final Rule provides, in part: "The scope of a Clean Water Act section 401 certification is limited to assuring that a discharge from a Federally licensed or permitted activity will comply with water quality requirements." Further admitted that the Final Rule provides, in part: "Water quality requirements means applicable provisions of §§ 301, 302, 303, 306, and 307 of the Clean Water Act, and state or tribal regulatory requirements for point source discharges into waters of the United States."

97.     Admitted that the Final Rule provides, in part: "Any grant of certification with conditions shall be in writing and shall for each condition include, ant a minimum [specified provisions]." Further admitted that the Final Rule provides, in part: "A condition for a license or permit shall be waived upon the certifying authority's failure or refusal to satisfy the requirements of § 121.7(d)." Further admitted that the Final Rule provides, in part: "All certification conditions that satisfy the requirements of § 121.7(d) shall be incorporated into the license or permit."

98.      This paragraph states a legal conclusion as to which no response is required. To the extent a response is required, it is denied.

99.      This paragraph states a legal conclusion as to which no response is required. To the

15

1  extent a response is required, it is denied.

2      100.    This paragraph states a legal conclusion as to which no response is required. To the

3  extent a response is required, it is denied.

4      101.    This paragraph states a legal conclusion as to which no response is required. To the

5  extent a response is required, it is denied.

6                          **FIFTH CLAIM FOR RELIEF**

7                          **Violation of the Clean Water Act**

8  (***The Final Rule unlawfully prohibits the certifying authority from considering or relying on***

9                  ***State law in making a certification  decision.***)

10     102.    The State Intervenors reallege their answers to all previous paragraphs.

11     103.    Admitted that 33 U.S.C. § 1341(d) provides:

12

13     Any certification provided under this section shall set forth any effluent limitations
       and other limitations, and monitoring requirements necessary to assure that any
       applicant for a Federal license or permit will comply with any applicable effluent
14     limitations and other limitations, under sections 1311 or 1312 of this title, standard of
       performance under section 1316 of this title, or prohibition, effluent standard, or
15     pretreatment standard under section 1317 of this title, and with any other appropriate
       requirement of State law set forth in such certification, and shall become a condition
16     on any Federal license or permit subject to the provisions of this section.

17     104.    Admitted that the Final Rule provides, in part: "The scope of a Clean Water Act

18  section 401 certification is limited to assuring that a discharge from a Federally licensed or permitted

19  activity will comply with water quality requirements."

20     105.    Admitted that the Final Rule provides, in part: "Water quality requirements means

21  applicable provisions of §§ 301, 302, 303, 306, and 307 of the Clean Water Act, and state or tribal

22  regulatory requirements for point source discharges into waters of the United States."

23     106.    This paragraph states a legal conclusion as to which no response is required. To the

24  extent a response is required, it is denied.

25     107.    This paragraph states a legal conclusion as to which no response is required. To the

26  extent a response is required, it is denied.

27     108.    This paragraph states a legal conclusion as to which no response is required. To the

28  extent a response is required, it is denied.

**SIXTH CLAIM FOR RELIEF**

**Violation of the Clean Water Act**

***(The Final Rule unlawfully authorizes federal permitting and licensing agencies to review***

***and overrule certification decisions)***

109.    The State Intervenors reallege their answers to all previous paragraphs.

110.    Admitted that 33 U.S.C. § 1341(a)(1) provides, in part: "If the State, interstate agency, or Administrator, as the case may be, fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application."

111.    Admitted that 33 U.S.C. § 1341(a)(1) provides, in part: "No license or permit shall be granted until the certification required by this section has been obtained or has been waived as provided in the preceding sentence. No license or permit shall be granted if certification has been denied by the State, interstate agency, or the Administrator, as the case may be."

112.    Admitted that 33 U.S.C. § 1341(d) provides:

> Any certification provided under this section shall set forth any effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant for a Federal license or permit will comply with any applicable effluent limitations and other limitations, under sections 1311 or 1312 of this title, standard of performance under section 1316 of this title, or prohibition, effluent standard, or pretreatment standard under section 1317 of this title, and with any other appropriate requirement of State law set forth in such certification, and shall become a condition on any Federal license or permit subject to the provisions of this section.

