Clare Ellis (SBN No. 317773)
cellis@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
50 California Street, Suite 1700
San Francisco, CA 94111
Telephone: (415) 975-3708
Facsimile: (415) 975-3701

George P. Sibley, III (VA Bar No. 48773) (*pro hac vice pending*)
gsibley@HuntonAK.com
Deidre G. Duncan (D.C. Bar No. 461548) (*pro hac vice pending*)
dduncan@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Telephone: (804) 788-8262
Facsimile: (804) 788-8218

*Counsel for Proposed Intervenor-Defendants
American Petroleum Institute and
Interstate Natural Gas Association of America*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| AMERICAN RIVERS, et al.; <br><br> Plaintiffs, <br><br> v. <br><br> ANDREW R. WHEELER, et al., <br><br> Defendants. | First Filed Case: No. 3:20-cv-04636-WHA <br> Related Case: No. 3:20-cv-04869-WHA <br><br> **DECLARATION OF ROBIN RORICK, FOR THE AMERICN PETROLEUM INSTITUTE, IN SUPPORT OF THE COALITION'S MOTION TO INTERVENE IN SUPPORT OF DEFENDANTS** <br><br> CASE NO.: 3:20-CV-04636-WHA <br><br> Date: October 8, 2020 <br> Time: 8:00 a.m. <br> Courtroom: TBD <br> Judge: Hon. William H. Alsup |

STATE OF CALIFORNIA, et al.;

      Plaintiffs,

    v.

ANDREW R. WHEELER, et al.,

      Defendants.

CASE NO.: 3:20-CV-04869-WHA

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA 94111

1. My name is Robin Rorick. I am Vice President of Midstream and Industry Operations for the American Petroleum Institute (API). My business address is 200 Massachusetts Ave., NW, Suite 1100, Washington, DC 20001.

2. I am offering this declaration in support of the "Motion by American Petroleum Institute and Interstate Natural Gas Association of America to Intervene as Defendants" (collectively the "Coalition") in the above captioned case.

3. API is a nationwide, non-profit trade association that represents all facets of the natural gas and oil industry, which supports 10.3 million U.S. jobs and nearly 8 percent of the U.S. economy. API's nearly 600 members include large integrated companies, as well as exploration and production, refining, marketing, pipeline, and marine businesses, and service and supply firms. API's members provide most of the nation's energy. API was formed in 1919 as a standards-setting organization, and API has developed more than 700 standards to enhance operational and environmental safety, efficiency, and sustainability.

4. API's members engage in exploration, production, construction, operation, and maintenance projects that routinely involve federal permits or licenses that require state water quality certification under Clean Water Act (CWA) section 401. Within the past five years, several of API's members have relied on federal authorizations certified under section 401 to construct hundreds of miles of oil pipelines, natural gas pipelines, refined product pipelines, and natural gas liquids pipelines, which traverse the States of Montana, Oklahoma, Texas, Colorado, Louisiana, Missouri, Mississippi, Kansas, Wisconsin, Illinois, Utah, North Dakota, Arkansas, Minnesota, West Virginia, Ohio, Pennsylvania, Indiana, Kentucky, New Hampshire, and Maine.

5. The safe and reliable supply of energy to consumers, at an affordable cost, requires the construction and maintenance of thousands of lines of linear pipelines. The need to deliver energy over long distances to neighborhoods and communities across the country often means that pipelines and linear structures must, at times, unavoidably cross wetlands and other waters of the United States as they extend from supply to market areas. API's members rely on a consistent, efficient, and reasonable permitting process to obtain required federal approvals for the construction and

1

DECLARATION OF ROBIN RORICK IN SUPPORT OF THE COALITION'S
MOTION TO INTERVENE IN SUPPORT OF DEFENDANTS
CASE NOS.: 3:20-cv-04636-WHA, 3:20-CV-04869-WHA

maintenance of these critical elements of our nation's energy supply infrastructure.

6. Of the various sectors of the energy industry that are subject to Section 401 certification requirements, the midstream sector is perhaps impacted to the greatest degree. With the advent of the shale revolution and advanced technologies, America's energy landscape has transformed. In just the last decade, as U.S. oil production has doubled and natural gas production has risen by 46 percent, the U.S. has gone from being a net importer of crude oil and petroleum products as well as liquefied natural gas to being a net exporter. Energy infrastructure connects the dots to make this economic prosperity and energy security possible and brings benefits of its own. For example, federal safety data shows that pipelines are the safest way to deliver large volumes of oil, petroleum products, and natural gas.

7. The importance of pipeline projects necessary to connect production sites with processing plants, refineries and associated facilities, and ultimately to consumers has also increased. In the significant majority of instances in which companies seek state certifications for such projects, states dutifully approach their Section 401 certification obligations with a genuine interest in identifying and addressing discharges with potential adverse impacts on water quality. At times, however, some states have viewed their Section 401 authority as a means to thwart or invalidate projects as a whole, to extract concessions unrelated to water quality, or to promote state-specific energy policies or political goals.

