Andrew Hawley (CA Bar No. 229274)
Western Environmental Law Center
1402 3rd Avenue, Ste. 1022
Seattle, Washington 98101
hawley@westernlaw.org
tel: 206-487-7250

Daniel James Cordalis (CA Bar No. 321722)
Cordalis Law, P.C.
2910 Springer Drive
McKinleyville, California 95519
dcordalislaw@gmail.com
tel: 303-717-4618

Peter M. K. Frost, appearance *pro hac vice*
Sangye Ince-Johannsen, appearance *pro hac vice*
Western Environmental Law Center
120 Shelton McMurphey Boulevard, Ste. 340
Eugene, Oregon 97401
frost@westernlaw.org
sangyeij@westernlaw.org
tel: 541-359-3238 / 541-778-6626

Attorneys for Plaintiffs American Rivers,
American Whitewater, California Trout, Idaho Rivers United

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN RIVERS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ANDREW R. WHEELER, *et al.*, <br><br> Defendants, <br><br> and <br><br> STATE OF LOUISIANA, *et al.*, <br><br> Defendant-Intervenors. | Case No. 3:20-cv-04636-WHA <br><br> **PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE BY AMERICAN PETROLEUM INSTITUTE AND INTERSTATE NATURAL GAS ASSOCIATION OF AMERICA** <br><br> **Hearing Date: November 4, 2020** <br> **Hearing Time: 8:00 a.m.** <br> **Courtroom: 12** <br> **Judge: Hon. William H. Alsup** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 1

    A.    Intervention as of Right Must Be Denied Because the Industries Fail to Establish that the Existing Parties Will Not Adequately Represent Their Interests. ................................................................... 1

        1.    The Industries Have Not Identified Any Potentially Meritorious Arguments They Will Raise that the Existing Parties Will Neglect. ........................................................................... 3

        2.    The Industries Have Not Established that EPA and the State Intervenors May Be Unwilling to Defend the Rule. ......................... 7

        3.    The Industries Do Not Offer Necessary Elements to This Litigation. ....................................................................................... 8

    B.    The Industries Are Not Entitled to Permissive Intervention. ....................... 10

CONCLUSION ................................................................................................................. 12

## TABLE OF AUTHORITIES

**CASES:**

*Arakaki v. Cayetano*
324 F.3d 1078 (9th Cir. 2003)..................................................................2, 3, 8

*California v. Tahoe Reg'l Planning Agency*
792 F.2d 775 (9th Cir. 1986)....................................................................7, 8, 11

*California ex rel. Lockyer v. United States*
450 F.3d 436 (9th Cir. 2006)....................................................................3, 4

*Camp v. Pitts*
411 U.S. 138 (1973)..................................................................................9, 11

*Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*
642 F.3d 728 (9th Cir. 2011)....................................................................8

*Donnelly v. Glickman*
159 F.3d 405 (9th Cir. 1998)....................................................................2

*Gonzalez v. Arizona*
485 F.3d 1041 (9th Cir. 2007)..................................................................10

*League of United Latin Am. Citizens v. Wilson*
131 F.3d 1297 (9th Cir. 1997)..................................................................2, 4, 5, 7, 9

*Nw. Forest Res. Council v. Glickman*
82 F.3d 825 (9th Cir. 1996)......................................................................2

*Our Children's Earth Foundation v. EPA*
2006 WL 1305223 (N.D. Cal. May 11, 2006) .........................................11

*Perry v. Proposition 8 Official Proponents*
587 F.3d 947 (9th Cir. 2009)....................................................................1, 3, 7, 8, 11

*Prete v. Bradbury*
438 F.3d 949 (9th Cir. 2006)....................................................................2, 4, 9

*Sagebrush Rebellion, Inc. v. Watt*
713 F.2d 525 (9th Cir. 1983)....................................................................10

*Spangler v. Pasadena City Bd. Of Ed.*
552 F.2d 1326 (9th Cir. 1977)..................................................................10

**STATUTES:**

33 U.S.C. § 1341(a)(1)..............................................................................10

**COURT RULES:**

Fed. R. Civ. P. Rule 24(a)........................................................................1
Fed. R. Civ. P. Rule 24(b)(3)....................................................................10
Fed. R. Civ. P. Rule 24(c)........................................................................11

## INTRODUCTION

Plaintiffs oppose the motion to intervene filed by the American Petroleum Institute ("API") and the Interstate Natural Gas Association of America ("INGAA") (together, "Industries"), Dkt. No. 56 ("Mot. to Inter."). In this case, Plaintiffs challenge the decision of the Environmental Protection Agency ("EPA") to adopt new regulations under Section 401 of the Clean Water Act. *Clean Water Act Section 401 Certification Rule*, 85 Fed. Reg. 42,210 (July 13, 2020) ("Rule"). The motion to intervene should be denied because the existing parties will more than adequately represent the Industries' interests.

