United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMERICAN RIVERS, et al.,

        Plaintiffs,

        v.

ANDREW R. WHEELER, Administrator of
the United States Environmental Protection
Agency, et al.,

        Defendants,

     and

STATE OF LOUISIANA, et al.,

        Defendant-Intervenors.

No.  C 20-04636 WHA

**ORDER GRANTING MOTION TO
INTERVENE**

## INTRODUCTION

In this Administrative Procedure Act suit against the Environmental Protection Agency, representatives of the oil, gas, and pipeline industries move to intervene in defense of the Administrator's final rule.  Because the intervenors hold substantially different interests than the current government defendants, the motion is **GRANTED**.

## STATEMENT

In 1972, Congress passed the Clean Water Act "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  The Environmental Protection Agency leads federal administration of the Clean Water Act, but Congress has maintained states and

authorized Indian tribes as primary players in the national goal to prevent, reduce, and eliminate pollution.  Relevant here, Section 401 of the act requires applicants for federal permits for "any activity" that "may result in any discharge into the navigable waters" to obtain relevant state or tribal certification that the discharge comports with applicable federal and state water quality requirements.  33 U.S.C. §§ 1251, 1341.

Here, as it happens in the course of human events, the powers involved dispute the distribution of authority between them under Section 401.  In February 2019, several states, led by Louisiana, expressed their concern to the Administrator that other states had been using their certification authority to implement policy goals outside the bounds of Section 401 and the Clean Water Act (Dkt. No. 27 at 3).  In April, the President directed the Administrator to update the EPA's regulations and clarify the use of Section 401, the scope of state and tribal review, and appropriate timelines. The Administrator issued a proposed rule in August and, following public comment, issued the final rule in July 2020, "to increase the predictability and timeliness of CWA section 401 certification actions by clarifying timeframes for certification, the scope of certification review and conditions, and related certification requirements and procedures."  85 Fed. Reg. 42210 (July 13, 2020).

Plaintiffs, several environmental advocacy organizations (along with several states, tribes, and other environmental groups in the two related cases), promptly sued, alleging the final rule to be a power grab by the Administrator which unlawfully narrows the applicability of Section 401, undercuts state and tribe authority, limits the information to review, restricts the conditions states or tribes may impose on certification, and empowers the federal permitting agency to effectively overrule state or tribe determinations (Dkt. No. 75 at ¶ 6).  Louisiana and company timely moved, without opposition, and have intervened in defense of the final rule (Dkt. No. 62).

The American Petroleum Institute and the Interstate Natural Gas Association of America, trade association representing the oil, gas, and pipeline industries (collectively "API"), have also moved to intervene in defense of the final rule (Dkt. No. 56).  Plaintiffs oppose.  Following full briefing, this matter is appropriate for disposition on the papers.

**ANALYSIS**

Federal Rule of Civil Procedure 24 states that:

> [A] court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

A party seeking to intervene by right must show by timely motion that it holds "a significant protectable interest relating to the property or transaction" at issue which may, practically, be impacted by the disposition of the action, and which may not be adequately represented by the present parties. The party seeking intervention bears the burden, but we broadly construe the requirements in favor of intervention. This analysis turns on "practical considerations, not technical distinctions." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

Plaintiffs do not contest API's satisfaction of the first three requirements. API moved before either the Administrator or the state-intervenors responded to plaintiffs' complaint and its member entities in the oil, gas, and pipeline industries regularly require Section 401 certification for their exploration, production, and construction projects. New agency rulemaking will impact the procedure, timing, and ultimate certification (or not) of these projects. The only dispute here is whether the present defendants, the Administrator and the intervenor-states, will adequately represent API's interests. They will not.

A putative intervenor bears a "minimal" burden to show the inadequacy of representation and need only show the representation of its interests "may be" inadequate. We consider: (1) whether a present party will undoubtedly make all of the intervenor's arguments; (2) whether a present party is capable and willing to make such arguments; and (3) whether the intervenor will bring a necessary element the proceeding will otherwise lack. *Id.* at 898.

