ERIC GRANT
Deputy Assistant Attorney General
VANESSA R. WALDREF (D.C. Bar No. 989692)
Vanessa.R.Waldref@usdoj.gov
LESLIE M. HILL (D.C. Bar No. 476008)
Leslie.Hill@usdoj.gov
Environmental  Defense Section
Environment  & Natural Resources Division
United  States Department of Justice
4 Constitution  Square
150 M Street, N.E.
Suite 4.1133  (Waldref)/4.149  (Hill)
Washington,  D. C.  20002
Telephone:   (202) 514-2741  (Waldref)
             (202) 514-0375  (Hill)
Facsimile:  (202) 514-8865

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>Clean Water Act Rulemaking | Case No. 3:20-cv-04636-WHA (consolidated)<br><br>**EPA'S BRIEF CHALLENGING ORDER REQUIRING A PRIVILEGE LOG AND, IN THE ALTERNATIVE, MOTION FOR A PROTECTIVE ORDER LIMITING THE SCOPE OF THE PRIVILEGE LOG AND REVISED SCHEDULE FOR PRODUCING A PRIVILEGE LOG** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................1

II.  BACKGROUND ..................................................................................................5

    A.  The Certification Rule .................................................................................5

    B.  The Administrative Record .........................................................................5

III. STANDARD OF REVIEW....................................................................................5

IV.  ARGUMENT .......................................................................................................8

    A.  The Court's Order Conflicts with Basic Principles Governing Judicial
       Review of Agency Action and the Scope of the Administrative Record. .......................8

    B.  The Court's Order Requiring a Privilege Log by November 12, 2020,
       Is Unreasonable. ..................................................................................17

V.   CONCLUSION ..................................................................................................21

i

Case No. 3:20-cv-04636-WHA
EPA's Brief Challenging Order Requiring A Privilege Log And, In The Alternative, For a Protective
Order Limiting The Scope of the Privilege Log and a Revised Schedule For Producing a Privilege Log

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*American Petroleum Tankers Parent, LLC v. United States*,
4
   952 F. Supp. 2d 252 (D.D.C. 2013)....................................................... 16

5

*Arizona Cattle Growers' Ass'n v. United States Fish & Wildlife*,
6
   273 F.3d 1229 (9th Cir. 2001)........................................................... 5, 6

7

*ASSE International Inc. v. Kerry*,
8
   No. 14-cv-534-CJC, 2018 WL 3326687 (C.D. Cal. January 3, 2018) ............................17, 19

9

*Bar MK Ranches v. Yuetter*,
   994 F.2d 735 (10th Cir. 1993)........................................................8, 12, 16

10

*Blue Ocean Inst. v. Gutierrez*,
11
   503 F. Supp. 2d 366 (D.D.C. 2017)................................................ 14, 17, 19

12

*Bruce v. Azar*,
13
   389 F. Supp. 3d 716 (N.D. Cal. 2019)
   *aff'd*, No. 19-17565, 2020 WL 6146437 (9th Cir. Oct. 20, 2020) ......................... 8
14

*Burlington Truck Lines, Inc. v. United States*,
15
   371 U.S. 156 (1962) ........................................................................ 10

16

*California v. U.S. Department of Homeland Security*,
17
   No. 19-cv-04975-PJH, 2020 WL 1557424 (N.D. Cal. Apr. 1, 2020)..................................... 10

18

*California v. U.S. Department of Labor*,
19
   No. 2:13-CV-02069-KJM, 2014 WL 1665290 (E.D. Cal. Apr. 24, 2014) ............................ 18

20

*Camp v. Pitts*,
21
   411 U.S. 138 (1973) ................................................................ 1, 5, 6, 15

22

*Carlsson v. United States Citizenship & Immigration Services*,
23
   2015 WL 1467174 n.5 (C.D. Cal. Mar. 23, 2015) .............................................. 17

24

*Churchill County v. Norton*,
   276 F.3d 1060, 1070-71 (9th Cir. 2001),
25
   *amended*, 282 F.3d 1055 (9th Cir. 2002) ....................................................... 6

26

*Citizens to Preserve Overton Park v. Volpe*,
27
   401 U.S. 402 (1971),
   *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)............... 1, 2, 6, 10,15
28

*Cook Inletkeeper v. EPA*,
   400 Fed. Appx. 239 (9th Cir. 2010) ............................................................. 8

*Desert Survivors v. United States Dep't of the Interior*,
   231 F. Supp. 3d 368 (N.D. Cal. Feb. 6, 2017) ........................................... 6

*District Hospital Partners v. Sebelius,*,
   971 F. Supp. 2d 15 (D.D.C. 2013) .............................................. 14, 16

*Environmental Council of Sacramento v. Slater*,
   184 F. Supp. 2d 1016 (E.D. Cal. 2000) ..................................................... 6

*Florida Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) ........................................................................ 5, 6

*Franks v. Salazar*,
   751 F. Supp. 2d 62 (D.D.C. 2010) ........................................................... 8

*Gallo Cattle Co. v. United States Department of Agriculture*,
   159 F.3d 1194 (9th Cir. 1998) .................................................................. 6

*Gill v. Dep't of Justice*,
   No. 14-cv-03120-RS (KAW), 2015 WL 9258075 (N.D. Cal. Dec. 18, 2015) ......................... 9

*Golden Gate Salmon Association v. Ross*,
   No. 1:17-cv-01172-LJO-EPG9, 2018 WL 3129849 (E.D. Cal. June 22, 2018) .................... 17

*Great American Insurance Co. v. United States*,
   No. 12-cv-9718, 2013 WL 4506929 (N.D. Ill. Aug. 23, 2013) ............................. 17

*In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*,
   156 F.3d 1279 (D.C. Cir. 1998) ............................................................. 15

*In re United States*,
   875 F.3d 1200 (9th Cir. 1017)
   *vacated on other grounds and remanded*, 138 S. Ct. 443 (2017) ................. 8, 12, 18

*Inland Empire Public Lands Council v Glickman*,
   88 F.3d 697 (9th Cir. 1996) ................................................................. 9

*Lands Council v. Powell*,
   395 F.3d 1019 (9th Cir. 2005) ......................................................... 2, 7, 9

*Madison County Building & Loan Ass'n v. Federal Home Loan Bank Board*,
   622 F.2d 393 (8th Cir. 1980) ............................................................................................ 15

*McCrary v. Gutierrez*,
   495 F. Supp. 2d 1038 (N.D. Cal. 2007) ............................................................................. 8

*Motor Vehicle Manufacturers Ass'n of U.S. v. State Farm Mutual Automobile Insurance Co.*,
   463 U.S. 29 (1983) ....................................................................................................... 2, 10

*National Ass'n of Chain Drug Stores v. U.S. Department of Health & Human Services*,
   631 F. Supp. 2d 23 (D.D.C. 2009) ............................................................................ 14, 17

*National Audubon Society v. U.S. Forest Service*,
   46 F.3d 1437 (9th Cir. 1993) ............................................................................................. 9

*National Wildlife Federation v. Burford*,
   677 F. Supp. 1445 (D. Mont. 1985),
   *aff'd*, 871 F.2d 849 (9th Cir. 1989) ................................................................................... 7

*National Wildlife Federation v. U.S. Army Corps of Engineers*,
   384 F.3d 1163 (9th Cir. 2004) ......................................................................................... 18

*Norris & Hirshberg, Inc. v. SEC*,
   163 F.2d 689 (D.C. Cir. 1947) ........................................................................................ 15

*Norton v. Southern Utah Wilderness Alliance*,
   542 U.S. 55 (2004) ............................................................................................................ 6

*Oceana, Inc. v. Locke*,
   634 F. Supp. 2d 49 (D.D.C. 2009)
   *rev'd on other grounds*, 670 F.3d 1238 (D.C. Cir. 2011) ............................................... 16

