JEAN E. WILLIAMS
Acting Assistant Attorney General
VANESSA R. WALDREF (D.C. Bar No. 989692)
Vanessa.R.Waldref@usdoj.gov
LESLIE M. HILL (D.C. Bar No. 476008)
Leslie.Hill@usdoj.gov
ELISABETH H. CARTER (N.Y. Bar No. 5733274)
Elisabeth.Carter@usdoj.gov
Environmental Defense Section
Environment & Natural Resources Division
United States Department of Justice
4 Constitution Square
150 M Street, N.E.
Suite 4.1133 (Waldref)/4.149 (Hill)/4.1406 (Carter)
Washington, D. C.  20002
Telephone:   (202) 514-2741 (Waldref)
             (202) 514-0375 (Hill)
             (202) 514-0286 (Carter)
Facsimile: (202) 514-8865

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>Clean Water Act Rulemaking<br><br>――――――――――――――<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:20-cv-04636-WHA (consolidated)<br><br>**EPA'S MOTION FOR REMAND WITHOUT VACATUR**<br><br>Courtroom: 12, 19th Floor<br>Date: August 26, 2021<br>Time: 8:00 a.m. PDT |

1

**Notice of Motion and Motion**

2    PLEASE TAKE NOTICE that, on August 26, 2021, at 8:00 a.m., or as soon thereafter as

3    the matter may be heard, in the courtroom of the Honorable William Alsup, Courtroom 12, 19th

4    Floor, 450 Golden Gate Avenue, San Francisco, California, or by telephone or webinar,

5    Defendants United States Environmental Protection Agency and Michael S. Regan, in his official

6    capacity as the Administrator of the United States Environmental Protection Agency

7    (collectively, "EPA"), will and do respectfully move for remand without vacatur. The motion is

8    based on this notice and the accompanying memorandum of points and authorities; any

9    declarations, exhibits, and request for judicial notice filed in support of the motion; together with

10    such oral and/or documentary evidence as may be presented at the hearing on this motion.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

BACKGROUND .................................................................................................................1

3

STANDARD OF REVIEW FOR VOLUNTARY REMAND ..........................................6

4

ARGUMENT ...................................................................................................................6

5

CONCLUSION...............................................................................................................12

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**CASES**

*Am. Forest Res. Council v. Ashe*,
  946 F. Supp. 2d 1 (D.D.C. 2013),
  *aff'd*, 601 F. App'x 1 (D.C. Cir. 2015) ....................................................................9, 11, 12

*B.J. Alan Co. v. ICC*,
  897 F.2d 561 (D.C. Cir. 1990) ....................................................................................9

*Cal. Communities Against Toxics v. EPA*,
  688 F.3d 989 (9th Cir. 2012) ......................................................................................6

*Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*,
  375 F.3d 412 (6th Cir. 2004) ...................................................................................8, 9

*Ethyl Corp. v. Browner*,
  989 F.2d 522 (D.C. Cir. 1993) ....................................................................................9

*FBME Bank Ltd. v. Lew*,
  142 F. Supp. 3d 70 (D.D.C. 2015) .........................................................................7, 8, 9

*Friends of Park v. Nat'l Park Serv.*,
  No. 13-cv-03453-DCN, 2014 WL 6969680 (D.S.C. Dec. 9, 2014) ............................................9

*Limnia, Inc. v. U.S. Dep't of Energy*,
  857 F.3d 379 (D.C. Cir. 2017) ....................................................................................8

*Macktal v. Chao*,
  286 F.3d 822 (5th Cir. 2002) ......................................................................................6

*Nat'l Res. Def. Council v. United States Dep't of Interior*,
  275 F. Supp. 2d 1136 (C.D. Cal. 2002) .....................................................................6, 7, 9

*N. Coast Rivers All. v. United States Dep't of the Interior*,
  No. 11-CV-00307-LJO-MJS, 2016 WL 8673038 (E.D. Cal. Dec. 16, 2016) ....................................6, 7, 8

*Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*,
  556 F.3d 177 (4th Cir. 2009) ......................................................................................8

