MONEEN NASMITH (NY Bar # 4427704)
*[Admitted Pro Hac Vice]*
MICHAEL YOUHANA (NY Bar # 5819032)
*[Admitted Pro Hac Vice]*
Earthjustice
48 Wall Street, 15th Floor
New York, NY 10005
(212) 845-7384 / (212) 284-8033
mnasmith@earthjustice.org
myouhana@earthjustice.org

KRISTEN L. BOYLES (CA Bar # 158450)
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA  98104
(206) 343-7340
kboyles@earthjustice.org

GUSSIE LORD (DC Bar # 1009826)
*[Admitted Pro Hac Vice]*
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
(720) 402-3764
glord@earthjustice.org

THOMAS S. WALDO (AK Bar # 9007047)
*[Admitted Pro Hac Vice]*
OLIVIA GLASSCOCK (AK Bar # 1809072)
*[Admitted Pro Hac Vice]*
Earthjustice
325 4th Street
Juneau, AK 99801
(907) 500-7123 / (907) 500-7134
twaldo@earthjustice.org
oglasscock@earthjustice.org

*Attorneys for Plaintiffs*

NATHAN MATTHEWS (CA Bar # 264248)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5695
nathan.matthews@sierraclub.org

*Local Counsel and Attorney for Sierra Club*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re:**<br><br>**CLEAN WATER ACT RULEMAKING**<br><br><br>**This document relates to:**<br><br>**ALL ACTIONS** | Case No. 3:20-cv-04636-WHA<br>Case No. 3:20-cv-04869-WHA<br>Case No. 3:20-cv-06137-WHA<br><br>(Consolidated)<br><br>**Plaintiffs' Opposition to EPA's Motion for Remand Without Vacatur**<br><br>Hearing: Aug. 26, 2021 at 12 p.m. |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

BACKGROUND ........................................................................................................... 1

ARGUMENT ................................................................................................................. 5

I.       THE COURT SHOULD DENY EPA'S REQUEST FOR VOLUNTARY REMAND
         WITHOUT VACATUR.......................................................................................... 5

         A.       The Court Should Deny Remand Without Vacatur Because the CWA
                  Requires that EPA Revise the Certification Rule. .................................... 5

         B.       Remand Without Vacatur Is Not in the Interests of Judicial and
                  Administrative Economy. ........................................................................... 7

         C.       Remand Will Unduly Prejudice Plaintiffs. ............................................... 9

II.      THE COURT SHOULD VACATE THE RULE UPON REMAND. ............................. 11

         A.       Serious Legal Errors Mar the Certification Rule. .................................... 11

         B.       Vacatur of the Certification Rule Is the Less Disruptive Option............. 14

CONCLUSION............................................................................................................. 17

# TABLE OF AUTHORITIES

**CASES**

                                                                    **Page number(s)**

*Amoco Prod. Co. v. Village of Gambell,*
  480 U.S. 531 (1987)....................................................................................15

*Cal. Cmties. Against Toxics v. EPA,*
  688 F.3d 989 (9th Cir. 2012) .............................................11, 12, 13, 15

*Chlorine Chemistry Council v. EPA,*
  206 F.3d 1286 (D.C. Cir. 2000) ......................................................9

*City of Tacoma v. FERC,*
  460 F. 3d 53 (D.C. Cir. 2006) ........................................................12

*Idaho Farm Bureau Fed'n v. Babbitt,*
  58 F.3d 1392 (9th Cir. 1995) .........................................................11

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983)........................................................................12

*Nat'l Family Farm Coal. v. EPA,*
  960 F.3d 1120 (9th Cir. 2020) .......................................................14

*N. Coast Rivers All. v. U.S. Dep't of the Interior,*
  No. 16-CV-00307, 2016 WL 8673038 (E.D. Cal. Dec. 16, 2016) ....................6

*N. Coast Rivers All. v. U.S. Dep't of the Interior,*
  No. 16-CV-00307, 2016 WL 11372492 (E.D. Cal. Sept. 23, 2016)...................7

*Pollinator Stewardship Council v. EPA,*
  806 F.3d 520 (9th Cir. 2015) ........................................11, 13, 14, 15

*PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology,*
  511 U.S. 700 (1994)..................................................................6, 12

*S.D. Warren Co. v. Me. Bd. of Env't Prot.,*
  547 U.S. 370 (2006)..................................................................3, 12

*Se. Alaska Conservation Council v. U.S. Forest Serv.,*
  468 F. Supp. 3d 1148 (D. Alaska 2020) ............................................14

*SKF USA Inc. v. United States,*
  254 F.3d 1022 (Fed. Cir. 2001)....................................................6, 7

*U.S. Dep't of Energy v. Ohio,*
  503 U.S. 607 (1992)........................................................................12

*Util. Solid Waste Activities Grp. v. EPA,*
  901 F.3d 414 (D.C. Cir. 2018) ........................................................7

## STATUTES

33 U.S.C. § 1251 ..................................................................................................2, 7, 12

33 U.S.C. § 1341 ..............................................................................................................1

## REGULATIONS

40 C.F.R. § 121.1 ........................................................................................................6, 12

40 C.F.R. § 121.2 ............................................................................................................12

40 C.F.R. § 121.3 ........................................................................................................6, 12

40 C.F.R. § 121.4 ............................................................................................................10

40 C.F.R. § 121.6 ............................................................................................................12

40 C.F.R. § 121.7 ............................................................................................................12

40 C.F.R. § 121.8 ............................................................................................................12

40 C.F.R. § 121.9 ........................................................................................................6, 12

## FEDERAL REGISTER & DOCKET MATERIALS

Clean Water Act Section 401 Certification Rule,
        85 Fed. Reg. 42,210 (July 13, 2020) (to be codified at 40 C.F.R. pt. 121) .........................1

Exec. Order No. 13,868, Promoting Energy Infrastructure and Energy Growth,
        84 Fed. Reg. 15,495 (Apr. 10, 2019) ...............................................................2, 6

