Andrew Hawley (CA Bar No. 229274)
Western Environmental Law Center
1402 3rd Avenue, Ste. 1022
Seattle, Washington 98101
hawley@westernlaw.org
Tel: 206-487-7250

Jason R. Flanders (CA Bar No. 238007)
Aqua Terra Aeris Law Group
4030 Martin Luther King Jr. Way
Oakland, California 94609
jrf@atalawgroup.com
Tel: 916-202-3018

Peter M. K. Frost, *pro hac vice*
Sangye Ince-Johannsen, *pro hac vice*
Western Environmental Law Center
120 Shelton McMurphey Boulevard, Ste. 340
Eugene, Oregon 97401
frost@westernlaw.org
sangyeij@westernlaw.org
Tel: 541-359-3238 / 541-778-6626

*Attorneys for Plaintiffs American Rivers,*
*American Whitewater, California Trout, Idaho Rivers United*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| In re | Case No. 3:20-cv-04636-WHA |
|---|---|
| Clean Water Act Rulemaking | No. 3:20-cv-04869-WHA |
| | No. 3:20-cv-06137-WHA |
| | (consolidated) |
| | **AMERICAN RIVERS' OPPOSITION TO EPA'S MOTION FOR REMAND WITHOUT VACATUR** |
| | Courtroom: 12, 19th Floor |
| | Date: August 26, 2021 |
| | Time: 12:00 P.M. (via telephone) |

TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................2

    A.  The Court should order *vacatur*, because EPA has not met its burden of demonstrating that remand without vacatur is warranted. ..........................................................2

        1.  The seriousness of the 2020 Rule's errors requires vacatur. .......................................4

            a.  The 2020 Rule unlawfully limits the scope of Section 401 certification................5

            b.  The 2020 Rule unlawfully constrains and interferes with state certification procedures. ..................................................................................7

            c.  The 2020 Rule unlawfully empowers federal agencies to review, and overturn, certification decisions. ...................................................................9

        2.  Granting remand *without* vacatur and leaving the 2020 Rule in effect would have disruptive consequences across the nation. ...................................................10

    B.  In the alternative, the Court should deny EPA's motion for remand. ...............................15

        1.  Remand is not appropriate because EPA has not demonstrated its commitment to a changed approach. ..................................................................15

        2.  Granting EPA's motion would deprive American Rivers of its right to judicial review. ..................................................................17

CONCLUSION .................................................................................................................18

i

# TABLE OF AUTHORITIES

**Cases**

### United States Supreme Court

*Artis v. District of Columbia*,
   138 S. Ct. 594 (2018)........................................................................................7

*Colo. River Water Cons. Dist. v. United States*,
   424 U.S. 800 (1976)........................................................................................18

*Landis v. N. American Co.*,
   299 U.S. 248 (1936)...................................................................................17, 18

*Marx v. Gen. Revenue Corp.*,
   568 U.S. 371 (2013)........................................................................................7

*PUD No. 1 of Jefferson Cty. v. Washington Dep't of Ecology*,
   511 U.S. 700 (1994).....................................................................................5, 6

*S.D. Warren Co. v. Maine Bd. of Envtl. Prot.*,
   547 U.S. 370 (2006)...................................................................................4, 7, 8

### United States Courts of Appeals

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
   988 F.2d 146 (D.C. Cir. 1993)....................................................................3, 4

*Am. Rivers, Inc. v. F.E.R.C.*,
   129 F.3d 99 (2d Cir. 1997)...........................................................................10

*Appalachian Voices v. State Water Control Bd.*,
   912 F.3d 746 (4th Cir. 2019)..........................................................................8

*Cal. Cmties. Against Toxics v. EPA*,
   688 F.3d 989 (9th Cir. 2012)..............................................................3, 14, 15

*Cal. Wilderness Coal. v. U.S. Dep't of Energy*,
   631 F.3d 1072 (9th Cir. 2011).........................................................................9

*Cannon v. District of Columbia*,
   717 F.3d 200 (D.C. Cir. 2013)......................................................................12

*Chlorine Chemistry Council v. EPA*,
   206 F.3d 1286 (D.C. Cir. 2000).................................................................15, 16

*City of Fredericksburg v. F.E.R.C.*,
   876 F.2d 1109 (4th Cir. 1989).........................................................................8

*City of Tacoma v. F.E.R.C.*,
   460 F.3d 53 (D.C. Cir. 2006)....................................................................6, 10

*Friends of the Earth v. Hintz,*
    800 F.2d 822 (9th Cir. 1986) ........................................................................14

*Hearns v. San Bernardino Police Dep't,*
    530 F.3d 1124 (9th Cir. 2008) ....................................................................17

*Humane Soc'y v. Locke,*
    626 F.3d 1040 (9th Cir. 2010) ......................................................................2

*Idaho Farm Bureau v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) ..............................................................4, 5, 14

*Keating v. F.E.R.C.,*
    927 F.2d 616 (D.C. Cir. 1991) .....................................................................4

*Lutheran Church-Missouri Synod v. FCC,*
    141 F.3d 344 (D.C. Cir. 1998) ...................................................................16

*Meeropol v. Meese,*
    790 F.2d 942 (D.C. Cir. 1986) ...................................................................16

*Nat'l Family Farm Coal. v. EPA,*
    960 F.3d 1120 (9th Cir. 2020) ....................................................................10

*North Carolina v. EPA,*
    531 F.3d 896 (D.C. Cir. 2008) .....................................................................5

*Nw. Envtl. Advocates v. EPA,*
    537 F.3d 1006 (9th Cir. 2008) ...................................................................8, 9

*Pagtalunan v. Galaza,*
    291 F.3d 639 (9th Cir. 2002) .....................................................................17

*Paulsen v. Daniels,*
    413 F.3d 999 (9th Cir. 2005) ..................................................................10, 14

*Pollinator Stewardship Council v. EPA,*
    806 F.3d 520 (9th Cir. 2015) ....................................................................2, 4

*Sierra Club v. U.S. Army Corps of Eng'rs,*
    909 F.3d 635 (4th Cir. 2018) .........................................................4, 13, 14, 17

*SKF USA Inc. v. United States,*
    254 F.3d 1022 (Fed. Cir. 2001) ..................................................................15

*Sugar Cane Growers Coop. of Fla. v. Veneman,*
    289 F.3d 89 (D.C. Cir. 2002) .....................................................................10

*United States v. Marathon Dev. Corp.,*
    867 F.2d 96 (1st Cir. 1989) ..........................................................................6

