# EXHIBIT 3

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

Elizabeth Holt Andrews (SBN 263206)
elizabeth.andrews@troutman.com
Three Embarcadero Center, Suite 800
San Francisco, California 94111-4057
Telephone:   415.477.5700
Facsimile:    415.477.5710

Misha Tseytlin (admitted *pro hac vice*)
misha.tseytlin@troutman.com
Sean T.H. Dutton (admitted *pro hac vice*)
sean.dutton@troutman.com
227 W. Monroe Street, Suite 3900
Chicago, IL 60606-5085
Telephone:   312.759.1920
Facsimile:    312.759.1939

Charles Sensiba (admitted *pro hac vice*)
charles.sensiba@troutman.com
401 9th Street N.W., Suite 1000
Washington, D.C. 20004
Telephone:   202.274.2850
Facsimile:    202.274.2994

Andrea W. Wortzel (admitted *pro hac vice*)
andrea.wortzel@troutman.com
1001 Haxall Point, 15th Floor
Richmond, VA 23219
Telephone:   804.697.1406
Facsimile:    804.697.1339

*Attorneys for Intervenor*
*National Hydropower Association*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA, BY AND THROUGH ATTORNEY GENERAL XAVIER BECERRA AND THE STATE WATER RESOURCES CONTROL BOARD, STATE OF WASHINGTON, STATE OF NEW YORK, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF ILLINOIS, STATE OF MAINE, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NORTH CAROLINA, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OF VIRGINIA, STATE OF WISCONSIN, AND THE DISTRICT OF COLUMBIA,<br><br>                    Plaintiffs,<br><br>       v.<br><br>ANDREW R. WHEELER, IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, AND THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>                    Defendants. | Case No.  3:20-cv-4636-WHA<br><br>**DECLARATION OF DENNIS CAKERT IN SUPPORT OF INTERVENOR DEFENDANTS' SUPPLEMENTAL BRIEF ON *ALLIED-SIGNAL* FACTORS** |

I, Dennis Cakert, do hereby declare that the following statements made by me under oath are true and accurate to the best of my knowledge, information, and belief:

1. I am over the age of 18 and am otherwise competent to render this declaration.

2. I am the Senior Manager of Regulatory Affairs and State Policy at the National Hydropower Association ("NHA"), an intervenor defendant in this case.

3. In this role, I am familiar with NHA's regulatory agenda and goals, and the particular concerns of NHA's members, especially those involved in the business of operating hydroelectric facilities, which are subject to the Clean Water Act Section 401 regulations at issue in this case.

4. Hydropower is a climate-friendly, renewable, and reliable energy source that serves environmental, energy, and economic policy objectives. *Discover Hydropower,* Nat'l Hydropower Ass'n.[1] Furthermore, hydropower enables other renewable energy sources, such as wind and solar, greater integration into the power grid, by remaining ready to produce power during periods of those sources' lower production. *Id.* Accordingly, protecting and growing hydroelectric power is an important component of the solution to climate change. NHA is a nonprofit national association dedicated to promoting the growth of clean, affordable hydropower in the United States. *Who We Are*, Nat'l Hydropower Ass'n, Hydro.org.[2]

5. NHA represents over 250 companies in the North American hydropower industry, from Fortune 500 companies to family-owned small businesses. *Id.* These businesses include both public- and investor-owned hydropower utilities, and independent power producers. *Id.* In fact, NHA's members own the majority of non-federal waterpower generating facilities in the United States. *Id.*

6. Today, there are 2,270 active hydropower plants, providing clean, carbon-free energy to approximately 30 million Americans. Hydropower provides 40% of the United States' renewable electricity outputs. *Discover Hydropower*, Nat'l Hydropower Ass'n, *supra*.

---

[1] Available at https://www.hydro.org/waterpower/hydropower (all websites last accessed October 4, 2021).

[2] Available at https://www.hydro.org/about/who-we-are/.

7. Hydropower projects are regulated by the Federal Energy Regulatory Commission ("FERC"). As part of the FERC licensing process, hydropower projects must apply for a Clean Water Act Section 401 certification from the state in which the project is located. For many years, there has been significant confusion about the scope of and implementation process for Section 401. There is uncertainty about when 401 certification is triggered, the process for filing, the content of the application, the scope of conditions that may be imposed, the procedures to be followed by the certifying state, the time limits that apply to the certification process and how that time period is applied, how agencies make waiver determinations and the process for doing so, how certification conditions are incorporated into licenses, and how they are enforced. This confusion has led to significant delays in the hydropower-licensing process, adversely impacting the ability to deploy clean, renewable hydropower and the environmental benefits associated with hydropower.

