**JEFF LANDRY**
 **ATTORNEY GENERAL OF LOUISIANA**
ELIZABETH B. MURRILL (*pro hac vice*)
 *Solicitor General*
JOSEPH S. ST. JOHN (*pro hac vice*)
 *Deputy Solicitor General*
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, LA 70804
Tel. (225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

*Counsel for State of Louisiana*

Additional counsel listed in signature block

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: Clean Water Act Rulemaking | Lead Case No. 3:20-CV-04636-WHA |
| | Related Case Nos.<br>3:20-CV-04869-WHA<br>3:20-CV-06137-WHA |
| | **STATE INTERVENORS' NOTICE OF APPEAL** |
| | Judge: Honorable William Alsup |

1    The States of Arkansas, Louisiana, Mississippi, Missouri, Montana, Texas, West Virginia,

2    and Wyoming ("State Intervenors") hereby appeal to the United States Court of Appeals for the

3    Ninth Circuit the Order re Motion for Remand Without Vacatur (ECF 173) of this Court, the Final

4    Judgment (ECF 176), and the Notice re Briefing for Any Motion to Stay Pending Appeal (ECF

5    177) (collectively, "Appealed Orders"). In appealing from the Appealed Orders, State Intervenors

6    appeal from any and all orders antecedent and ancillary thereto, including any and all judgments,

7    decrees, decisions, rulings, and opinions that merged into and became part of the Appealed Orders,

8    that shaped the Appealed Orders, that are related to the Appealed Orders, or upon which the

9    Appealed Orders are based. Copies of the orders and judgment from which State Intervenors appeal

10   are attached. A representation statement is attached.

11   Dated: November 18, 2021                 Respectfully submitted,

12                                            **JEFF LANDRY**
                                             **ATTORNEY GENERAL OF LOUISIANA**
13

14                                           /s/ *Joseph S. St. John*
                                             _____
15                                           Elizabeth B. Murrill, Solicitor General
                                               (admitted *pro hac vice*)
                                             Joseph S. St. John, Deputy Solicitor
16                                             (admitted *pro hac vice*)
                                             Louisiana Department of Justice
17                                           1885 N. Third Street
                                             Baton Rouge, LA 70804
18                                           murrille@ag.louisiana.gov
                                             stjohnj@ag.louisiana.gov
19
                                             *Attorneys for the State of Louisiana*
20

21                                           **BENBROOK LAW GROUP**

22                                           /s/ *Bradley A. Benbrook*
                                             Bradley A. Benbrook (CA 177786)
23                                           Stephen M. Duvernay (CA 250957)
                                             400 Capitol Mall, Suite 2530
24                                           Sacramento, CA 95814
                                             Tel: (916) 447-4900
25                                           brad@benbrooklawgroup.com
                                             steve@benbrooklawgroup.com
26
                                             *Attorneys for State Intervenor Defendants*
27

28   * Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of the document
     has been obtained from each of the other Signatories.

1   **JEFF LANDRY**
     **ATTORNEY GENERAL OF LOUISIANA**
2   ELIZABETH B. MURRILL (*pro hac vice*)
       *Solicitor General*
3   JOSEPH S. ST. JOHN (*pro hac vice*)
       *Deputy Solicitor General*
4   LOUISIANA DEPARTMENT OF JUSTICE
     1885 N. Third Street
5   Baton Rouge, LA 70804
     Tel. (225) 326-6766
6   murrille@ag.louisiana.gov
     stjohnj@ag.louisiana.gov
7
8   *Counsel for State of Louisiana*

9   Additional counsel listed in signature block

10                     **UNITED STATES DISTRICT COURT**
                      **NORTHERN DISTRICT OF CALIFORNIA**
11                       **SAN FRANCISCO DIVISION**

12   | In re: Clean Water Act Rulemaking | Lead Case No. 3:20-CV-04636-WHA |
13   |  | Related Case Nos. |
     |  | 3:20-CV-04869-WHA |
14   |  | 3:20-CV-06137-WHA |
15   |  | **STATE INTERVENORS'** |
     |  | **REPRESENTATION STATEMENT** |
16   |  |  |
17   |  | Judge: Honorable William Alsup |
18

19

20

21

22

23

24

25

26

27

28

The States of Arkansas, Louisiana, Mississippi, Missouri, Montana, Texas, West Virginia, and Wyoming ("State Intervenors"), pursuant to Federal Rule of Appellate Procedure 12(b) and Ninth Circuit Rule 3-2, hereby submit the following representation statement:

Defendant-Intervenors and Defendants are represented by:

| | |
|---|---|
| Elizabeth Holt Andrews<br>Troutman Pepper Hamilton Sanders LLP<br>3 Embarcadero Center<br>Suite 800<br>San Francisco, CA 94111<br>415-477-5700<br>415-477-5710 (fax)<br>elizabeth.andrews@troutman.com<br><br>*Counsel for National Hydropower Association* | Nicholas Bronni<br>Arkansas Attorney Generals Office<br>323 Center Street<br>Suite 200<br>Little Rock, AR 72201<br>501-682-6302<br>501-682-8162 (fax)<br>nicholas.bronni@arkansasag.gov<br><br>*Counsel for State of Arkansas* |
| Bradley A. Benbrook<br>Benbrook Law Group<br>400 Capitol Mall, Suite 1610<br>Sacramento, CA 95814<br>916-447-4900<br>916-447-4904 (fax)<br>brad@benbrooklawgroup.com<br><br>*Counsel for State of Arkansas, State of Louisiana, State of Mississippi, State of Missouri, State of Montana, State of Texas, State of West Virginia and State of Wyoming* | Elisabeth Hill Carter<br>U.S. Dept of Justice<br>Environment and Natural Resources Division<br>P.O.  Box 7611<br>Washington, DC 20044<br>202-598-3141<br>elisabeth.carter@usdoj.gov<br><br>*Counsel for Andrew R. Wheeler and US Environmental Protection Agency* |
| Shawn Eric Cowles<br>Texas Office of the Attorney General<br>Special Litigation Unit<br>P.O. Box 12548<br>MC-009<br>Austin, TX 78711-2548<br>512-936-1378<br>shawn.cowles@oag.texas.gov<br><br>*Counsel for State of Texas* | Deidre G. Duncan<br>Hunton Andrews Kurth LLP<br>2200 Pennsylvania Avenue NW<br>Suite 900<br>Washington, DC 20037<br>202-955-1919<br>dduncan@HuntonAK.com<br><br>*Counsel for American Petroleum Institute and Interstate Natural Gas Association of America* |

