IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>Clean Water Act Rulemaking<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:20-cv-04636-WHA (consolidated)<br><br>**DEFENDANTS EPA's, ET AL. RESPONSE TO ADDITIONAL REQUESTS FOR INFORMATION** |

Defendants the Environmental Protection Agency ("EPA"), et al., submit the following response to the Court's June 21, 2023 Update and Request for Information, ECF No. 220, and June 22, 2023 Additional Questions for Requested Briefing, ECF No. 221.

## I.     UPDATE AND REQUEST FOR INFORMATION

EPA respectfully submits that expedited summary judgment briefing is not appropriate in this case. Rather, the appropriate procedure is to remand the 2020 Rule (85 Fed. Reg. 42,210 (July 13, 2020)) to EPA without vacatur pending EPA's publication of the soon-to-be-finalized replacement for that rule (the "Final 2023 Rule").

As this Court noted, the Ninth Circuit has stated that a district court may deny a voluntary remand and decide the merits of the case "if the risk of harm from *indefinitely leaving* an allegedly unlawful rule in place outweighs considerations of judicial and administrative efficiency." *In re Clean Water Act Rulemaking*, 60 F.4th 583, 596 (9th Cir. 2023) (emphasis added). Here, there is no risk associated with "indefinitely leaving an allegedly unlawful rule in place," because the 2020 Rule will be replaced by the Final 2023 Rule in short order.

Publication of the Final 2023 Rule is imminent. Indeed, EPA submitted the Final 2023 Rule to the Office of Management and Budget's Office of Information and Regulatory Affairs ("OIRA") for review under Executive Order 12,866 on June 13, 2023. OIRA began its review on June 15, 2023. *See* https://www.reginfo.gov/public/do/eoDetails?rrid=313665. OIRA's guidelines in Executive Order 12,866 provide for review within 90 calendar days from the date of submission in most cases. After OIRA concludes interagency review and returns the Final 2023 Rule to EPA, the Agency will promptly submit the Rule to the EPA Administrator for signing. Therefore, assuming OIRA takes the full 90-day review period, EPA would receive the Final 2023 Rule from OIRA by September 11, and the Administrator would sign the Rule shortly after that.

In its June 21 Request for Information, this Court asked the parties to respond to a potential schedule that would result in "a hearing set for early August, and an order to issue shortly thereafter." June 21, 2023 Update and Request for Information, ECF No. 220. Under that schedule, the window of time between a potential summary judgment ruling and EPA issuing its

1  Final 2023 Rule is likely only a matter of weeks. EPA anticipates that the Final 2023 Rule will
2  take effect sixty days after that. As a result, the concerns about indefinitely leaving a rule in
3  place described by the Ninth Circuit in *In re Clean Water Act Rulemaking*, 60 F.4th at 596,
4  simply do not apply in this context.

5  On the other hand, considerations of "judicial and administrative efficiency" strongly
6  counsel granting EPA's motion for remand without vacatur. As EPA has repeatedly explained, it
7  would be inappropriate and a waste of judicial resources to force EPA to defend the 2020 Rule
8  while the Final 2023 Rule is pending. *See* ECF No. 201 at 6-7; ECF No. 143 at 1-6, 9, 12-13;
9  ECF No. 153 at 1-2, 7-8. Expedited summary judgment briefing in this Court would put EPA in
10 the impossible and prejudicial position of having to defend the 2020 Rule on a prior record mere
11 weeks before the Final 2023 Rule is signed on a new record. It could also complicate EPA's
12 ability to defend the Final 2023 Rule if it is challenged in the future.

13 Moreover, there is reason to doubt that Plaintiffs would face significant adverse
14 consequences during the short interim period between a merits ruling by this Court and the Final
15 2023 Rule coming into effect. Many of the projects Plaintiffs cite may not even be submitted for
16 certification until the Final 2023 Rule takes effect. *See* Joint Response to Request for
17 Information, ECF No. 217, at 6 (alleging harms from water quality certification applications
18 California expects to receive "before the end of 2023"). Plaintiff States cite a number of requests
19 for certification they expect to receive "imminently," which they allege will harm them by
20 forcing them to make certification decisions for these projects under the 2020 Rule. *Id*. But
21 Plaintiff States can avoid these alleged harms if they are able to wait until the Final 2023 Rule
22 takes effect in the fall to make certification decisions for these projects.