113.    Admitted that the Final Rule provides, in part:

> The certification requirement from a license or permit shall be waived upon . . .
> (2) The certifying authority's failure or refusal to act on a certification request, including:
> (i) Failure or refusal to act on a certification request within the reasonable period of time;
> (ii) Failure or refusal to satisfy the requirements of § 121.7(c);
> (iii) Failure or refusal to satisfy the requirements of § 121.7(e);
> (iv) Failure or refusal to comply with other procedural requirements of section 401.

114.    Admitted that the Final Rule provides, in part: "All certification conditions that satisfy the requirements of § 121.7(d) shall be incorporated into the license or permit." The remainder of

17

this paragraph states a legal conclusion as to which no response is required. To the extent a response is required, it is denied.

115.    This paragraph states a legal conclusion as to which no response is required. To the extent a response is required, it is denied.

### SEVENTH CLAIM FOR RELIEF

### Violation of the Administrative Procedure Act

116.    The State Intervenors reallege their answers to all previous paragraphs.

117.    This paragraph states a legal conclusion as to which no response is required. To the extent a response is required, it is denied.

118.    Denied.

119.    Denied.

120.    This paragraph states a legal conclusion as to which no response is required. To the extent a response is required, it is denied.

### REQUEST FOR RELIEF

States Intervenors deny that Plaintiffs are entitled to the relief requested, or any relief whatsoever. State Intervenors respectfully ask that the Court enter judgment against Plaintiffs and grant Defendants and State Intervenors such additional and further relief as the Court may deem just, proper, and necessary, including their costs and attorneys fees as provided by law.

### DEFENSES

Pursuant to Fed. R. Civ. P. 8(c), State Intervenors state the following defenses:

121.    This Court lacks jurisdiction over some or all of Plaintiffs' claims.

122.    Plaintiffs have failed to state a claim on which relief can be granted.

123.    The Complaint does not state facts or claims upon which relief may be granted under the legal authority cited or under any other law.

124.    Plaintiffs have not been harmed, nor are they in danger of harm, due to the Final Rule.

125.    There is neither factual nor legal support for injunctive or equitable relief.

126.    Any claim for injunctive or equitable relief is barred by Plaintiffs' unclean hands.

127.   Plaintiffs' theories would render the Clean Water Act unconstitutional in whole or part.

128.   The State Intervenors reserve the right to assert additional defenses.

Dated: August 28, 2020                Respectfully submitted,

                                      **BENBROOK LAW GROUP, P.C.**

                                      /s/ Bradley A. Benbrook
                                      _____
                                      BRADLEY A. BENBROOK (CA 177786)
                                      STEPHEN M. DUVERNAY (CA 250957)
                                      BENBROOK LAW GROUP, P.C.
                                      400 Capitol Mall, Suite 2530
                                      Sacramento, CA 95814
                                      Tel: (916) 447-4900
                                      brad@benbrooklawgroup.com
                                      steve@benbrooklawgroup.com

                                      *Counsel for State Intervenors*


                                      **JEFF LANDRY**
                                        **ATTORNEY GENERAL OF LOUISIANA**

                                      /s/ Joseph S. St. John
                                      _____
                                      ELIZABETH B. MURRILL (*pro hac vice* forthcoming)
                                        *Solicitor General*
                                      JOSEPH S. ST. JOHN (*pro hac vice* forthcoming)
                                        *Deputy Solicitor General*
                                      RYAN M. SEIDEMANN (*pro hac vice* forthcoming)
                                        *Assistant Attorney General*
                                      LOUISIANA DEPARTMENT OF JUSTICE
                                      1885 N. Third Street
                                      Baton Rouge, LA 70804
                                      Tel: (225) 326-6766
                                      emurrill@ag.louisiana.gov
                                      stjohnj@ag.louisiana.gov
                                      seidemannr@ag.louisiana.gov