8. Consistent with the cooperative federalism structure of the CWA, and the important role of States in protecting water quality within their borders, section 401 requires applicants for a federal license or permit anticipated to result in a discharge to navigable waters to obtain certification from the appropriate State or Tribe that the discharge will comply with applicable state water quality standards. States or Tribes can waive this requirement, and if they do not act within "a reasonable period of time (which shall not exceed one year) after receipt" of the request for the certification, waiver is automatic. 33 U.S.C. § 1341(a)(1).

9. In enacting section 401, Congress preserved an important role for States in evaluating the water quality impacts of federal infrastructure projects, but it did not prescribe that role without limit

or to the detriment of federal licensing or permitting authority.

10. API has a substantial interest in ensuring that the CWA section 401 certification process preserves the important role of States in protecting water quality, while at the same time providing appropriate limits where States use their certification authority to achieve policy goals or outcomes unrelated to water quality. API also has an interest in the consistent application of the section 401 certification process.

11. Certain States have relied on ambiguities in the water quality certification application process to block energy infrastructure projects proposed by API members and approved by federal agencies. API member projects have been significantly delayed when States ignore the statutory one-year time limit on certification or manipulate the process to exceed this timeframe.  Certain States have also denied certification for API member projects for reasons unrelated to water quality, such as downstream impacts of the project or general political opposition.

12. For example, on August 22, 2013, one of API's members submitted a certification request for the Constitution Pipeline, a $683 million, 124-mile natural gas pipeline designed to connect natural gas production in Pennsylvania to demand in northeastern markets.  The New York State Department of Environmental Conservation (NYSDEC) requested additional information and deemed the request complete in December 2014.  In April 2015, NYSDEC requested that the API member withdraw and resubmit its request in order to restart the waiver period.  In April 2016, nearly three years after the project's initial request for certification, NYSDEC denied water quality certification.  Following litigation over NYSDEC's determination, FERC determined in August 2019 that NYSDEC had waived its section 401 authority.  Nevertheless, after years of delay, the project's sponsor halted investment in the pipeline and cancelled the project in February 2020.

13. In November 2015, the Millennium Pipeline Company submitted a certification request to NYSDEC for the Millennium Valley Lateral project, a 7.8-mile pipeline connecting a natural gas mainline to a new natural gas-fueled combined cycle electric generation facility in New York.  In August 2017, nearly two years after the project's initial request for certification, NYSDEC denied certification on the grounds that FERC's environmental review of the project lacked an adequate

3

DECLARATION OF ROBIN RORICK IN SUPPORT OF THE COALITION'S
MOTION TO INTERVENE IN SUPPORT OF DEFENDANTS
CASE NOS.: 3:20-cv-04636-WHA, 3:20-CV-04869-WHA

analysis of the potential downstream greenhouse gas emissions, not water quality concerns. In September 2017, FERC concluded that NYSDEC's 21-month delay constituted waiver of the certification requirement, and the U.S. Court of Appeals for the Second Circuit (Second Circuit) affirmed FERC's determination in March 2018. *New York State Dep't of Envtl. Conservation v. Fed. Energy Regulatory Comm'n*, 884 F.3d 450 (2d Cir. 2018).

14. In December 2017, the Commonwealth of Virginia approved a water quality certification for the Atlantic Coast Pipeline, a $5.1 billion pipeline project that would transport gas produced in the Marcellus Shale region to the Mid-Atlantic region of the United States. In an unprecedented step, Virginia included conditions regulating activities in upland areas that may indirectly affect state waters, beyond the scope of federal CWA jurisdiction and the project's direct discharges to navigable waters. According to Virginia, "all proposed upland activities associated with the construction, operation, maintenance, and repair of the pipeline, any components thereof or appurtenances thereto, and related access roads and rights-of-way," are subject to the stringent conditions of the certification.

15. In August 2020, the State of North Carolina denied water quality certification for Mountain Valley Pipeline Southgate for reasons other than water quality. Although FERC has determined that the public convenience and necessity requires approval of the $468 million, 75-mile natural gas pipeline project, North Carolina denied water quality certification to one of API's members because the State determined that the purpose of the project was "unachievable" due to the "uncertainty" of completion of a different pipeline project.

16. Given the significant ramifications to oil and gas pipeline projects from state misuse of the section 401 certification process, API members have a significant interest in how the procedures and substantive requirements established by the U.S. Environmental Protection Agency (EPA) clarify the certification authority's role in the federal permitting process.