According to the Industries, they have a protectable interest in the outcome of this case because the "Rule seeks to clarify and enforce the[] limits" on state and tribal actions under section 401 of the Clean Water Act, and their members could face "substantial additional cost and delay if Plaintiffs obtain the relief they seek" and this Court sets the Rule aside as unlawful. Mot. to Inter. at 10. Yet, the protection of these industries' economic interests is precisely the reasons the EPA promulgated the Rule in the first place, and there is no evidence demonstrating that objective will not remain a central pillar of the EPA's defense of its actions. Second, even if the Industries could prove that the EPA will not adequately represent their interests, they cannot make a similar showing with regard to the State Defendant-Intervenors ("State Intervenors"). *See* Dkt. No. 62 (Order granting Motion to Intervene of the State of Louisiana, *et al*.). The State Intervenors made clear that their interest in this case is to protect the industry's ability to "develop[] and export . . . natural resources." Dkt. No. 27 at 7 ("State Mot. to Inter."). Thus, the Industries' economic interests are well represented by the existing parties to this matter. As such, this Court should deny the motion to intervene.

## ARGUMENT

### A. Intervention as of Right Must Be Denied Because the Industries Fail to Establish that the Existing Parties Will Not Adequately Represent Their Interests.

An applicant for intervention as of right must satisfy four criteria under Federal Rule of Civil Procedure 24(a), by demonstrating:

> (1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

*Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).[1] A proposed intervenor bears the burden of establishing that its interests are not represented adequately. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996). To determine whether a proposed intervenor's interests are adequately represented by the existing parties, the court considers: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

The "most important factor" to determine whether a proposed intervenor is adequately represented by a party is "how the [intervenor's] interest compares with the interests of existing parties." *Id*. (citations omitted). Where a party and the proposed intervenor share the same "ultimate objective," a presumption of adequacy of representation arises, and the intervenor can rebut that presumption only with a "compelling showing" to the contrary. *Id*. (citing *League of United Latin Am. Citizens v. Wilson* (*LULAC*), 131 F.3d 1297, 1305 (9th Cir. 1997)). This is particularly so where, as here, the "ultimate objective for both defendant and intervenor-defendants is upholding the validity of" a government action, because "a presumption arises that [the government] defendant is adequately representing intervenor-defendants' interests." *Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006).

Here, the Industries have the same ultimate objective as the EPA and the State Intervenors—namely, to see "the procedures and substantive requirements of the Rule" upheld to prevent alleged "significant delays and financial harm" from what they believe are "abuses" by some states of these states' rights under Section 401 to determine that a federally-licensed or permitted project complies with state water quality requirements. Mot. to Inter. at 8–9. Indeed,

---

[1] "Failure to satisfy any one of the requirements is fatal to the application, and [the court] need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

from the beginning of this process, the administration has been clear about its goal of "promot[ing] efficient permitting processes and reduc[ing] regulatory uncertainties that currently make energy infrastructure projects expensive and that discourage new investment[,]" by limiting state and tribal authority under Section 401. Declaration of A. Hawley, Exh. 1 at 15,495; *id*. at 15,496. ("Outdated Federal guidance and regulations regarding section 401 . . . are causing confusion and uncertainty and are hindering the development of energy infrastructure."). This administration's mandate led EPA to develop the Rule to "clarify expectations, timelines, and deliverables [to] increase[] efficiencies," place "limitations on when and how States and Tribes may exercise [their 401 Certification] authority," and "reduc[e] regulatory uncertainty." A. Hawley Decl., Exh. 3 at 42,236. In turn, the State Intervenors characterize the Rule as a "regulatory victory" that will stop "certain states [that] are effectively blockading landlocked states from exporting their natural resources." Dkt. No. 27, 8. Thus it is clear that EPA and the State Intervenors are precisely aligned with—and prepared to continue to champion—the Industries' interests.