The "most important factor," however, is whether (and the extent to which) the intervenor's and the parties' interests align. "If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises." And where an intervenor seeks to join the government acting on its constituents' behalf, we

1    presume the government's adequate representation.  An intervenor must make a compelling

2    showing of inadequacy to overcome either presumption.  *Ibid.*[*]

3        Yet our court of appeals has long recognized that "[t]he interests of government and the

4    private sector may diverge" as the "range of considerations in [governance are] broader than the

5    profit-motives animating [private entities.]"  *Southwest Center for Biological Diversity v. Berg*,

6    268 F.3d 810, 823 (9th Cir. 2001).  So too here.  Though API seeks to defend EPA's new rule,

7    just as the Administrator and the intervenor-states do in this action, markedly different interests

8    animate its advocacy here.

9        President Nixon created the Environmental Protection Agency as a single, integrated

10   agency to protect the environment by setting and enforcing pollution abatement standards.

11   Reorganization Plans Nos. 3 and 4 of 1970, H.R. Doc. No. 91-366 (July 9, 1970).  More specific

12   to this case, recall, Congress has directed the Administrator "to restore and maintain the

13   chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251.  The

14   intervenor-states represent their constituents, legislators, and their own regional environmental

15   and governance interests.  API, by contrast, represents players in the oil, gas, and pipeline

16   industries, business entities beholden to boards, shareholders, and profit — not constituents or

17   legislators (Dkt. No. 68 at 6, 10).  Indeed, were the Administrator to share these goals, plaintiffs

18   would add that to their grounds for setting aside his rulemaking as unlawful.  API and the present

19   defendants may pursue the same short term goal in this suit, but they do so for very different

20   reasons.  This gulf "represents more than a mere difference in litigation strategy, which might

21   not normally justify intervention, but rather demonstrates the fundamentally differing points of

22   view between [API and the Administrator and the intervenor-states] on the litigation as a whole."

23   *See Citizens*, 647 F.3d at 899.

24

25   _____

26   [*] In *Arakaki v. Cayetano*, our court of appeals indicated a "very compelling" showing would be
     required to rebut the presumption of the government's adequate representation.  The panel did not,
27   however, expand on what it meant by "very."  *See* 324 F.3d 1078, 1087–88.  More recent
     decisions by our court of appeals appear to have discarded the term.  *See Citizens*, 647 F.3d at 898;
28   *Freedom from Religion Foundation, Inc. v. Geithner*, 644 F.3d 836, 842 (9th Cir. 2011).

United States District Court
Northern District of California

United States District Court
Northern District of California

At bottom plaintiffs focus too narrowly on API's and defendants short-term overlap in interest and ignore the bigger picture.  The present defendants always play a government role in the Section 401 process.  The Administrator writes the regulatory framework for Section 401, and sometimes the Administrator and intervenor-states act as the certifying authority (Dkt No. 68 at 7).  API offers the perspective, unique among defendants, of the *applicant* for Section 401 certification.  Plaintiffs try to downplay this distinction, arguing that this case will turn on the administrative record, that both the Administrator and intervenor-states are well versed in the entirety of the Section 401 process, and that API has not identified any arguments that will be neglected in its absence.  To start, "it is not [API]'s burden at this stage in the litigation to anticipate specific differences in trial strategy."  *Southwest*, 268 F.3d at 824.  Yet more importantly, these technical quibbles miss the practical point that API and the Administrator and intervenor-states, if victorious here, may well turn around and dispute the scope and meaning of the win.  *See, e.g.*, *Citizens*, 647 F.3d at 899.  As the only *applicant* for Section 401 certification among defendants, API offers the unique *industry* interest in redistributing more discretion to the Administrator here, but — given API's interest in future project certification when the Administrator (or an intervenor-state) sits across the table — not too much discretion.

Our court of appeals "stress[es] that intervention of right does not require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests."  Far from it.  "Rule 24(a) is invoked when the disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation, 'unless existing parties adequately represent that interest.'"  *Citizens*, 647 F.3d at 900.  Here, because API offers a different and necessary viewpoint, we cannot conclude that the Administrator and the intervenor-states will undoubtedly make, or are at least willing and capable to make, all of API's potential arguments.

**CONCLUSION**

The American Petroleum Institute and the Interstate Natural Gas Association of America have demonstrated their right to intervene in this action under Rule 24(a).  Their motion is **GRANTED**.

**IT IS SO ORDERED.**

Dated:  October 9, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California