*Oceana, Inc. v. Pritzker*,
   217 F. Supp. 3d 310 (D.D.C. 2016) ............................................................................ 16, 19

*Oceana, Inc. v. Pritzker*,
   No. 16-cv-06784-LHK (SVK), 2017 WL 2670733 (N.D. Cal. June 21, 2017) .................. 9, 13

*Oceana, Inc. v. Ross*,
   920 F.3d 855 (D.C. Cir. 2019) .......................................................................................... 2

*Outdoor Amusement Business Ass'n v. Department of Homeland Security*, Case,
   No. CV ELH-16-1015, 2017 WL 3189446 (D. Md. July 27, 2017) .................................. 17

iv

*Pacific Shores Subdivision California Water District v. U.S. Army Corps of Engineers*,
　448 F. Supp. 2d 1 (D.D.C. 2006) ................................................................................ 7, 8

*Pinnacle Armor, Inc. v. United States*,
　923 Supp. 2d 1226, 1232 (E.D. Cal. 2013) ...................................................................... 8

*Portland Audubon Society v. Endangered Species Committee*,
　984 F.2d 1534 (9th Cir. 1993) ................................................................................... 7, 18

*Regents of University of California v. U.S. Dep't of Homeland Security*,
　No. 3:17-cv-05211-WHA (consolidated), 2017 WL 4642324 (N.D. Cal. Oct. 17, 2017) ....... 14

*Regents of University of California v. U.S. Dep't of Homeland Security*,
　No. 3:17-cv-05211-WHA (consolidated), 2018 WL 1210551 (N.D. Cal. Mar 8, 2018) ....12, 14

*San Luis & Delta-Mendota Water Authority v. Jewell*,
　No. 1:15-cv-01290-LJO-GSA, 2016 WL 3543203 (E.D. Cal. June 23, 2016) ...................... 17

*San Luis Obispo Mothers for Peace v. Nuclear Regulatory Commission*,
　789 F.2d 26 (D.C. Cir. 1986) .................................................................................... 15

*SEC v. Chenery Corp.*,
　318 U.S. 80 (1943) ...............................................................................................1, 10

*Sierra Club v. Zinke*,
　No. 17-cv-07187-WHO, 2018 WL 3126401 (N.D. Cal. June 16, 2018) ..........................12, 13

*Silver State Land v. Beaudreau*,
　59 F. Supp. 3d 158 (D.D.C. 2014) ............................................................................. 14

*Southwest Center for Biological Diversity v. U.S. Forest Service*,
　100 F.3d 1443 (9th Cir. 1996) ..................................................................................1, 9

*Stand Up for California! v. Dep't of Interior*,
　71 F. Supp. 3d 109 (D.D.C. 2014) ...........................................................................15, 16

*Tafas v. Dudas*,
　530 F. Supp. 2d 786 (E.D. Va. 2008) ......................................................................... 17

*Thompson v. United States Department of Labor*,
　885 F.2d 551 (9th Cir. 1989) ................................................................................7, 9, 21

*Town of Norfolk v. U.S. Army Corps of Engineers*,
　968 F.2d 1438 (1st Cir. 1992) .................................................................................. 15

*United States v. Morgan*,
    304 U.S. 1 (1938)......................................................................................... 10

*United States v. Morgan*,
    313 U.S. 409 (1941)..................................................................................10, 15

*Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*,
    435 U.S. 519 (1978)....................................................................................7, 11

*WildEarth Guardians v. United States Forest Service*,
    713 F. Supp. 2d 1243 (D. Colo. 2010)............................................................. 7

**STATUTES**

5 U.S.C. §§ 701-06 ............................................................................................6

5 U.S.C. § 704 ...................................................................................................6

5 U.S.C. § 706(2) ........................................................................................ 5, 6

Pub. L. No. 91-224, 84 Stat. 108-110 (1970)....................................................5

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 26(b)(5)................................................................................... 16

**CODE OF FEDERAL REGULATIONS**

40 C.F.R. pt. 121 ...............................................................................................5

**FEDERAL REGISTER**

36 Fed. Reg. 22,369 (Nov. 25, 1971) ................................................................5

84 Fed. Reg. 44,080 (Aug. 22, 2019) ...............................................................5

85 Fed. Reg. 42,210 (July 13, 2020) .................................................................5

Executive Order 13,868, 84 Fed. Reg. 15,495 (Apr. 15, 2020) ................. 5, 20

Case No. 3:20-cv-04636-WHA
EPA's Brief Challenging Order Requiring A Privilege Log And, In The Alternative, For a Protective
Order Limiting The Scope of the Privilege Log and a Revised Schedule For Producing a Privilege Log

1

2   **I.    INTRODUCTION**

3          In its Case Management Schedule Order of October 22, 2020, the Court ordered EPA

4   to provide a "privilege log" to accompany the administrative record. But the Court also gave

5   EPA the opportunity to "challenge the scope of this requirement by October 29 at 5:00 p.m."

6   Dkt. No. 89, ¶ 8(a). As elaborated herein, EPA respectfully but firmly challenges any

7   requirement to provide a privilege log. Ordering a privilege log in an Administrative Procedure

8   Act ("APA") record review case, with no showing of record irregularity, is contrary to law—

9   particularly for a legislative rulemaking such as the one at issue here. In the alternative, with

10  regard to the scope and timing of a privilege log, EPA respectfully requests that the Court direct

11  the parties to meet and confer regarding those issues, or, in the alternative, that the Court limit

12  the scope of any required privilege log as provided herein.[1]

13         Under the APA, judicial review is based on "the administrative record already in

14  existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S.

15  138, 142 (1973) (per curiam); *accord Southwest Center for Biological Diversity v. U.S. Forest*

16  *Service*, 100 F.3d 1443, 1450 (9th Cir. 1996). Barring exceptional circumstances—i.e., "a strong

17  showing of bad faith or improper behavior"—courts must evaluate administrative action based

18  on the agency's stated reasons for its decision; APA review is not an opportunity to probe the

19  mental processes of the agency decisionmakers. *Citizens to Preserve Overton Park v. Volpe*,

20  401 U.S. 402, 419-420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99

21  (1977); *accord SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) ("confining our review to a

22  judgment upon the validity of the grounds upon which the Commission itself based its action");

23

24  _____

25  [1] This filing relates to all three consolidated actions: *American Rivers v. Wheeler*, No. 3:20-cv-
    4636-WHA, *California v. Wheeler*, No. 3:20-cv-4869-WHA, and *Suquamish Tribe v. Wheeler*,
26  No. 3:20-cv-6137-WHA (now captioned *In re Clean Water Act Rulemaking*). Because Plaintiffs
    in each of the consolidated cases made identical statements in their respective joint case
27  management statements requesting a privilege log, EPA refers to Plaintiffs generally in this
    brief. For brevity, references to the joint case management statement and other filings are to the
28  docket entries in the first filed case, *American Rivers v. Wheeler*.

EPA'S BRIEF CHALLENGING ORDER TO PROVIDE A PRIVILEGE LOG AND, IN THE ALTERNATIVE, FOR A PROTECTIVE
ORDER LIMITING THE SCOPE OF THE PRIVILEGE LOG AND A REVISED SCHEDULE FOR PRODUCING A PRIVILEGE LOG

1  *see also Motor Vehicle Manufacturers Ass'n of U.S. v. State Farm Mutual Automobile*

2  *Insurance Co.*, 463 U.S. 29, 50 (1983). "Were the federal courts routinely or liberally to admit

3  new evidence when reviewing agency decisions, it would be obvious that the federal courts

4  would be proceeding, in effect, de novo rather than with the proper deference to agency

5  processes, expertise, and decision-making." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th

6  Cir. 2005). In particular, courts should not consider new evidence in the form of deliberative

7  agency materials, which are immaterial, not part of the administrative record, and "do not need

8  to be logged as withheld from the administrative record." *Oceana, Inc. v. Ross*, 920 F.3d 855,

9  865 (D.C. Cir. 2019) (quotation omitted).