*SKF USA Inc. v. United States*,
  254 F.3d 1022 (Fed. Cir. 2001) ...............................................................................6, 7, 8

*State v. Bureau of Land Mgmt.*,
  No. 18-CV-00521-HSG, 2020 WL 1492708 (N.D. Cal. Mar. 27, 2020) ...................................6

*Trujillo v. Gen. Elec. Co.*,
  621 F.2d 1084 (10th Cir. 1980) ......................................................................................6

*Util. Solid Waste Activities Grp. v. EPA*,
  901 F.3d 414 (D.C. Cir. 2018) .......................................................................................9

*United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*,
  No. C-09-4029 EMC, 2011 WL 3607790 (N.D. Cal. Aug. 16, 2011) ...................................6, 7

**STATUTES**

33 U.S.C. § 1341.............................................................................................................1

**CODE OF FEDERAL REGULATIONS**

40 C.F.R. § 121.5(b) .......................................................................................................3

40 C.F.R. § 121.5(c) .......................................................................................................3

**FEDERAL REGISTER**

85 Fed. Reg. 42,210 (July 13, 2020).................................................................................1

86 Fed. Reg. 7037 (Jan. 25, 2021), Executive Order 13,990......................................................1, 10

86 Fed. Reg. 29,541 (June 2, 2021) ..........................................................................1, 2, 5, 7, 8, 10

**LOCAL RULES**

Civil L.R. 7-2 ................................................................................................................1

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Civil L.R. 7-2 and this Court's Order of June 21, 2021 (Dkt. No. 142), Defendants, the United States Environmental Protection Agency and Michael S. Regan, in his official capacity as the Administrator of the United States Environmental Protection Agency (collectively, "EPA"), by and through their counsel, respectfully request that the Court remand, without vacatur, EPA's Section 401 Certification Rule that revised the implementing regulations for state certification of federal licenses and permits that may result in any discharge into waters of the United States pursuant to section 401 of the Clean Water Act ("CWA"), 33 U.S.C. § 1341. Remand is appropriate here because EPA has announced its intention to reconsider and revise the Certification Rule. *Notice of Intention to Reconsider and Revise the Clean Water Act Section 401 Certification Rule*, 86 Fed. Reg. 29,541 (June 2, 2021) ("Notice"). EPA has "determined that it will reconsider and propose revisions to the rule through a new rulemaking effort." Declaration of John Goodin ¶ 9 ("Goodin Decl."). "EPA seeks to revise the rule in a manner that promotes efficiency and certainty in the certification process, that is well-informed by stakeholder input on the rule's substantive and procedural components, and that is consistent with the cooperative federalism principles central to section 401." *Id.* ¶ 13.

Defendants have conferred with the parties regarding this motion. Plaintiffs plan to oppose this motion. Defendant-Intervenors do not object to the motion based on counsel for Defendants' description, but reserve the right to file a response if they think one is necessary, after seeing the motion. Dkt. No. 141.

**BACKGROUND**

On July 13, 2020, EPA's final rule, *Clean Water Act Section 401 Certification Rule*, was published. 85 Fed. Reg. 42,210 (the "Certification Rule" or the "Rule"). The Certification Rule became effective on September 11, 2020. On January 20, 2021, President Biden issued Executive Order 13,990, *Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis*. 86 Fed. Reg. 7037 (Jan. 25, 2021). Executive Order 13,990 stated that it is the policy of the new administration:

1

to listen to the science; to improve public health and protect our environment; to ensure access to clean air and water; to limit exposure to dangerous chemicals and pesticides; to hold polluters accountable, including those who disproportionately harm communities of color and low-income communities; to reduce greenhouse gas emissions; to bolster resilience to the impacts of climate change; to restore and expand our national treasures and monuments; and to prioritize both environmental justice and the creation of the well-paying union jobs necessary to deliver on these goals.