Exec. Order No. 13,990, Protecting Public Health and the Environment and Restoring Science
        to Tackle the Climate Crisis, 86 Fed. Reg. 7037 (Jan. 20, 2021) .........................3, 6, 7, 13

Notice of Intention to Reconsider and Review the Clean Water Act Section 401 Certification
        Rule, 86 Fed. Reg. 29,541 (June 2, 2021) ...........................................3, 4, 12, 13

Am. Fisheries Soc'y et al., Comments on Proposed Rule (Oct. 21, 2019),
        https://www.regulations.gov/comment/EPA-HQ-OW-2019-0405-0784 ...........................2

Att'ys Gen. of States of Wash., N.Y., Cal., et al., Comments on Proposed Rule (Oct. 21, 2019),
        https://www.regulations.gov/comment/EPA-HQ-OW-2019-0405-0556 ...................... 1, 2

EPA, Economic Analysis for the Clean Water Act Section 401 Certification Rule,
        Docket ID No. EPA-HQ-OW-2019-0405-1125 (May 2020) ...........................................14

EPA, EPA ICR No. 2603.02, ICR Supporting Statement, Information Collection Request for
        Updating Regulations on Water Quality Certification Proposed Rule,
        Docket ID No. EPA-HQ-OW-2019-0405-0070 (Aug. 2019) .............................................14

Nat'l Wildlife Fed'n, et al., Comments on Proposed Rule (Oct. 21, 2019),
        https://www.regulations.gov/comment/EPA-HQ-OW-2019-0405-0911 ...........................2

Nez Perce Tribe, Comments on Proposed Rule (Oct. 21, 2019),
        https://www.regulations.gov/comment/EPA-HQ-OW-2019-0405-0908 ...........................1

Pyramid Lake Paiute Tribe, Comments on Proposed Rule (Oct. 21, 2019),
        https://www.regulations.gov/comment/EPA-HQ-OW-2019-0405-0547 ...........................1

Sierra Club et al., Comments on Proposed Rule (Oct. 21, 2019),
        https://www.regulations.gov/comment/EPA-HQ-OW-2019-0405-0903 ...........................2

## OTHER AUTHORITIES

*Fact Sheet: List of Agency Actions for Review*, White House (Jan. 20, 2021),
https://www.whitehouse.gov/briefing-room/statements-releases/2021/01/20/fact-sheet
-list-of-agency-actions-for-review/ ....................................................................................3

Press Release, EPA, EPA Administrator Wheeler New York Post Op-Ed: Here's How Team
Trump Will Bust Cuomo's Gas Blockade (Aug. 16, 2019),
https://www.epa.gov/newsreleases/epa-administrator-wheeler-new-york-post-op-ed-
heres-how-team-trump-will-bust-cuomos-0 .................................................................2, 6

Press Release, EPA, EPA Issues Final Rule that Helps Ensure U.S. Energy Security and Limits
Misuse of the Clean Water Act (June 1, 2020), https://www.epa.gov/newsreleases/epa-
issues-final-rule-helps-ensure-us-energy-security-and-limits-misuse-clean-water-0.........2

## MEMORANDUM AND POINTS OF AUTHORITIES

Suquamish Tribe, Pyramid Lake Paiute Tribe, Orutsararmiut Native Council, Columbia Riverkeeper, and Sierra Club, (collectively, "Plaintiffs") by and through their counsel, respectfully request that the Court deny the motion for remand without vacatur filed by the United States Environmental Protection Agency and Michael S. Regan, in his official capacity as the Administrator of the United States Environmental Protection Agency (collectively, "EPA" or the "Agency"), on July 1, 2021, in the matter of EPA's Clean Water Act ("CWA") Section 401 Certification Rule.

Remand without vacatur is inappropriate in this case because it would leave a legally deficient regulation in effect until the spring of 2023 and perhaps longer, while EPA engages in a rulemaking to revise the rule. A failure to vacate would have real, negative consequences for Plaintiffs and the environment. Chiefly, this failure would result in certifications of projects in a manner that runs counter to Section 401's core purposes, including maintaining a system of cooperative federalism and safeguarding state and tribal water quality.

## BACKGROUND

On July 13, 2020, EPA published the *Clean Water Act Section 401 Certification Rule*, 85 Fed. Reg. 42,210 (to be codified at 40 C.F.R. pt. 121) ("Certification Rule"), upending a half century of regulatory practice under CWA Section 401, 33 U.S.C. § 1341. EPA promulgated the Certification Rule over the objections of myriad commenters, including Plaintiffs. Dozens of states and tribes across the country had argued that the proposed regulation upset the cooperative federalist principles at the heart of the CWA. *See, e.g.,* Att'ys Gen. of States of Wash., N.Y., Cal., et al., Comments on Proposed Rule 23–25 (Oct. 21, 2019), https://www.regulations.gov/comment/EPA-HQ-OW-2019-0405-0556 ("State AG Comments"); Pyramid Lake Paiute Tribe, Comments on Proposed Rule 3 (Oct. 21, 2019), https://www.regulations.gov/comment/EPA-HQ-OW-2019-0405-0547; Nez Perce Tribe, Comments on Proposed Rule 9 (Oct. 21, 2019), https://www.regulations.gov/comment/EPA-HQ-OW-2019-0405-0908. These certifying authorities were joined by citizens, nonprofit organizations, and other concerned parties who pointed to the tremendous harm the Certification Rule was likely to have on the public and the environment. *See, e.g.,* Sierra Club et al.,

Comments on Proposed Rule 1–2 (Oct. 21, 2019), https://www.regulations.gov/comment/EPA-HQ-OW-2019-0405-0903 ("Sierra Club Comments"); Am. Fisheries Soc'y et al., Comments on Proposed Rule 1–2 (Oct. 21, 2019), https://www.regulations.gov/comment/EPA-HQ-OW-2019-0405-0784; Nat'l Wildlife Fed'n, et al., Comments on Proposed Rule 6–8 (Oct. 21, 2019), https://www.regulations.gov/comment/EPA-HQ-OW-2019-0405-0911.