*Util. Solid Waste Activities Grp. v. EPA,*
    901 F.3d 414 (D.C. Cir. 2018) ...............................................................15, 17

*W. Oil & Gas Ass'n v. EPA*,
    633 F.2d 803 (9th Cir. 1980) ..............................................................15

**United States District Courts**

*All. for the Wild Rockies v. Marten*,
    No. CV 17-21-M-DLC, 2018 WL 2943251 (D. Mont. June 12, 2018).........................2, 3

*ASSE Int'l, Inc. v. Kerry*,
    182 F. Supp. 3d 1059 (C.D. Cal. 2016) ....................................................3, 14

*Ctr. for Envtl. Health v. Vilsack*,
    No. 15-cv-01690-JSC, 2016 WL 3383954 (N.D. Cal. June 20, 2016)..............................3

*Ctr. for Native Ecosystems v. Salazar*,
    795 F. Supp. 2d 1236 (D. Colo. 2011) ......................................................3

*Little Lagoon Pres. Soc., Inc. v. U.S. Army Corps of Eng'rs*,
    No. CIV.A. 06-0587-WS-C, 2008 WL 4080216 (S.D. Ala. Aug. 29, 2008)....................14

*Nat. Res. Def. Council v. McCarthy*,
    No. 16-cv-02184-JST, 2016 WL 6520170 (N.D. Cal. Nov. 3, 2016).............................12

*Nat. Res. Def. Council v. Norton*,
    No. 1:05-cv-01207-OWW-LJO, 2007 WL 14283 (E.D. Cal. Jan. 3, 2007) ....................17

*N. Coast Rivers All. v. U.S. Dep't of Interior*,
    No. 1:16-cv-00307-LJO-MJS, 2016 WL 11372492 (E.D. Cal. Sept. 23, 2016) .........15, 16

*United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*,
    No. C–09–4029 EMC, 2011 WL 3607790 (N.D. Cal. Aug. 16, 2011) ..........................15

*W. Watersheds Project v. Zinke*,
    441 F. Supp. 3d 1042 (D. Idaho 2020) .......................................................3

**State Courts**

*Arnold Irrigation Dist. v. Dep't of Envtl. Quality*,
    717 P.2d 1274 (Or. Ct. App. 1986)..........................................................6

*Bldg. Indus. Ass'n of San Diego Cty. v. State Water Res. Control Bd.*,
    22 Cal. Rptr. 3d 128 (Cal. Ct. App. 2004) ..................................................13

*Dep't of Ecology v. PUD No. 1 of Jefferson Cty.*,
    849 P.2d 646 (Wash. 1993)..................................................................6

*In re Morrisville Hydroelectric Project Water Quality*,
    224 A.3d 473 (Vt. 2019) ....................................................................6

*Port of Seattle v. Pollution Control Hearings Bd.*,
    90 P.3d 659 (Wash. 2004)................................................................12, 13

**Federal Statutes**

5 U.S.C. § 702 ..................................................................................................18

5 U.S.C. § 704 ..................................................................................................18

5 U.S.C. § 706(2) .............................................................................................18

33 U.S.C. § 1251(a) ..........................................................................................14

33 U.S.C. § 1251(b) ...........................................................................................8

33 U.S.C. § 1341(a)(1) ............................................................................. *passim*

33 U.S.C. § 1341(d) ...............................................................................5, 6, 7, 10

**Federal Rules and Regulations**

33 C.F.R. § 320.4(d) .........................................................................................13

40 C.F.R. § 121.1(f) ............................................................................................5

40 C.F.R. § 121.1(n) ...........................................................................................7

40 C.F.R. § 121.3 ............................................................................................5, 6

40 C.F.R. § 121.4 ................................................................................................8

40 C.F.R. § 121.5 ................................................................................................8

40 C.F.R. § 121.6 ................................................................................................8

40 C.F.R. § 121.9(a)(2) .......................................................................................9

40 C.F.R. § 121.9(b) ..........................................................................................11

40 C.F.R. § 121.10(a) ..........................................................................................9

*Clean Water Act Section 401 Certification Rule*,
    85 Fed. Reg. 42,210 (July 13, 2020) ....................................................1, 6, 16

*Notice of Intention to Reconsider and Revise the Clean Water Act Section 401 Certification Rule*,
    86 Fed. Reg. 29,542 (June 2, 2021) ............................................... *passim*

**Miscellaneous**

*A Legislative History of the Water Pollution Control Act Amendments of 1972*,
    U.S. GPO No. 93-1 (Jan. 1973) .........................................................9, 10

Executive Order 13,868: *Promoting Energy Infrastructure and Energy Growth*,
    84 Fed. Reg. 15,495 (April 10, 2019) ...................................................11

1

**INTRODUCTION**

2       Plaintiffs American Rivers, American Whitewater, California Trout, and Idaho Rivers

3   United ("American Rivers") hereby respectfully oppose the motion for remand without vacatur

4   of the *Clean Water Act Section 401 Certification Rule*, 85 Fed. Reg. 42,210 (July 13, 2020)

5   ("2020 Rule"), filed by Defendants U.S. Environmental Protection Agency and Michael S.

6   Regan (collectively "EPA"). Dkt. No. 143. American Rivers has challenged EPA's unlawful rule

7   2020 Rule because it impinges on the authority of states, tribes, and the public to protect their

8   rivers, lakes, wetlands, and coastal waters, sensitive fish and habitat, and the communities that

9   rely on healthy, functioning ecosystems. EPA promulgated the 2020 Rule under the guise of

10  streamlining processes for state and tribal certification under Section 401 of the Clean Water

11  Act, but went much further than that. The 2020 Rule unlawfully narrows the applicability of

12  Section 401; circumscribes the scope of review of the certifying state or tribe; limits the

13  information on the proposed federal project made available to states and tribes to inform their

14  decision whether to issue certification; restricts the conditions states and tribes may impose to

15  ensure requirements of state or tribal law are met, and; empowers the federal licensing or

16  permitting agency to effectively overrule a state or tribal determination of whether state or tribal

17  laws are met.

18      EPA essentially admits as much, acknowledging "substantial concerns" that the 2020

19  Rule does not comply with Section 401 and the principles of cooperative federalism

20  undergirding it—*see Notice of Intention to Reconsider and Revise the Clean Water Act Section*

21  *401 Certification Rule*, 86 Fed. Reg. 29,542 (June 2, 2021); *and* Dkt. No. 143 at 2[1]—as well as

22  the need to "restore the balance of state, Tribal, and federal authorities" through a new rule, Dkt.