8. EPA's final rule, "Clean Water Act Section 401 Certification Rule," 85 Fed. Reg. 42,210 (July 13, 2020), provided important clarifications in all aspects of the administration of the 401-certification process, and includes provisions addressing each of the issues outlined above. By providing certainty and clarity on all of the aspects of the 401-certification process, the 401 rule resolved confusion and created a greater level of understanding for project applicants and certifying states. This clarity also provides important protections for the regulated community against the potential for state abuse of the Section 401 certification requirement.

9. Vacatur of the rule would remove this certainty, restoring the previous regulatory void, which had created demonstrated confusion and delay in the 401-certification process. There are currently 104 license proceedings for hydropower projects pending before FERC. *See* FERC, Hydropower Licensing (link for Pending Licenses, Relicenses, and Exemptions).[3] Each of these is required to apply for a Section 401 certification. FERC will be making decisions on these projects, including evaluating whether a state's 401 process was appropriate and was followed, whether a state waived certification, and how to incorporate the terms of a state certification into

---

[3] Available at http://www.ferc.gov/licensing.

3   Case No. 3:20-cv-4636-WHA
Declaration of Dennis Cakert ISO Intervenor Defendants' Supplemental Brief on *Allied-Signal* Factors

the FERC license. FERC is also responsible for enforcing the conditions of a state's 401 certification. Thus, in addition to the benefits provided to the individual applicants, the 401 rule offers important context and guidelines for FERC. Otherwise, FERC's decision-making will be based on the original EPA regulations from 1971, which implement the Federal Water Pollution Control Act of 1970, and predate the Clean Water Act of 1972.

10. Moreover, of the 104 pending license applications, 30 were filed since June 1, 2020 (the date the 401 rule took effect). *Id.* The applications for these projects, and the 401 requests filed with state agencies related to these applications, were completed in reliance on the 401 rule, and the standards and procedures it established. Another 54 projects will be required to submit licensing applications between now and October 1, 2022. *Id.* (link for Expected Relicense Projects FY 2019–FY 2033). These projects will benefit from the clarity and certainty provided by the 401 rule as they develop their application packages.

11. The uncertainties associated with the 401 certification process have been the primary cause of delay in permit issuance before the 401 rule was implemented. This was one of the principal drivers for the issuance of the 401 rule. The United States Court of Appeals for the District of Columbia Circuit found that "[in 2015], twenty-seven of the forty-three licensing applications before FERC were awaiting a state's water quality certification, and four of those had been pending for *more than a decade*." *Hoopa Valley Tribe v. FERC*, 913 F.3d 1099, 1104 (D.C. Cir. 2019), *reh'g denied,* No. 14-1271, 2019 WL 3928669 (D.C. Cir. Apr. 26, 2019), *cert. denied sub nom. Cal. Trout v. Hoopa Valley Tribe,* 140 S. Ct. 650 (2019). In 2001, FERC provided a report to Congress in which it identified the Section 401 certification process as a major source of delay in the licensing process, stating "the section 401 certification process is often very time-consuming, despite the intent of the CWA that a state should act on a certification request in a year or less." FERC, Report to Congress on Hydroelectric Licensing Policies, Procedures, and Regulations; Comprehensive Review and Recommendations Pursuant to Section 603 of the Energy Act of 2000, at 16 (May 2001).

12. Thus, before the 401 rule was issued it was not uncommon for the licensing process to be significantly delayed due to uncertainties and disputes about the 401 certification

process, the scope of a state's review, and the timeline for the state-review process. The 401 rule addressed these uncertainties. Even if it is revised in the future, it provides important guidelines that should remain in effect while those revisions are developed.

13. Such delays prevent construction of environmental improvements, project modernization efforts, and implementation of settlement agreements reached by interested parties in hydropower projects. Thus, vacatur of the rule is likely to cause harm to the environment and the stakeholders in the licensing process by delaying a licensee's ability to make these important changes.

14. Vacating the rule would create a regulatory void and remove the certainty needed to keep the relicensing process moving forward. Hydropower projects often require numerous permits and reviews at the federal, state, and local levels. Precise planning and scheduling keep projects on track for regulatory permitting and financing. Thus, vacatur of the rule will be disruptive to the regulatory process.

15. NHA and its members will be adversely impacted by vacatur of the 401 rule. Keeping the rule in effect while EPA reviews and reconsiders it is a more appropriate way to address the concerns about the rule, and will avoid the creation of significant confusion and delay in the relicensing process while the reconsideration takes place.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Boston, Massachusetts on this 4th day of October, 2021.

_____
Dennis Cakert