Case No. 3:20-CV-04636-WHA

| | |
|---|---|
| Sean T H Dutton<br>Troutman Pepper Hamilton Sanders LLP<br>227 West Monroe Street<br>Suite 3900<br>Chicago, IL 60606<br>312-759-1937<br>sean.dutton@troutman.com<br><br>*Counsel for National Hydropower Association* | Marguerite Clare Ellis<br>Hunton Andrews Kurth LLP<br>50 California Street, Suite 1700<br>San Francisco, CA 94111<br>415-975-3708<br>415-975-3701 (fax)<br>cellis@huntonAK.com<br><br>*Counsel for American Petroleum Institute and Interstate Natural Gas Association of America* |
| Stephen Duvernay<br>Benbrook Law Group<br>400 Capitol Mall, Suite 1610<br>Sacramento, CA 95814<br>916-447-4900<br>916-447-4904 (fax)<br>steve@benbrooklawgroup.com<br><br>*Counsel for State of Arkansas, State of Louisiana, State of Mississippi, State of Missouri, State of Montana, State of Texas, State of West Virginia and State of Wyoming* | Leslie M. Hill<br>Environment & Natural Resources Division<br>United States Department of Justice<br>Environmental Defense Section<br>4 Constitution Square<br>150 M Street, NE, Suite 4.149<br>Washington, DC 20044<br>202-514-0375<br>202-514-8865 (fax)<br>Leslie.Hill@usdoj.gov<br><br>*Counsel for Andrew R. Wheeler and US Environmental Protection Agency* |
| Kathleen T. Hunker<br>Office of the Texas Attorney General<br>P.O. Box 12548<br>Austin, TX 78711-2548<br>512-936-2275<br>512-457-4410 (fax)<br>kathleen.hunker@oag.texas.gov<br><br>*Counsel for State of Texas* | James Kaste<br>Wyoming Attorney General's Office<br>2320 Capitol Ave<br>Cheyenne, WY 82002<br>307-777-6946<br>307-777-3542 (fax)<br>james.kaste@wyo.gov<br><br>*Counsel for State of Wyoming* |
| Justin Matheny<br>Mississippi Attorney General<br>Solicitor General Division<br>550 High Street<br>Suite 1200<br>Jackson, MS 39201<br>601-359-3825<br>601-359-2003 (fax)<br>justin.matheny@ago.ms.gov<br><br>*Counsel for State of Mississippi* | Elizabeth B. Murrill<br>LA Dept. of Justice<br>1885 N. Third Street<br>Baton Rouge, LA 70802<br>225-456-7544<br>murrille@ag.louisiana.gov<br><br>*Counsel for State of Louisiana* |

STATE INTERVENORS' REPRESENTATION STATEMENT

| | |
|---|---|
| Lindsay Sarah See<br>WV Attorney General<br>Solicitor General<br>1900 Kanawha Blvd. E<br>Bldg 1 Rm26E<br>Charleston, WV 25305-0220<br>304-558-2021<br>304-558-0140 (fax)<br>Lindsay.S.See@wvago.gov<br><br>*Counsel for State of West Virginia* | Ryan Michael Seidemann<br>Louisiana Department of Justice<br>1885 N. Third Street<br>Baton Rouge, LA 70802<br>225-326-6035<br>SeidemannR@ag.louisiana.gov<br><br>*Counsel for State of Louisiana* |
| Charles R Sensiba<br>Troutman Pepper Hamilton Sanders LLP<br>401 9th Street NW<br>Suite 1000<br>Washington, DC 20004<br>(202) 274-2850<br>Charles.Sensiba@troutman.com<br><br>*Counsel for National Hydropower Association* | Scott Stewart<br>Mississippi Attorney General<br>Solicitor General Division<br>550 High Street<br>Suite 1200<br>Jackson, MS 39201<br>601-359-3825<br>601-359-2003 (fax)<br>scott.stewart@ago.ms.gov<br><br>*Counsel for State of Mississippi* |
| George P. Sibley, III<br>Hunton Andrews Kurth LLP<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond, VA 23219<br>804-788-8262<br>gsibley@huntonak.com<br><br>*Counsel for American Petroleum Institute and Interstate Natural Gas Association of America* | Kathleen Smithgall<br>Office of the Montana Attorney General<br>215 N. Sanders<br>P.O. Box 201401<br>Helena, MT 59620-1401<br>406-444-2026<br>406-444-3549 (fax)<br>kathleen.smithgall@mt.gov<br><br>*Counsel for State of Montana* |
| Joseph Scott St. John<br>Louisiana Department of Justice<br>Office of the Attorney General<br>909 Poydras Street<br>Suite 1850<br>New Orleans, LA 70112<br>225-485-2458<br>504-556-9900 (fax)<br>stjohnj@ag.louisiana.gov<br><br>*Counsel for State of Louisiana* | Misha Tseytlin<br>Troutman Pepper Hamilton Sanders LLP<br>27 West Monroe Street<br>Suite 3900<br>Chicago, IL 60606<br>312-759-5947<br>misha.tseytlin@troutman.com<br><br>*Counsel for National Hydropower Association* |

Waldref Ruth Vanessa
U.S. Department of Justice
ENRD
P.O. Box 7611
Washington, DC 20044
202-514-2741
Vanessa.R.Waldref@usdoj.gov

*Counsel for Andrew R. Wheeler and US*
*Environmental Protection Agency*

Vincent Wagner
Arkansas Attorney Generals Office
323 Center Street
Suite 200
Little Rock, AR 72201
501-682-8090
501-682-8162 (fax)
vincent.wagner@arkansasag.gov

*Counsel for State of Arkansas*

Andrea West Wortzel
Troutman Pepper Hamilton Sanders LLP
1001 Haxall Point
Richmond, VA 23219
804-697-1406
andrea.wortzel@troutman.com

*Counsel for National Hydropower*
*Association*

John Sauer
Office of the Missouri Attorney General
P.O. Box 899
Jefferson City, MO 65102
(573) 751-1800
john.sauer@ago.mo.gov

Plaintiffs/Appellees are represented by:

Kristen Lee Boyles
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104
kboyles@earthjustice.org

*Counsel for Columbia Riverkeeper,*
*Orutsararmiut Native Council, Pyramid Lake*
*Paiute Tribe, Sierra Club, and Suquamish*
*Tribe*

Brian R Caldwell
Office of the Attorney General for the District
of  Columbia
Public Advocacy Division
441 Fourth St. NW, Ste 600-S
Washington, DC 20001
202-727-6211
brian.caldwell@dc.gov

*Counsel for District of Columbia*

| | |
|---|---|
| Bryant B. Cannon<br>CA Department of Justice<br>Office of the CA Attorney General<br>300 South Spring Street, Suite 1702<br>Los Angeles, CA 90013<br>213-269-6329<br>916-731-2128 (fax)<br>Bryant.Cannon@doj.ca.gov<br><br>*Counsel for State of California* | Taylor B. Crabtree<br>NC Department of Justice Environmental<br>P.O. Box 629<br>Raleigh, NC 27602<br>919-716-6950<br>tcrabtree@ncdoj.gov<br><br>*Counsel for State of North Carolina* |
| Jason Robert Flanders<br>Aqua Terra Aeris Law Group<br>4030 Martin Luther King Jr. Way<br>Oakland, CA 94609<br>916-202-3018<br>jrf@atalawgroup.com<br><br>*Counsel for Idaho Rivers United, California Trout, and American Rivers* | Peter M.K. Frost<br>Western Environmental Law Center<br>120 Shelton McMurphey Blvd.<br>Suite 340<br>Eugene, OR 97401<br>541-359-3238<br>frost@westemlaw.org<br><br>*Counsel for Idaho Rivers United, California Trout, American Whitewater and American Rivers* |
| Paul Andrew Garrahan<br>Oregon Department of Justice<br>Natural Resources Section<br>1162 Court St., NE<br>Salem, OR 97301-4096<br>503-947-4593<br>paul.garrahan@doj.state.or.us<br><br>*Counsel for State of Oregon* | Tatiana Koleva Gaur<br>Office of the Attorney General<br>300 South Spring Street, Suite 1702<br>Los Angeles, CA 90013<br>213-269-6329<br>213-897-2802 (fax)<br>Tatiana.Gaur@doj.ca.gov<br><br>*Counsel for State Water Resources Control Board and State of California* |
| Olivia Elisabeth Glasscock<br>Earthjustice<br>325 Fourth Street<br>Juneau, AK 99801<br>(907) 500-7134<br>oglasscock@earthjustice.org<br><br>*Counsel for Columbia Riverkeeper, Orutsararmiut Native Council, Pyramid Lake Paiute Tribe, Sierra Club, and Suquamish Tribe* | David Cardwell Grandis<br>Office of Attorney General of VA<br>202 N. 9th Street<br>Richmond, VA 23219<br>804-225-2741<br>dgrandis@oag.state.va.us<br><br>*Counsel for Commonwealth of Virginia* |