23 For all these reasons, EPA respectfully urges this Court not to order expedited summary
24 judgment briefing.

25 As noted above, EPA believes it is unlikely that Plaintiffs will suffer any significant harm
26 from the 2020 Rule during the short interim period between when this Court may rule on
27 expedited summary judgment briefs and when the Final 2023 Rule will become effective.
28 Further, the wide-ranging and interrelated claims made in the three complaints may make it

2

difficult for this Court to decide one discrete issue to resolve the case. *See* Amended Complaint, ECF No. 75; Complaint, ECF No. 96; Complaint, ECF No. 98. Thus, EPA will not speculate on which of the various aspects of the 2020 Rule Plaintiffs challenge would be the "narrowest issue" that the Court could rule upon and "avert the harm that plaintiffs allege." June 21, 2023 Update and Request for Information, ECF No. 220.

## II.   ADDITIONAL QUESTIONS FOR REQUESTED BRIEFING

1.   EPA does not know what projects are of greatest concern to Plaintiffs. Additionally, because EPA is the permitting agency for only a relatively small proportion of projects that require Section 401 certification, EPA does not know which projects are likely to need certification between the time the Court could rule on the merits of Plaintiffs' challenge to the 2020 Rule and the time the Final 2023 Rule takes effect. However, as described above, that window of time is likely a matter of no more than a few months.

2.   Without knowing what the substance of a merits ruling would be, or which projects are of greatest concern to Plaintiffs, EPA does not know how a merits ruling would make a difference in terms of Plaintiff States' ability to issue certification conditions or deny Section 401 requests for certification.

3.   Because EPA does not know what potential project applications are of greatest concern to Plaintiff States, EPA cannot identify which federal agencies are responsible for approving those applications. A number of different federal agencies oversee the licenses or permits that require a Section 401 certification. As EPA explained in the preamble of the proposed 2023 Rule:

> Section 401 certification is required for any Federal license or permit to conduct any activity that may result in any discharge into a 'water of the United States.' 33 U.S.C. 1341(a)(1). . . . The CWA itself does not list specific Federal licenses and permits that are subject to section 401 certification requirements. The most common examples of licenses or permits that may be subject to section 401 certification are CWA section 402 NPDES permits issued by EPA in jurisdictions where the EPA administers the NPDES permitting program; CWA section 404 permits for the discharge of dredged or fill material and Rivers and Harbors Act sections 9 and 10 permits issued by the Army Corps of Engineers; and hydropower and interstate natural gas pipeline licenses issued by the Federal Energy Regulatory Commission.

87 Fed. Reg. 35,318, 35,327 (June 9, 2022). Other federal licenses and permits subject to section 401 may include, but are not limited to, Rivers and Harbors Act section 9 permits issued by the U.S. Coast Guard, nuclear power plant licenses issued by the Nuclear Regulatory Commission, and mine plans for operation approved by the U.S. Forest Service. *See* Economic Analysis for the Proposed Clean Water Act Section 401 Water Quality Certification Improvement Rule, at 19-21.

4. EPA does not know what projects are of greatest concern to Plaintiffs, so it cannot identify the point sources of pollution or any potential environmental harm.

5. The environmental impacts of any dam are highly site-specific and dependent on a multitude of factors. In general, dams can cause a variety of effects to water quality, fish and wildlife, and human populations depending on the size of the river and dam, the type of dam, the aquatic life, existing water quality, and other characteristics of the river and dam. *See generally Nat'l Wildlife Fed'n v. Gorsuch*, 693 F.2d 156, 161-66 (D.C. Cir. 1982) (describing in detail various water quality effects of dams). Beyond coarse generalizations, EPA is unable to make any categorical statement about the environmental impacts of damming a river.

6. EPA believes that the anticipated requests for certification for hydropower dams that Plaintiffs have raised are for re-licensing of existing non-federal dams, not for the construction of new hydropower dams. Plaintiffs have not pointed to any Section 401 requests for certification for proposed construction of new non-federal hydropower dams, and EPA is not aware of any pending or anticipated applications for Section 401 certifications for construction of new hydropower dams. Beyond that, the Court's question implicates highly complex issues that EPA is unable to address in the short time allowed for this filing.

7. EPA is not aware of any state seeking to stop a project on a river that flows only through a state other than itself.

Respectfully submitted,

Date: June 27, 2023

TODD KIM
Assistant Attorney General


  /s/ *Elisabeth Carter*
ELISABETH H. CARTER (N.Y. Bar No. 5733274)
Elisabeth.Carter@usdoj.gov
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
4 Constitution Square
150 M Street, N.E.
Suite 4.1406
Washington, D.C.  20002
Telephone: (202) 514-0286

*Attorneys for Defendants*