                                      *Attorneys for the State of Louisiana*

1

TIM FOX
 ATTORNEY GENERAL OF MONTANA

2

3
/s/ Jon Bennion
_____

4
JON BENNION (*pro hac vice forthcoming*)
 *Chief Deputy Attorney General*

5
215 N. Sanders, Third Floor
P.O. Box 201401

6
Helena, MT 59620
Tel: (406) 444-2026

7
jonbennion@mt.gov

8
*Attorney for the State of Montana*

9

10
LESLIE RUTLEDGE
 ATTORNEY GENERAL OF ARKANSAS

11
/s/ Nicholas J. Bronni
_____

12
NICHOLAS J. BRONNI (*pro hac vice forthcoming*)
 *Solicitor General*

13
VINCENT WAGNER (*pro hac vice forthcoming*)
 *Deputy Solicitor General*

14
OFFICE OF ARKANSAS ATTORNEY GENERAL
 LESLIE RUTLEDGE

15
323 Center Street, Suite 200

16
Little Rock, AK 72201
Tel: (501) 682-8090

17
nicholas.bronni@arkansasag.gov
vincent.wagner@arkansasag.gov

18

19
*Attorneys for the State of Arkansas*

20

21
LYNN FITCH
 ATTORNEY GENERAL OF MISSISSIPPI

22
/s/ Kristi H. Johnson
_____

23
KRISTI H. JOHNSON (*pro hac vice forthcoming*)
 *Solicitor General*

24
OFFICE OF MISSISSIPPI ATTORNEY
 GENERAL LYNN FITCH

25
P.O. Box 220
Jackson, MS 39205

26
Tel: (601) 359-5563
kristi.johnson@ago.ms.gov

27
*Attorney for the State of Mississippi*

28

STATE INTERVENORS' ANSWER

ERIC SCHMITT
  ATTORNEY GENERAL OF MISSOURI

/s/ D. John Sauer
_____

D. John Sauer (*pro hac vice forthcoming*)
  *Solicitor General*
OFFICE OF THE MISSOURI
  ATTORNEY GENERAL
P.O. Box 899
Jefferson City, MO 65102-0899
Tel: (573) 751-1800
john.sauer@ago.mo.gov

*Attorney for the State of Missouri*

KEN PAXTON
  ATTORNEY GENERAL OF TEXAS
JEFFREY C. MATEER
  *First Assistant Attorney General*
RYAN L. BANGERT
  *Deputy First Assistant Attorney General*
DARREN L. MCCARTY
  *Deputy Attorney General for Civil Litigation*

/s/ David J. Hacker
_____

DAVID J. HACKER (CA 249272)
  *Associate Deputy Attorney General for Civil Litigation*
OFFICE OF THE TEXAS
  ATTORNEY GENERAL
P.O. Box 12548 (MC 001)
Austin, Texas 78711-2548
Tel: (512) 936-1700
david.hacker@oag.texas.gov

*Attorney for the State of Texas*

PATRICK MORRISEY
  ATTORNEY GENERAL OF WEST VIRGINIA

/s/ Lindsay S. See
_____

LINDSAY S. SEE (*pro hac vice forthcoming*)
  *Solicitor General*
State Capitol Building 1, Rm. 26-E
Charleston, WV 25305
Tel: (304) 558-2021
lindsay.s.see@wvago.gov

*Attorney for the State of West Virginia*

STATE INTERVENORS' ANSWER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOR THE STATE OF WYOMING

/s/ James C. Kaste

_____
JAMES C. KASTE (*pro hac vice forthcoming*)
  *Deputy Attorney General*
WYOMING ATTORNEY GENERAL'S OFFICE
2320 Capitol Avenue
Cheyenne, Wyoming 82002
Tel: (307) 777-6946
james.kaste@wyo.gov

*Attorney for the State of Wyoming*

STATE INTERVENORS' ANSWER