17. API's commitment toward clear and consistent compliance under section 401 is reflected in its engagement on this issue. On October 18, 2017, API asked the U.S. Army Corps of Engineers (Corps) to modify its section 401 rules at 33 C.F.R. § 325.2(b)(1) to more clearly reflect statutory

4

DECLARATION OF ROBIN RORICK IN SUPPORT OF THE COALITION'S
MOTION TO INTERVENE IN SUPPORT OF DEFENDANTS
CASE NOS.: 3:20-cv-04636-WHA, 3:20-CV-04869-WHA

requirements relating to review periods for States to issue certifications, to provide direction in its regulations to States and other authorities as to conditions that trigger the review period, and to strictly and consistently enforce compliance with Corps regulations. *See* API Comments on Corps; Subgroup to the Department of Defense Regulatory Reform Task Force, Review of Existing Rules, 82 Fed. Reg. 33,470 (July 20, 2017) (Docket ID No. COE-2017-0004).

18. API also supported the policy goals described in the President's April 2019 Executive Order 13868, *Promoting Energy Infrastructure and Economic Growth*, which directed EPA to review CWA section 401 and the EPA's existing certification regulations and propose new section 401 regulations. This support was reflected in API's May 24, 2019, comments filed in response to EPA's solicitation of recommendations for reforming its section 401 regulations. API Comments on Clean Water Act Section 401 Water Quality Certification Pre-proposal Recommendations (May 24, 2019) (Docket ID No. EPA-HQ-OW-2018-0855).

19. To protect its significant interests in the water quality certification process, API joined two separate coalitions of industry representatives to file comments in response to EPA's Proposed Rule, *Updating Regulations on Water Quality Certification*, 84 Fed. Reg. 44,080 (Aug. 22, 2019) (Docket ID Nos. EPA-HQ-OW-2019-0405-0935 and EPA-HQ-OW-2019-0405-0025) (Oct. 21, 2019). These comments are part of the administrative record that was before EPA when it promulgated the final 401 Rule. *Final Rule, CWA Section 401 Certification Rule,* EPA, 85 Fed. Reg. 42,210 (July 13, 2020) (the "401").

20. Because the certification process can be integral to the overall viability of API member Projects, API invested significant time and resources to join with other industry organizations in Andrea: October 2019 comments filing an *amici curiae* brief in *Constitution Pipeline Co., LLC v. New York State Dep't of Envtl. Conservation*, 868 F.3d 87 (2d Cir. 2017) and an *amici* brief in support of Constitution Pipeline Co.'s petition for *writ of certiorari*, which was ultimately denied by the U.S. Supreme Court. *Constitution Pipeline Co., LLC v. New York State Dep't of Envtl. Conservation*, 138 S. Ct. 1697 (2018). API and the other coalition members filed *amici* briefs to provide the perspective of the broader impacts of certification denials on the development of much-

1 needed natural gas infrastructure and to defend their interests in an efficient, transparent, and
2 predictable permitting process.

3 21.    API members continue to engage in the exploration, production, and transportation of oil and
4 natural gas and their products.  Such projects routinely involve both state and federal water
5 permitting and are, and will continue to be, affected by CWA section 401.  As a result, API members
6 will have a number of projects that will soon request certification, and those certifications would
7 likely be subject to EPA's new regulations.

8 22.    If Plaintiffs obtain the relief that they request here – i.e., a judgment declaring that the 401
9 Rule violates the Administrative Procedure Act or CWA, and applicable regulations, API members'
10 projects would not realize the benefits the 401 Rule and could face years of additional delays and
11 substantial additional costs, without any commensurate benefit to the aquatic environment.  States
12 would be able to continue to condition or deny certification for API member projects on basis of
13 policy considerations unrelated to water quality.

14 23.    The process of applying for and obtaining federal authorizations is time consuming,
15 expensive, and subject to regulatory uncertainty.  Accordingly, many important activities associated
16 with oil pipelines, natural gas pipelines, and natural gas liquids pipelines may be delayed or
17 otherwise encumbered if the 401 Rule is declared to be unlawful, and States can return to a
18 patchwork of various interpretations under a regulatory process established before the CWA.  This
19 will significantly harm API's members as well as impede their ability to safely deliver natural gas,
20 oil, and related products through pipelines.  The cost of these services to customers may also
21 increase if API's members cannot rely on timely 401 certifications.

22 24.    API's participation in litigation would likely aid the Court in understanding the ramifications
23 of this litigation on the natural gas and oil industry as a whole.  API will make legal arguments that
24 will aid the Court's understanding and disposition of the issues, and which may not be made by other
25 parties to the litigation.

I, Robin Rorick, certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 4, 2020.

_____

Robin Rorick
Vice President of Midstream and Industry Operations
American Petroleum Institute
200 Massachusetts Ave., NW
Suite 1100
Washington, DC 20001.

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, CA  94111

7
DECLARATION OF ROBIN RORICK IN SUPPORT OF THE COALITION'S
MOTION TO INTERVENE IN SUPPORT OF DEFENDANTS
CASE NOS.: 3:20-cv-04636-WHA, 3:20-CV-04869-WHA