Because the Industries' interests are nearly identical to those of the EPA and State Intervenors, the Industries may overcome the presumption of adequate representation only with a "compelling showing" to the contrary. They fail to do so.

### 1. The Industries Have Not Identified Any Potentially Meritorious Arguments They Will Raise that the Existing Parties Will Neglect.

To make the "'very compelling showing' of the government's inadequacy" necessary to overcome the presumption of adequate representation, "the proposed intervenor must demonstrate a likelihood that the government will abandon or concede a potentially meritorious reading of the statute." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006). Even where the government "may not defend" a challenged law "in the exact manner that" a proposed intervenor would, this does not mean the proposed intervenor offers the requisite "necessary elements to the proceeding." *Perry*, 587 F.3d at 954 (9th Cir. 2009) (quoting *Arakaki*, 324 F.3d at 1086).

Here, the Industries fail to identify with specificity any argument they will raise if allowed to intervene, much less any argument they will raise that the EPA or the State Intervenors may neglect. The closest the Industries come to distinguishing their position from the EPA's is to suggest that the EPA "may devote more time and energy to advocating broad legal principles at the expense of other arguments in defense of the Rule that are more important in the Coalition's view." Mot. to Inter. at 14. However, the Industries do not explain which defenses EPA will abandon or concede. Instead, the Industries merely speculate about the degree to which EPA "*may* rely on and advocate for a broader application" of agency deference, "which *could* conflict with the [Industries'] position." *Id*. at 15 (emphases added). Thus, the Industries suggest potential nuances of a position the government may or may not take; they have not shown "the United States will take a position that actually compromises" the position they wish to defend. *Lockyer*, 450 F.3d at 445; *id*. at 444 ("just because the government theoretically may offer" a different defense than the proposed defendant-intervenor "does not mean that the [latter] has overcome the presumption of adequacy of representation."); *Prete*, 438 F.3d at 958 (error to grant intervention because, absent "evidence," it was not "sufficient to meet their burden of a 'compelling showing'" for intervenors to argue that government defendant "may be inclined" to offer an argument contrary to that advanced by intervenors).

In contrast, both the EPA and the State Intervenors appear "enthusiastic" about defending the Rule, and thus defending the Industries' economic interests. *LULAC*, 131 F.3d at 1305. Indeed, the fundamental rationale for the Rule, as announced in the Executive Order, and through the EPA's explanation of the Rule, is promoting "clarity," "regulatory certainty," "nationwide consistency," and "predictability" for proponents of federal projects that may affect water quality. A. Hawley Decl., Exh. 1 at 15,495; Exh. 3 at 42,211–12, 42,214–15, 42,228–29, 42,235, 42,245, 42,254, 42,256–57, 42,260, 42,268, 42,276, and 42,282. In its economic analysis of the Section 401 certification process before the new rule, which it provided in the rulemaking docket and referenced throughout the preamble to the final rule, the EPA noted four "denials and other high-profile section 401 certification cases" to highlight its view that certain states, in

seeking to ensure that federal projects would comply with state water quality requirements, harmed fossil fuel pipeline and transport terminal project proponents. A. Hawley Decl., Exh. 2; Exh. 3 at 42,282. In particular, the EPA stated in its economic analysis that denial of certification can delay proposed projects and increase costs above original estimates, cause the project proponent to forego a project after investing funds and staff time, and entail legal costs and further resources challenging such a denial in court. A. Hawley Decl., Exh. 2 at 14. These pronouncements evince both the EPA's "outspoken support for" the Rule and its willingness to defend its actions on the precise grounds advocated by the Industries. *See LULAC*, 131 F.3d at 1305.

That the EPA was motivated by the same concerns the Industries hold is confirmed by Industries' comments on the proposed rule. *Compare* A. Hawley Decl., Exh. 4 & Exh. 5; *with* Exh. 3. For example, in its comments, API highlighted the same case studies EPA considered in its economic analysis as examples of states' "misuse" of Section 401. A. Hawley Decl., Exh. 4 at 2. And more generally, the Industries supported nearly every critical aspect of the proposed, and final, rule, included by not limited to:

- "that the need for Section 401 certification arises only when a federally licensed or permitted activity has the potential to result in a discharge from a point source into a [Water of the United States]";

- the EPA's "interpretation of the reasonable limits the Act places on the scope of the review undertaken by, and therefore the types of conditions that can be imposed by, states and other certifying authorities";