10       The Court's October 23 Order ignores these well-established tenets of administrative law

11  and misapprehends the state of the case law. During the initial Case Management Conference,

12  the Court indicated that it was ordering EPA to provide a privilege log because the Court

13  "always" orders a privilege log and that doing so is the "law of this circuit." Tr. at 10:12-15

14  (Transcript of the Initial Case Management Conference, Dkt. No. 91) and Order at 2 (Dkt. No.

15  89). To the contrary, ordering a privilege log in an APA record review case is not the norm in

16  district courts in the Ninth Circuit. Nor is it controlling law in the Ninth Circuit that a privilege

17  log is required. Indeed, the only court of appeals to address the issue head-on has concluded that

18  deliberative materials are outside the scope of APA review and thus are not part of the

19  administrative record. Thus, the Court's Order rests on a fundamental misunderstanding of the

20  scope of an administrative record and the nature of judicial review of agency action and

21  constitutes an abuse of discretion.

22       Deliberative agency materials are not a part of the administrative record in APA cases

23  because it is not the role of reviewing courts to inquire as to the subjective views of agency

24  decisionmakers. *Citizens to Preserve Overton Park*, 401 U.S. at 420 (1971). For that reason—

25  and to protect agencies' ability to solicit candid advice during the decisionmaking process—the

26  D.C. Circuit and other courts have declined to require agencies to include internal, deliberative,

27  and predecisional agency documents in an administrative record. Because documents that reflect

28  predecisional deliberations within the agency are not part of an administrative record in the first

1   instance, those courts have also not required agencies to review all such documents and create a

2   privilege log describing them. This jurisprudence recognizes that internal documents reflecting

3   an agency's predecisional deliberations are not part of the administrative record any more than

4   documents reflecting a trial court's predecisional deliberations, such as bench memos, other

5   communications between judges and their staff, and drafts of decisions, are part of the trial

6   record.

7        The Court's view here is squarely in conflict with this jurisprudence, particularly in the

8   rulemaking context. EPA has already produced a voluminous and comprehensive administrative

9   record for the Certification Rule covering over a year of Agency proceedings and containing

10  approximately 1300 entries which could have multiple attachments and spanning over 50,000

11  pages. Plaintiffs have not provided any evidence that EPA conducted the administrative

12  proceeding in bad faith, that significant factual information has been omitted from the record, or

13  that there are any other extraordinary circumstances that might warrant examination of

14  predecisional materials. Moreover, the Court's Order improperly requires a privilege log

15  without first allowing EPA to argue that a privilege log is not required for APA challenges

16  generally, let alone for this national rulemaking. The effects of that hasty ruling are significant:

17  EPA estimates that collecting predecisional and deliberative materials, which EPA initially

18  estimates could number in the hundreds of thousands, reviewing them, and then preparing a log

19  will require thousands of hours of time and divert Agency personnel away from mission-critical

20  functions.

21       It is black-letter law that the agency is responsible for determining the scope of the

22  administrative record and that the agency's record is entitled to a presumption of regularity. *See*

23  *infra* Section IV.A. Here, EPA prepared the record consistent with long-standing agency

24  procedures on record compilation and lodged that record with the Court. Plaintiffs have done no

25  more than suggest – without support or explanation – that the record is incomplete. Unless

26  Plaintiffs carry their burden of showing that the record is lacking or was compiled in bad faith,

27  the requirement to provide a privilege log is contrary to law and amounts to nothing more than

28  an exercise in satiating Plaintiffs' and the Court's interest in EPA's internal deliberations (*see*

3          Case No. 3:20-cv-04636-WHA
EPA's Brief Challenging Order To Provide A Privilege Log And, In The Alternative, For a Protective
Order Limiting The Scope of the Privilege Log And a Revised Schedule For Producing a Privilege Log

Tr. 15:25-16:20)—which is irrelevant to whether the Certification Rule passes muster under the APA. [2]

The Court noted that it would provide EPA the opportunity to limit the scope of the privilege log, e.g., to a finite time period or to particular categories of documents. Tr. 16:22-17:2. EPA requests that, if the Court is inclined to order EPA to produce a privilege log without EPA's preferred scope limitations after the conclusion of this briefing, the Court first order the parties to meet and confer so that Plaintiffs may explain the nature of the documents that they believe are necessary to complete or supplement the record already submitted by the Agency, potentially narrowing their request to avoid causing unnecessary burden and delay for an extraordinarily large number of documents that are likely to be irrelevant in summary judgment proceedings. *See* Tr. 9:11-15.

In the event that the Court orders production of a privilege log, EPA requests that the Court allow the Agency to produce the log on a rolling basis beginning 60 days after entry of the Court's order and at 30-day intervals thereafter until complete. This schedule is the most expeditious production of the privilege log that is possible considering the Agency's resources and the volume of materials that EPA will need to review. EPA further requests that the following categories of documents, at a minimum, be excluded from the requirement to log: communications with other federal agencies, including the Office of Management and Budget and the Department of Justice; attorney-client advice between EPA's Office of General Counsel and the Agency program office that developed the Rule; emails of staff below the office director level; staff-developed briefing documents; and staff drafts of the proposed and final rule.

---

[2] Indeed, nearly all of Plaintiffs' claims are based on whether particular aspects of the Certification Rule are within EPA's statutory authority or are permissible in light of Supreme Court decisions. Thus, the requirement for a privilege log and any subsequent motions practice over the record will likely have no impact on the Court's ultimate resolution of the case. For those reasons, the Court should refrain from ordering EPA to produce a privilege log and should proceed with resolving the merits of Plaintiffs' claims. *See, e.g.*, California v. Wheeler, Complaint, No. 3:20-CV-04869-WHA (Dkt. No. 1) , ¶¶ 5.45-48 (alleging definitions are contrary to CWA and a Supreme Court decision); 5.49-53 (alleging definition is contrary to CWA); 5.54-62 (alleging procedure and definitions are contrary to CWA and a Supreme Court decision).

Because preparation of the privilege log would extend past the current deadline for Plaintiffs to move to supplement the record, i.e., December 11, 2020 (Dkt. No. 89), EPA requests that the deadline be continued until 30 days following completion of the privilege log.

## II.    BACKGROUND

### A.    The Certification Rule

EPA issued its previous regulations relating to water quality certifications in 1971, pursuant to section 21(b) of the Federal Water Pollution Control Act of 1948 ("FWPCA"), as amended, Pub. L. No. 91-224, 84 Stat. 108-110 (1970). 36 Fed. Reg. 22,369, 22,487 (Nov. 25, 1971) (codified at 40 C.F.R. pt. 121); *see also* Fed. Reg. 42,210, 42,211 (July 13, 2020). The 1971 regulations did not "reflect the 1972 amendments to the FWPCA (commonly known as the Clean Water Act or CWA), which created section 401, despite the fact that there were changes to the relevant statutory text." 85 Fed. Reg. at 42,211. On April 10, 2019, the President signed Executive Order 13,868, Promoting Energy Infrastructure and Economic Growth (the "Executive Order"), which required EPA to engage with states, tribes, and federal agencies to update the Agency's outdated guidance and regulations, including the 1971 certification framework. 84 Fed. Reg. 15,495 (Apr. 15. 2020). Thus, EPA signed a proposed rule on August 8, 2019. *Proposed Rule*, 84 Fed. Reg. 44,080 (Aug. 22, 2019). The final Certification Rule was published on July 13, 2020, and became effective on September 11, 2020. *Final Rule*, 85 Fed. Reg. 42,210 (July 13, 2020) (the "Certification Rule").