*Id*. at 7037. Executive Order 13,990 directs federal agencies to "immediately review and, as appropriate and consistent with applicable law, take action to address the promulgation of Federal regulations and other actions during the last 4 years that conflict with these important national objectives, and to immediately commence work to confront the climate crisis." *Id*. The Certification Rule was specifically listed in a subsequent White House Statement as one of the agency actions to be reviewed pursuant to the Executive Order for potential suspension, revision or rescission.[1]

Plaintiffs allege that EPA violated the Administrative Procedure Act because the Certification Rule is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Dkt. No. 75 ("Am. Rivers Compl.") ¶¶ 95, 99-101, 108, 115-18, 124-25, 132, 137 (citing 5 U.S.C. §§ 706(2)(A), 706(2)(C)); Dkt. No. 96 ("States' Compl.") ¶¶ 7.5, 7.12, 7.19, 7.25 (same); Dkt. No. 98 ("Suquamish Compl.") ¶¶ 79-81, 85, 89 (same).

EPA has completed its initial review of the Certification Rule and determined that it will undertake a new rulemaking effort to propose revisions due to substantial concerns with the existing Rule. *Notice*, 86 Fed. Reg. 29,541 (June 2, 2021). As explained in the Notice and Goodin Declaration, EPA is reconsidering numerous topics in the Certification Rule. 86 Fed. Reg. at 29,542-44; Goodin Decl. ¶ 15. The specific topics that EPA has committed to reconsidering as part of that process include:

---

[1] Fact Sheet: List of Agency Actions for Review, available at https://www.whitehouse.gov/briefing-room/statements-releases/2021/01/20/fact-sheet-list-ofagency-actions-for-review/ (last accessed on May 20, 2021).

2

- the utility of the pre-filing meeting process to date, including whether the pre-filing meeting request component of the Rule has improved or increased early stakeholder engagement, whether the minimum 30 day timeframe should be shortened in certain instances (*e.g.*, where a certifying authority declines to hold a pre-filing meeting), and how certifying authorities have approached pre-filing meeting requests and meetings to date;

- the sufficiency of the elements described in 40 C.F.R. § 121.5(b) and (c), and whether stakeholders have experienced any process improvements or deficiencies by having a single defined list of required certification request components applicable to all certification actions;

- the process for determining and modifying the "reasonable period of time," including whether additional factors should be considered by federal agencies when setting the "reasonable period of time," whether other stakeholders besides federal agencies have a role in defining and extending the reasonable period of time, and any implementation challenges or improvements identified through application of the Rule's requirements for the "reasonable period of time";

- the Rule's interpretation of the scope of certification and certification conditions, and the definition of "water quality requirements" as it relates to the statutory phrase "other appropriate requirements of State law," including whether the Agency should revise its interpretation of scope to include potential impacts to water quality not only from the "discharge" but also from the "activity as a whole" consistent with Supreme Court case law, whether the Agency should revise its interpretation of "other appropriate requirements of State law," and whether the Agency should revise its interpretation of scope of certification based on implementation challenges or improvements identified through the application of the newly defined scope of certification;

- the certification action process steps, including whether there is any utility in requiring specific components and information for certifications with conditions and denials; whether it is appropriate for federal agencies to review certifying authority actions for consistency with procedural requirements or any other purpose, and if so, whether there should be greater certifying authority engagement in the federal agency review process including an opportunity to respond to and cure any deficiencies; whether federal agencies should be able to deem a certification or conditions as "waived," and whether, and under what circumstances, federal agencies may reject state conditions;

- enforcement of CWA Section 401, including the roles of federal agencies and certifying authorities in enforcing certification conditions; whether the statutory language in CWA Section 401 supports certifying authority enforcement of certification conditions under federal law; whether the CWA citizen suit provision applies to Section 401; and the Rule's interpretation of a certifying authority's inspection opportunities;

- modifications and "reopeners," including whether the statutory language in CWA Section 401 supports modification of certifications or "reopeners," the utility of modifications (*e.g.*, specific circumstances that may warrant modifications or "reopeners"), and whether there are alternate solutions to the issues that could be addressed by certification modifications or "reopeners" that can be accomplished through the federal licensing or permitting process;