Many commenters objected to EPA's promulgation of the proposed rule on the grounds that the regulation would be contrary to the CWA's mandate to restore and protect the physical, chemical, and biological integrity of the Nation's waters and to do so as broadly as possible. *See, e.g.,* State AG Comments at 33; Sierra Club Comments at 2; *see also* 33 U.S.C. § 1251. Specifically, EPA engaged in the rulemaking pursuant to Executive Order ("EO") 13,868, titled *Promoting Energy Infrastructure and Energy Growth,* 84 Fed. Reg. 15,495, issued by former President Trump on April 10, 2019. *See* 84 Fed. Reg. at 44,081–82. That EO asserted that it was "the policy of the United States to promote private investment in the Nation's energy infrastructure" and instructed EPA to facilitate the construction of infrastructure to transport "supplies of coal, oil, and natural gas" to market. 84 Fed. Reg. at 15,495. Dispensing with any ambiguity about the intent underlying the rulemaking, former EPA Administrator Andrew Wheeler stated that "[b]y reining in states, the updated regulations in our proposal will streamline the approval for and construction of energy infrastructure projects."[1] He later complained that certifying authorities "have held our nation's energy infrastructure projects hostage."[2]

Plaintiffs filed their complaint against EPA requesting vacatur of the Certification Rule on September 1, 2020. Plaintiffs maintain that EPA's rulemaking was arbitrary, capricious, an abuse of discretion, and contrary to law because the Certification Rule violated the CWA, was promulgated without a satisfactory explanation for upending decades of policy and practice, was promulgated in

---

[1] Press Release, EPA, EPA Administrator Wheeler New York Post Op-Ed: Here's How Team Trump Will Bust Cuomo's Gas Blockade (Aug. 16, 2019), https://www.epa.gov/newsreleases/epa-administrator-wheeler-new-york-post-op-ed-heres-how-team-trump-will-bust-cuomos-0.

[2] Press Release, EPA, EPA Issues Final Rule that Helps Ensure U.S. Energy Security and Limits Misuse of the Clean Water Act (June 1, 2020), https://www.epa.gov/newsreleases/epa-issues-final-rule-helps-ensure-us-energy-security-and-limits-misuse-clean-water-0.

violation of EPA's own policies and procedures related to the Agency's responsibilities to tribes, and was promulgated without adequately analyzing how the rule would affect tribes and environmental justice communities. Suquamish Compl. ¶¶ 77–89. Across the country, various additional parties filed lawsuits challenging the Certification Rule. This Court consolidated Plaintiffs' case with others previously filed by several states and three additional environmental organizations ("Co-Plaintiffs").

On January 20, 2021, President Biden issued EO 13,990, *Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis*, which instructed agencies to review all existing regulations "that are or may be inconsistent with, or present obstacles to" enumerated environmental policies such as the promotion of "access to clean air and water." 86 Fed. Reg. 7037, 7037. President Biden used the opportunity to revoke EO 13,868, removing one of the primary justifications for the Certification Rule—an action that implied that the Trump administration's order to promote the construction of energy infrastructure was itself at odds with federal environmental policy. *See id.* at 7042. And in a press statement issued on the same day, the Biden administration specified that the Certification Rule would be reviewed in accordance with the new President's order. *Fact Sheet: List of Agency Actions for Review*, White House (Jan. 20, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/01/20/fact-sheet-list-of-agency-actions-for-review/.

After the issuance of EO 13,990, the cases against the Certification Rule were stayed. During this stay, EPA formally announced that it intended to redo the Certification Rule. In its Notice of Intention to Reconsider and Review the Clean Water Act Section 401 Certification Rule ("NIRR"), EPA itself pointed to multiple potential errors and deficiencies within the Certification Rule and stated that the agency intended to revise the regulation to address problems with the Certification Rule. *See* 86 Fed. Reg. 29,541 (June 2, 2021).

In the NIRR, EPA admitted the possibility that "portions of the rule impinge on" cooperative federalism principles that Congress envisioned as core to CWA Section 401. *Id.* at 29,542; *see also S.D. Warren Co. v. Me. Bd. of Env't Prot.*, 547 U.S. 370, 380 (2006) ("Section 401 recast pre-existing law and was meant to 'continu[e] the authority of the State . . . .'" (alterations in original) (quoting S. Rep. No. 92-414, at 69 (1971))). The Agency admitted to several ways in which the rule

as written could chip away at the powers Congress reserved for states and tribes. For example, EPA conceded that the Certification Rule may prevent states and tribes from gaining access to information necessary for Section 401 review before the certification process begins by "constrain[ing] what states and tribes can require in certification requests." 86 Fed. Reg. at 29,543. EPA also admitted that the Certification Rule may "not allow state and tribal authorities a sufficient role in setting the timeline for reviewing certification requests" and "that the rule's narrow scope of certification and conditions may prevent state and tribal authorities from adequately protecting their water quality." *Id*. The Agency also pointed to potentially serious problems with the Certification Rule's provision of excessive authority to federal agencies to permanently waive certification conditions based on "nonsubstantive and easily fixed procedural" grounds, as well as the prohibition on modifications of certifications. *Id*. at 29,543–44.

The NIRR further requested input on ten different topics: (1) pre-filing meeting requests, (2) certification requests, (3) the definition of a "reasonable period of time," (4) the scope of certification, (5) certification actions and federal agency review, (6) enforcement, (7) modifications to certifications, (8) the neighboring jurisdiction process, (9) impacts of the Certification Rule on the Section 401 process, and (10) implementation coordination, further noting EPA's concerns with many aspects of the Certification Rule. *Id.* at 29,541–44.