23  No. 141 at 3. And yet, EPA asks the Court to dismiss all plaintiffs' complaints with prejudice,

24  Dkt. No. 143-2, while leaving the 2020 Rule in place for at least 19 more months, Dkt. No. 143-1

25  at 7, with no guarantee of a new rule by any date certain, no promise of a different rule after

26

27

28  [1]   Here and throughout, American Rivers uses internal pagination and not ECF pagination.

1    rulemaking is complete, and no way for any of the plaintiffs to reopen their cases should EPA

2    fail to comply with its suggested schedule.

3        In the meantime, projects continue to move forward under the illegal 2020 Rule, leaving

4    states and tribes between a rock and a hard place: follow the 2020 Rule and give up the ability to

5    halt or condition projects in order to protect local communities, waters, and wildlife, or disregard

6    the 2020 Rule and face lawsuits from its industry proponents and a potential veto any

7    certification by the federal licensing agency. The uncertain and likely divergent way states and

8    tribes navigate this dilemma not only creates far greater regulatory confusion than ever existed

9    before the 2020 Rule and unnecessarily opens the door to untold numbers of cases burdening

10   state and federal courts, but also causes concrete and substantial harm to American Rivers'

11   mission advocacy and its members' interests in enjoying and preserving clean waters nationwide.

12       Because EPA fails to satisfy the standards for a voluntary remand without vacatur, the

13   Court should order remand *with* vacatur. In the alternative, the Court should deny EPA's motion

14   altogether if remand with vacatur is not warranted, so that this litigation may proceed. Either

15   way, the unlawful 2020 Rule should not remain in effect indefinitely while EPA revisits it.

16                                        **ARGUMENT**

17   **A.    The Court should order vacatur, because EPA has not met its burden of
18          demonstrating that remand without vacatur is warranted.**

19       The Ninth Circuit has held that vacatur of an agency action ordinarily accompanies

20   remand of that action to the agency. *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532

21   (9th Cir. 2015) (courts grant remand without vacatur leaving the remanded rule in place only in

22   "limited circumstances," and "only 'when equity demands' that we do so") (internal quotations

23   and citations omitted)). The exception to this rule arises only in "rare circumstances" where it is

24   "advisable that the agency action remain in force until the action can be reconsidered or

25   replaced[.]" *Humane Soc'y v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010). Where an agency

26   requests voluntary remand without vacatur but fails to show that vacatur is not warranted, courts

27   may grant the motion in part, and order remand with vacatur. *See, e.g., All. for the Wild Rockies*

28   *v. Marten*, No. CV 17-21-M-DLC, 2018 WL 2943251, *4 (D. Mont. June 12, 2018) (granting in

part and denying in part agency's motion for remand without vacatur, and vacating the decision because the case did not "present the exceptional circumstance where 'equity demands' that the Court exercise judicial restraint by declining to vacate the [challenged action] upon remand.").

The Ninth Circuit has adopted a two-factor test for determining when to remand without vacatur. *Cal. Cmties. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (adopting the test from *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). Under the *Allied-Signal* test, whether remand without vacatur is warranted depends on (1) "how serious the agency's errors are," and (2) "the disruptive consequences of an interim change that may itself be changed." *Id.* (quoting *Allied-Signal*, 988 F.2d at 150–51). This equitable balancing test applies equally where the agency has requested voluntary remand and the court has not yet ruled on the merits. *ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1064 (C.D. Cal. 2016) ("Courts faced with a motion for voluntary remand employ 'the same equitable analysis' courts use to decide whether to vacate agency action after a "rul[ing] on the merits.'") (quoting *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136, 1143 (C.D. Cal. 2002)); *see also Ctr. for Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1241–42 (D. Colo. 2011) (because "[v]acatur is an equitable remedy . . . and the decision whether to grant vacatur is entrusted to the district court's discretion . . . vacation of an agency action without an express determination on the merits is well within the bounds of traditional equity jurisdiction.") (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1139 (10th Cir. 2010)).

The agency defendant bears the burden of showing "that compelling equities demand anything less than vacatur." *W. Watersheds Project v. Zinke*, 441 F. Supp. 3d 1042, 1083 (D. Idaho 2020); *see also Ctr. for Envtl. Health v. Vilsack*, No. 15-cv-01690-JSC, 2016 WL 3383954, *13 (N.D. Cal. June 20, 2016) ("given that vacatur is the presumptive remedy . . . it is Defendants' burden to show that vacatur is unwarranted."). Here, EPA has failed even to address the *Allied-Signal* factors, and falls short of meeting its burden. Rather, both factors weigh in favor of the ordinary remedy of remand with vacatur.

**1.      The seriousness of the 2020 Rule's errors requires vacatur.**

Under the Clean Water Act, the States are "the 'prime bulwark in the effort to abate water pollution,' and Congress expressly empowered them to impose and enforce water quality standards that are more stringent than those required by federal law." *Keating v. F.E.R.C.*, 927 F.2d 616, 622 (D.C. Cir. 1991) (quoting *United States v. Puerto Rico*, 721 F.2d 832, 838 (1st Cir. 1983)). Thus, when enacting the Clean Water Act Congress expressly sought "to recognize, preserve, and *protect the primary responsibilities and rights of States* to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources." *Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 647 (4th Cir. 2018) (quoting 33 U.S.C. § 1251(b), emphasis original). A central pillar of this authority is the requirement that "[a]ny applicant for a Federal license or permit to conduct any activity" that "may result in any discharge into the navigable waters" must "provide the licensing or permitting agency a certification from the State" that "any such discharge will comply" with applicable water quality requirements. 33 U.S.C. § 1341(a)(1). "No license or permit shall be granted if the certification has been denied by the State[.]" *Id.* The 401 certification process is "essential in the scheme to preserve state authority to address the broad range of pollution[.]" *S.D. Warren Co. v. Maine Bd. of Envtl. Prot.,* 547 U.S. 370, 386 (2006). The certification requirement ensures that "'[n]o polluter will be able to hide behind a Federal license or permit as an excuse for a violation of water quality standard[s].'" *Id.* (quoting 116 Cong. Rec. 8984 (1970) (Sen. Muskie)).

In assessing the seriousness of error under the first *Allied-Signal* factor, courts look to "whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand[.]" *Pollinator*, 806 F.3d at 532; *see Allied-Signal*, 988 F.2d at 151 (declining to vacate where there is a "serious possibility that the [agency would] be able to substantiate its decision on remand.").