| | |
|---|---|
| William G Grantham<br>NM Attorney General's Office<br>Consumer & Environmental Protection<br>Division<br>P.O. Drawer 1508<br>Santa Fe, NM 87504-1508<br>505-717-3520<br>wgrantham@nrnag.gov<br><br>*Counsel for State of New Mexico* | Gabrielle Lauren Gurian<br>Washington Office of the Attorney General<br>Ecology Division<br>2425 Bristol Court SW<br>Olympia, WA 98501<br>360-586-6769<br>360-586-6760 (fax)<br>gabrielle.gurian@atg.wa.gov<br><br>*Counsel for State of Washington* |
| Andrew McAleer  Hawley<br>Western Environmental Law Center<br>1402 3rd Ave<br>Suite 1022<br>Seattle, WA 98101<br>206-487-7250<br>hawley@westemlaw.org<br><br>*Counsel for Idaho Rivers United, California<br>Trout, American Whitewater, American<br>Rivers, and Columbia Riverkeeper* | Alison B Hoffman<br>RI Office of Attorney General<br>150 South Main Street<br>Providence, RI 02903<br>(401) 274-4400<br>ahoffinan@riag.ri.gov<br><br>*Counsel for State of Rhode Island* |
| John B Howard, Jr.<br>Office of the Attorney General<br>200 Saint Paul Place, 20th Floor<br>Baltimore, MD 21202<br>(401) 576-6970<br>jbhoward@oag.state.md.us<br><br>*Counsel for State of Maryland* | Sangye Ince-Johannsen<br>Western Environmental Law Center<br>120 Shelton McMurphey Blvd, Ste 340<br>Eugene, OR 97401<br>541-778-6626<br>sangyeij@westernlaw.org<br><br>*Counsel for Idaho Rivers United, California<br>Trout, American Whitewater, and American<br>Rivers* |
| Matthew Ireland<br>Massachusetts Attorney General's Office<br>Environmental Protection Division<br>One Ashburton Place, 18th Floor<br>Boston, MA 02108-1598<br>617-727-2200<br>617-727-9665 (fax)<br>matthew.ireland@mass.gov<br><br>*Counsel for Commonwealth of Massachusetts* | Jason Elliott James<br>Illinois Attorney General's Office<br>Environmental Bureau<br>69 W. Washington St.<br>18th Floor<br>Chicago, IL 60602<br>312-814-0660<br>jjames@atg.state.il.us<br><br>*Counsel for State of Illinois* |

| | |
|---|---|
| Gabe Johnson-Karp<br>Wisconsin Department of Justice<br>Post Office Box 7857<br>Madison, WI 53702<br>608-267-8904<br>johnsonkarpg@doj.state.wi.us<br><br>*Counsel for State of Wisconsin* | Jill Lacedonia<br>CT Attorney General's Office<br>Environment<br>165 Capitol Avenue<br>Hartford, CT 06106<br>860-808-5250<br>860-808-5386 (fax)<br>Jill.Lacedonia@ct.gov<br><br>*Counsel for State of Connecticut* |
| Adam Leonard Levitan<br>Office of the Attorney General<br>California Department of Justice<br>300 S. Spring Street, Suite 1702<br>Los Angeles, CA 90013<br>213-269-6332<br>adam.levitan@doj.ca.gov<br><br>*Counsel for State of California* | Gussie Lord<br>Earthjustice<br>633 17th Street, Suite 1600<br>Denver, CO 80202<br>303-623-9466<br>glord@earthjustice.org<br><br>*Counsel for Columbia Riverkeeper,*<br>*Orutsararmiut Native Council, Pyramid*<br>*Lake Paiute Tribe, Sierra Club, and*<br>*Suquamish Tribe* |
| Brian M. Lusignan<br>New York State Attorney General- Albany<br>Environmental Protection Bureau<br>28 Liberty Street<br>New York, NY 10005<br>716-853-8465<br>716-853-8579 (fax)<br>brian.lusignan@ag.ny.gov<br><br>*Counsel for State of New York* | Lani Maria Maher<br>California Attorney General's Office<br>Department of Justice<br>1515 Clay Street, 20th Floor<br>Oakland, CA 94612<br>510-879-0280<br>510-622-2270 (fax)<br>Lani.Maher@doj.ca.gov<br><br>*Counsel for State of California* |
| Nathan Matthews<br>Sierra Club Environmental Law Program<br>2101 Webster Street<br>Suite 1300<br>Oakland, CA 94612<br>415-977-5695<br>nathan.matthews@sierraclub.org<br><br>*Counsel for Columbia Riverkeeper,*<br>*Orutsararmiut Native Council, Pyramid Lake*<br>*Paiute Tribe, Sierra Club and Suquamish*<br>*Tribe* | Lisa Morelli<br>Office of the Attorney General<br>Richard J. Hughes Justice Complex<br>25 Market Street<br>P.O. Box 093<br>Trenton, NJ 08625-4503<br>609-984-6640<br><br>*Counsel for State of New Jersey* |

| | |
|---|---|
| Laura B. Murphy<br>VT Attorney General's Office<br>109 State Street<br>Montpelier, VT 05609<br>802-828-1059<br>laura.murphy@vermont.gov<br><br>*Counsel for State of Vermont* | Moneen S. Nasmith<br>Earthjustice<br>48 Wall Street, 15th Floor<br>New York, NY 10005<br>(212) 845-7384<br>mnasmith@earthjustice.org<br><br>*Counsel for Columbia Riverkeeper,<br>Orutsararmiut Native Council, Pyramid<br>Lake Paiute Tribe, Sierra Club, State of<br>Arkansas, and Suquamish Tribe* |
| Carrie Noteboom<br>CO Attorney General<br>Natural Resources Section<br>1300 Broadway<br>10th  Floor<br>Denver, CO 80203<br>720-508-6285<br>carrie.noteboom@coag.gov<br><br>*Counsel for State of Colorado* | Jillian Renee O'Brien<br>Office of the Maine Attorney General<br>6 State House Station<br>Augusta, ME 04333<br>207-626-8582<br>207-287-3145 (fax)<br>jill.obrien@maine.gov<br><br>*Counsel for State of Maine* |
| Annette Quill<br>CO Attorney General<br>Natural Resources Section<br>1300 Broadway<br>10th  Floor<br>Denver, CO 80203<br>720-508-6264<br>annette.quill@coag.gov<br><br>*Counsel for State of Colorado* | Asher Paris Spiller<br>North Carolina Department of Justice<br>Environmental<br>P.O. Box 629<br>Raleigh, NC 27602<br>919-716-6977<br>aspiller@ncdoj.gov<br><br>*Counsel for State of North Carolina* |
| Heidi Parry Stern<br>Solicitor General<br>Office of the Nevada Attorney General<br>555 E. Washington Avenue, Suite 3900<br>Las Vegas, NV 89101<br>702-486-3594<br>702-486-3773 (fax)<br>hstem@ag.nv.gov<br><br>*Counsel for State of Nevada* | Peter N. Surdo<br>Office of the Minnesota Attorney General<br>445 Minnesota Street<br>Suite 900<br>St. Paul, MN 55101<br>651-757-1061<br>peter.surdo@ag.state.mn.us<br><br>*Counsel for State of Minnesota* |

| | |
|---|---|
| Gillian Wener<br>Michigan Attorney General's Office<br>ENRA Division<br>P.O. Box 30755<br>Lansing, MI 48909<br>517-335-7664<br>wenerg@michigan.gov<br><br>*Counsel for State of Michigan* | Catherine Mitchell Wieman<br>California Department of Justice<br>Office of the Attorney General<br>300 S. Spring Street<br>Suite 1702<br>Los Angeles, CA 90013<br>213-269-6325<br>catherine.wieman@doj.ca.gov<br><br>*Counsel for State of California* |
| Kelly T Wood<br>Washington Office of the Attorney General<br>Ecology Division<br>2425 Bristol Court SW<br>Olympia, WA 98501<br>360-586-5109<br>Kelly.Wood@atg.wa.gov<br><br>*Counsel for State of Washington* | Michael Youhana<br>Earthjustice<br>48 Wall Street, 15th Floor<br>New York, NY 10005<br>949-701-1162<br>myouhana@earthjustice.org<br><br>*Counsel for Columbia Riverkeeper,*<br>*Orutsararmiut Native Council, Pyramid*<br>*Lake Paiute Tribe, Sierra Club and*<br>*Suquamish Tribe* |