- the EPA's "conclusion that 'section 401 is best interpreted as protecting water quality from federally licensed or permitted activities with point source discharges to waters of the United States by requiring compliance with the CWA as well as EPA-approved state and tribal CWA regulatory programs'";

- the EPA's "conclusion that '[t]he scope of a section 401 certification is limited to assuring that a discharge from a federally-licensed or permitted activity will comply with water quality requirements'";

- the EPA's conclusion "that federal agencies have the discretion to impose reasonable timeframes of less than one year";

- "that the review period for a certification request begins when the project proponent submits the certification request to the certifying authority"; and

- "that the CWA does not allow certifying authorities to stop and restart their review in order to artificially extend Section 401's statutorily prescribed deadlines."

*Id.* at 2–3; *see also* Exh. 5 at 2–3, 8, 13 (hailing the proposed rule as "resolv[ing] important ambiguities in Section 401," including its definition of "certification request," empowering federal agencies to set the "reasonable period of time" for acting on a certification request, and narrowing the scope of Section 401 review). It is fair to say that the EPA and the Industries were in complete agreement about the substance of the rule as it was being developed. And the Industries have presented no evidence that this meeting of the minds has eroded more recently.

Similarly, the State Intervenors relied on very similar arguments, expressing their strong support for the Rule, as the basis for their motion to intervene. Indeed, a primary objective of the State Intervenors in this matter is to ensure the Rule is upheld to prevent "certain states" from "effectively blockading landlocked states from exporting their natural resources." State Mot. to Inter. at 8. Thus it is the State Intervenors' goal to protect the economic interest of developing and exporting natural resources—the same interests claimed by the Industries. *Compare* State Mot. to Inter. at 7–8 *with* Mot. to Inter. at 3 ("API members engage in exploration, production, and construction projects that routinely involve both State and federal water permitting that require section 401 certification" and "U.S. natural gas production likely will increase to 130 billion cubic feet per day by 2035, spurred by growing markets, if available supplies are developed."). Moreover, the State Intervenors specifically referred to these interests, and the need to permit and support the private development of natural resources, as their interest in and reason for supporting the Rule. *See, e.g.*, Dkt. No. 27-5, Exh. 4 at 2 ("Our interest in a streamlined 401 certification process is founded by the fact that a large portion of Wyoming's economy depends on our ability to export our energy products to the markets that demand them, particularly markets located overseas in Asia."). The Industries have provided no evidence that the State Intervenors would not continue with their full-throated advocacy in support of these interests.

Furthermore, the Industries' speculation about how the EPA's "institutional considerations make it ill-suited to adequately represent the Coalition's interests," Mot. to Inter. at 13, is insufficient to overcome the presumption of adequacy of representation by the EPA and State Intervenors. The Industries fail to explain why EPA's interests in "environmental protection, its institutional reputation, and its own authority as the regulator tasked with implementing the CWA and as a permitting authority in certain situations," *id.*, means the agency will not "vigorously defend[]" the Rule. *LULAC*, 131 F.3d at 1305. To prove inadequate representation of interests, it is not enough for a proposed intervenor to assert it would "argue[] its interests more vigorously than existing parties." *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 779 (9th Cir. 1986).

In short, "the real differences between" the Industries, the EPA, and the State Intervenors "boil down to strategy calls"—namely, the weight and emphasis each will place on the arguments the Industries would like to see made—which is not a proper basis for intervention. *Perry*, 587 F.3d at 954; *accord LULAC*, 131 F.3d at 1306 (upholding denial of intervention where differences between proposed intervenors and government amounted to "a disagreement over litigation strategy or legal tactics"). The Industries have failed to meet their burden to show that the EPA and State Intervenors will not adequately represent their interests under the first factor of the Ninth Circuit's test.

### 2. The Industries Have Not Established that EPA and the State Intervenors May Be Unwilling to Defend the Rule.

The Industries also suggest that they should be allowed to intervene because there is a chance a new administration may at some later date revisit the Rule and thus EPA's position on this litigation. Mot. to Inter. at 16. Specifically, the Industries assert the "upcoming presidential election presents the real possibility that the interests of a new administration will cause a change in the way the present case is litigated." *Id*. But the "prospect of inadequate representation on the part of *future* defendants in *future* years is purely speculative" and so cannot support intervention. *LULAC*, 131 F.3d at 1304 (emphases original). As the Ninth Circuit has noted, if "speculation