### B.    The Administrative Record

Legal challenges to agency action are decided on the basis of the administrative record. 5 U.S.C. § 706(2) ("the court shall review the whole record or those parts of it cited by a party"); *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Camp v. Pitts*, 411 U.S. at 142; *Arizona Cattle Growers' Ass'n v. United States Fish & Wildlife*, 273 F.3d 1229, 1236 (9th Cir. 2001). After a thorough review and pursuant to long-standing Agency guidance, EPA compiled the administrative record for the Certification Rule and lodged the certified index of 1,303 entries and more than 50,000 pages in this case. Dkt. No. 85-1; Declaration of John Goodin ¶ 42 (attached as Exhibit A). The administrative record contains documents dating from

June 2018, when the Agency published its 2018 Spring Unified Agenda of Regulatory and Deregulatory Actions announcing that the Agency was considering, as a long-term action, the issuance of a notice soliciting public comment on whether the section 401 certification process would benefit from a rulemaking to promote nationwide consistency and regulatory certainty, to June 2020 when the Administrator signed the Certification Rule. The record includes, among other things: pre-proposal input, public comments, response to comments, legislative history, court cases, meeting summaries, public hearing transcripts, memorandums, letters to external stakeholders on the rulemaking, earlier Agency guidance and memorandums on section 401, summaries on federalism and tribal consultation efforts related to the rulemaking, an economic analysis and materials and data that informed the economic analysis. *See* Dkt. No. 85-1.

## III.   STANDARD OF REVIEW

Judicial review of the agency action challenged by Plaintiffs can be obtained, if at all, only in accordance with the APA, 5 U.S.C. §§ 701-06. *See Churchill County v. Norton*, 276 F.3d 1060, 1070-71 (9th Cir. 2001), *amended*, 282 F.3d 1055 (9th Cir. 2002); *Environmental Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1023 (E.D. Cal. 2000). The APA, in turn, limits judicial review to agency action "made reviewable by statute and final agency action . . . " 5 U.S.C. § 704; *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61-62 (2004); *Gallo Cattle Co. v. United States Department of Agriculture*, 159 F.3d 1194, 1198-99 (9th Cir. 1998).

Under the APA, a court's review should be based on the administrative record the agency presents to the reviewing court. *Florida Power & Light Co.*, 470 U.S. at 743-44; *Arizona Cattle Growers' Ass'n*, 273 F.3d at 1236; 5 U.S.C. § 706(2) ("the court shall review the whole record or those parts of it cited by a party"); *see also Desert Survivors v. United States Dep't of the Interior*, 231 F. Supp. 3d 368, 380 (N.D. Cal. 2017). The "focal point" for judicial review is "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. at 142.

The "whole record" means the full administrative record compiled by the agency in support of the decision at issue. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. at 419-

420; *see also Portland Audubon Society v. Endangered Species Committee*, 984 F.2d 1534, 1548 (9th Cir. 1993) (holding that "'the whole record' includes everything that was before the agency pertaining to the merits of its decision." (citation omitted)). It includes "all documents and materials directly or indirectly considered by agency decision makers . . . [.]" *Thompson v. United States Department of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (quotation and emphasis omitted); *accord National Wildlife Federation v. Burford*, 677 F. Supp. 1445, 1457 (D. Mont. 1985), *aff'd*, 871 F.2d 849 (9th Cir. 1989). A court should be cautious against permitting the admission of "any relevant document contained in the agency's fil[ing] cabinet." *WildEarth Guardians v. United States Forest Service*, 713 F. Supp. 2d 1243, 1255 (D. Colo. 2010). As one court aptly explained:

> Limiting review of the administrative record to only what the agency decisionmakers directly or indirectly considered is important. A broad application of the phrase 'before the agency' would undermine the value of judicial review: "[I]nterpreting the word 'before' so broadly as to encompass any potentially relevant document existing within the agency or in the hands of a third party would render judicial review meaningless.

*Pacific Shores Subdivision California Water District v. U.S. Army Corps of Engineers*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (quotation omitted). Indeed, the Supreme Court has recognized that limiting judicial review to the administrative record is necessary to prevent courts from exercising sweeping *de novo* review of agency action. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 549 (1978). The Ninth Circuit has likewise confirmed that, in order to maintain the proper deference to agency decision-making, the governing standard of review must not be severed from the scope of review:

> Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, *de novo* rather than with the proper deference to agency processes, expertise, and decision-making.

*Lands Council*, 395 F.3d at 1030.

Supplementation of the administrative record,[3] which "means adding material to the volume of documents the agency considered," *Safari Club Int'l v. Jewell*, 111 F. Supp. 3d 1, 4 (D.D.C. 2015), "is the exception, not the rule," *Pacific Shores*, 448 F. Supp. 2d at 5 (citation omitted). *Accord Franks v. Salazar*, 751 F. Supp. 2d 62, 67 (D.D.C. 2010) ("A court that orders an administrative agency to supplement the record of its decision is a rare bird."). An agency's designation of the administrative record is entitled to a presumption of regularity and "the court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993); *accord In re United States*, 875 F.3d 1200, 1206 (9th Cir.), *cert. granted, judgment vacated on other grounds*, 138 S. Ct. 443, 199 L. Ed. 2d 351 (2017) ("The administrative record submitted by the government is entitled to a presumption of completeness which may be rebutted by clear evidence to the contrary.") (citing *Bar MK Ranches*, 994 F.2d at 740)); *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) ("An agency's designation and certification of the administrative record is treated like other established administrative procedures, and thus entitled to a presumption of administrative regularity." (citing *Bar MK Ranches*, 994 F.2d at 740)); *Cook Inletkeeper v. EPA*, 400 Fed. Appx. 239, 240 (9th Cir. 2010).

While it is presumed that the administrative record submitted by the agency is complete, plaintiffs can rebut this presumption with "clear evidence to the contrary." *Cook Inletkeeper*, 400 Fed. Appx. at 240; *see also Bruce v. Azar*, 389 F. Supp. 3d 716, 725 (N.D. Cal. 2019), *aff'd*, No. 19-17565, 2020 WL 6146437 (9th Cir. Oct. 20, 2020) (same); *Pinnacle Armor, Inc. v. United States*, 923 Supp. 2d 1226, 1232 (E.D. Cal. 2013); *McCrary*, 495 F. Supp. 2d at 1041. To meet this standard, the challenging party "must identify the allegedly omitted materials with sufficient specificity and 'identify reasonable, non-speculative grounds

---

[3] Supplementation of the administrative record and the addition of extra-record evidence are sometimes conflated. "Supplementing the administrative record in an APA case means adding material to the volume of documents the agency considered, while admitting extra-record evidence means adding material outside of or in addition to the administrative record that was not necessarily considered by the agency." *Safari Club International*, 111 F. Supp. 3d at 4.

for the belief that the documents were considered by the agency and not included in the record' " or show "that the agency applied the wrong standard in compiling the record." *Oceana, Inc. v. Pritzker*, No. 16-cv-06784-LHK (SVK), 2017 WL 2670733, at 2* (N.D. Cal. June 21, 2017) (internal quotation marks and citations omitted) (quoting *Gill v. Dep't of Justice*, No. 14-cv-03120-RS (KAW), 2015 WL 9258075 (N.D. Cal. Dec. 18, 2015))

In addition to supplementing an administrative record, the Ninth Circuit has stated that courts may consider documents that are clearly not part of the record, i.e., extra-record materials, in limited circumstances:

> (1) if necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) "when the agency has relied on documents not in the record," or (3) "when supplementing the record is necessary to explain technical terms or complex subject matter."