- the neighboring jurisdiction process, including whether the Agency should elaborate in regulatory text or preamble on considerations informing its analysis under CWA Section 401(a)(2), whether the Agency's decision to make a determination under CWA Section 401(a)(2) is wholly discretionary, and whether the Agency should provide further guidance on the Section 401(a)(2) process that occurs after EPA makes a "may affect" determination;

4

- application of the Certification Rule, including impacts of the Rule on processing certification requests, impacts of the Rule on certification decisions, and whether any major projects are anticipated in the next few years that could benefit from or be encumbered by the Certification Rule's procedural requirements;

- existing state CWA Section 401 procedures, including whether the Agency should consider the extent to which any revised rule might conflict with existing state CWA Section 401 procedures and place a burden on those states to revise rules in the future; and

- facilitating implementation of any rule revisions, including whether, given the relationship between federal provisions and state processes for water quality certification, EPA should consider specific implementation timeframes or effective dates to allow for adoption and integration of water quality provisions at the state level, and whether concomitant regulatory changes should be proposed and finalized simultaneously by relevant federal agencies (*e.g.*, the United States Army Corps of Engineers and the Federal Energy Regulatory Commission) so that implementation of revised water quality certification provisions would be more effectively coordinated and would avoid circumstances where regulations could be interpreted as inconsistent with one another.

86 Fed. Reg. at 29,542-44; Goodin Decl. ¶ 15. EPA is conducting initial stakeholder outreach by taking written input through a public docket that will be open until August 2, 2021, i.e., 60 days after publication of the Notice in the Federal Register. 86 Fed. Reg. at 29,541. After considering public input and information provided during stakeholder meetings, EPA will draft new regulatory language and supporting documents and submit the draft rule to the Office of Management and Budget ("OMB"). Goodin Decl. ¶¶ 20-22. EPA expects the proposed rule detailing revisions to the Certification Rule will be published in the Federal Register in Spring 2022, which will initiate a public comment period. *Id.* ¶ 23. Following the public comment period on the proposed rule, EPA plans to review comments and other input, develop the final

1  rule, and submit it to OMB for interagency review. *Id.* ¶¶ 24-26. EPA expects to sign a final rule

2  in spring 2023. *Id.* ¶ 27.

3  <u>**STANDARD OF REVIEW FOR VOLUNTARY REMAND**</u>

4  "[A]n agency may reconsider its own regulations, 'since the power to decide in the first

5  instance carries with it the power to reconsider.'" *State v. Bureau of Land Mgmt.*, No. 18-CV-

6  00521-HSG, 2020 WL 1492708, at \*8 n.9 (N.D. Cal. Mar. 27, 2020) (quoting *Nat'l Res. Def.*

7  *Council, Inc. v. United States Dep't of Interior*, 275 F. Supp. 2d 1136, 1141 (C.D. Cal. 2002)

8  (quoting *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980)); *accord Macktal v.*

9  *Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (stating that "it is generally accepted that in the

10  absence of a specific statutory limitation, an administrative agency has the inherent authority to

11  reconsider its decisions").

12  "A federal agency may request remand in order to reconsider its initial action." *Cal.*

13  *Communities Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012). The Ninth Circuit has

14  recognized that "[g]enerally, courts only refuse voluntarily requested remand when the agency's

15  request is frivolous or made in bad faith." *Id*. (citing *SKF USA Inc. v. United States*, 254 F.3d

16  1022, 1029 (Fed. Cir. 2001) ("*SKF USA*"). An "agency may request a remand (without

17  confessing error) in order to reconsider its previous position . . . " *United States v. Gonzales &*

18  *Gonzales Bonds & Ins. Agency, Inc.*, No. C-09-4029 EMC, 2011 WL 3607790, at \*3 (N.D. Cal.

19  Aug. 16, 2011); *see also N. Coast Rivers All. v. United States Dep't of the Interior*, No. 11-CV-

20  00307-LJO-MJS, 2016 WL 8673038, at \*3 (E.D. Cal. Dec. 16, 2016) (noting that courts in the

21  Ninth Circuit "generally look to the Federal Circuit's decision in *SKF USA* for guidance when

22  reviewing requests for voluntary remand" and quoting *SKF USA*, 254 F.3d at 1027-28).