EPA expects to publish a proposed rule containing revisions in spring of 2022, but does not expect a final rule to go into effect until the spring of 2023. Goodin Decl., ECF No. 143-1, at ¶¶ 23, 27. In the meantime, to the detriment of Plaintiffs and in spite of EPA's manifold concerns with the Certification Rule as written, the Agency plans to keep the legally deficient regulation in effect. To this end, on July 1, 2021, EPA filed a Motion for Remand Without Vacatur, ECF No. 143 ("EPA Motion"), in this Court. If granted, any applications under Section 401 that have been submitted since the Certification Rule came into effect and any applications that are submitted before EPA finalizes a revised rule would be subject to the Certification Rule's invalid provisions, including those that EPA has noted may prevent state and tribal authorities from protecting water resources.

1

## ARGUMENT

2      The Court should deny EPA's request for voluntary remand and allow this case to proceed to

3 the merits, as doing so is in the interests of judicial economy and would avoid undue prejudice to the

4 Plaintiffs. In the alternative, the Court should remand to EPA and also vacate the legally invalid

5 Certification Rule.

6 **I.      The Court Should Deny EPA's Request for Voluntary Remand Without Vacatur.**

7      This Court should deny EPA's request for voluntary remand without vacatur because 1) EPA

8 is compelled by the CWA to revise the Certification Rule; 2) remand without vacatur would not be

9 in the interests of judicial and administrative economy; and 3) remand without vacatur would be

10 unduly prejudicial to Plaintiffs. The Certification Rule is arbitrary, capricious, an abuse of discretion,

11 and contrary to the CWA. EPA's proposal to delay a ruling on the merits will allow unknown

12 numbers of certification applications to be reviewed and decided under a rule that EPA itself admits

13 may have major deficiencies and run contrary to the CWA. Failure to resolve the question of the

14 Certification Rule's validity for 18 months or more will allow disagreements between certifying

15 authorities, federal agencies, and project proponents about the precise scope and meaning of CWA

16 Section 401 and the validity of the Certification Rule to persist for years. These ongoing disputes

17 over statutory meaning and regulatory validity will pave the way for more lawsuits as states and

18 tribes attempt to assert their authority during certification processes and federal licensing agencies or

19 applicants challenge their right to do so. The net result will be a waste of judicial resources and an

20 issuance of certifications with insufficient conditions to protect water quality.

21      Furthermore, keeping this deeply flawed regulation on the books for a prolonged period

22 prejudices the parties to this case who are navigating or will navigate Section 401 Certification

23 processes under the framework of the Certification Rule for the better part of the next two years.

24 Plaintiffs ask the Court to deny voluntary remand without vacatur.

25 **A.      The Court Should Deny Remand Without Vacatur Because the CWA Requires**
         **that EPA Revise the Certification Rule.**

26

27      Remand without vacatur is not appropriate here because EPA's request for remand arises out

28 of a change in agency policy or interpretation where there is "an issue as to whether the agency is

either compelled or forbidden by the governing statute to reach a different result." *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001).[3]

There is no question that EPA's decision to revise the Certification Rule is "associated with a change in agency policy or interpretation." *See id.* The Biden Administration rescinded the Trump administration EO 13,868, through which the Trump Administration directed EPA to promulgate a construction of CWA Section 401 that would facilitate the construction of infrastructure to transport "supplies of coal, oil, and natural gas" to market. *See* 84 Fed. Reg. at 15,495; 84 Fed. Reg. at 44,081–82.[4] EPA now interprets Section 401 under the Biden administration's environmental policies enshrined in EO 13,990, which order the agency to promote access to clean water. EPA Motion at 2, 10; Goodin Decl. ¶¶ 8, 9; *see also* 86 Fed. Reg. 7037.

The heart of this case is whether the Certification Rule is contrary to the CWA. Among the numerous provisions of the Certification Rule that are violative of the text of Section 401 are the provisions limiting the scope of an agency's review of applicants' activities, *see* 40 C.F.R. §§ 121.1(f), (n); 121.3; *PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*, 511 U.S.700, 707–13 (1994), and provisions that grant federal agencies authority to ignore state and tribal decisions to deny or condition certifications based on the failure to comply with newly created requirements found in the Certification Rule, *see* 40 C.F.R. § 121.9.

The Biden administration and EPA have raised questions akin to those raised by the Plaintiffs[5] as to whether the CWA forbids provisions of the Certification Rule. President Biden

---

[3] Courts in the 9th Circuit "generally look to the Federal Circuit's decision in *SKF USA* for guidance when reviewing requests for voluntary remand." Order Granting Req. for Voluntary Remand Without Vacatur, *N. Coast Rivers All. v. U.S. Dep't of the Interior*, No. 16-CV-00307, 2016 WL 8673038, at *3 (E.D. Cal. Dec. 16, 2016).

[4] *See also* Press Release, EPA, *supra* note 1.

[5] Plaintiffs raise statutory arguments against the rule in their complaint pointing out that the text and purpose of CWA Section 401 compels EPA to rescind the Certification Rule. Suquamish Compl. ¶¶ 77–81. Several of Plaintiffs' comments on the proposed version of the Certification Rule argue multiple points of statutory construction, including that EPA's narrowing of the scope of Section 401 review of applicant activities is not permitted by the CWA. Sierra Club Comments at 8–10 ("*PUD No. 1* . . . was plainly a *Chevron* step 1 decision, resting on the conclusion that the statutory text was unambiguous."); Suquamish Tribe, Comments on Proposed Rule 5–6 (Oct. 21, 2019), https://www.regulations.gov/comment/EPA-HQ-OW-2019-0405-0926.

ordered EPA to reconsider the Certification Rule in part out of concern that the previous

administration's regulations were inconsistent with the policy goal of "access to clean … water," a

primary objective of the CWA. 86 Fed. Reg. 7037; *see* 33 U.S.C. § 1251(a) (stating that the

objective of the CWA "is to restore and maintain the chemical, physical, and biological integrity of

the Nation's waters"). Likewise, EPA has stated that it intends to propose revisions to the

Certification Rule to make the regulation "consistent with the cooperative federalism principles

central to CWA section 401" and to "ensur[e] that states are empowered to protect their water

quality." Goodin Decl. ¶¶ 9, 11, 12, 14.