The flaws in the 2020 Rule are not the kind of mere procedural rulemaking slip-ups that, once corrected, would allow EPA to make the same decision on remand. *See Idaho Farm Bureau*

*v. Babbitt*, 58 F.3d 1392, 1405–06 (9th Cir. 1995) (federal agency's procedural error in not providing public with opportunity to review provisional report before comment period's close was unlikely to alter agency's final decision). Rather, fundamental substantive flaws in the 2020 Rule will necessarily prevent EPA from promulgating the same rule on remand. *See North Carolina v. EPA*, 531 F.3d 896, 930 (D.C. Cir. 2008) (EPA rule "must" be vacated where "fundamental flaws" prevent EPA from promulgating same rule following remand). As established below, EPA acted contrary to the text, structure, and intent of the Clean Water Act, and exceeded its statutory authority, when it placed limits on state and tribal authority under Section 401.

> a.   **The 2020 Rule unlawfully limits the scope of Section 401 certification.**

The narrow scope of review for 401 certifications permitted under the 2020 Rule is inconsistent with the Clean Water Act. Under the regulations, the "scope of a Clean Water Act section 401 certification is limited to assuring that a discharge from a Federally licensed or permitted activity will comply with water quality requirements." 40 C.F.R. § 121.3. However, the definitions EPA has provided for what is a "discharge" and what are "water quality requirements" bear little resemblance to how the Clean Water Act defines those terms.

To begin with, the 2020 Rule limits a certifying authority's review to water quality impacts to only "point source" discharges. *See* 40 C.F.R. § 121.1(f) (defining "discharge" to mean "a discharge from a point source into a water of the United States."). In doing so, this provision disregards the plain language of the statute, as well as binding Supreme Court precedent. *PUD No. 1 of Jefferson Cty. v. Washington Dep't of Ecology*, 511 U.S. 700 (1994). Section 401(a)(1) requires that "the State in which the discharge originates or will originate" certify that "any such discharge will comply with the applicable provisions of" specified sections of the Clean Water Act. 33 U.S.C. § 1341(a)(1). In turn, Section 401(d) allows the certifying authority to impose conditions in order "to assure that any applicant for a Federal license or permit will comply" with applicable provisions of the Clean Water Act and "any other appropriate requirement" of state or tribal law. 33 U.S.C. § 1341(d). These two provisions establish plainly that "additional conditions and limitations" may be imposed "on the activity as

a whole once the threshold condition, the existence of a discharge, is satisfied." *PUD No. 1*, 511 U.S. at 712.

However, contrary to the statute's plain meaning, and the Supreme Court's explanation in *PUD No. 1*, the 2020 Rule narrows the scope of state and tribal review under Section 401(a), and the range of conditions they may impose under Section 401(d), to the potential environmental impacts from any point source discharges associated with the project. 40 C.F.R. § 121.3. Tellingly, in the preamble to the 2020 Rule, EPA acknowledges its interpretation goes against the Supreme Court's construction in *PUD No. 1*. 85 Fed. Reg. 42,231 (instead adopting the logic of Justice Thomas's dissent).[2] And EPA now admits in its notice that "the rule's narrow scope of certification and conditions may prevent state and tribal authorities from adequately protecting their water quality," and asks "whether the agency should revise its interpretation of scope to include potential impacts to water quality not only from the 'discharge' but also from the 'activity as a whole' consistent with Supreme Court case law." 86 Fed. Reg. at 29,543. While American Rivers appreciates EPA's abstract concern, as long as the rule remains in effect, American Rivers and its members continue to be demonstrably harmed. *See* Dkt. No. 75 (First Amended Complaint) ¶¶ 18–39 (describing the harm application of the 2020 Rule will cause the plaintiff organizations and their members).

Similarly, EPA's definition of "water quality requirements" in the 2020 Rule is inconsistent with the text of Section 401(d), which explicitly authorizes states and tribes to use certification to ensure federal projects comply with "other appropriate requirements of State law." 33 U.S.C. § 1341(d). In contrast, the 2020 Rule limits the scope of review to whether the discharges from points sources at a project will comply with "applicable provisions of §§ 301,

---

[2]   EPA's interpretation also contravenes the interpretations of numerous state courts, which are the appropriate forum for assessing the proper scope of review under section 401. *See, e.g., Arnold Irrigation Dist. v. Dep't of Envtl. Quality*, 717 P.2d 1274, 1279 (Or. Ct. App. 1986), *rev denied* 726 P.2d 377 (Or. 1986) ("Only if a goal or plan provision has absolutely no relationship to water quality would it not be an 'other appropriate requirement of State law" within the meaning of Section 401(d)); *accord Dep't of Ecology v. PUD No. 1 of Jefferson Cty.*, 849 P.2d 646, 652 (Wash. 1993), *aff'd* 511 U.S. 700 (1994); *accord In re Morrisville Hydroelectric Project Water Quality*, 224 A.3d 473, 492 (Vt. 2019); *see also City of Tacoma v. F.E.R.C.*, 460 F.3d 53, 67 (D.C. Cir. 2006) (state courts are charged with reviewing the legality of certification decisions); *United States v. Marathon Dev. Corp.*, 867 F.2d 96, 102 (1st Cir. 1989) (same).

302, 303, 306, and 307 of the Clean Water Act, and state or tribal regulatory requirements for point source discharges into waters of the United States." 40 C.F.R. § 121.1(n) (defining "Water quality requirements"). By limiting the scope of Section 401 review to whether the discharges from the points sources will comply with the specific requirements under the Clean Water Act, EPA has unlawfully written state and tribal authority to ensure compliance with "other appropriate requirements of State law" in Section 401(d) out of the statute. EPA's reading of the statute violates the "basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written, giving each word its ordinary, contemporary, common meaning." *Artis v. District of Columbia*, 138 S. Ct. 594, 603 n.8 (2018) (internal quotation marks and punctuation omitted); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (canon against surplusage "is strongest when an interpretation would render superfluous another part of the same statutory scheme").