1    Dated: November 18, 2021          Respectfully submitted,

2                                       **JEFF LANDRY**
                                         **ATTORNEY GENERAL OF LOUISIANA**
3

4                                       */s/ Joseph S. St. John*
                                        _____
5                                       Elizabeth B. Murrill, Solicitor General
                                          (admitted *pro hac vice*)
                                        Joseph S. St. John, Deputy Solicitor
6                                         (admitted *pro hac vice*)
                                        Louisiana Department of Justice
7                                       1885 N. Third Street
                                        Baton Rouge, LA 70804
8                                       murrille@ag.louisiana.gov
                                        stjohnj@ag.louisiana.gov
9

10                                      *Attorneys for the State of Louisiana*

11                                      **BENBROOK LAW GROUP**

12                                      */s/ Stephen M. Duvernay*
                                        Bradley A. Benbrook (CA 177786)
13                                      Stephen M. Duvernay (CA 250957)
                                        400 Capitol Mall, Suite 2530
14                                      Sacramento, CA 95814
                                        Tel: (916) 447-4900
15                                      brad@benbrooklawgroup.com
                                        steve@benbrooklawgroup.com
16
                                        *Attorneys for State Intervenor Defendants*
17

18   * Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of the document
     has been obtained from each of the other Signatories.  /s/ Stephen Duvernay
19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

CLEAN WATER ACT
RULEMAKING.

This Document Relates to:

ALL ACTIONS.

No.  C 20-04636 WHA
No.  C 20-04869 WHA
No.  C 20-06137 WHA

(Consolidated)

**ORDER RE MOTION FOR
REMAND WITHOUT VACATUR**

**INTRODUCTION**

Plaintiff states, tribes, and non-profit conservation groups have challenged EPA's Clean Water Act certification rule, and now EPA moves to remand the proceedings without vacatur. For the reasons stated, the rule is remanded to the agency with vacatur.

**STATEMENT**

The Federal Water Pollution Control Act Amendments of 1972, commonly known as the Clean Water Act, is the primary federal statute regulating water pollution.  Congress enacted the Clean Water Act in 1972 — over then-President Nixon's veto — but the roots of the Act extend much farther back to 1899 and the Rivers and Harbors Act.  That statute, often referred to as the Refuse Act, primarily ensured free and open navigability of the waters of the United States, but also prohibited the discharge of "refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any

United States District Court
Northern District of California

navigable water of the United States," and authorized the Secretary of the Army to permit such discharges under certain conditions.  *See* 33 U.S.C. §§ 407 *et seq.*  In 1948, following an increase an industrialization throughout the country, Congress passed the Federal Water Pollution Control Act (FWPCA).  *See generally* Joel Gross & Kerri Stelcen, Clean Water Act 2–7 (2d ed. 2012).

In 1969, two events would help foster a new environmental awareness in the United States and prompt the promulgation of amendments to the FWPCA:  A catastrophic oil spill of three million gallons of crude off the coast of Santa Barbara (creating a thirty-five-mile slick); and a fire on the surface of the Cuyahoga River in northeast Ohio.  A 1968 Kent State University symposium on the state of the Cuyahoga River is worth briefly quoting:

> The surface is covered with brown oily film observed upstream as far as the Southerly Plant effluent.  In addition, large quantities of black heavy oil floating in slicks, sometimes several inches thick, are observed frequently.  Debris and trash are commonly caught up in these slicks forming an unsightly floating mess.  Anaerobic action is common as the dissolved oxygen is seldom above a fraction of a part per million.  The discharge of cooling water increases the temperature by 10 to 15° F.  The velocity is negligible, and sludge accumulates on the bottom.  Animal life does not exist.

The Cuyahoga River Watershed: Proceedings of a Symposium Held at Kent State University 104 (George D. Cooke, ed., 1969); Gross & Stelcen, *supra*, at 7; Christine Mai-Duc, The 1969 Santa Barbara oil spill that changed oil and gas exploration forever, L.A. Times, May 20, 2015, https://www.latimes.com/local/lanow/la-me-ln-santa-barbara-oil-spill-1969-20150520-htmlstory.html.

Three years after these events, Congress passed the Clean Water Act.  Section 101 of the act expressed Congress' goal "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  The congressional declaration in Section 101(b) recited:

> It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources, and to consult with the Administrator in the

exercise of his authority under this chapter.

Section 101(d) charged EPA to administer the act while Section 101(e) explicitly enshrined public participation into the statutory scheme:

> Public participation in the development, revision, and enforcement of any regulation, standard, effluent limitation, plan, or program established by the Administrator or any State under this chapter shall be provided for, encouraged, and assisted by the Administrator and the States.

Under Section 401 of the Clean Water Act, a federal agency may not issue a permit or license to an applicant that seeks to conduct any activity that may result in any discharge into the navigable waters of the United States unless a state or authorized tribe where the discharge would originate issues a water quality certification or waives the requirement.  EPA is responsible for the certification by non-authorized tribes or when a discharge would originate from lands under exclusive federal jurisdiction.  Importantly, "No [federal] license or permit shall be granted if certification has been denied by the State, interstate agency, or the Administrator, as the case may be."  33 U.S.C. § 1341; *see also* Overview of CWA Section 401 Certification, epa.gov/cwa-401/overview-cwa-section-401-certification (last visited Oct. 21, 2021).  Several major federal licensing and permitting schemes are subject to Section 401, such as National Pollutant Discharge Elimination System (NPDES) permits under Section 402, permits for discharge of dredged or fill material into wetlands under Section 404, Federal Energy Regulatory Commission (FERC) licenses for hydropower facilities and natural gas pipelines, and Rivers and Harbors Act Section Nine and Section Ten permits.

While EPA has promulgated myriad rules to administer the Clean Water Act, iterations of the administrative rule implementing Section 401 had remained, until recently, singular. EPA originally promulgated 40 C.F.R. Part 121 to implement water quality certifications for Section 21(b) of the FWPCA as it existed in 1971 — a year before the Clean Water Act amendments to the FWPCA.  *See* 36 Fed. Reg. 22,487 (Nov. 25, 1971), redesignated at 37 Fed. Reg. 21,441 (Oct. 11, 1972), further redesignated at 44 Fed. Reg. 32,899 (June 7, 1979).  EPA would continue to use this rule for the Section 401 licensing scheme.  In brief, 40 C.F.R. Part 121 as promulgated set out:  (i) the minimum procedural content of a certification to facilitate

Case 3:20-cv-04636-WHA   Document 173   Filed 11/23/21   Page 17 of 34

1    EPA's administrative processes; (ii) the procedures for determining the effects of a license

2    upon other, non-certifying states; (iii) the procedures the EPA Administrator employs to certify

3    an application for a project under exclusive federal jurisdiction; and (iv) the procedures for

4    EPA consultations on obtaining a license or permit.  EPA employed this procedure for

5    certifications as-is for half a century.