about the effects of a change of administration were sufficient to meet movant's burden of demonstrating inadequate representation, then proposed intervenors could *always* satisfy" that requirement "if the defendant were a . . . government entity." *Id*. at 1307 (quoting party brief, emphasis original); *see also Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 842 (9th Cir. 2011) ("if the mere possibility that the federal defendants *might* decline to appeal were sufficient to rebut the presumption of adequacy, then nearly every case involving a federal defendant would be subject to intervention as of right.") (emphasis original). Here, the Industries' speculation that the same or a different administration may not adopt the same litigation strategy, or adopt a different litigation stance in the future, is insufficient to rebut this presumption. *Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 740 (9th Cir. 2011) ("vague speculation falls far short of a 'very compelling showing'" required to rebut the presumption of adequate representation).

Moreover, even if EPA's position changes, the State Intervenors have made clear they will not let Plaintiffs "erase the State Intervenors' regulatory victory," which they contend they secured to protect their and indeed the Industries' mutual economic interests. Dkt. No. 27 at 8; *see also Arakaki*, 324 F.3d at 1086 ("There is . . . an assumption of adequacy when the government is acting on behalf of a constituency that it represents."). Here, while the State Intervenors may purport to represent other interests in their states, the Industries' economic interest are principle among those concerns and as such those interests are well represented here.

**3.     The Industries Do Not Offer Necessary Elements to This Litigation.**

The Industries cannot show that they will offer necessary elements the EPA and the State Intervenors will neglect. Indeed, having failed to articulate any arguments they will make if allowed to intervene, the Industries have not shown that their (unspecified) arguments are necessary to this litigation. In fact, as detailed above, the Rule and EPA's rationale reflect the positions the Industries advanced during the rulemaking. As a result, rather than providing necessary elements to this matter, the Industries' involvement "would be redundant." *Tahoe Reg'l Planning Agency*, 792 F.2d at 779 (affirming denial of intervention); *Perry*, 587 F.3d at

954 (each proposed intervenor must show it offers "necessary elements to the proceeding," not merely different "litigation strategy or tactics").

The Industries assert they can "enhance the Court's understanding" of the certification process from the perspective of permit applicants, Mot. to Inter. at 15, but the merits of this case will be decided on the administrative record and, as such, any "unique[] . . . expertise" or "unique perspective" the Industries claim to have either is (or is not) already in the record. *Contra* Mot. to Inter. at 15 & 17; *accord LULAC*, 131 F.3d at 1304 n.3 (rejecting intervention notwithstanding that the intervenor "offer[ed] a 'unique perspective' on the validity of" the challenged government action). Indeed, in that context, it would be inappropriate for the Industries to do more than direct the Court to where their views may be found in the record. *Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court"). As detailed above, both the EPA and State Intervenors have repeatedly emphasized perceived challenges faced by the regulated community that seeks to extract and export fossil fuels as the central motivator the development of the Rule. As such it is reasonable to expect the existing parties will be capable of highlighting how the EPA used that information when developing the Rule. *Cf. Safe Air for Everyone v. EPA*, 477 F.3d 1088, 1091 (9th Cir. 2007) (a court's review must "begin[] and end[] with the reasoning that the agency relied upon in making the decision" and cannot "revise [an agency's] assumptions").

The Industries assert that the EPA lacks their "experience" and "expertise" to fully "explain the importance of an efficient certification process and how businesses, consumers, and employees are affected when States exercise their certification authority improperly[.]" Mot. to Inter. at 15. The Ninth Circuit has rejected a similar argument and denied intervention as of right for applicants claiming greater expertise in a function of government than the responsible official. *Prete v. Bradbury*, 438 F.3d at 958. In *Prete*, the Ninth Circuit observed that the government defendant, "as Oregon's Secretary of State, is undoubtedly familiar with the initiative process and the requisite signature-gathering; indeed, defendant is the government

party responsible for counting the signatures." *Id*. The Ninth Circuit reasoned that, "[a]lthough intervenor-defendants may have some specialized knowledge into the signature gathering process, they provided no evidence to support their speculation that the Secretary of State lacks comparable expertise." *Id*. Here, the EPA has administered the CWA for half a century, and, together with the State Intervenors, acts as a certifying authority under the statute. 33 U.S.C. § 1341(a)(1). Thus, the existing parties are "undoubtedly familiar" with the certification process, and its consequences on project proponents and their employees and consumers. The Industries do not prove the EPA or the State Intervenors lacks comparable experience and expertise.