*Southwest Center for Biological Diversity*, 100 F.3d at 1450 (quoting *Inland Empire Public Lands Council v Glickman*, 88 F.3d 697, 703–04 (9th Cir. 1996)). Extra-record documents may also be admitted "when plaintiffs make a showing of agency bad faith." *Southwest Center for Biological Diversity*, 100 F.3d at 1450 (quoting *National Audubon Society v. U.S. Forest Service*, 46 F.3d 1437, 1447 n.9 (9th Cir. 1993)). "Though widely accepted, these exceptions are narrowly construed and applied" and the "scope of these exceptions permitted by our precedent is constrained, so that the exception does not undermine the general rule." *Lands Council*, 395 F.3d at 1030.

## IV.   ARGUMENT

### A.   The Court's Order Conflicts with Basic Principles Governing Judicial Review of Agency Action and the Scope of the Administrative Record.

As a general matter, "judicial review of agency action is limited to review of the record on which the administrative decision was based." *Thompson,* 885 F.2d at 555. The administrative record includes "all documents and materials directly or indirectly considered by agency decision-makers." *Id*. (emphasis omitted). But that description refers to materials of the sort considered to be part of a record in an adjudicatory proceeding, e.g., evidentiary materials and submissions by parties. *See* 5 U.S.C. § 556(e). The bare fact that predecisional, deliberative

materials, such as internal memoranda and emails from agency staff, were generated in the agency's decision-making process does not transform those materials into documents that were "before the agency" in any relevant sense and therefore part of the administrative record, any more than a bench memorandum becomes part of the trial record when it is prepared for a district judge.

Ordering production of a privilege log for deliberative materials fails to recognize that the scope of the administrative record is bounded by the proper scope of administrative review. It is long settled that agency action should be judged on the basis of the agency's stated reasons for its decision. *See SEC v. Chenery Corp.*, 318 U.S. at 88 ("confining our review to a judgment upon the validity of the grounds upon which the Commission itself based its action"); *see also Motor Vehicle Manufacturers Ass'n*, 463 U.S. at 50 ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."); *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169 (1962). It is "not the function of the court to probe the mental processes" of the agency. *United States v. Morgan*, 304 U.S. 1, 18 (1938). "Just as a judge cannot be subjected to such a scrutiny . . . so the integrity of the administrative process must be equally respected." *United States v. Morgan*, 313 U.S. 409, 422 (1941). Accordingly, such "inquiry into the mental processes of administrative decisionmakers is usually to be avoided." *Citizens to Preserve Overton Park*, 401 U.S. at 420. Where, as here, administrative findings are made at the time of the decision and have been included in the administrative record, *Overton Park* provides that "there must be a strong showing of bad faith or improper behavior before" a court is permitted to look beyond the record. *Id.* Plaintiffs made no such showing of bad faith or improper behavior. The Court's speculation to the contrary is unfounded and also wholly insufficient to warrant ordering EPA to produce a privilege log.[4]

---

[4] *See* Tr. 15:25—16:4 ("I have no doubt that there are letters from industry that probably wrote the regulation or large parts of it, and you're trying to hide them, hide them, based upon attorney-client privilege. I have no doubt of that, because that's the way it always works."). EPA is not "trying to hide" privileged materials by challenging the Court's Order. The Agency is challenging the Order because, absent circumstances that neither the Court nor Plaintiffs have shown to exist here, the Supreme Court has made clear that judicial review is limited to the

1   Burdening agencies with extra record-keeping requirements is especially inappropriate in the
2   rulemaking context, where the Supreme Court has specifically cautioned courts against
3   imposing procedural obligations on agencies beyond those required by the APA. *Vermont*
4   *Yankee*, 435 U.S. at 523-24, 547-48.

5          This Court has stated that EPA must provide a privilege log because "the law in our
6   circuit requires it." Tr: 11:22-23; *see also* Tr. 10:17-18.[5] EPA disputes that conclusion (and
7   further discusses the Ninth Circuit case law below). EPA is not aware of a Ninth Circuit opinion
8   addressing whether an agency is required to provide a privilege log to accompany its
9   administrative record. Chief Judge Hamilton agrees, stating unequivocally that the "Ninth
10  Circuit has not directly addressed whether the federal government must produce a privilege log
11  or whether the government may exclude deliberative documents from the administrative record
12  altogether in an APA case." *California v. U.S. Department of Homeland Security*, No. 19-cv-
13  04975-PJH, 2020 WL 1557424, at *9 (N.D. Cal. Apr. 1, 2020). Moreover, several other district
14  courts within the Ninth Circuit have held that deliberative materials need not be listed on a
15  privilege log. Even within the Northern District of California, district judges have not required a

16

17  _____

18  administrative record. Thus, compelling EPA to expend substantial time and resources to
    develop a log of deliberative and predecisional materials is inappropriate in this case. Moreover,
19  There is an avenue outside of motions to supplement or complete the record for the Plaintiffs to
    engage in a fishing expedition to for documents that might have been excluded from the
20  administrative record, the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. EPA is not
    aware of any FOIA requests by Plaintiffs or others regarding the Certification Rule. The public
21  docket for the Rule, which is always EPA's starting point for compilation of the administrative
    record, has been available since June of this year so Plaintiffs had the opportunity to start the
22  process.

23  [5] The Court mentioned another recent case, *San Francisco Baykeeper v. EPA*, No. 3:19-cv-5941
24  ("*Redwood City*"), in which it ordered EPA to produce a privilege log. Tr. 11:19-23. That matter
    is in no way analogous to the present litigation. The dispute in *Redwood City* related to a site-
25  specific final agency determination that the location of a salt production complex bordering the
    southwestern San Francisco Bay was not waters of the United States under the Clean Water Act.
26  2020 WL 5893392 (N.D. Cal. Oct. 5, 2020). Indeed, the only similarity between *Redwood City*
    and the captioned case is the statute involved and the Defendant. *Redwood City* was an informal
27  adjudication with a very small administrative record and the present matter is a nationwide
28  notice-and-comment rulemaking with an extensive administrative record. *See* Tr. 15:8-17.

privilege log as a matter of course.[6] Moreover, even when judges in this District have ordered production of a privilege log, they have done so in the context of motions to supplement the record and in any event, not without allowing the government the opportunity to oppose the requirement in the first instance. *See id.* at *9 ("Reading the Supreme Court and Ninth Circuit's opinions together, a court may order a privilege log and include non-privileged deliberative documents in the record but only after providing the federal government the opportunity to argue the issue.").

Here, Plaintiffs have not made a showing by "clear evidence" that the record is incomplete. *In re United States*, 875 F.3d at 1206 (citing *Bar MK Ranches*, 994 F.2d at 740). Indeed, Plaintiffs have made no showing at all. Instead, Plaintiffs have stated – with no explanation – that they "do not believe that the Lodged Index reflects the complete administrative record for this case." Joint Case Mgmt. Stmt. at 4 (Dkt. No. 84). Saying no more, Plaintiffs assert that EPA is "required to provide a privilege log for any documents that are withheld based on an asserted privilege." *Id.* at 4. Plaintiffs are incorrect. Their assertion is founded solely on the belief that "production of a privilege log is essential to Plaintiffs' ability to evaluate and comment on the completeness of the administrative record." *Id.* Plaintiffs cite only two cases for this sweeping – and incorrect – proposition: *Sierra Club v. Zinke*, No. 17-cv-07187-WHO, 2018 WL 3126401 (N.D. Cal. June 16, 2018), and *Regents of University of California v. U.S. Department of Homeland Security*, No. 3:17-cv-05211-WHA (consolidated), 2018 WL 1210551 (N.D. Cal. Mar 8, 2018). But those cases are easily distinguishable. In both cases, the plaintiffs made an initial showing – no matter how meager – that the administrative record might not be complete. That factor is wholly missing from the present case.