23  <u>**ARGUMENT**</u>

24  When determining whether to grant a motion for voluntary remand, courts consider

25  whether: (1) the request for voluntary remand is made in good faith and "reflects substantial and

26  legitimate concerns," *Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 2011 WL 3607790, at \*4

27  (citing *SKF*, 254 F.3d at 1029); (2) remand supports "judicial economy," *Nat. Res. Def. Council*

28

6

*v. United States Dep't of Interior*, 275 F. Supp. 2d at 1141; and (3) voluntary remand would not cause "undue prejudice" to the parties, *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C. 2015). Here, the balance of all three factors weighs in favor of remand.

**First**, voluntary remand is appropriate because EPA has identified "substantial and legitimate concerns" with the Certification Rule and has publicly announced its intention to reconsider and revise the Rule. *SKF*, 254 F.3d at 1029 ("[I]f the agency's concern [with the challenged action] is substantial and legitimate, a remand is usually appropriate."); *N. Coast Rivers All.*, 2016 WL 8673038, at *3 (same); *Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 2011 WL 3607790, at *4 (same). Specifically, EPA has identified "substantial concerns with a number of provisions of the 401 Certification Rule that relate to cooperative federalism principles and CWA section 401's goal of ensuring that states are empowered to protect their water quality." 86 Fed. Reg. at 29,542. EPA also has serious concerns about whether the Certification Rule "constrains what states and Tribes can require in certification requests, potentially limiting state and tribal ability to get information they may need before the 401 review process begins." *Id.* at 29,543. Likewise, EPA "is concerned that the rule does not allow state and tribal authorities a sufficient role in setting the timeline for reviewing certification requests and limits the factors that federal agencies may use to determine the reasonable period of time." *Id*. EPA is also "concerned that the rule's narrow scope of certification and conditions may prevent state and tribal authorities from adequately protecting their water quality." *Id*. And EPA "is concerned that a federal agency's review may result in a state or tribe's certification or conditions being permanently waived as a result of non-substantive and easily fixed procedural concerns identified by the federal agency [and] that the rule's prohibition of modifications may limit the flexibility of certifications and permits to adapt to changing circumstances." *Id*. These concerns mirror many of Plaintiffs' allegations.[2]

---

[2] *See* Am. Rivers Compl. ¶¶ 94, 98, 107, 112-14, 123, 130-31, 136; States' Compl. ¶¶ 1.9-1.13, 5.43-5.46, 5.48-5.50, 5.54-5.61; Suquamish Compl. ¶¶ 62-76.

7

1    Courts have granted remand in similar situations. For example, in *SKF USA*, the Federal

2    Circuit found a remand to the Department of Commerce appropriate in light of the agency's

3    change in policy. 254 F.3d at 1025, 1030. Likewise, in *FBME Bank Ltd. v. Lew*, the District

4    Court for the District of Columbia remanded a rulemaking to the Department of the Treasury to

5    allow the agency to address "serious 'procedural concerns'" with the rule, including "potential

6    inadequacies in the notice-and-comment process as well as [the agency's] seeming failure to

7    consider significant, obvious, and viable alternatives." 142 F. Supp. 3d at 73.

8        A confession of error is not necessary for voluntary remand so long as the agency is

9    committed to reconsidering its decision.  *SKF USA*, 254 F.3d at 1029. For example, remand may

10   be appropriate if an agency "wishe[s] to consider further the governing statute, or the procedures

11   that were followed," or if an agency has "doubts about the correctness of its decision or that

12   decision's relationship to the agency's other policies."  *Id.*; *see also Limnia, Inc. v. U.S. Dep't of

13   Energy*, 857 F.3d 379, 387 (D.C. Cir. 2017) (an agency does not need to "confess error or

14   impropriety in order to obtain a voluntary remand" so long as it has "profess[ed] [an] intention to

15   reconsider, re-review, or modify the original agency decision that is the subject of the legal

16   challenge"); *N. Coast Rivers All.*, 2016 WL 11372492, at *2 (explaining that an "agency may

17   request a remand (<u>without confessing error</u>) in order to reconsider its previous position")

18   (emphasis in original) (quoting *SKF USA*, 254 F.3d at 1029). That standard is met here, as EPA

19   has made clear that it intends to reconsider and revise the Certification Rule to address

20   "substantial concerns" associated with the Rule. 86 Fed. Reg. at 29,542; Goodin Decl. ¶ 14.