This case, therefore, clearly presents "an issue as to whether the agency is either compelled

or forbidden by the [CWA] to reach a different" interpretation of Section 401 than the one contained

in the Certification Rule, which provides this Court with good reason and authority to deny remand

in order "to decide the statutory issue." *See SKF USA*, 254 F.3d at 1029; *see also Util. Solid Waste*

*Activities Grp. v. EPA*, 901 F.3d 414, 436–37 (D.C. Cir. 2018) (declining to remand a claim that

"involve[d] a question—the scope of the EPA's statutory authority—that [was] intertwined with any

exercise of agency discretion going forward").

### B. Remand Without Vacatur Is Not in the Interests of Judicial and Administrative Economy.

The interest of judicial economy weighs against remanding this proceeding without vacatur.[6]

Indeed, granting EPA's motion would likely lead to more litigation and administrative burdens, not

fewer.

If the Certification Rule is remanded without vacatur, several Plaintiffs expect that they could

be or will be forced to engage in additional litigation that would not occur if the instant proceeding

were decided on the merits. At least one Plaintiff—a tribe with authority to adopt its own water

quality standards and issue Section 401 certifications—has expressed concerns that allowing the

---

[6] Even if remand without vacatur *would* promote judicial economy, that would not be sufficient reason for granting EPA's request. *See* Order for Supp. Briefing re Req. for Voluntary Remand, *N. Coast Rivers All. v. U.S. Dep't of the Interior*, No. 16-CV-00307, 2016 WL 11372492, at *3 (E.D. Cal. Sept. 23, 2016) (noting that, even if remand was in the interest of judicial economy, the "Court can identify no case among those cited by the parties or elsewhere that finds judicial and party efficiency to be sufficient standing alone").

1    Certification Rule to remain on the books between now and 2023 could force it to engage in

2    litigation over the validity of conditions or denials on Section 401 certifications for specific projects.

3    Morgan Decl. ¶¶ 19, 24, 25, 27. Should it occur, such litigation could take the form of a challenge to

4    federal agency attempts to use the Certification Rule to oppose certification decisions, or, more

5    likely, to defend against industry applicants that attempt to use the Certification Rule to invalidate

6    conditions or denials or to challenge a certifying agency's ability to exercise its Section 401

7    authority over a project. At least one additional Plaintiff will likely need to challenge state

8    certifications that rely on the illegal provisions in the Certification Rule as a basis for granting

9    certifications that will not fulfill the CWA's purpose of protecting water quality. Goldberg Decl. ¶¶

10   9, 17. EPA itself appears to be cognizant that such litigation may be forthcoming, noting that

11   Plaintiffs will "continue to have the option to challenge individual 401 certifications or federal

12   actions taken pursuant to the Certification Rule as they arise" in the prolonged period before the

13   Certification Rule is revised. EPA Motion at 12.

14          In addition, the continuation of this case is unlikely to have a substantial impact on EPA's

15   resources. The bulk of the responsibility for litigating this case (and therefore the bulk of the

16   expenditure of resources associated with the litigation) will fall on the Department of Justice, not

17   EPA. By contrast, as described further below, the administrative costs associated with Certification

18   Rule itself are quite high. *See infra* at I.C.

19          A decision on the merits in this case will help avoid a waste of administrative resources and

20   judicial resources over the longer term. The Court likely would issue its decision long before EPA's

21   2023 date for publishing a final rule and would provide greater clarity for ongoing and future

22   litigation where any party seeks to rely on the construction of Section 401 adopted in the

23   Certification Rule. The Court also has an opportunity to provide clarification and guidance to both

24   Plaintiffs and EPA regarding the meaning of Section 401, and whether or not the terms of the

25   provision are ambiguous, which will give EPA more direction in its reinterpretation of Section 401

26   during its forthcoming rulemaking. Alternatively, should the Court decide that the statute is

27   ambiguous and that the agency is owed deference, clarification regarding the statutory meaning of

28   Section 401 in this case may persuade the Plaintiffs to avoid re-litigating questions of statutory

construction in future cases. The best way to preserve judicial and administrative resources in both the short and long term is to decide this case on the merits expeditiously.

## C.   Remand Will Unduly Prejudice Plaintiffs.

Astonishingly, EPA acknowledges the problems that leaving the Certification Rule on the books for such a lengthy period of time will present to Plaintiffs, yet has offered nothing concrete to demonstrate that those likely and ongoing harms can or will be eliminated. Goodin Decl. ¶¶ 28–30 (stating that EPA "will *do what it can*" to address the adverse effects of leaving the Certification Rule on the books for a prolonged period and that "EPA's efforts *may mitigate* … potential harms" caused by agency partners and other stakeholders in their implementation of the Certification Rule) (emphasis added); *see Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1288 (D.C. Cir. 2000) (indicating that EPA's motion for voluntary remand to reconsider a rule was denied because "EPA made no offer to vacate the rule; thus EPA's proposal would have left petitioners subject to a rule they claimed was invalid").

Far from being "abstract" harms, Plaintiffs and Co-Plaintiffs have already incurred costs from the Certification Rule and face the prospect of even greater imminent or concrete injuries in the months to come. For example, among various other potential sources of injury caused by the Certification Rule, Plaintiff Pyramid Lake Paiute Tribe points to two specific projects for which certification is likely to be required before the spring of 2023. Morgan Decl. ¶¶ 21, 22, 27. There are specific conditions it would like to impose on potential grants of certification for these projects that might be invalid under the Certification Rule. *Id.* ¶¶ 21, 23–25, 27. For Pyramid Lake Paiute Tribe, the stakes of an inability to impose these conditions on certification are high.