### b.  The 2020 Rule unlawfully constrains and interferes with state certification procedures.

The 2020 Rule impermissibly intrudes on the states' and tribes' ability to effectively manage their 401 certification programs and meaningfully review federally licensed projects. To ensure states and tribes are able to fulfill this primary responsibility of protecting water quality, Congress enacted Section 401 to fill a potential gap in the overall regulatory structure of the Clean Water Act—namely, federally licensed activities that may otherwise escape compliance with requirements of state law to protect water quality. *S.D. Warren*, 547 U.S. at 386 ("Changes in the river like these fall within a State's legitimate legislative business, and the Clean Water Act provides for a system that respects the States' concerns."). Thus, through Section 401, states and tribes have the right to review the potential impacts of proposed federally licensed projects that "may result in any discharge into the navigable waters" and the obligation to "set forth any effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant for a Federal license or permit will comply with any applicable [water quality requirements under the Clean Water Act] and with any other appropriate requirement of State law." 33 U.S.C. §§ 1341(a)(1) & (d). And with respect to how the states and tribes use this

authority, the Clean Water Act defers to states and tribes to establish "the water quality certification process." *City of Fredericksburg v. F.E.R.C.*, 876 F.2d 1109, 1112 (4th Cir. 1989).

The 2020 Rule makes several changes to the certification process that unlawfully circumscribe the certifying authority's control over its process. First, the 2020 Rule purports to establish both the process the certifying agency must follow, and the information a certifying authority can require from an applicant to initiate a "request" for certification. 40 C.F.R. §§ 121.4 & 121.5. The rule then dictates that the timeline for review starts immediately when the applicant submits this package, regardless of what the certifying agency may actually need to initiate its review. *Id.* §§ 121.5 & 121.6. Second, once the timeline for certification begins, it cannot be paused or restarted, even if, for example, the applicant fails to provide necessary or requested information. *Id.* § 121.6(e). Finally, the 2020 Rule authorizes federal licensing and permitting agencies—rather than the state or tribe—to define what constitutes a "reasonable period of time" for a state or tribe to act on a certification request. *Id.* § 121.6(a).

"State Agencies have broad discretion when developing the criteria for their Section 401 Certification." *Appalachian Voices v. State Water Control Bd.*, 912 F.3d 746, 754 (4th Cir. 2019)). Again, the primary goal of the Clean Water Act generally and Section 401 specifically is to preserve state authority over federal projects that may impact their waters, and State autonomy for how to address those concerns, consistent with minimums established in the Act. 33 U.S.C. § 1251(b) ("It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution"); *S.D. Warren*, 547 U.S. at 386 (Section 401 is "essential in the scheme to preserve state authority to address the broad range of pollution"). To this end, Congress spoke clearly when it instructed that states and tribes—not EPA or federal licensing and permitting agencies—set the procedure for certification. *See* 33 U.S.C. § 1341(a)(1) (states and tribes "shall establish procedures for public notice in the case of all applications for certification by it and, to the extent it deems appropriate, procedures for public hearings in connection with specific applications."). EPA has exceeded its authority by intruding on state and tribal authority to manage the certification processes. *See Nw. Envtl.*

*Advocates v. EPA*, 537 F.3d 1006, 1019, 1025–26 (9th Cir. 2008) (EPA cannot write regulations in excess of its statutory authority and that are contrary to the statutory scheme).

With respect to these changes, EPA now admits it "is concerned that the rule does not allow state and tribal authorities a sufficient role in setting the timeline for reviewing certification requests and limits the factors that federal agencies may use to determine the reasonable period of time." 86 Fed. Reg. at 29,543. And yet despite these numerous serious errors, EPA asks the Court to leave the rule in place indefinitely. The Court should decline. *See Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1095 (9th Cir. 2011) (where agency action fails "to follow Congress's clear mandate the appropriate remedy is to vacate that action").

           **c.**     **The 2020 Rule unlawfully empowers federal agencies to review, and overturn, certification decisions.**

The 2020 Rule unlawfully empowers federal permitting and licensing agencies to overturn a state's or a tribe's denial of certification, or to refuse to include the terms and conditions included in a certification, if the federal agency determines the certifying authority did not comply with the Rule's procedural requirements. 40 C.F.R. §§ 121.9(a)(2) & 121.10(a). Giving federal permitting and licensing agencies that ultimate authority conflicts with the plain language of Section 401.

Section 401 prohibits the issuance of any federal license or permit before certification has either been granted or waived, prohibits the issuance of any federal license or permit where certification has been denied. 33 U.S.C. § 1341(a)(1); *see also* H.R. Rep. 92-911, 122 (March 11, 1972), *reprinted in A Legislative History of the Water Pollution Control Act Amendments of 1972*, U.S. GPO No. 93-1, Vol. 1, 809 (Jan. 1973) ("Denial of certification by a State, interstate agency, or the Administrator, as the case may be, results in a complete prohibition against the issuance of the Federal license or permit"); S. Rep. 92-414, 69 (Oct. 28, 1971), *reprinted in A Legislative History*, Vol. 2, 487 (Section 401 "continues the authority of the State or interstate agency to act to deny a permit and thereby prevent a Federal license or permit from issuing . . . should such an affirmative denial occur no license or permit could be issued . . . unless the State action was overturned in the appropriate courts of jurisdiction"). In addition, Section 401

expressly requires that any terms or conditions that the certifying authority includes as part of a certification "shall become a condition on any Federal license or permit subject to the provisions of this section." 33 U.S.C. § 1341(d); Sen. Conf. Committee Rep. (Oct. 4, 1972), *reprinted in A Legislative History*, Vol. 1, 183 (any federal agency granting a license or permit "shall accept as dispositive the determinations" of the states under Section 401, with respect to necessary conditions); *see also Tacoma*, 460 F.3d at 67 (agencies lack authority to second-guess a state's certification determination or the conditions it has imposed).

EPA admits "that a federal agency's review may result in a state or tribe's certification or conditions being permanently waived as a result of nonsubstantive and easily fixed procedural concerns identified by the federal agency." 86 Fed. Reg. at 29,543. Yet, allowing for such a result is atently inconsistent with the "unequivical" plain language and intent of section 401, which does not permit the federal agency to "decide that substantive aspects of state-imposed conditions are inconsistent with the terms of § 401." *Am. Rivers, Inc. v. F.E.R.C.*, 129 F.3d 99, 107 (2d Cir. 1997). This error, like the others, is serious. The first *Allied-Signal* factor militates in favor of vacatur.

### 2.     Granting remand *without* vacatur and leaving the 2020 Rule in effect would have disruptive consequences across the nation.

Again, to determine whether vacatur is appropriate, the Court must "weigh the seriousness of the agency's errors against the disruptive consequences of an interim change that may itself be changed." *Nat'l Family Farm Coal. v. EPA*, 960 F.3d 1120, 1144 (9th Cir. 2020) (quoting *Pollinator*, 806 F.3d at 532). Here, vacating the 2020 Rule would expedite the return of the regulatory scheme that governed Section 401 certifications for the past 50 years. *See Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) ("The effect of invalidating an agency rule is to reinstate the rule previously in force."). While it is true that EPA *may* propose a new regulation in 2023, leaving the 10-month old 2020 Rule in place in the interim is an "invitation to chaos." *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002). The ongoing frustration of Plaintiffs' efforts to limit the environmental impacts of federally approved projects will only worsen over time if the Court leaves the 2020 Rule in place.