6                                    *        *        *

7            On April 10, 2019, President Trump issued Executive Order 13,868, entitled *Promoting*

8    *Energy Infrastructure and Economic Growth*.  84 Fed. Reg. 15,495 (Apr. 10, 2019).  The order

9    stated:  "The United States is blessed with plentiful energy resources, including abundant

10   supplies of coal, oil, and natural gas," and, the "Federal Government must promote efficient

11   permitting processes and reduce regulatory uncertainties that currently make energy

12   infrastructure projects expensive and that discourage new investment."  To that end, Executive

13   Order 13,868 asserted that "[o]utdated Federal guidance and regulations regarding section 401

14   of the Clean Water Act . . . are causing confusion and uncertainty and are hindering the

15   development of energy infrastructure," and instructed EPA to review and issue new guidance

16   regarding Section 401.  *Id.* at 15,496.

17           Pursuant to the executive order, EPA revised its general Section 401 guidance in June

18   2019.  Two months later, EPA published an economic analysis of existing Section 401

19   processes.  That same month, in a publication dated August 22, 2019, EPA proposed an

20   updated Section 401 certification rule with extensive revisions.  After a very active public

21   comment phase, EPA published the final rule in the Federal Register on July 13, 2020.  The

22   rule went into effect September 11, 2020.  *See* Economic Analysis for the Proposed Clean

23   Water Act Section 401 Rulemaking, NEPIS 810R19001A (Aug. 2019); Clean Water Act

24   Section 401 Guidance for Federal Agencies, States and Authorized Tribes,

25   www.epa.gov/sites/default/files/2019-06/documents/cwa_section_401_guidance.pdf (June 7,

26   2019); 84 Fed. Reg. 44,080 (Aug. 22, 2019); 85 Fed. Reg. 42,210 (July 13, 2020).

27           The new certification rule makes a variety of substantive changes to EPA's procedures

28   for implementing Section 401.  To state just a few examples, the new rule:  (i) narrows the

United States District Court
Northern District of California

4

scope of certification to ensuring that a discharge from a point source into a water of the United States from a federally licensed or permitted activity will comply with "water quality requirements" — another defined term narrowed to mean applicable provisions of Sections 301, 302, 303, 306, and 307 of the Clean Water Act; (ii) authorizes EPA to establish the reasonable amount of time for a certifying authority to certify a request; and (iii) authorizes EPA to determine whether a certifying authority's denial has complied with the rule's procedural requirements, and to deem certifications waived if not. *See* 40 C.F.R. pt. 121.

Plaintiff states, tribes, and non-profit conservation groups, many of which had strenuously objected to these and other changes to the certification rule, began suing, many the same day EPA published the final rule. Three cases eventually arrived before the undersigned by August 2020. The new certification rule became effective in September, and by October, eight states and three industry groups intervened as defendants. Then, in November, administrative momentum for the revised certification rule stalled after the election of President Biden, who declared his administration's policy:

> to listen to the science; to improve public health and protect our environment; to ensure access to clean air and water; to limit exposure to dangerous chemicals and pesticides; to hold polluters accountable, including those who disproportionately harm communities of color and low-income communities; to reduce greenhouse gas emissions; to bolster resilience to the impacts of climate change; to restore and expand our national treasures and monuments; and to prioritize both environmental justice and the creation of the well-paying union jobs necessary to deliver on these goals.

*Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis*, Exec. Order No. 13990, 86 Fed. Reg. 7,037 (Jan. 20, 2021). The administration specifically listed the certification rule as one agency action set to be reviewed, and EPA stated its intent to promulgate a new certification rule in a notice published on June 6, 2021. The earliest EPA will be able to promulgate a revised rule is Spring 2023 (Goodin Decl. ¶ 27). *See* 86 Fed. Reg. 29,541 (June 2, 2021); Fact Sheet: List of Agency Actions for Review, www.whitehouse.gov/briefing-room/statements-releases/2021/01/20/fact-sheet-list-of-agency-actions-for-review (Jan. 20, 2021).

United States District Court
Northern District of California

EPA now moves to remand for further proceedings without vacatur.  Due to plaintiffs' oppositions that requested remand *with* vacatur, intervenor defendants filed a motion to strike, which necessitated extra briefing on that matter.  After oral argument held telephonically due to the COVID-19 pandemic, intervenor defendants were invited to file further briefing on the vacatur issue, which they did.

## ANALYSIS

### 1. THE APPLICABLE STANDARDS FOR REMAND AND VACATUR.

Ambiguities in statutes within an agency's jurisdiction to administer are, per *Chevron* and *Brand X*, delegations of authority to fill the statutory gap in a reasonable fashion.  Under the Administrative Procedure Act (APA), a district court reviews a challenged federal agency action to determine whether it is arbitrary and capricious or otherwise not in accordance with law.  Per the familiar taxonomy established by *SKF USA*, an agency typically takes one of five positions when its action is challenged in federal court:  (i) it may defend the decision on previously articulated grounds; (ii) it may seek to defend the decision on grounds *not* previously articulated by the agency; (iii) it may seek remand to reconsider its decision because of intervening events outside the agency's control; (iv) it may seek remand even absent any intervening events, *without confessing error*, to reconsider its previous position; and (v) it may seek remand because it believes the original decision was incorrect on the merits and it wishes to change the result.  *SKF USA Inc. v. United States*, 254 F.3d 1022, 1027–28 (Fed. Cir. 2001); *Nat'l Cable & Telecomm. Ass'n. v. Brand X Internet Servs.*, 545 U.S. 967, 980, 982 (2005); *Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 865–66 (1984); *Cal. Cmtys. Against Toxics v. EPA* (*CCAT*), 688 F.3d 989, 992 (9th Cir. 2012) (approving *SKF USA* taxonomy); 5 U.S.C. § 706(2).

An agency thus need not defend a challenged action in a district court and may instead voluntarily request the court to remand the action to the agency for further proceedings.  Nor does an agency even need to admit error to justify voluntary remand.  "Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith."  *CCAT*, 688 F.3d at 992.

6

United States District Court
Northern District of California

The deferential standard for reviewing an agency's request for voluntary remand can raise difficult issues when vacatur comes into play. When a district court rules that an agency action is defective due to errors of fact, law, or policy, the APA explicitly instructs that the court "shall . . . hold unlawful and set aside" the agency action. "This approach enables a reviewing court to correct error but, critically, also avoids judicial encroachment on agency discretion." 33 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 8381 (3d ed. 2021); 5 U.S.C. § 706(2). Nevertheless, our court of appeals has held that, when equity demands, a flawed rule need not be vacated. *See CCAT*, 688 F.3d at 992. Oftentimes, an agency may voluntarily request remand prior to a court's adjudication of the merits of the disputed action. The caselaw here is unsettled. Leaving an agency action in place while the agency reconsiders may deny the petitioners the opportunity to vindicate their claims in federal court and would leave them subject to a rule they have asserted is invalid. On the other hand, vacatur "of an action may allow an agency to abandon a legislative rule without going through the (extensive) trouble of developing a new one." Wright & Miller, *supra*, at § 8383. Our court of appeals has issued the broad guidance — albeit in opinions where the agency action had been found erroneous — that remand without vacatur is appropriate only in limited circumstances. *CCAT*, 688 F.3d at 994; *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015).

Contrasting policy implications have led to a split in authority regarding whether a court may order vacatur without first reaching a determination on the merits of the agency's action. *Compare Ctr. for Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1241–42 (D. Colo. 2011) (Judge John L. Kane), *with Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135–36 (D.D.C. 2010) (Judge Emmet G. Sullivan). Our court of appeals has not had the opportunity to address this question directly, but its holding that even a flawed rule need not be vacated supports the corollary proposition that a flaw need not be conclusively established to vacate a rule. Other district courts in our circuit have consistently acknowledged they have the authority to vacate agency actions upon remand prior to a final determination of the action's legality. *See, e.g.*, *Pascua Yaqui Tribe v. EPA*, ⎯⎯ F. Supp. 3d ⎯⎯, 2021 WL 3855977, at *4

(D. Ariz. Aug. 30, 2021) (Judge Rosemary Márquez); *All. for Wild Rockies v. Marten*, 2018 WL 2943251, at *2–3 (D. Mont. June 12, 2018) (Judge Dana L. Christensen); *N. Coast Rivers All. v. Dep't of the Interior*, 2016 WL 8673038, at *6 (E.D. Cal. Dec. 16, 2016) (Judge Lawrence J. O'Neill).