The Industries' reliance on *Sagebrush Rebellion* is unavailing. *Contra* Mot. to Inter. at 15 (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)). In that case, the Ninth Circuit reasoned that national wildlife organizations would bring unique experience and expertise to a litigation brought by groups represented by the Mountain States Legal Foundation, the former head of which was the primary named defendant in his new capacity as Secretary of the Interior. *Id*. On these unusual facts, absent here, the Ninth Circuit held that "the intervenor offers a perspective which differs materially from that of the present parties to this litigation," sufficient to show that representation of the intervenors' interests "may be" inadequate. *Id.* Thus, Sagebrush Rebellion "turns on the lack of any real adversarial relationship between the plaintiffs and the defendants." *Gonzalez v. Arizona*, 485 F.3d 1041, 1052 (9th Cir. 2007). Here, the Industries offer no such evidence, and *Sagebrush Rebellion* is inapposite.

### B. The Industries Are Not Entitled to Permissive Intervention.

The Industries' motion for permissive intervention is equally unwarranted. Permissive intervention is unwarranted where it would "unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(3). The Ninth Circuit considers a number of factors to determine whether permissive intervention should be granted, including: (1) "whether the intervenors' interests are adequately represented by other parties"; (2) the "legal position they seek to advance and its relation to the merits of the case"; (3) "whether intervention will prolong or delay the litigation" or otherwise prejudice the original parties; and (4) whether the proposed

1  intervenor will "significantly contribute to full development of the underlying factual issues in
2  the suit." *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

3        As to the first factor, the Ninth Circuit has repeatedly upheld the denial of permissive
4  intervention where, as here, the proposed "intervenors' interests are adequately represented by
5  other parties." *Perry*, 587 F.3d at 955; *accord Tahoe Reg'l Planning Agency*, 792 F.2d at 779. As
6  explained above, the existing parties will adequately represent the Industries' interests.

7        The second and third factors also disfavor intervention. Here, the Industries fail to
8  comply with Rule 24(c) and accompany their motion with "a pleading that sets out the claim or
9  defense for which intervention is sought." Fed. R. Civ. P. 24(c). As a result, the Court is left
10 guessing as to their position on the substance of Plaintiffs' allegations and claims related to the
11 Rule. As the Court ruled in a different case concerning EPA regulations when it denied the
12 American Petroleum Institute's motion to intervene, "[w]ithout filing such a pleading, applicants
13 have not asserted any claim or defense at all[,]" and "therefore do not satisfy the prerequisites for
14 discretionary intervention." *Our Children's Earth Foundation v. EPA*, No. C 05-05184 WHA,
15 2006 WL 1305223 *7 (N.D. Cal. May 11, 2006). Here, again, the Industries fail to specify any
16 claims or defenses they would raise if allowed to intervene. They do suggest they may make
17 likely duplicative (if only slightly different) claims or defenses the EPA and State Intervenors
18 will make. Given that the Industries would present largely redundant arguments, their
19 intervention would "consume additional time and resources of both the Court and the parties"
20 and the ensuing "delay occasioned by intervention outweigh[s] the value added by the
21 [Industries'] participation in the suit." *Perry*, 587 F.3d at 955–56.

22       As to the fourth factor, the Industries will not significantly contribute to the development
23 of the factual issues in the suit because, as discussed above, there are no grounds for expanding
24 the evidence in this case related to the merits beyond what will be in the administrative record.
25 *Camp*, 411 U.S. at 142 ("[T]he focal point of judicial review should be the administrative record
26 already in existence, not some new record made initially in the reviewing court."). Even
27 assuming the Industries in fact have a "unique perspective" on the 401 Certification process, that
28

perspective was undoubtedly conveyed in their comments on the proposed rule, and will be available for the Court's consideration in the record.

For these reasons, the Court should exercise its discretion and deny permissive intervention by the Industries.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the motion to intervene.

Dated: September 18, 2020.          Respectfully Submitted,

*/s/ Andrew Hawley*
Andrew Hawley
Daniel James Cordalis
Peter M. K. Frost
Sangye Ince-Johannsen

Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Opposition to the Motion to Intervene was electronically filed with the Clerk of the Court on September 18, 2020, using the Court's electronic filing system, which will send notification of said filing to the attorneys of record that have, as required, registered with the Court's system.

*s/ Andrew Hawley*
Andrew Hawley