---

[6] *See, e.g.*, *Anderson v. McCarthy*, No. 3:16-cv-0069-WHA, slip op. at 1 (N.D. Cal. Sept. 7, 2016) (in response to a motion to compel completion of the administrative record and for production of a privilege log, declining to order production of a privilege log before conducting an *in camera* review of "documents that relate to the development of the guidance that are not a part of the administrative record, including pre-decisional and deliberative documents") Declaration of Leslie M. Hill, ¶ 3 (attached as Exhibit B).

In *Sierra Club v. Zinke*, the plaintiffs moved both to complete the record and to compel a privilege log. 2018 WL 3126401, *1. In support, the plaintiffs provided documents obtained from Freedom of Information Act requests "as evidence that certain relevant deliberative documents were considered by [the Bureau of Land Management] but not included in the record." *Id*. The court's order requiring production of a privilege log rested firmly upon a showing the record was incomplete (a showing that has not been made here) and thus the presumption of regularity had been overcome. The court emphasized that the

> Federal defendants are entitled to a presumption that the record is complete. That presumption can be overcome by clear evidence that the record is missing documents considered by BLM in its decision to issue the Suspension Rule. *Citizen Groups provided such evidence here.*

*Id*. at *1 (emphasis added). The court explained that this District Court "has repeatedly required deliberative materials (such as internal comments, draft reports, emails, and meeting notes) to be added to the administrative record *if they were considered in the agency's decision*." *Id*. at *3 (emphasis added). But the court again followed that statement with the bedrock principle that

> the administrative record is entitled to a presumption of completeness, and Citizen Groups must overcome the presumption *before compelling the government to add documents*. To do so, Citizen Groups must "identify reasonable, non-speculative grounds for the belief that [omitted materials] were considered by the agency and not included in the record," or "by showing that the agency applied the wrong standard in compiling the record."

*Id*. at *3 (emphasis added) (citing *Oceana, Inc.*, 2017 WL 2670733, at *2). In contrast to *Sierra Club v. Zinke*, in these consolidated cases there has been absolutely no showing of any grounds to find that the record is incomplete, let alone any reasonable and non-speculative grounds for Plaintiffs' or the Court's apparent belief that there are materials considered by the Agency and not included in the record or that EPA applied the wrong standard in compiling the record. Tr: 10:17-18, 11:19-23.

The facts and procedural posture in the second case cited by Plaintiffs and decided by this Court are also dissimilar. In *Regents of University of California*, this Court ordered production of a privilege log after briefing on the issue. Here, the Court's order appears only to contemplate hearing EPA's proposal to limit the scope of the privilege log outside the broader

context of a future motion to supplement the record. Further, in *Regents of University of California*, the Court's order followed specific questions as to the completeness of the record – a fact not present here. *See Regents of University of California v. U.S. Dep't of Homeland Security*, No. 3:17-cv-05211-WHA (consolidated), 2017 WL 4642324, at *3 (N.D. Cal. Oct. 17, 2017) (earlier order regarding the administrative record). Lastly, although the Court stated that every "court in this district to consider the issue . . . has required administrative agencies to provide a privilege log in withholding documents that otherwise belong in the administrative record," 2018 WL 1210551, at *6, the Court failed to recognize, as we discuss below, that other courts in the Ninth Circuit have found that a privilege log is not required. Thus, this issue remains unsettled within the Ninth Circuit and the Northern District seems to be an outlier on the issue.

Plaintiffs' vague concern that "production of a privilege log is essential to Plaintiffs' ability to evaluate and comment on the completeness of the administrative record" is overstated. There is no reason—and Plaintiffs identify none—to believe that judicial review on the merits will be frustrated without the requested privilege log, *cf. Silver State Land*, 59 F. Supp. 3d 158, 170 (D.D.C. 2014) (rejecting argument that document was "necessary or else judicial review will be frustrated"), particularly in light of the voluminous public record. Indeed, courts have consistently denied requests seeking logs of predecisional and deliberative documents "so that [a plaintiff] can participate in the process of determining what documents are and are not part of the administrative record." *National Ass'n of Chain Drug Stores*, 631 F. Supp. 2d at 28; *see also District Hospital*, 971 F. Supp. 2d at 32 (denying request to "produce a privilege log" of predecisional and deliberative documents); *Blue Ocean*, 503 F. Supp. 2d at 372 n.4 (noting that it is "unfair to criticize [an agency] for not claiming a privilege and filing a privilege log as to documents that it claims should not be in the administrative record in the first place"). This makes sense, since "the argument that a plaintiff and the [c]ourt should be permitted to participate in an agency's record compilation as a matter of course contravenes 'the standard presumption that the agency properly designated the [a]dministrative [r]ecord.' " *National Ass'n of Chain Drug Stores*, 631 F. Supp. 2d at 28. As a result, "requests for privilege logs of

documents that may have been withheld from an administrative record on grounds of privilege or deliberative process are routinely denied" in the D.C. Circuit. *Stand Up for California!*, 71 F. Supp. 3d at 122 (emphasis added) (citing cases). The same result should apply here.

The D.C. Circuit, the only court of appeals to have squarely addressed the question, has concluded that deliberative materials are outside the scope of APA review and thus are not part of the administrative record. In *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Commission*, 789 F.2d 26, 44-45 (D.C. Cir. 1986), the *en banc* D.C. Circuit considered a motion to supplement the administrative record to include transcripts of closed agency meetings. The court rejected that effort, stating that judicial "examination of these transcripts would represent an extraordinary intrusion into the realm of the agency," and that the petitioners must make a "'strong showing of bad faith or improper behavior'" before the court would be "warranted in examining the deliberative proceedings of the agency." *Id.* (quoting *Overton Park*, 401 U.S. at 420). The court analogized an agency's deliberations to the deliberative processes of a court and stated that, "[w]ithout the assurance of secrecy, the court could not fully perform its functions." *Id*. The D.C. Circuit has subsequently reiterated that "the actual subjective motivation of agency decisionmakers is immaterial as a matter of law" to APA review. *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998) (denial of reh'g en banc) (citing, *inter alia*, *Overton Park*, 401 U.S. at 420; *Camp*, 411 U.S. at 138; *Morgan*, 313 U.S. at 409).[7]

Moreover, in *Oceana, Inc. v. Ross*, 920 F3d 855 (D.C. Cir. 2019), the D.C. Circuit concluded that "predecisional and deliberative documents 'are not part of the administrative record to begin with,' so they 'do not need to be logged as withheld from the administrative

---

[7] *See also Town of Norfolk v. U.S. Army Corps of Engineers*, 968 F.2d 1438, 1455-58 (1st Cir. 1992) (upholding non-inclusion in record of documents that were subject to attorney-client and deliberative process privileges); *Norris & Hirshberg, Inc. v. SEC*, 163 F.2d 689, 693 (D.C. Cir. 1947) ("internal memoranda made during the decisional process . . . are never included in a record"); *see also Madison County Building & Loan Ass'n v. Federal Home Loan Bank Board*, 622 F.2d 393, 395 n.3 (8th Cir. 1980) (stating that "staff memoranda and recommendations . . . used by an agency in reaching a decision . . . may be excluded from the record because of concerns over proper agency functioning").