21   Along with receiving public input through a docket, EPA has held a series of webinar-based

22   listening sessions to solicit stakeholder feedback on potential approaches to revise the

23   Certification Rule. *Notice*, 86 Fed. Reg. at 29,544; Goodin Decl. ¶ 17.

24       In sum, "an agency must be allowed to assess 'the wisdom of its policy on a continuing

25   basis.'" *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 215 (4th Cir. 2009)

26   (citation omitted). EPA's actions are consistent with that principle, and this Court "should permit

27

28

1    such a remand in the absence of apparent or clearly articulated countervailing reasons." *Citizens*

2    *Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004).

3           **Second**, granting remand here is in the interest of judicial economy. "Remand has the

4    benefit of allowing 'agencies to cure their own mistakes rather than wasting the courts' and the

5    parties' resources reviewing a record that both sides acknowledge to be incorrect or

6    incomplete.'" *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018)

7    (quoting *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)); *see Nat. Res. Def.*

8    *Council v. United States Dep't of Interior*, 275 F. Supp. 2d at 1141 ("Voluntary remand also

9    promotes judicial economy by allowing the relevant agency to reconsider and rectify an

10   erroneous decision without further expenditure of judicial resources."). Here, allowing EPA to

11   reconsider its decision made during the prior Administration—including the legal basis and

12   policy effects of the Rule—and address its substantial concerns with the Rule through the

13   administrative process will preserve this Court's and the parties' resources. *See FBME Bank*,

14   142 F. Supp. 3d at 74; *see also B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990)

15   ("[A]dministrative reconsideration is a more expeditious and efficient means of achieving an

16   adjustment of agency policy than is resort to the federal courts." (quoting *Pennsylvania v. ICC*,

17   590 F.2d 1187, 1194 (D.C. Cir. 1978))). Continuing to litigate the very same issues that EPA is

18   currently reconsidering and "would be inefficient," *FBME Bank*, 142 F. Supp. 3d at 74, and a

19   waste of "scarce judicial resources," *Friends of Park v. Nat'l Park Serv.*, No. 13-cv-03453-DCN,

20   2014 WL 6969680, at *2 (D.S.C. Dec. 9, 2014).

21          In addition, continuing to litigate this case would interfere with EPA's ongoing

22   reconsideration process by forcing the Agency to structure its administrative process around

23   pending litigation, rather than the Agency's priorities and expertise. *See Am. Forest Res. Council*

24   *v. Ashe*, 946 F. Supp. 2d 1, 43 (D.D.C. 2013) (noting that because agency did "not wish to

25   defend" action, "forcing it to litigate the merits would needlessly waste not only the agency's

26   resources but also time that could instead be spent correcting the rule's deficiencies"), *aff'd*, 601

27   F. App'x 1 (D.C. Cir. 2015).

28

**Third**, any prejudice Plaintiffs may suffer due to a remand without vacatur would be limited here because EPA has committed to reconsidering the Certification Rule to ensure that Clean Water Act Section 401 is implemented in a manner consistent with the policies set forth in Executive Order 13,990, many of which implicate the same concerns that Plaintiffs have raised in this litigation. *See* 86 Fed. Reg. at 7037. As noted above, EPA is considering revising provisions in the Certification Rule related to many of the issues raised in this case:

- pre-filing meeting requests, *Notice*, 86 Fed. Reg. at 29,543;
- certification requests, 86 Fed. Reg. at 29,543;[3]
- reasonable period of time, 86 Fed. Reg. at 29,543;[4]
- scope of certification, 86 Fed. Reg. at 29,543;[5]
- certification actions and federal agency review, 86 Fed. Reg. at 29,543;[6]
- certifying authority enforcement of certification conditions, 86 Fed. Reg. at 29,543; and
- certifying authority modification of certifications, 86 Fed. Reg. at 29,543.