The first project, the CEMEX Paiute Pit, is a mine that proposes to discharge pollutants into the Truckee River, which feeds into Pyramid Lake, a precious cultural resource for the Tribe. *Id.* ¶¶ 1, 9, 10, 12, 22, 24. The second project involves sediment removal from a sediment island formed on the Truckee River behind a federal dam that runs the risk of contaminating Pyramid Lake Paiute Tribe's waters with mercury and further sediment deposition. *Id.* ¶¶ 26, 27. In both cases, the Tribe is concerned that the Certification Rule's limitations on the scope of its review will prevent Tribal

administrators from addressing features of these projects that present risks to either the safety of Tribal members or the quality of the waters within the Reservation boundaries. *Id.* ¶¶ 23–25, 27.

Threats to the Tribe's water quality in turn place endangered and threatened wildlife within the Reservation in peril and risk revenue expenditures for the Tribal government. *Id.* ¶¶ 10, 11, 20, 23, 26, 27. For example, the Tribe states that, if the Certification Rule remains in force, it may be unable to stop contamination from projects requiring Construction General Permits which run the risk of depositing sediment "in the Truckee River delta and impair[ing] the spawning of the Lahontan Cutthroat Trout and cui-ui." *Id.* ¶¶ 18–20. Furthermore, the rule will result in administrative inefficiencies for Pyramid Lake Paiute Tribe, such as forcing administrative staff to divert more resources towards information gathering in order to ensure that administrative agencies have a complete application to review. *Id.* ¶¶ 14–17.

Plaintiff Columbia Riverkeeper has also identified two specific, environmentally harmful projects that are far more likely to be certified under Section 401 if the Certification Rule remains unaltered over the next two years. Goldberg Decl. ¶¶ 2, 7, 8, 16, 17. The first of these projects is the Middle Fork Irrigation District Project in Oregon, which would negatively impact the quality of Hood River Basin water and have ruinous consequences for the native bull trout population. *Id.* ¶¶ 3–9. The second project is the Goldendale Energy Storage Hydroelectric Project, which would permanently destroy sizeable portions of unique waterbodies, place wildlife in peril, and pose serious risks to sites of cultural significance to tribes. *Id.* ¶¶ 10–17. Riverkeeper stresses that "[i]f the Certification Rule is not overturned or revised as soon as possible the damage and disruptions that result to the waters, land, wildlife, and people along the Columbia River will be long lasting and in many cases irreversible." *Id.* ¶ 18.

Co-Plaintiffs also have attested to a number of ways that the rule will prejudice states across the country. For example, the pre-filing meeting request requirement is another example of an unnecessary administrative burden baked into the rule. *See* 40 C.F.R. § 121.4. That requirement will lead to inefficiencies by adding thirty days to the certification review process, even in cases where a more expeditious review would be in the interests of both the applicant and the certifying authority. States' Opp'n at II.A.3. Further, Co-Plaintiff States have also described how federal agencies'

exercise of newly claimed authority under the Certification Rule to veto and otherwise undermine state certifications has resulted in a flood of individual 401 certification requests, putting tremendous strain on administrative agencies at both the state and federal level. *Id.* at II.A.2.

EPA's proposes that Plaintiffs can mitigate this prejudice through piecemeal litigation against individual certifications. EPA Motion at 12. But this proposed remedy is completely inadequate. First, this proposal will likely force Plaintiffs to engage in more litigation, not less, which in turn will waste more of Plaintiffs' resources, prejudicing them further. *See supra* at I.B. Second, lawsuits against individual 401 certifications would run into challenges because those certifications are issued by states or tribes. Litigation against these certifications would normally have to occur in state or tribal court. Those courts would not have the authority to remedy the unlawful constraints of the Certification Rule. Furthermore, challenging the federal action authorizing the project would not suffice, because the federal agency authorizing the disputed project would likely argue that it is bound to honor the state's or tribe's certification and that plaintiffs cannot collaterally attack the Section 401 certification through a federal challenge to the federal permit. By contrast, this Court has the expertise and authority to grant an adequate remedy for the problems with the Certification Rule.

## II.     The Court Should Vacate the Rule Upon Remand.

If the Court decides to remand the Certification Rule, it must vacate the rule. This is, in part, because EPA has made no showing that "equity demands" remand without vacatur. *See Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995)). To the contrary, rather than being one of the "limited circumstances" when remand without vacatur is permissible, *see Cal. Cmties. Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012), here, the Certification Rule is marred by serious legal errors and the consequences of vacatur would be less disruptive than the consequences of leaving the rule unaltered. *See Pollinator Stewardship Council*, 806 F.3d at 532.

### A.     Serious Legal Errors Mar the Certification Rule.

EPA's certification rule contains both substantive and procedural errors, either of which provide sufficient grounds for vacatur. *See Cal. Cmties. Against Toxics*, 688 F.3d at 992–93. EPA's

Certification Rule runs afoul of the text of the CWA and its purpose to restore and protect the physical, chemical, and biological integrity of the Nation's waters, 33 U.S.C. § 1251, as well as the cooperative federalist framework that structures the Act, *see U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 633 (1992) (White, Blackmun, & Stevens, concurring in part), and Section 401, *see also S.D. Warren Co.*, 547 U.S. at 380. For example, the Certification Rule's provisions narrowing the scope of states' and tribes' review of the activities of project applicants contradict the Supreme Court's interpretation of the unambiguous statutory text of Section 401. *See* 40 C.F.R. §§ 121.1(f), (n); 121.3; s*ee also PUD No. 1 of Jefferson Cnty.*, 511 U.S. at 711–13 (interpreting the scope of review broadly). The Certification Rule also aggrandizes the role of federal agencies in the Section 401 process in manner wholly proscribed by the CWA, by providing them with the ability to ignore some state and tribal decisions and to limit the timing and scope of state and tribal requests for information from applicants. *See* 40 C.F.R. §§ 121.6–121.9; *see also City of Tacoma v. FERC*, 460 F. 3d 53, 67 (D.C. Cir. 2006) (noting that, on matters of substance, the federal agency's role is limited to waiting for the state or tribe's decision and deferring to it). In addition, the Certification Rule attempts to significantly limit the number and types of projects for which certification is required. *See* 40 C.F.R. §§ 121.1(f); 121.2.