States and tribes subject to the 2020 Rule are facing an impossible choice: (1) comply with EPA's regulations or (2) heed EPA's admissions that the regulations are flawed and comply with their duty under the Clean Water Act. They likely cannot do both. For example, most states and tribes have not updated their regulations to comply with the new standards. As such, if an agency reviews a certification request under its existing regulations, it faces potential lawsuits from the applicant for failing to follow the 2020 Rule. Or, there is a potential that the federal permitting agency may veto any terms or conditions a state or tribe requires in order to protect its water quality and ensure compliance with state or tribal law. *See* 40 C.F.R. § 121.9(b) ("A condition for a license or permit shall be waived upon the certifying authority's failure or refusal to satisfy the requirements of § 121.7(d)"). On the other hand, the certifying agency could decide to change its regulations and policies, to bring them into compliance with a regulation that, according to EPA itself, likely violates the "cooperative federalism principles and Clean Water Act section 401's goal of ensuring that states are empowered to protect their water quality." 86 Fed. Reg. at 29,542. Thus, any changes to a state's or tribe's regulations to conform to the 2020 Rule is effectively an admission that the state or tribe is voluntarily participating in a scheme to limit its statutory authority to prevent harm to its waters. And if a state or tribe makes that choice—notwithstanding the significant environmental consequences it engenders—it will likely face the prospect of revising its regulations in order to comply with new regulations almost as soon as that process is complete.

The federal agencies that license or permit activities subject to state or tribal certification are in no better position. To date, it does not appear that *any* federal agency has amended its regulations to comply with the 2020 Rule. Notably, the executive order that kick-started this rulemaking process—Executive Order 13,868: *Promoting Energy Infrastructure and Energy Growth*, 84 Fed. Reg. 15,495 (April 10, 2019)—directed that once the rule was complete, EPA was to convene an "interagency review, in coordination with the head of each agency that issues permits or licenses subject to the certification requirements of section 401" to evaluate the agency's current regulations and propose rulemakings where necessary "to ensure the[] respective agencies' regulations are consistent with the" 2020 Rule. *Id.* at 15,496. But this never

occurred. Indeed, the Army Corps of Engineers is the only federal agency to announce that it is currently considering such a rulemaking, proposing to issue an advanced notice of proposed rulemaking this fall. OMB, Unified Regulatory Agenda, RIN: 0710-AB27, Clean Water Act Section 401: Water Quality Certification for U.S. Army Corps of Engineers Projects.[3] However, the Corps notes that it "will reevaluate the path forward on this rulemaking action pending future actions by EPA." *Id.* Thus, should the 2020 Rule remain in place, it and other federal agencies will attempt to simultaneously apply two sets of rules: their current regulations and the flawed 2020 Rule.

Moreover, American Rivers—and other members of the public trying to navigate this regulatory morass—will be harmed. EPA suggests that American Rivers and others will be able to mitigate this harm by "challeng[ing] individual 401 certifications or federal actions taken pursuant to the Certification Rule as they arise, to the extent they may threaten imminent, concrete harm to a party or its members in the future." Dkt. 143 at 12. This invitation to add countless new cases to state and federal courts across the country, in fact, misses at least two of the most insidious ways the 2020 Rule may work to harm the public and the environment. First, as noted above, a failure to comply with the 2020 Rule would open the certifying state or tribe to a challenge by an applicant, and the potential that the federal licensing or permitting agency may veto any terms and conditions. As a result, some states or tribes will try to comply with the 2020 Rules and write certifications that fall short of what is necessary to protect water quality and ensure compliance with state or tribal laws. Challenging such a decision would require groups, such as American Rivers, to comply with the state's administrative proceedings and then navigate the state courts, explaining why the agency erred by applying the 2020 Rule. *See, e.g., Port of Seattle v. Pollution Control Hearings Bd.*, 90 P.3d 659, 665–67 (Wash. 2004) (*en banc*)

---

[3] https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202104&RIN=0710-AB27 (last accessed July 26, 2021). A court may take notice of information found on agency websites. *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of document because it is "available on [an agency] website"); *Nat. Res. Def. Council v. McCarthy*, No. 16-cv-02184-JST, 2016 WL 6520170, at *2 (N.D. Cal. Nov. 3, 2016) (taking judicial notice of documents because "they are matters of public record available on a governmental agency website").

1    (summarizing the four-year process, beginning with a ten-day administrative hearing, two levels

2    of state judicial appeal and a separate federal lawsuit, to resolve a dispute over the terms and

3    conditions of a 401 certification). This is a near-impossible task in many instances. *Cf. id*. at 672

4    (noting under Washington law, the courts "must give great weight to [an agency's] interpretation

5    of the laws that it administers"); *Bldg. Indus. Ass'n of San Diego Cty. v. State Water Res. Control*

6    *Bd*., 22 Cal. Rptr. 3d 128, 137 n.9 (Cal. Ct. App. 2004), *as modified on denial of reh'g* (Jan. 4,

7    2005) ("under governing state law principles, we do consider and give due deference to the

8    Water Boards' statutory interpretations"). It also vastly overestimates the resources of

9    conservation groups like American Rivers, which simply lack the means to bring countless as-

10   applied challenges. Realistically, many actions by states and tribes taken under the unlawful

11   2020 Rule are likely to go unchallenged.

12          Second, other certifying states and tribes, seeing the limited information they will receive

13   at the outset of the process, the narrow scope of review, the limited ability to impose meaningful

14   conditions, the threat of a federal agency veto, and the prospect of being sued by the applicant

15   for failing to follow fundamentally flawed rules, may—understandably—find trying to write a

16   certification not worth the effort. If a state or tribe waives its authority in such a situation, the

17   public may have no recourse to challenge that decision.