This order agrees with the foregoing opinions from district judges within our circuit that, when an agency requests voluntary remand, a district court may vacate an agency's action without first making a determination on the merits. Vacatur is a form of discretionary, equitable relief akin to an injunction. This order finds persuasive the reasoning in *Center for Native Ecosystems*, which explains that "because vacatur is an equitable remedy, and because the APA does not expressly preclude the exercise of equitable jurisdiction, the APA does not preclude the granting of vacatur without a decision on the merits." 795 F. Supp. 2d at 1241–42; *see also Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542–43 (1987); *Coal. to Protect Puget Sound Habitat v. United States Army Corps of Engineers*, 843 Fed. App'x 77, 80 (9th Cir. 2021).

Our court of appeals has applied the familiar *Allied-Signal* test when considering vacatur of agency actions found to be erroneous, and this order finds the same factors applicable when considering voluntary remand prior to a conclusive decision on the merits. *Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n*, 988 F.2d 146, 150–151 (D.C. Cir. 1993). Under *Allied-Signal*, the "decision whether to vacate depends on [1] the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and [2] the disruptive consequences of an interim change that may itself be changed." *Ibid.*; *see also CCAT*, 688 F.3d at 992 (adopting *Allied-Signal*). *Allied-Signal* can properly guide a vacatur analysis prior to a merits determination similar to the review of a motion for a preliminary injunction. In fact, the test in *Allied-Signal* explicitly arose from a preliminary injunction analysis. *See Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990).

The first prong of *Allied-Signal* — sometimes abridged in decisions where the court had made a merits determination — considers an agency action's deficiencies in order to evaluate

8

United States District Court
Northern District of California

the "extent of doubt whether the agency chose correctly."  Conclusive findings of agency error are thus sufficient but not necessary for this factor to support vacatur.  The first prong may be measured in different ways, including: the extent the agency action contravenes the purposes of the statute in question; whether the same rule could be adopted on remand; and whether the action was the result of reasoned decisionmaking.  *Pollinator*, 806 F.3d at 532; *Or. Nat. Desert Ass'n v. Zinke*, 250 F. Supp. 3d 773, 774 (D. Or. 2017) (Judge Michael Mosman) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 314–15 (1982)); *Am. Petroleum Inst. v. Johnson*, 541 F. Supp. 2d 165, 185 (D.D.C. 2008).  Because a district court's review of an agency's action begins and ends with the reasoning the agency relied on in making that decision, the final rule and its preamble provide valuable material with which to evaluate whether the agency employed reasoned decisionmaking.  *See CCAT*, 688 F.3d at 993.  As for the second prong of *Allied-Signal*, our court of appeals has engaged in a broad analysis of the potential consequences of vacatur.  *See id.* at 994; *Pollinator*, 806 F.3d at 532–33.

### 2. EPA AND INTERVENOR DEFENDANTS' OBJECTIONS TO VACATUR AND *ALLIED-SIGNAL*.

Both EPA and intervenor defendants assert that this order cannot and should not consider whether to vacate the certification rule.  Their host of arguments fails to persuade.

*First*, intervenor defendants contend in a separate motion to strike that plaintiffs' arguments for vacatur in their opposition briefing contravenes Federal Rule of Civil Procedure 7(b), Civil Local Rule 7-1(a), and the undersigned's standing order (Dkt. No. 148 at 2).  An August 2021 order ensured that the parties fully briefed this issue concurrently with EPA's motion for voluntary remand (Dkt. No. 151).  Upon review, this order finds that plaintiffs properly addressed the issue of vacatur.  EPA has moved for remand *without vacatur*.  Yet as our court of appeals has explicitly stated, "We order remand without vacatur only in 'limited circumstances.'"  *Pollinator*, 806 F.3d at 532 (quoting *CCAT*, 688 F.3d at 994).  EPA, in fact, quoted *CCAT* in its opening brief, but neglected to address why the instant action is the exception meriting remand without vacatur or why the default standard of vacatur stated in *CCAT* should not apply here.  EPA cannot avoid the default standard by strategically tailoring

9

its briefing and requested relief, and intervenor defendants made a strategic choice not to initially file any briefing on the subject.  Intervenor defendants, regardless, were granted the opportunity to file supplemental briefing on the vacatur issue and *Allied-Signal* (Intervenors Br., Dkt. No. 172).  So, they have had the last word.  Plaintiffs will not be faulted for addressing the issues that this order must address to render a decision.  *See also N. Coast Rivers All.*, 2016 WL 8673038, at *7.

     *Second*, EPA and intervenor defendants argue that *Allied-Signal* is not the proper standard here because there has been no ruling on the merits of the certification rule (Reply Br. 6; Intervenors Br. 8–9).  As explained, *Allied-Signal* does not require a merits decision (and, in fact, is based on the standard for a preliminary injunction).  Neither EPA nor intervenor defendants, it should be noted, attempt to suggest a substitute for *Allied-Signal* for our purposes.  Intervenor defendants attempt to distinguish *Pascua Yaqui Tribe* — a recent decision from our sister court that vacated upon remand another EPA rule related to the Clean Water Act — on the ground that the district court had before it the parties' fully-briefed summary judgment motions (Intervenors Br. 9).  But, the court's opinion did not rule on the parties' summary judgment motions, which were dismissed without prejudice in the docket entry for the remand order.  *Pascua Yaqui Tribe*, No. C 20-00266, Dkt. No. 99, Aug. 30, 2021.  *Pascua Yaqui Tribe*, in fact, stated that it was not reaching the merits of the agency action:  "[I]n the Ninth Circuit, remand with vacatur may be appropriate even in the absence of a merits adjudication.  Accordingly, the Court will apply the ordinary test for whether remand should include vacatur."  2021 WL 3855977, at *4.

     *Third*, intervenor defendants state that plaintiffs "fail to provide any severability analysis, *which would be mandatory* if [p]laintiffs want this Court to vacate the entire Rule" (Intervenors Br. 11, emphasis added).  The decision intervenor defendants cite to support this statement, *Carlson v. Postal Reg. Comm'n*, 938 F.3d 337, 351–52 (D.C. Cir. 2019), does not necessarily mandate a severability analysis, and this order is not aware of any mandatory authority that requires a severability analysis.  Regardless, severance is not required here because, as explained below, this order finds serious deficiencies in an aspect of the certification rule that,

in EPA's words, "is the foundation of the final rule and [] informs all other provisions of the final rule." 85 Fed. Reg. at 42,256.

*Fourth*, in a footnote in its reply brief, EPA requests additional briefing regarding the scope of vacatur, citing *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (*see* Reply Br. 2 n. 2). EPA does not elaborate how a decision regarding standing to challenge the minimum essential coverage requirement of the Affordable Care Act has any bearing on our case here. Citing general statements of law does not warrant additional briefing, nor did EPA raise this request at our hearing after the intervenor defendants were permitted to provide supplemental briefing on the *Allied-Signal* analysis. This order has considered the proper scope of vacatur.

In sum, should remand be justified, this order will duly apply *Allied-Signal* as described to determine whether vacatur is the appropriate remedy in this dispute.

### 3.   WHETHER REMAND OF THE CERTIFICATION RULE TO EPA IS WARRANTED.

This order now considers whether to remand the certification rule back to EPA for further proceedings. EPA says remand is appropriate because the request: (i) is made in good faith and reflects substantial and legitimate concerns with the rule; (ii) supports judicial economy; and (iii) would not cause undue prejudice to the parties (Br. 6–7).