1    record,'" and therefore held that the district court "did not abuse its discretion by declining to

2    require that the Fisheries Service include on a privilege log those documents that the agency

3    excluded from the administrative record because they were deemed predecisional and

4    deliberative." *Id.* at 865 (quoting *Oceana, Inc. v. Locke*, 634 F. Supp. 2d 49, 52 (D.D.C. 2009),

5    *rev'd on other grounds*, 670 F.3d 1238 (D.C. Cir. 2011)). The court of appeals explained that a

6    "privilege log is required only when 'a party withholds information otherwise discoverable by

7    claiming that the information is privileged,' Fed. R. Civ. P. 26(b)(5), and since predecisional

8    documents are irrelevant and therefore not 'otherwise discoverable,' they are not required to be

9    placed on a privilege log." *Id.* The court further emphasized that the fact that an agency could

10   "assert the deliberative process privilege over such predecisional documents does not change the

11   analysis." *Id.* The court analogized to traditional civil discovery noting that the Federal Rules of

12   Civil Procedure "do not require parties to provide logs of all documents that were not produced

13   because they were deemed immaterial or irrelevant." From that perspective, it "would be quite

14   odd to require a different procedure in agency review cases," particularly since "the designation

15   of the Administrative Record, like any established administrative procedure, is entitled to a

16   presumption of administrative regularity." *Id.* (quoting *Bar MK Ranches*, 994 F.2d at 740).

17         Accordingly, district courts within the D.C. Circuit, which hears a large number of APA

18   record-review cases, have uniformly held that agencies are not required to provide a privilege

19   log identifying deliberative materials. *See, e.g.*, *Oceana, Inc. v. Pritzker*, 217 F. Supp. 3d 310,

20   318 (D.D.C. 2016) (summarizing D.C. Circuit precedent and providing extended discussion of

21   rationale for excluding predecisional, deliberative materials from administrative record); *Stand*

22   *Up for California! v. Dep't of Interior*, 71 F. Supp. 3d 109, 123 (D.D.C. 2014) ("privileged and

23   deliberative materials are not part of the administrative record as a matter of law."); *American*

24   *Petroleum Tankers Parent, LLC v. United States*, 952 F. Supp. 2d 252, 265 (D.D.C. 2013)

25   (noting that it is "well established in this District that materials protected by the deliberative

26   process privilege are not part of the Administrative Record for purposes of review of agency

27   action") (citations omitted); *District Hospital Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 32

28   (D.D.C. 2013) (rejecting a request to "produce a privilege log" for predecisional and

1   deliberative documents); *Blue Ocean Inst. v. Gutierrez,* 503 F. Supp. 2d 366, 372-73 (D.D.C.

2   2007) (denying motion to compel completion of administrative record, finding that deliberative

3   documents "are not a part of the administrative record when an agency decision is challenged as

4   arbitrary and capricious," and rejecting plaintiff's argument that agency must assert deliberative

5   process privilege); *National Ass'n of Chain Drug Stores v. U.S. Department of Health & Human

6   Services,* 631 F. Supp. 2d 23, 27 (D.D.C. 2009) (collecting cases).

7            Many district courts outside the D.C. Circuit have reached the same conclusion that

8   deliberative materials are not properly part of the administrative record. *See, e.g., Outdoor

9   Amusement Business Ass'n v. Department of Homeland Security,* Case No. CV ELH-16-1015,

10   2017 WL 3189446, at *1, *21 (D. Md. July 27, 2017) (agreeing with federal defendants that no

11   privilege log is required for documents, such as deliberative materials because they are not

12   properly part of the administrative record in the first place); *Tafas v. Dudas,* 530 F. Supp. 2d

13   786, 801-02 (E.D. Va. 2008); *Great American Insurance Co. v. United States,* No. 12-cv-9718,

14   2013 WL 4506929, at *9 (N.D. Ill. Aug. 23, 2013).

15            Indeed, several district courts in the Ninth Circuit have held that deliberative materials

16   need not be listed on a privilege log. *See San Luis & Delta-Mendota Water Authority v. Jewell,*

17   No. 1:15-cv-01290-LJO-GSA, 2016 WL 3543203, at *1, *19 (E.D. Cal. June 23, 2016) (ruling

18   that requiring a privilege log for deliberative materials "would undermine the presumption of

19   correctness," and "would shift the record compilation process too closely toward mechanisms

20   employed in cases subject to regular civil discovery"); *Golden Gate Salmon Association v. Ross,*

21   No. 1:17-cv-01172-LJO-EPG9, 2018 WL 3129849, at *5 (E.D. Cal. June 22, 2018) (declining

22   to require deliberative materials to be included in the administrative record as a matter of course

23   and consequently not requiring a privilege log, absent plaintiffs overcoming the presumption

24   that the record is complete); *ASSE International Inc. v. Kerry,* No. 14-cv-534-CJC, 2018 WL

25   3326687, at *3 (C.D. Cal. January 3, 2018) (rejecting plaintiffs' request for a privilege log);

26   *Carlsson v. United States Citizenship & Immigration Services,* 2015 WL 1467174, at *7 n.5

27   (C.D. Cal. Mar. 23, 2015) ("To the extent that plaintiffs seek to discover and add to the record

28   deliberations or communications between agency staff, such material is not properly part of an

administrative record."); *California v. U.S. Department of Labor*, No. 2:13-CV-02069-KJM, 2014 WL 1665290, at *1, *13 (E.D. Cal. Apr. 24, 2014) ("because internal agency deliberations are properly excluded from the administrative record, the agency need not provide a privilege log.").

The Ninth Circuit has not addressed this issue directly. Indeed, in *In re United States*, 875 F.3d at 1206, *vacated on other grounds and remanded by* 138 S. Ct. 443 (2017) (per curiam), the panel noted that there is no controlling precedent in the Circuit as to whether the government must prepare a privilege log for deliberative materials in an APA case. The Ninth Circuit has strongly suggested elsewhere, however, that deliberative materials are not properly part of the record for APA review. *Portland Audubon Society*, 984 F.2d at 1534, involved a request for discovery regarding alleged *ex parte* contacts with the agency charged with granting exemptions from Endangered Species Act requirements. The Ninth Circuit distinguished the purely internal deliberations at issue in the D.C. Circuit's *San Luis Obispo Mothers for Peace* case from "allegedly improper ex parte contacts between decisionmakers and outside parties." 984 F.2d at 1549. In so doing, the court approvingly cited *Mothers for Peace* in suggesting that the administrative record includes "neither the internal deliberative processes of the agency nor the mental processes of individual agency members." *Id.* Similarly, the Ninth Circuit has held that e-mail communications and memos between agency staff do not represent the official views of the agencies and cannot be used as a basis to invalidate a final agency decision. *National Wildlife Federation v. U.S. Army Corps of Engineers*, 384 F.3d 1163, 1174 (9th Cir. 2004). Particularly given that EPA's record here is more than sufficient without the inclusion of deliberative materials, this Court should follow the well-established approach that an agency's deliberative materials are not properly part of the record and, thus, no privilege log is required.

## B.    The Court's Order Requiring a Privilege Log by November 12, 2020, Is Unreasonable.

Although the Court's Case Management Scheduling Order refers to EPA challenging only the scope of the privilege log, the Court indicated during the scheduling conference that EPA should also present any concerns regarding the timing of providing a log in this filing. Tr. 8:10-17. Scope and timing are interrelated. The full number of documents held by the identified

custodians is likely in the hundreds of thousands, and review of that quantity of documents would take many months. And, as discussed above, the resulting privilege log would not materially aid summary judgment proceedings. Thus, as explained further below, should the Court still wish to order a privilege log, EPA proposes that the Court allow the parties to meet and confer prior to issuance of any revised order so that Plaintiffs may explain the nature of the documents they believe are necessary to complete or supplement the record already submitted by the Agency, and potentially narrow their request to avoid causing unnecessary burden and delay without assisting in the resolution of the issues before this Court. Alternatively, EPA proposes to exclude certain categories of documents, limiting the scope of the privilege log to documents for which EPA is asserting the deliberative process privilege that were generated between the Executive Order and signature on the final rule. Based on the EPA's initial search of documents from 22 custodians, and the time required to initiate a privilege review, the first production of a partial privilege log could take place 60 days after this Court's Order.