Moreover, EPA has committed to ensuring that stakeholders and the public, including Plaintiff States, Defendant-Intervenor States, Plaintiff Tribes and Industry Defendant-Intervenors, have the opportunity to provide input to EPA in its reconsideration process. 86 Fed. Reg. at 29,544; Goodin Decl. ¶¶ 17, 18, 23.

A new rulemaking process will necessarily take time, but Plaintiffs cannot demonstrate undue prejudice from the time required under the Administrative Procedure Act to revise agency regulations. Nor have Plaintiffs identified harms that outweigh the benefits of remand here. The Plaintiff States allege that the Certification Rule "forces the States either to incur the financial

---

[3] *See* Am. Rivers Compl. ¶¶ 39, 71, 100; States' Compl. ¶¶ 5.54-5.58.
[4] *See* Am. Rivers Compl. ¶¶ 19, 25, 28, 99-102; States' Compl. ¶¶ 6.11-6.13, 6.17; Suquamish Compl. ¶¶ 62, 70.
[5] *See* Am. Rivers Compl. ¶¶ 19, 36, 39, 94, 115-18; States' Compl. ¶¶ 6.4, 6.16-6.17; Suquamish Compl. ¶¶ 37, 62-68, 75, 80, 84.
[6] *See* Am. Rivers Compl. ¶¶ 130-32; States' Compl. ¶¶ 1.11, 7.4, 7.11-7.12; Suquamish Compl. ¶¶ 69-76, 80.

10

and administrative burdens associated with instituting or expanding their water protection

programs or to bear the burdens of degraded waters." States' Compl. ¶ 6.15.[7] The States further

allege that the Certification "Rule increases the chances that section 401 requests will be

needlessly denied, leading to administrative inefficiencies and unnecessary litigation, and the

loss or delayed benefits of projects that would have been certified had the States been operating

under the previous regime." *Id*. ¶ 6.17. The Plaintiff Tribes allege harm from "EPA's attempts to

dilute the authority under CWA Section 401 of tribes eligible for [Treatment in the same Manner

as a State ("TAS")] to review, set conditions upon, and deny federal licenses for activities that

may discharge waters into its jurisdiction." Suquamish Compl. ¶¶ 17, 18. The Tribes also allege

harm from a lack of meaningful consultation with the Tribes. *Id*. ¶¶ 36, 60, 88-89. But these

harms are "too abstract and speculative to clearly outweigh [remand's] benefits," *Am. Forest*

*Res. Council v. Ash*e, 946 F. Supp. at 43, including the critical benefit of allowing EPA to

reconsider the Rule in light of the concerns raised by Plaintiff States and Tribes.

The other Plaintiffs[8] are not directly regulated by the Certification Rule, which regulates

the conduct of states, federal agencies, tribes, and project proponents. Those Plaintiffs' alleged

harms all flow from the implementation of the Certification Rule to specific future projects.[9] But

those harms are too speculative to overcome EPA's interest in remand, because they depend on a

causal chain of events for potential future projects that may or may not occur, including (1) how

a state may apply the Certification Rule to a specific project; (2) how a federal agency will apply

---

[7] *See* States' Compl. ¶¶ 6.11-6.13 (alleging financial harm from increased regulatory expenses).
[8] Non-state or TAS-tribe plaintiffs include American Rivers, American Whitewater, California Trout, Idaho Rivers United, Sierra Club, Columbia Riverkeeper, and Orutsararmiut Native Council.
[9] *See, e.g.*, Am. Rivers Compl. ¶ 12 (explaining that there are "numerous projects requiring federal permits in each of those which are potentially impacted" by the Certification Rule and of interest to plaintiff American Rivers); ¶ 16 (alleging that plaintiffs "frequently participate in state certification determinations under Section 401, and are directly injured by the [Certification] Final Rule's attempt to narrow the applicability, scope, and outcome of Section 401 certifications"), ¶¶ 18-19 (alleging interest in future certification for "modifications at the Camp Far West Hydroelectric Project" and for the "Goldendale Energy Storage Project").