EPA's promulgation of the Certification Rule was also rife with legal errors because (1) the agency failed to provide sufficient justification for departing from a half century of practice and policy related to the interpretation and implementation of Section 401; (2) it based its decision to do so on an EO aimed at promoting fossil fuel infrastructure, not clean water; and (3) EPA did not present any explanation for how the Certification Rule would be more protective of water quality. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

EPA now supports Plaintiffs' arguments that the Certification Rule suffers from serious legal errors. The Agency has identified many of the same legal mistakes as Plaintiffs related to such issues as the rule's implications for cooperative federalism, the scope of Section 401 review, and the authority of states and tribes to set timelines for section 401 review. 86 Fed. Reg. at 29,542–43; *see Cal. Cmties. Against Toxics*, 688 F.3d at 992–93 (indicating that an agency's acknowledgment of

legal errors can help to establish the seriousness of a legal error). In addition, the Biden

administration's rescission of EO 13,868, which mandated revision of EPA's interpretation of

Section 401 to help foster fossil fuel infrastructure projects, supports Plaintiffs' claims that the

Certification Rule was promulgated based on impermissible factors unrelated to water quality. *See*

86 Fed. Reg. at 7041.

EPA's characterization of these legal errors as "substantial concerns" rather than serious

violations of law is belied by the Agency's own statements. *See* 86 Fed. Reg. at 29,542–43. EPA has

expressed certainty that the rule must be revised for many of the same reasons that Plaintiffs point to.

EPA Motion at 5, 12 (stating that "EPA *will* draft new regulatory language" and that the agency

intends to address Plaintiffs' concerns on remand) (emphasis added); Goodin Decl. ¶¶ 9, 11 (stating

that EPA "*will* . . . propose revisions to the rule" and that the agency "*intends* to . . . revise the

Certification Rule . . . consistent with the cooperative federalism principles central to CWA section

401") (emphasis added). This point is crucial: in assessing the seriousness of a legal error, the Court

must consider whether or not the rule is likely to remain the same after the agency supplements its

reasoning, or whether "such fundamental flaws in the agency's decision make it unlikely that the

same rule would be adopted on remand." *Pollinator Stewardship Council*, 806 F.3d at 532.[7] Here,

the agency has admitted that there is no chance the same rule will be promulgated following remand,

meaning that it should be vacated if remand is granted.

In summary, the Certification Rule is marred by serious violations of the CWA and

Administrative Procedure Act. This Court should not allow a rule that is contrary to law and

arbitrary and capricious to remain in force for years.

---

[7] Plaintiffs contend that EPA's concessions about the errors in the rule combined with the flaws on the face of the rule are sufficient to hold the rule invalid and immediately vacate it. *See Cal. Communities Against Toxics*, 688 F.3d at 993 (holding rule invalid based on EPA's concessions as confirmed by the record). Should this Court rule otherwise, Plaintiffs reserve their right to argue for the invalidity of the rule through a fully developed motion for summary judgment in this proceeding in accordance with a schedule set by the court and in forthcoming proceedings.

1

**B.      Vacatur of the Certification Rule Is the Less Disruptive Option.**

2       The Court should vacate the Certification Rule upon remand to avoid disruption and return to

3   the status quo ante. *See Pollinator Stewardship Council*, 806 F.3d at 532 (vacating an agency action

4   that was itself disruptive). The Section 401 regulations and guidance in effect prior to the

5   promulgation of the rule worked well, allowing most applications for certification filed each year to

6   be processed promptly. According to EPA's own documents, from 2013 to 2018, an average of

7   4,266 individual and 58,766 general federal permits requiring Section 401 certification were issued

8   per year. EPA, EPA ICR No. 2603.02, ICR Supporting Statement, Information Collection Request

9   for Updating Regulations on Water Quality Certification Proposed Rule, Docket ID No. EPA-HQ-

10  OW-2019-0405-0070, at 8 (Aug. 2019). As recently as 2019, EPA conceded that denials of permits

11  under Section 401 were "uncommon" and that decisions on certification requests typically occurred

12  within the period of time contemplated by Congress. EPA, Economic Analysis for the Clean Water

13  Act Section 401 Certification Rule, Docket ID No. EPA-HQ-OW-2019-0405-1125, at 15 (May

14  2020). Delays in processing Section 401 applications most commonly occurred because of

15  "incomplete certification requests." *Id.*

16      Even if EPA could somehow demonstrate that vacating the rule would lead to serious

17  disruptions, which it cannot, that evidentiary showing alone would not be a sufficient basis for

18  keeping a legally invalid rule on the books. *See Se. Alaska Conservation Council v. U.S. Forest*

19  *Serv.*, 468 F. Supp. 3d 1148, 1155 (D. Alaska 2020) (finding that although vacatur would cause

20  economic harm to the timber industry, that harm was "not so disruptive and irremediable so as to

21  cause the Court to depart from the APA's normal remedy of vacatur"); *Nat'l Family Farm Coal. v.*

22  *EPA*, 960 F.3d 1120, 1144–45 (9th Cir. 2020) (vacating an agency action, even though doing so

23  would result in significantly costly consequences for farmers, because it was characterized by

24  "multiple" legal errors). EPA would need to demonstrate that the disruptive consequences of vacatur

25  are massive—so much so that they outweigh both the major legal errors contained in the

26  Certification Rule and the disruptive consequences of failing to vacate the rule. *Compare Nat'l Fam.*

27  *Farm Coal.*, 960 F.3d at 1144–45 (ordering vacatur despite disruptive consequences where the

28  agency action was characterized by "multiple errors" and "fundamental flaws"), *and Pollinator*

1  *Stewardship Council*, 806 F.3d at 532 (ordering vacatur where failing to do so would threaten bee

2  populations and "risk more potential environmental harm than vacating it") *with Cal. Cmties.*

3  *Against Toxics*, 688 F.3d at 993–94 (denying vacatur where vacatur would delay the construction of

4  a power plant which would result in blackouts, create air pollution, place at risk a billion-dollar

5  investment and hundreds of jobs, and necessitate the passage of new state legislation). The agency

6  cannot make this showing. Vacatur of the Certification Rule certainly will not have consequences on

7  par with the type of enormous and irremediable social, environmental, and economic disruptions that

8  the Ninth Circuit has concluded prohibit vacatur. *See Cal. Cmties. Against Toxics*, 688 F.3d at 993–

9  94.