18          Moreover, the 2020 Rule will allow some projects to go forward, escaping meaningful

19   review of their water quality impacts. Indeed, in many instances, a state's or tribe's certification

20   is considered the definitive word on whether a project will impact water quality. For example,

21   the Army Corps of Engineers' regulations governing the scope of its review in deciding whether

22   to grant permits under Section 404 of the Clean Water Act highlights the far-reaching impacts of

23   the 2020 Rule. The Corps' regulations state that "[c]ertification of compliance with applicable

24   effluent limitations and water quality standards required under provisions of section 401 . . . will

25   be considered conclusive with respect to water quality considerations unless [EPA], advises of

26   other water quality aspects to be taken into consideration." 33 C.F.R. § 320.4(d). Thus, if a state

27   or tribe certifies a project under the 2020 Rule that requires a Section 404 permit, and consistent

28   with the 2020 Rule does not address the impacts caused by the project, the Corps will not

1  consider the project's impacts, including those casued by nonpoint source discharges—no matter

2  how dire—as part of its public interest review process. *See Friends of the Earth v. Hintz*, 800

3  F.2d 822, 834 (9th Cir. 1986); *Sierra Club*, 909 F.3d at 646 ("The plain language of the statute

4  does not authorize the Corps to replace a state condition with a meaningfully different alternative

5  condition, even if the Corps determines that the alternative condition is more protective of water

6  quality.").[4] Such a foreseeable outcome demonstrates the 2020 Rule's disruptive ripple effects

7  across the federal regulatory web.

8          On the other side of the ledger, no party has argued that vacating the rule will be

9  disruptive. *See ASSE Int'l*, 182 F. Supp. 3d at 1065 (ordering vacatur, after finding "no indication

10  that the [agency] or anyone else would be seriously harmed or disrupted" by vacatur). Vacating

11  the 2020 Rule would merely restore the workable status quo that existed for nearly five decades

12  until the prior presidential administration upended it: the law would revert to the regulations and

13  guidance that predated the Rule. *Paulsen*, 413 F.3d at 1008.

14          Moreover, no party has argued, or could seriously contend, that vacatur of the 2020 Rule

15  would damage the purpose of the Clean Water Act—to "restore and maintain the chemical,

16  physical, and biological integrity of the Nation's waters[,]" and to "recognize, preserve, and

17  protect the primary responsibilities and rights of States to prevent, reduce, and eliminate

18  pollution[.]" 33 U.S.C. §§ 1251(a)–(b). Or cause the type of environmental harm or other

19  significant public harm that in the past has lead the courts to leave other rules in place with on

20  remand. *See Idaho Farm Bureau*, 58 F.3d at 1405–06 (declining to vacate the listing of a snail

21  species as endangered under the ESA on account of a procedural error under the APA, because

22  doing might result in the extinction of that species); *Cal. Cmties. Against Toxics*, 688 F.3d at 994

23  (ordering remand without vacatur because vacating a rule revising a state implementation plan

24  would exacerbate air pollution causing "severe" public harms undermining the goals of the Clean

25  Air Act); *W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980) (declining to vacate a

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [4]   Some courts have also suggested that federal agencies may rely on a state's 401 Certification
    to satisfy the "hard look" requirement with respect to water quality issues under the National
    Environmental Policy Act. *See, e.g., Little Lagoon Pres. Soc'y, Inc. v. U.S. Army Corps of Eng'rs*,
28  No. CIV.A. 06-0587-WS-C, 2008 WL 4080216, at *19 (S.D. Ala. Aug. 29, 2008).

rule because doing so would "thwart[] in an unnecessary way the operation of the Clean Air Act in the State of California"). Here, it is remand *without* vacatur that would accomplish such damage, and the potential environmental harm that will result.

**B.     In the alternative, the Court should deny EPA's motion for remand.**

If the Court decides to not order vacatur, it should deny EPA's motion for remand altogether. The D.C. Circuit has denied voluntary remand where "EPA made no offer to vacate the rule; thus EPA's proposal would have left petitioners subject to a rule they claimed was invalid." *Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1288 (D.C. Cir. 2000). Here, too, remand without vacatur would force American Rivers and the other plaintiffs to live indefinitely with the "harmful effects" of the 2020 Rule. Because remand without vacatur would "prejudice the vindication of [Plaintiffs'] claim[s]," *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018), EPA's motion should be denied. Moreover, granting EPA's request to dismiss this action would abdicate the Court's obligation to exercise the jurisdiction conferred to it by Congress and the Constitution. EPA has failed to identify which of the extremely narrow exceptions to federal jurisdiction allows for involuntary dismissal, or provide any legal basis for the drastic measure of dismissal with prejudice.

**1.     Remand is not appropriate because EPA has not demonstrated its commitment to a changed approach.**

In the Ninth Circuit, courts generally look to the Federal Circuit's decision in *SKF USA Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001) for guidance when reviewing requests for voluntary remand. *See, e.g., Cal. Cmties. Against Toxics*, 688 F.3d at 992; *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, No. C–09–4029 EMC, 2011 WL 3607790, at *3 (N.D. Cal. Aug. 16, 2011). *SKF* describes five positions an agency may take in response to judicial review of an agency action. *SKF*, 254 F.3d at 1028–29. EPA's request for remand is of the fourth type under *SKF*: "even in the absence of intervening events, the agency may request a remand, without confessing error, to reconsider its previous position." *Id*. at 1029. In this scenario, remand may be denied if the agency fails to demonstrate its request was made in good faith and is not frivolous. *Id*. "[B]ad faith may be demonstrated when an agency's position does

1  not demonstrate a commitment to a changed approach." *N. Coast Rivers All. v. U.S. Dep't of*

2  *Interior*, No. 1:16-cv-00307-LJO-MJS, 2016 WL 11372492, at *2 (E.D. Cal. Sept. 23, 2016).

3         Here, EPA's statements of "substantial concern" over the rule alone do not justify remand

4  without vacatur, because its actions will impermissibly leave plaintiffs "subject to a rule they

5  claimed was invalid." *Chlorine Chemistry Council*, 206 F.3d at 1288. Here, while American

6  Rivers certainly agrees EPA's "substantial concern" is justified, the *process* EPA has laid out to

7  address those concerns does not demonstrate a genuine commitment to a changed rule that will

8  address all of those concerns. Instead, to date, EPA has only commited to an initial process of

9  "initiat[ing] a series of stakeholder outreach sessions and invit[ing] written feedback on how to

10  revise the requirements for water quality certifications under the Clean Water Act." 86 Fed. Reg.