Remand in this circuit, as EPA reminds us, is generally only refused when the agency's request is frivolous or made in bad faith. *See CCAT*, 688 F.3d at 992. The American Rivers plaintiffs argue EPA's request is frivolous because "the *process* EPA has laid out to address [its] concerns does not demonstrate a genuine commitment to a changed rule that will address all of those concerns" (American Rivers Opp. 16). This order notes some support for American Rivers' argument to deny EPA's remand request as frivolous due to the fact that the agency wholly omitted addressing vacatur until forced to by plaintiffs' opposition briefing, but will not deny remand on that basis alone. This order accordingly proceeds to consider the *SKF USA* taxonomy of positions an agency may take on a challenge to its action.

EPA asserts that its remand request here falls into the fourth category of actions under *SKF USA* — remand to reconsider a decision without confessing error (Br. 8). In this

11

situation, an agency "might argue, for example, that it wished to consider further the governing statute, or the procedures that were followed.  It might simply state that it had doubts about the correctness of its decision."  For an action with this type of posture, *SKF USA* advised that a district court has discretion not to remand, but "if the agency's concern is substantial and legitimate, a remand is usually appropriate."  *SKF USA*, 254 F.3d at 1029.

EPA, as explained below, has certainly expressed substantial concerns with the current formulation of the certification rule (Br. 2–5).  Plaintiffs have not presented evidence or argument sufficient to justify departing from the default rule permitting remand.  The certification rule will be remanded to EPA for further proceedings.

### 4. WHETHER VACATUR OF THE CERTIFICATION RULE UPON REMAND IS WARRANTED.

This order now considers whether the *Allied-Signal* test supports vacatur upon remand of the certification rule.  Each factor is considered in turn.

#### A. THE CERTIFICATION RULE'S DEFICIENCIES.

The first *Allied-Signal* factor considers the seriousness of the rule's deficiencies, thus evaluating the extent of doubt whether the agency correctly promulgated the rule.  *See Allied-Signal*, 988 F.2d at 150–51.  At the hearing, plaintiff states asserted that the most glaring deficiency in the current certification rule is a newly-inserted subsection defining the scope of certification, which they say impinges upon the Clean Water Act's principles of cooperative federalism.  *See* 40 C.F.R. § 121.3.  We start our *Allied-Signal* analysis with these revisions.

In *PUD No. 1 of Jefferson County v. Washington Department of Ecology*, the Supreme Court affirmed that Section 401(d) confers on states the power to "consider all state actions related to water quality in imposing conditions on [S]ection 401 certificates."  511 U.S. 700, 710 (1994).  The majority recognized that Section 401(a) contemplates state certification that a "discharge" will comply with certain provisions of the Clean Water Act while subsection (d) "expands the State's authority to impose conditions on the certification of a project" because it "refers to the compliance of the applicant, not the discharge."  *Id.* at 711.  *PUD No. 1* concluded that Section 401(d) "is most reasonably read as authorizing additional conditions

United States District Court
Northern District of California

1    and limitations on the activity as a whole once the threshold condition, the existence of a

2    discharge, is satisfied." *Id.* at 712.

3         The revised scope of certification that EPA promulgated takes an *antithetical* position to

4    *PUD No. 1* without reasonably explaining the change.  The rule's scope of certification is

5    "limited to assuring that a discharge from a Federally licensed or permitted activity will

6    comply with water quality requirements," which the rule limits to Sections 301, 302, 303, 306,

7    and 307 of the Clean Water Act.  40 C.F.R. § 121.3.  EPA may, of course, take up different

8    interpretations of Section 401, but a revised rule with unexplained inconsistencies suggests it is

9    an unreasonable interpretation that is not entitled to deference under *Chevron*.  *See Encino*

10   *Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016); *Gomez-Sanchez v. Sessions*, 892

11   F.3d 985, 995 (9th Cir. 2018).  EPA does not adequately explain in the preamble how it could

12   so radically depart from what the Supreme Court dubbed the most reasonable interpretation of

13   the statute.  *PUD No. 1*, 511 U.S. at 712.  The certification rule's preamble tries to address the

14   sharp departure from *PUD No. 1* but falls back to claiming that the case was wrongly decided,

15   and eventually sides with Justice Thomas' dissenting opinion.  *See* 85 Fed. Reg. at 42,231.

16   EPA now undermines that argument itself by declaring its intent to "*restore the balance* of

17   state, Tribal, and federal authorities consistent with the cooperative federalism principles

18   central to CWA section 401" (Goodin Decl. ¶ 11, emphasis added).  The agency's recognition

19   of its inconsistent interpretation of the scope of the certification compels the conclusion that

20   the current rule is unreasonable.  Accordingly, this order harbors significant doubts that EPA

21   correctly promulgated the certification rule due to the apparent arbitrary and capricious

22   changes to the rule's scope.  *See City of Arlington v. FCC*, 569 U.S. 290, 307 (2013); *PUD No.*

23   *1*, 511 U.S. at 723 (Stevens, J., concurring) ("Not a single sentence, phrase, or word in the

24   Clean Water Act purports to place any constraint on a State's power to regulate the quality of

25   its own waters more stringently than federal law might require.").

26        Moreover, EPA's acknowledgment it intends to "restore" the principles of cooperative

27   federalism indicates that the current scope of the certification rule is inconsistent with and

28   contravenes the design and structure of the Clean Water Act, and thus does not warrant

United States District Court
Northern District of California

deference. As noted in the Clean Water Act's congressional declaration of goals and policy: "It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, [and] to plan the development and use . . . of land and water resources." 33 U.S.C. § 1251(b); *Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 321 (2014). The rule's inconsistency with the purpose of the statute it interprets also supports vacatur.

Next, while EPA does not admit fault, it does signal it will not or could not adopt the same rule upon remand. The scope of certification is not the only problematic aspect of the rule. EPA's opening brief lists eleven aspects of the certification rule about which it has "substantial concerns." That list takes up two-and-a-half pages of its twelve-page brief, and includes:

- "the certification action process steps, including whether there is any utility in requiring specific components and information for certifications with conditions and denials; whether it is appropriate for federal agencies to review certifying authority actions for consistency with procedural requirements or any other purpose"

- "enforcement of CWA Section 401, including the roles of federal agencies and certifying authorities in enforcing certification conditions"

- "modifications and 'reopeners,' including whether the statutory language in CWA Section 401 supports modification of certifications or 'reopeners,'"

- "application of the Certification Rule, including impacts of the Rule on processing certification requests, impacts of the Rule on certification decisions, and whether any major projects are anticipated in the next few years that could benefit from or be encumbered by the Certification Rule's procedural requirements"

(Br. 3–5). These are not narrow issues. They address nearly every substantive change introduced in the current rule. Even without admitting error, the scope of potential revisions EPA is considering supports vacatur of the current rule because the agency has demonstrated that it will not or could not adopt the same rule upon remand.

In sum, in light of the lack of reasoned decisionmaking and apparent errors in the rule's scope of certification, the indications that the rule contravenes the structure and purpose of the Clean Water Act, and that EPA itself has signaled it could not or will not adopt the same rule

14

upon remand, significant doubt exists that EPA correctly promulgated the rule. The first *Allied-Signal* factor supports vacatur of the certification rule.

### B.   THE DISRUPTIVE CONSEQUENCES OF VACATUR.

The second *Allied-Signal* factor considers the disruptive consequences of vacatur. Intervenor defendants argue that "[r]einstating the prior rule would result in substantial disruption from general whipsawing of both regulators and regulated entities" and raise several hypothetical procedural issues (Intervenors Br. 16, 18). The rule has only been in effect for thirteen months. This is insufficient time for institutional reliance to build up around the current rule, which has been under attack since before day one. This order finds vacatur will not intrude on any justifiable reliance.