Courts recognize that it would be highly resource-intensive to require agencies to keep and track all predecisional material and, ultimately, would not assist the review process. *See, e.g.*, *Blue Ocean*, 503 F. Supp. 2d at 372; *Oceana, Inc. v. Pritzker*, 217 F. Supp. 3d at 320 (significant agency resources required to review and log deliberative materials, and subsequent judicial resolution of challenge to any withholdings, "would not be well spent, given that those materials 'are immaterial as a matter of law'") (citation omitted). As explained above, the United States' view is that "privileged materials . . . are not part of the administrative record in the first instance." *ASSE Int'l v. Kerry*, Case No. 14-534, 2018 WL 3326687 at *2 (C.D. Cal. Jan. 3, 2018); *EPA's Action Development Process, Administrative Records Guidance*, September 2011 at 6-7. Goodin Decl. ¶ 45. Consistent with that position, EPA did not assemble such materials when compiling the administrative record here. *Id*. Indeed, EPA does not generally track or maintain a list all the voluminous internal pre-decisional material (e.g., every internal staff email exchange or iterative drafts of language for the proposed or final rule or response-to-comment document) generated during the year(s) long rulemaking process. *Id*. ¶¶ 48-49. To do so would be highly resource intensive. Accordingly, to prepare a privilege log, the Agency must now search the records of numerous custodians within EPA for materials to be reviewed for potential inclusion on the privilege log.

Immediately upon receiving the Court's order to prepare a privilege log, EPA conducted

a scoping search of 22 record custodians who were the core group of staff involved in developing the proposed and final 401 Certification Rule, as well as senior officials with a lesser degree of day-to-day involvement. *See id.* This preliminary search identified 95,606 files or documents in those custodians' Microsoft Outlook emails (88,236) and OneDrive shared cloud storage files (7,370) generated between the start of the rulemaking—April 10, 2019 (the date the President signed Executive Order 13,868)—and June 1, 2020, when the Administrator signed the Final Rule. *See* Goodin Decl. ¶ 57. This large number of files does not include all of those custodians' potentially relevant documents because emails and their attachments were counted as a single "hit" in this search. Accordingly, the final number of potentially reviewable documents is expected to be significantly larger. EPA's electronic data experts estimate that once document "families" (i.e., emails and their attachments) are uploaded and separated in the litigation review platform, the total number of documents could be two to three times larger. *Id.* The preliminary estimate of documents here is 237,500. *Id.* ¶ 58.

  If one were to assume that EPA was working from this preliminary number of documents, then producing a privilege log would require months of review by a large team of attorneys working full time, at extraordinary cost. But before attorneys may begin to conduct a privilege review for a project of this size, several steps must occur that cumulatively require several weeks:

- Once EPA identifies the locations of the potentially responsive electronically stored information (ESI), the Agency's eDiscovery Division conducts a records search applying search parameters that EPA attorneys select to produce potentially responsive documents in the locations identified by records custodians. This search process typically requires three to four days to complete.

- After potentially responsive documents are identified by the ESI search, these documents are electronically collected by the eDiscovery Division through a process that takes approximately four to five days to complete.

- Following collection of the potentially responsive ESI, these documents are transmitted from EPA to DOJ and uploaded to a document management and review platform, Relativity™. This transmission and upload process typically takes two to three days to complete.

- Finally, before commencing a document review, EPA must provide training to Agency or contract attorneys regarding the use of the document review and management platform and the methodology to be employed during the privilege review. Additionally, even if EPA is able to use an existing DOJ contract for contract

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

attorney services, hiring temporary attorneys requires at least two weeks and often more because of the need to identify qualified personnel and run background clearance checks before access to government systems will be provided.

Goodin Decl. ¶¶ 51-54.

Of course, the gathered documents far exceed the documents appropriately included on the privilege log, which would be privileged and pre-decisional material directly or indirectly considered by EPA decisionmakers during the rulemaking process. *See Thompson*, 885 F.2d at 555 (explaining how documents such as non-substantive emails, calendar entries, and emails of custodians lacking decision-making authority are not a part of an agency's administrative record). The privilege review requires that an attorney review each document in a web-based document review platform (here, Relativity). The reviewer must consider whether each document is deliberative and whether the attorney-client or attorney work product privilege applies, and then note that in Relativity. EPA expects that a trained attorney can review an average of 150 documents per eight-hour work day. Goodin Decl. ¶ 60. This estimate of 150 documents per work day is based on past DOJ experience with document reviews using Relativity and is consistent with EPA's experience in recent reviews. *Id.* ¶ 61. Therefore, EPA estimates that completing review of the estimated 237,500 documents will take approximately 1,583 attorney work days. EPA is exploring diverting attorneys from their important work and/or diverting funds from other priorities to pay for contract attorneys should the Court order EPA to produce a privilege log. *Id.* ¶ 49. To translate this into monetary terms, a review of this volume would cost approximately $950,000. *Id.* ¶ 61.

To reduce the overall time required to produce a privilege log, EPA proposes excluding defined categories of privileged documents from the log. These well-established privilege categories, consistent with EPA's Administrative Records Guidance, include communications with other federal agencies, including the Office of Management and Budget and the Department of Justice. Similarly, EPA proposes to exclude attorney-client advice between EPA's Office of General Counsel and the Agency program office that developed the Rule. EPA would thus focus its privilege log production on internal, predecisional documents, for which

EPA asserts the deliberative process privilege. Because the resulting privilege log would nonetheless include a very large number of staff documents that are likely of little interest to Plaintiffs, EPA additionally proposes to exclude emails of custodians below the office director level; staff-developed briefing documents; and staff drafts of the proposed and final rule.

To expedite the transmission of information regarding privilege claims, EPA also proposes providing privilege log information to Plaintiffs on a "rolling basis" as the Agency completes its review of portions of the document universe. If the Court allows the parties to meet and confer prior to issuance of any revised order, Plaintiffs may explain the nature of the documents they believe are necessary to complete or supplement the record already submitted by the Agency, and EPA can prioritize its production based on specifically identified sub-categories of documents, e.g., documents generated during discrete phases of the rulemaking process.

Thus, should the Court still wish to order a privilege log, EPA proposes that the Court allow the parties to meet and confer prior to issuance of any revised order or enter the proposed order attached as Exhibit C that provides a schedule for producing a privilege log on a rolling basis and limits that privilege log to documents for which EPA is asserting the deliberative process privilege. EPA respectfully requests that the Court accept the Agency's proposed order.

## V.    CONCLUSION

For the foregoing reasons, the Court should vacate its Order to the extent it requires a privilege log. In the alternative, the Court should vacate the requirement EPA provide a privilege log by November 12, 2020 and should enter EPA's proposed order.

Respectfully submitted,

Date: October 29, 2020

ERIC GRANT
Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*s/Vanessa R. Waldref*
VANESSA R. WALDREF (D.C. Bar No. 989692)
Vanessa.R.Waldref@usdoj.gov
LESLIE M. HILL (D.C. Bar No. 476008)

Leslie.Hill@usdoj.gov
Environmental  Defense Section
Environment  & Natural Resources Division
United States Department of Justice
4 Constitution  Square
150 M Street, NE
Suite 4.1133 (Waldref)/4.149 (Hill)
Washington, D. C.  20002
Telephone:   (202) 514-2741  (Waldref)
                      (202) 514-0375  (Hill)
Facsimile  (202) 514-8865

*Attorneys for Defendants*

23                   Case No. 3:20-cv-04636-WHA
EPA's Brief Challenging  Order To Provide A Privilege Log And, In The Alternative, For a Protective
Order Limiting The Scope of the Privilege Log And a Revised Schedule For Producing a Privilege Log