11

1   certifications and conditions to a particular project; (3) how challenges to a state certification or

2   condition would be adjudicated in a judicial or administrative proceedings; and (4) whether

3   resolution of any challenges or implementation concerns would take longer than EPA's

4   rulemaking process. These Plaintiffs' allegations are also "too abstract and speculative to clearly

5   outweigh [remand's] benefits," *Am. Forest Res. Council v. Ash*e, 946 F. Supp. 2d at 43,

6   including allowing EPA to address its concerns with the Certification Rule, and potentially

7   Plaintiffs' concerns as well, through the administrative process. Further, in the interim, Plaintiffs

8   continue to have the option to challenge individual 401 certifications or federal actions taken

9   pursuant to the Certification Rule as they arise, to the extent they may threaten imminent,

10   concrete harm to a party or its members in the future. *See Ohio Forestry Ass'n, Inc. v. Sierra*

11   *Club*, 523 U.S. 726, 734 (1998) (plaintiff "will have ample opportunity later to bring [their] legal

12   challenge" in the context of a future agency action applying the challenged plan "when harm is

13   more imminent and more certain.").

14       In any event, any possible prejudice to Plaintiffs caused by the Rule remaining in effect

15   while EPA revises it pursuant to the required process of the Administrative Procedure Act should

16   not be considered "undue" prejudice. During the rulemaking period, EPA is committed to

17   providing technical assistance to all stakeholders, including States and Tribes, regarding

18   interpretation and implementation of the Certification Rule and working with its federal agency

19   partners to address implementation concerns raised by Plaintiffs. Goodin Decl. ¶¶ 29-30. EPA's

20   efforts may mitigate or eliminate alleged potential harms of concern to all Plaintiffs.

**CONCLUSION**

22       EPA has identified numerous concerns with the Certification Rule, many of which have

23   been raised by Plaintiffs in this case, and the Agency has already begun reconsidering the Rule.

24   Where an agency has committed to reconsidering the challenged action, the proper course is

25   remand to allow the agency to address its concerns through the administrative process. *See Am.*

26   *Forest Res. Council*, 946 F. Supp. 2d at 43. Rather than requiring EPA to litigate a rule that it is

27

28

1    currently reconsidering, Defendants respectfully ask the Court to remand the Certification Rule

2    to the Agency without vacatur.

3           Respectfully submitted this 1st day of July, 2021.

4                                                  JEAN E. WILLIAMS
                                                   Acting Assistant Attorney General
5

6
                                                     /s Leslie M. Hill
7                                                  _____
                                                   LESLIE M. HILL (D.C. Bar No. 476008)
8                                                  Leslie.Hill@usdoj.gov
                                                   VANESSA R. WALDREF (D.C. Bar No. 989692)
9                                                  Vanessa.R.Waldref@usdoj.gov
                                                   ELISABETH H. CARTER (N.Y. Bar No. 5733274)
10                                                 Elisabeth.Carter@usdoj.gov
                                                   U.S. Department of Justice
11                                                 Environment & Natural Resources Division
                                                   Environmental Defense Section
12                                                 4 Constitution Square
                                                   150 M Street, N.E.
13                                                 Suite 4.1133 (Waldref)/4.149 (Hill)/4.1406 (Carter)
                                                   Washington, D.C.  20002
14                                                 Telephone:      (202) 514-2741 (Waldref)
                                                                   (202) 514-0375 (Hill)
15                                                                 (202) 514-0286 (Carter)
                                                   Facsimile (202) 514-8865
16

17                                                 *Attorneys for Defendants*

18
     Of counsel:
19           James Curtin
             Diane McConkey
20           Alexander Mullee
             Office of General Counsel
21           U.S. Environmental Protection Agency

22

23

24

25

26

27

28
                                             13