10        Indeed, as in *Pollinator Stewardship Council*, here harm, and particularly harm to the

11  environment, would be caused by a failure to vacate the Certification Rule. *See* 806 F.3d at 532

12  (vacating an EPA action on the grounds that a failure to do so would place populations of bees at

13  risk). Just as in *Pollinator Stewardship Council*, Plaintiffs have identified endangered and threatened

14  species of fish that they are concerned would be placed at risk between now and the spring of 2023

15  by a failure to vacate the Certification Rule. Morgan Decl. ¶¶ 10, 20, 23, 26, 27; Goldberg Decl. ¶¶

16  4, 7. They have also identified other types of environmental harms tied to projects slated for Section

17  401 review between now and the spring of 2023. These imminent environmental harms include

18  threats to air quality, water bodies, and the aesthetic character of affected areas. *See, e.g.*, Morgan

19  Decl. ¶ 25; Goldberg Decl. ¶¶ 6, 12, 15. And much of this harm, should it occur, would be

20  irreparable. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987) ("Environmental

21  injury, by its nature … is often permanent or at least of long duration, *i.e.*, irreparable.").

22        The Certification Rule also places unique cultural resources of tribes at risk. *See, e.g.,*

23  Goldberg Decl. ¶ 14 (discussing threats to the Confederated Tribes and Bands of the Yakama

24  Nation). For instance, Pyramid Lake Paiute Tribe has explained how keeping the Certification Rule

25  in effect could result in pollution to Pyramid Lake, an irreplaceable cultural resource for the Tribe.

26  Morgan Decl. ¶¶ 1, 9, 10, 20, 24, 26, 27. The Tribe also relies on the health of Pyramid Lake for

27  revenue from its fishing and recreational industries. *Id.* ¶ 11.

28

In addition, Pyramid Lake Paiute Tribe has described how the Certification Rule would create obstacles to routine Section 401 reviews of Construction General Permits. *Id.* ¶¶ 18–20. The Tribe notes that the regulation would cause a significant resource strain on their already-taxed staff by upending the Tribe's standard practices and procedures for information-gathering for all Section 401 certification reviews for projects affecting the waters of the Pyramid Lake Reservation. *Id.* ¶¶ 13–17.

These significant disruptions to Plaintiffs represent a small sampling of the nationwide chaos unleashed by the Certification Rule. *See, e.g.*, States' Opp'n at II.A.2. For example, as Co-Plaintiffs demonstrate in their papers, the Army Corps of Engineers has relied on the Certification Rule to reject the certification decisions and conditions of many states for sixteen nationwide CWA permits related to "oil and gas pipelines, surface coal mining, residential development, and various aquaculture activities." *Id.* Absent vacatur of the rule, this federal override of state Section 401 authority has led and will continue to lead to substantially increased administrative burdens on both state agencies and the Corps for years, along with harms that can be expected to result from additional obstacles to the efficient environmental regulation of these important areas of the economy. *Id.*

The magnitude of the legal errors contained in the regulation and the severity of the disruptions that would be caused by failing to vacate the rule far outweigh the magnitude of the disruption caused by nullifying the Certification Rule. The damage caused by leaving an illegal rule in effect for at least eighteen months will be significant and include the precise harms to water quality that the CWA was designed to avoid. EPA has not made the showing necessary to justify having a large number of projects reviewed under the unlawful regime created by the Certification Rule or expending the judicial and administration resources necessary to attempt to ensure that those certification processes comply with the CWA as Congress intended. The Court should deny EPA's motion to remand without vacatur.

## **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully ask the Court to deny EPA's motion for remand without vacatur, or, in the alternative, only grant EPA's motion for remand if the Court vacates the Certification Rule.


DATED: July 26, 2021                              Respectfully submitted,


                                        /s/ *Moneen Nasmith*
                                        MONEEN NASMITH (NY Bar # 4427704)
                                        *[Admitted Pro Hac Vice]*
                                        MICHAEL YOUHANA (NY Bar # 5819032)
                                        *[Admitted Pro Hac Vice]*
                                        Earthjustice
                                        48 Wall Street, 15th Floor
                                        New York, NY 10005
                                        (212) 845-7384 / (212) 284-8033
                                        mnasmith@earthjustice.org
                                        myouhana@earthjustice.org

                                        KRISTEN L. BOYLES (CA Bar #158450)
                                        Earthjustice
                                        810 Third Avenue, Suite 610
                                        Seattle, WA  98104
                                        (206) 343-7340
                                        kboyles@earthjustice.org

                                        GUSSIE LORD (DC Bar # 1009826)
                                        *[Admitted Pro Hac Vice]*
                                        Earthjustice
                                        633 17th Street, Suite 1600
                                        Denver, CO 80202
                                        (720) 402-3764
                                        glord@earthjustice.org

                                        THOMAS S. WALDO (AK Bar # 9007047)
                                        *[Admitted Pro Hac Vice]*
                                        OLIVIA GLASSCOCK (AK Bar # 1809072)
                                        *[Admitted Pro Hac Vice]*
                                        Earthjustice
                                        325 4th Street
                                        Juneau, AK 99801
                                        (907) 500-7123 / (907) 500-7134
                                        twaldo@earthjustice.org
                                        oglasscock@earthjustice.org

                                        *Attorneys for Plaintiffs*

NATHAN MATTHEWS (CA Bar #264248)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5695
nathan.matthews@sierraclub.org

*Local Counsel and Attorney for Sierra Club*

Opp'n to EPA's Mot. for Remand Without Vacatur (3:20-cv-04636-WHA and consolidated cases)