11  at 29,451. This, however, is only the beginning of a lengthy rulemaking progress that EPA

12  expects to run well into 2023. *See* Dkt. No. 143 at 6. During this time, if EPA follows through on

13  the steps it has outlined, it will go through two rounds of public comment and several additional

14  layers of review with the administration. EPA's current goal is to develop a rule "that promotes

15  efficiency and certainty in the certification process, that is well informed by stakeholder input on

16  the 401 Certification Rule's substantive and procedural components, and that is consistent with

17  the cooperative federalism principles central to CWA Section 401." 86 Fed. Reg. at 29,542. Yet,

18  that is virtually the same thing EPA said when promulgating the 2020 Rule, which it stated were

19  "intended to make the Agency's regulations consistent with the current text of CWA section 401,

20  increase efficiencies, and clarify aspects of CWA section 401 that have been unclear or subject to

21  differing legal interpretations in the past." 85 Fed. Reg. at 42,236. There is nothing in EPA's

22  proposed process preventing the agency from landing right back in the same place it started.

23         If EPA were genuinely committed to a changed approach, it would be reasonable to

24  expect EPA to request vacatur and provide more clarity regarding the steps it will take to address

25  the legal errors that permeate the 2020 Rule. *Cf. Meeropol v. Meese*, 790 F.2d 942, 953 (D.C.

26  Cir. 1986) ("what is expected of a law-abiding agency is that it admit and correct error when

27

28

1   error is revealed").[5] Its unwillingness to provide more leaves all involved unable to discern

2   whether, and to what degree, EPA has truly committed to a change in approach.

3           Moreover, the fact that American Rivers' challenge concerns "the scope of the [agency's]

4   statutory authority" and "is intertwined with any exercise of agency discretion going forward"

5   makes remand without vacatur all the more imprudent. *Util. Solid Waste Activities Grp.*, 901

6   F.3d at 436–37. A ruling on the merits will provide important guidance to EPA's ongoing and

7   future implementation of the Clean Water Act. As the Fourth Circuit has observed, "remand

8   without vacatur principally is relevant in matters where agencies have 'inadequately supported

9   rule[s]'" and not for situations where the agency "exceeded [their] statutory authority." *Sierra

10  Club*, 909 F.3d at 655 (quoting *Allied-Signal*, 988 F.2d at 150). This is especially true here,

11  because EPA exceeded its statutory authority in a manner that directly impinges on other

12  sovereigns' statutory authority under the Clean Water Act. American Rivers is unaware of *any*

13  case where an agency rule was left in place during remand under such circumstances. For these

14  additional reasons, the Court should decline EPA's request for remand without vacatur.

15

16          **2.      Granting EPA's motion would deprive American Rivers of its right to
                       judicial review.**

17          Even if remand without vacatur were appropriate, the procedural vehicle selected by

18  EPA—dismissal with prejudice—is unwarranted. The Ninth Circuit has held that "[b]ecause

19  dismissal with prejudice is a harsh remedy, our precedent is clear that the district court 'should

20  first consider less drastic alternatives.'" *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124,

21  1132 (9th Cir. 2008) (quoting *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996)). EPA fails

22  to provide any legal basis for its request for dismissal with prejudice.[6] In fact, EPA does not

23
_____

24  [5]   Although refusing to formally confess error is not dispositive, *N. Coast Rivers Alliance*, 2016
      WL 11372492, at *2, it is a factor courts take into account. *See Lutheran Church-Missouri Synod
25    v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998) (noting that the agency refused to confess error, in
      denying "last second" remand motion).

26  [6]   Involuntary dismissal with prejudice is appropriate only when the following factors favor it:
      "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its
27    docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic
      alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan
28    v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). EPA has not shown, nor can it, that any of these

identify a single case—and American Rivers is not aware of any—where a court dismissed a

case with prejudice after determining that remand was appropriate. Nor has EPA demonstrated

that less drastic alternatives are unavailable.[7]

EPA's proposed order of dismissal with prejudice would leave American Rivers and the

other plaintiffs in this litigation injured by the unlawful 2020 Rule with no recourse if EPA

delays its reconsideration, or indeed if EPA never completes its reconsideration of the 2020 Rule

at all. It is unclear whether EPA's proposed order would even allow American Rivers to bring

as-applied challenges to interim decisions made by federal agencies under the 2020 Rule. EPA's

proposed order would render EPA unaccountable to judicial process, and would leave American

Rivers' existing injuries unremedied and its future injuries without redress.

American Rivers has a right to judicial review of the 2020 Rule and for relief from the

rule following a judgment on the merits. 5 U.S.C. §§ 702, 704, 706(2). Granting EPA's motion

for remand without vacatur—whether effectuated through dismissal with prejudice or

otherwise—would infringe this right.[8] More fundamentally, EPA seeks an end-run around

federal jurisdiction. With its motion, EPA invites the Court to abdicate its "virtually unflagging

obligation . . . to exercise the jurisdiction given [it]." *Colo. River Water Cons. Dist. v. United

States*, 424 U.S. 800, 817 (1976). The Court should decline EPA's invitation.

### Conclusion.

For these reasons, the Court should either grant in part and deny in part EPA's motion for

remand and order that the 2020 Rule be remanded with vacatur, or deny EPA's motion for

---

factors warrant the drastic and extraordinary measure of dismissal with prejudice.

[7]  EPA has not attempted to show that even a less drastic measure, such as an involuntary stay, is warranted. *See Nat. Res. Def. Council v. Norton*, No. 1:05-cv-01207-OWW-LJO, 2007 WL 14283, at *13–16 (E.D. Cal. Jan. 3, 2007) (denying agency's request for remand and a stay, because "Plaintiffs are entitled to have their complaint decided on the merits, particularly given the fact that Defendants continue to rely on the challenged [agency rules] as if they were lawfully enacted"); *Landis v. N. American Co.*, 299 U.S. 248, 255 (1936) (a litigant seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.").

[8]  Ordering remand with vacatur, as discussed *supra* § I, would effectively grant American Rivers the relief it seeks and render its first amended complaint jurisdictionally moot, and therefore would not infringe its right of judicial review.

1    remand. If the Court decides to grant EPA's motion for remand without vacatur, it should not

2    dismiss this case with prejudice, but retain jurisdiction.

3    Date:   July 26, 2021.                          Respectfully submitted,

4                                                    */s/ Andrew Hawley*
                                                     Andrew Hawley
5                                                    Peter M. K. Frost
                                                     Sangye Ince-Johannsen
6
                                                     Attorneys for Plaintiffs
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing Opposition to EPA's Motion for Remand Without Vacatur was electronically filed with the Clerk of the Court on July 26, 2021, using the Court's electronic filing system, which will send notification of said filing to the attorneys of record that have, as required, registered with the Court's system.

*/s/ Andrew Hawley*
Andrew Hawley

Certificate of Service