Moreover, the whipsawing intervenor defendants would ascribe to vacatur clearly arose from EPA's promulgation of a revised certification rule that dramatically broke with fifty years of precedent, and subsequent complete course reversal by the agency less than nine months later. EPA asserted in a June 2021 notice that it will not reinstate wholesale the previous certification rule from 1971 (Goodin Decl. ¶ 13). However, EPA's statements here that it will "restore" the principles of cooperative federalism and that it plans to address nearly every substantive change the current certification rule introduced suggest vacatur will prove less disruptive than leaving the current rule in place until Spring 2023.

Our court of appeals has measured the disruptive consequences of vacating an EPA rule by measuring the extent to which a faulty rule could result in possible environmental harm. To that end, our court of appeals has chosen not to vacate an EPA rule when setting aside listing of a snail species as endangered would have risked potential extinction of that species, and when vacating could have, in part, led to air pollution that would undermine the goals of the Clean Air Act. On the other hand, our court of appeals did vacate an EPA action that could have affected sensitive bee populations. *See Pollinator*, 806 F.3d at 532–33 (bees); *CCAT*, 688 F.3d at 994 (air); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405–06 (9th Cir. 1995) (snails).

Plaintiffs have established that significant environmental harms will likely transpire should remand occur without vacatur. This order finds particularly persuasive the State of Washington's example concerning three hydropower dams on the Skagit River. These dams will each require Section 401 certifications prior to EPA's promulgation of a replacement for the current certification rule. As noted in the State of Washington's brief, "because FERC licenses for dams will last between 30–50 years, the lack of adequate water quality conditions attached to these licenses will have adverse impacts for a *generation*" (States Opp. 7). As Loree' Randall, Washington's Section 401 Policy Lead, explains, the new certification rule curtails restrictions certifying authorities can impose on dams to limit increases in water temperature. The threatened Chinook salmon that reside in the Skagit River are vulnerable to these changes in water temperature, which puts at risk a primary food source for the endangered Southern Resident Orca population in Puget Sound, of which there are currently only seventy-three, the lowest number in over four decades (Randall Decl. ¶¶ 7, 10–11).

Intervenor defendants argue that overreach by certifying authorities under the old rule led to negative economic effects, pointing to several energy projects that failed or had additional restrictions placed upon them (Intervenors Br. 4). This order duly considers the economic effects of vacatur — and temporary reinstatement of the previous rule — but notes that our court of appeals has focused more on environmental consequences when considering whether to vacate EPA rules, and the Clean Water Act has the express goal "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Progress towards this goal carries inherent economic effects. This order finds the disruptive environmental effects should remand occur without vacatur described by plaintiffs outweighs the disruptive economic consequences of vacatur described by intervenor defendants. The economic harms intervenor defendants proffer also do not outweigh the significant doubts that EPA correctly promulgated the current certification rule. *See Pollinator*, 806 F.3d at 532; *CCAT*, 688 F.3d at 994; *Zinke*, 250 F. Supp. 3d at 775; *Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic and Atmospheric Admin.*, 109 F. Supp. 3d 1238, 1242–43 (N.D. Cal. 2015) (Judge Nathanael M. Cousins). This order finds the second *Allied-Signal* factor supports

1    vacatur because the disruptions caused by vacatur and the imposition of an interim rule do not

2    outweigh the deficiencies of the current rule.

3    Finally, EPA and intervenor defendants have cited several cases that also reviewed the

4    certification rule (Reply Br. 2). This order considers the analysis in each of these opinions, to

5    the extent they seriously and substantively examined remand and vacatur, but ultimately finds

6    *Pascua Yaqui Tribe*, an opinion on another EPA rule with the most thorough analysis, to be the

7    most persuasive. 2021 WL 3855977. In that opinion, Judge Rosemary Márquez of our circuit

8    vacated EPA's rule that narrowed the definition of "waters of the United States" upon remand

9    to the agency. In two of the decisions EPA cited here, Judge Richard Seeborg of our district

10   filed short orders remanding to EPA challenges to the rule at issue in *Pascua Yaqui Tribe*,

11   finding the issue of vacatur moot (Dkt. No. 161). *See California v. Regan*, No. C 20-03005

12   RS, Dkt. No. 271 (N.D. Cal. Sept. 16, 2021); *WaterKeeper All., Inc. v. EPA*, No. C 18-03521

13   RS, Dkt. No. 125 (N.D. Cal. Sept. 16, 2021). In dicta, both brief orders stated the court would

14   have been disinclined to impose vacatur. Both orders, however, based that conclusion on a

15   previous order that denied a motion for a preliminary injunction on the ground that plaintiffs

16   were unlikely to succeed on the merits proving the rule was legally erroneous. *See California

17   v. Regan*, No. C 20-03005 RS, Dkt. No. 171 (N.D. Cal. June 19, 2020). These orders,

18   accordingly, premised their disinclination to impose vacatur on an issue evaluated by the first

19   *Allied-Signal* prong, which here supports vacatur.

20   In sum, the *Allied-Signal* factors support vacatur of the certification rule upon remand to

21   EPA, which will result in a temporary return to the rule previously in force until Spring 2023,

22   when EPA finalizes a new certification rule. *See Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th

23   Cir. 2005).

24                                    **CONCLUSION**

25   As explained, the motion for remand is **GRANTED**. Upon remand the current certification

26   rule, 40 C.F.R. Part 121, is **VACATED**.

27

28

United States District Court
Northern District of California

Intervenor defendants' motion to strike (Dkt. No. 148) is **DENIED**.  Being unnecessary for the resolution of this motion, EPA's request for judicial notice (Dkt. No. 157) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated:   October 21, 2021.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

CLEAN WATER ACT
RULEMAKING.

This Document Relates to:

ALL ACTIONS.

No. C 20-04636 WHA
No. C 20-04869 WHA
No. C 20-06137 WHA

(Consolidated)

**FINAL JUDGMENT**

For the reasons stated in the order granting remand with vacatur, Dkt. No. 173, and to

ensure appealability, final judgment is hereby entered in favor of plaintiffs and against

defendants, intervenors, and intervenor defendants. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 17, 2021.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

CLEAN WATER ACT
RULEMAKING.

This Document Relates to:

ALL ACTIONS.

No.  C 20-04636 WHA
No.  C 20-04869 WHA
No.  C 20-06137 WHA

(Consolidated)

**NOTICE RE BRIEFING FOR ANY
MOTION TO STAY PENDING
APPEAL**

    The undersigned judge has learned of an email from Hunton Andrews Kurth LLP to our civil docketing department on behalf of intervenor defendants American Petroleum Institute and Interstate Natural Gas Association of America.  The email seeks information regarding hearing dates and briefing schedules for a motion to stay pending appeal that counsel is considering whether to file.  Counsel specifically asks about how late they can file their motion and still have a hearing scheduled on either December 2 or 16, and whether waiving the filing of a reply brief could ensure a hearing on those dates.  Counsel did not copy any other party's counsel in this *ex parte* communication, which was forwarded from docketing to our courtroom deputy.

    Significantly, no actual motion has been filed seeking a stay.  Counsel has only sent an inquiry, not a motion.  Under no circumstances would this constitute a stay.  There is no stay of the order remanding and vacating the EPA's certification rule.

United States District Court
Northern District of California

No motion having been filed, the present situation is that the rule has been vacated and may be disregarded with impunity. Note the order in question issued on October 21 and many weeks passed before counsel emailed the Court inquiring about how to seek a stay.

If counsel wishes to make such a motion, the deadline to file would be **NOVEMBER 22 AT NOON**, with opposition briefing due **NOVEMBER 30 AT NOON**, and a telephonic hearing set for **DECEMBER 2 AT 8:00 A.M.** No reply briefing.

Dated:   November 17, 2021.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE