1  ROB BONTA
   Attorney General of California
2  SARAH E. MORRISON
   ERIC KATZ
3  Supervising Deputy Attorneys General
   CATHERINE M. WIEMAN, SBN 222384
4  TATIANA K. GAUR, SBN 246227
   ADAM L. LEVITAN, SBN 280226
5  BRYANT B. CANNON, SBN 284496
   Deputy Attorneys General
6    300 South Spring Street, Suite 1702
     Los Angeles, CA 90013
7    Telephone:  (213) 269-6329
     Fax:  (916) 731-2128
8    E-mail:  Tatiana.Gaur@doj.ca.gov
   *Attorneys for Plaintiff State of California,*
9  *by and through Attorney General Rob*
   *Bonta and the State Water Resources*
10 *Control Board*

   ROBERT W. FERGUSON
   Attorney General of Washington
   KELLY T. WOOD (*admitted pro hac vice*)
   Assistant Attorneys General
   Washington Office of the Attorney General
   Ecology Division
     2425 Bristol Court SW
     Olympia, Washington  98501
     Telephone:  (360) 586-5109
     E-mail:  Kelly.Wood@atg.wa.gov
   *Attorneys for Plaintiff State of*
   *Washington*

   LETITIA JAMES
   Attorney General of New York
   BRIAN LUSIGNAN (*admitted pro hac vice*)
   Assistant Solicitor General
   Division of Appeals & Opinions
     The Capitol
     Albany, New York 12224-0341
     Telephone:  (518) 776-2399
     E-mail: Brian.Lusignan@ag.ny.gov
   *Attorneys for Plaintiff State of New York*

   *[Additional Plaintiffs and Counsel Listed*
   *on Signature Pages]*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In Re** <br><br> **Clean Water Act Rulemaking** | **Case No. 3:20-cv-04636-WHA** <br> (Lead consolidated) <br><br> Applies to all actions <br><br> **PLAINTIFFS' RESPONSES TO UPDATE AND REQUEST FOR INFORMATION (DKT. NO. 220) AND ADDITIONAL QUESTIONS FOR REQUESTED BRIEFING (DKT. NO. 221)** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 1

PLAINTIFFS' RESPONSES TO THE COURT'S REQUESTS FOR INFORMATION
    RELATED TO merits BRIEFING ................................................................................ 2

    I.    Issues to Be Briefed on Summary Judgment ...................................................... 2

           A.    The 2020 Rule Unlawfully Limits the Scope of Certifying
                  Authorities' Review and Decisions on Section 401 Certification
                  Requests ........................................................................................... 3

           B.    The 2020 Rule Unlawfully Imposes Federal Review and Oversight
                  of Section 401 Certification Decisions ....................................... 4

    II.    Plaintiffs' Responses to the Court's Additional Questions for Requested
          Briefing ............................................................................................................... 5

           A.    Response to Question 1 ................................................................... 6

           B.    Response to Question 2 ................................................................... 9

           C.    Response to Question 3 ................................................................. 10

           D.    Response to Question 4 ................................................................. 10

           E.    Response to Question 5 ................................................................. 14

           F.    Response to Question 6 ................................................................. 16

           G.    Response to Question 7 ................................................................. 17

i

PLAINTIFFS' RESPONSES TO UPDATE AND REQUEST FOR INFORMATION (DKT. NO. 220) AND
ADDITIONAL QUESTIONS FOR REQUESTED BRIEFING (DKT. NO. 221) (3:20-cv-04636-WHA)

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*City of Tacoma, Wash. v. FERC*,
     460 F.3d 53 (D.C. Cir. 2006) ................................................................................. 5

*In re Clean Water Act Rulemaking*,
     60 F.4th 583 (9th Cir. 2023) .................................................................................. 2

*Islander E. Pipeline Co. v. McCarthy*,
     525 F.3d 141 (2d Cir. 2008), *cert. denied* 555 U.S. 1046 (2008) ......................... 4

*Keating v. Fed. Energy Regulatory Comm'n*,
     927 F.2d 616 (D.C. Cir. 1991) ............................................................................... 4

*PUD No. 1 of Jefferson Cy. v. Dept. of Ecology*,
     511 U.S. 700 (1994) (*PUD No. 1*) ......................................................................... 3

*Sierra Club v. U.S. Army Corps of Engineers*,
     909 F.3d 635 (4th Cir. 2018) .................................................................................. 5

*United States v. Marathon Development Corp.*,
     867 F.2d 96 (1st Cir. 1989) .................................................................................... 4

**Statutes**

33 U.S.C.
     § 1341(a)(1) ............................................................................................................ 4
     § 1341 (d) ............................................................................................................. 3, 4

Clean Water Act
     Section 401 .................................................................................................... *passim*

Congressional Review Act ............................................................................................. 2

**Other Authorities**

40 C.F.R.
     §§ 121.1(f), 121.3, 121.5 to 121.7 .......................................................................... 1
     §§ 121.1(f), (n) ....................................................................................................... 3
     §§ 121.1(f), (n), 121.3, 121.5 to 121.7 .................................................................... 2
     §§ 121.9, 121.10 ............................................................................................... 1, 3, 4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>
**(continued)**

2

<u>Page</u>

3

Federal Register
    85 Feg. Reg. 42,210 (July 13, 2020) ......................................................................... 1

4

    86 Fed. Reg. 29,543 ................................................................................................... 5
    87 Fed. Reg. 35,318 (June 9, 2022) .......................................................................... 1

5

6

*Brookfield White Pine Hydro LLC*,
    182 FERC ¶ 61,169 (March 17, 2023), *pet. for review pending* D.C. Cir. No.

7

    23-1075 ...................................................................................................................... 7

8

Certification Final Rule, *available at* https://www.epa.gov/sites/default/files/2020-
    06/documents/frequently_asked_questions_fact_sheet_for_the_clean_water_ac

9

    t_section_401_certification_rule.pdf (last visited on June 24, 2023) ..................... 6, 10, 11

10

H.R. Rep. No. 91-127 (1969), reprinted in 1970 U.S.C.C.A.N. 2691 ........................... 3

11

https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202304&RIN=2040
    -AG12 (last visited June 23, 2023) .......................................................................... 2

12

13

Moran, et al., *Sustainable Hydropower in the 21st Century* (2018), *available at*
    www.pnas.org/cgi/doi/10.1073/pnas.1809426115 .................................................. 16

14

15

OMB's List of Regulatory Actions Currently Under Review, *available at*
    https://www.reginfo.gov/public/jsp/EO/eoDashboard.myjsp (last visited on

16

    June 24, 2023) ......................................................................................................... 2

17

Pacific Northwest, North America. *Lake and Reservoir Management*, *23*(2) ............................ 16

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

In response to the Court's Update and Request for Information (Dkt. No. 220), Plaintiffs urge the Court to order summary judgment briefing on two aspects of the "Clean Water Act Section 401 Certification Rule," 85 Fed. Reg. 42,210 (July 13, 2020) (the 2020 Rule): (1) the scope of certifying authorities' review and decisions on Section 401 certification applications (*see* 40 C.F.R. §§ 121.1(f), 121.3, 121.5 to 121.7) and (2) federal review and oversight of certifying authorities' Section 401 certification decisions (*see id.*, §§ 121.9, 121.10). These aspects are fundamental to the 2020 Rule and are sources of Plaintiffs' harms flowing from the rule. Given the delay in the U.S. Environmental Protection Agency's (EPA) promulgation of a replacement Section 401 rule and the anticipated legal challenges once that replacement rule is finalized, a prompt decision by this Court holding the 2020 Rule is unlawful will address Plaintiffs' harms.

Plaintiffs' responses to the Court's Additional Questions for Requested Briefing (Dkt. No. 221) are provided in Section II below.

**BACKGROUND**

Plaintiffs commenced these consolidated cases to obtain judicial relief from the 2020 Rule, which drastically curtailed state and tribal authority to protect water quality under Clean Water Act section 401, 33 U.S.C. § 1341 (Section 401). Defendants have conceded that the 2020 Rule is deficient because it infringes on state and tribal authority under Section 401. Dkt. No. 143-1, ¶ 11; *see also* EPA, Statement of Regulatory Priorities, at 13 (Fall 2021).[1] Indeed, EPA proposed a replacement Section 401 rule in June 2022, 87 Fed. Reg. 35,318 (June 9, 2022), and initially said that it would issue a final replacement rule in spring 2023. Dkt. No. 143-1, ¶ 27.

But EPA has not yet published its final replacement rule and has sought to shield the 2020 Rule from judicial review by requesting remand to the agency without vacatur. Dkt. No. 143. EPA most recently stated that it expects to issue the final replacement rule in August 2023.[2] However,

---

[1] *Available at* https://www.reginfo.gov/public/jsp/eAgenda/StaticContent/202110/Statement_2000_EPA.pdf (last visited June 26, 2023).

[2] According to EPA's Spring 2023 Regulatory Agenda, the final rule is expected in August 2023. *See*

EPA only just submitted the final replacement rule for review by the Office of Management and Budget (OMB) on June 15, 2023.[3] Given OMB's 90-day review period, it is likely that the final rule will not be promulgated before September 2023. Further, because the Congressional Review Act mandates a 60-day review period before a rule becomes effective, the replacement rule is unlikely to take effect before November or December 2023. Given EPA's past guidance, it is likely that the agency will take the position that the 2020 Rule will apply to projects for which certification requests were submitted before the replacement rule's effective date, thereby extending the harmful effects of the 2020 Rule even further. Moreover, the new rule is likely to be challenged immediately and it could be subject to additional judicially-imposed stays or injunctions.

For these reasons, summary judgment on the issues outlined above is necessary to prevent a continuation of the irreparable harms from the 2020 Rule on state and tribal waters.

## PLAINTIFFS' RESPONSES TO THE COURT'S REQUESTS FOR INFORMATION RELATED TO MERITS BRIEFING

### I.   ISSUES TO BE BRIEFED ON SUMMARY JUDGMENT

In response to the Court's Update and Request for Plaintiffs respectfully request that the Court order summary judgment briefing on the following issues: (1) whether the 2020 Rule's limitation on the scope of certifying authorities' review and decisions on Section 401 certification requests is unlawful (*see* 40 C.F.R. §§ 121.1(f), (n), 121.3, 121.5 to 121.7) and (2) whether the 2020 Rule's provisions establishing federal agencies' review and oversight of certifying authorities' Section 401 decisions are unlawful (*see id.*, §§ 121.9, 121.10).

### A.   The 2020 Rule Unlawfully Limits the Scope of Certifying Authorities' Review and Decisions on Section 401 Certification Requests

One of the 2020 Rule's most fundamental deficiencies is its restriction on the scope of certifying authorities' Section 401 review to water quality impacts resulting exclusively from any

---

https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202304&RIN=2040-AG12 (last visited June 23, 2023).
[3] *See* OMB's List of Regulatory Actions Currently Under Review, *available at* https://www.reginfo.gov/public/jsp/EO/eoDashboard.myjsp (last visited on June 24, 2023).

identified point-source discharges of pollutant into the "waters of the United States." Prior to the 2020 Rule, Section 401 certifications considered *all* potential impacts of a proposed project as a whole, including direct and indirect impacts over the project's full operational life. *See PUD No. 1 of Jefferson Cy. v. Dept. of Ecology*, 511 U.S. 700 (1994) (*PUD No. 1*). Consistent with the Clean Water Act's requirement that Section 401 certifications include "any" conditions necessary to assure compliance with "appropriate" requirements of state law, Section 401 certification conditions sought to assure that all aspects of a proposed project would comply with applicable state water quality laws. *See* 33 U.S.C. § 1341 (d). The broad scope of Section 401 certification review and conditions has long been the cornerstone of the Clean Water Act's system of cooperative federalism and reflected the fact that Congress intended Section 401 to "provide reasonable assurance . . . that no license or permit will be issued by a federal agency for any activity … that could in fact become a source of pollution." H.R. Rep. No. 91-127, at 24 (1969), reprinted in 1970 U.S.C.C.A.N. 2691, 2697.

The 2020 Rule unlawfully guts this authority. In conflict with Supreme Court precedent and decades of EPA's own legal analysis, the 2020 Rule purports to limit certifying authorities' review to only the narrow range of water quality impacts from a project that relate to specific, point-source discharges to "waters of the United States." 40 C.F.R. §§ 121.1(f), (n); 121.3. Thus, by limiting the scope of what certifying agencies may consider when it comes to federally licensed or permitted projects, the 2020 Rule has greatly constrained the use of Section 401 as a tool for assessing and addressing water quality impacts of the activity as a whole on state and tribal waters.

The 2020 Rule's scope limitations will continue to hamper Plaintiffs' ability to protect water quality. (Dkt. Nos. 145; 146 at 3-14; 147 at 7-10; 200 at 14-15.) A merits ruling, holding these scope limitations unlawful and setting aside the 2020 Rule will help avert Plaintiffs' harms.

**B.   The 2020 Rule Unlawfully Imposes Federal Review and Oversight of Section 401 Certification Decisions**

In addition to unlawfully limiting the scope of states' review and decision-making on Section 401 applications, the 2020 Rule imposed federal review and veto authority over state

3

1   certification decisions. 40 C.F.R. §§ 121.9, 121.10. Notably, the 2020 Rule allows federal

2   permitting or licensing agencies to deem the states' or tribes' certification authority waived for

3   various reasons, including minor procedural errors. *Id*. § 121.9. In practice, a federal permitting

4   agency could inappropriately substitute its own judgment for that of the states or tribes.

5          These provisions of the 2020 Rule directly contradict the Clean Water Act. The plain

6   language of Section 401 provides that "[n]o license or permit shall be granted until the

7   certification required by this section has been obtained or has been waived" and "[n]o license or

8   permit shall be granted if certification has been denied by the State." 33 U.S.C. § 1341(a)(1).

9          Courts have consistently recognized that Section 401 "mean[s] exactly what it says: that

10  *no* license or permit . . . shall be granted if the state has denied certification." *United States v.*

11  *Marathon Development Corp.*, 867 F.2d 96, 101 (1st Cir. 1989) (emphasis in original). A

12  certifying authority may deny certification because a project will not comply with state water

13  quality standards and "effectively veto[]" that project. *Islander E. Pipeline Co. v. McCarthy*, 525

14  F.3d 141, 164 (2d Cir. 2008), *cert. denied* 555 U.S. 1046 (2008). In short, in enacting Section 401

15  Congress "intended that the states would retain the power to block, for environmental reasons,

16  local water projects that might otherwise win federal approval." *Keating v. Fed. Energy*

17  *Regulatory Comm'n*, 927 F.2d 616, 622 (D.C. Cir. 1991).

18         Further, Section 401(d) provides that any certification "*shall* become a condition on any

19  Federal license or permit." 33 U.S.C. § 1341(d) (emphasis added). "This language leaves no room

20  for interpretation. 'Shall' is an unambiguously mandatory term, meaning, as courts have uniformly

21  held, that state conditions *must* be conditions" of the federal permit. *Sierra Club v. U.S. Army*

22  *Corps of Engineers*, 909 F.3d 635, 645-46 (4th Cir. 2018). Indeed, "[e]very Circuit to address this

23  provision has concluded that 'a federal licensing agency lacks authority to reject [Section 401

24  certification] conditions in a federal permit.'" *Id.* at 646 (quoting *Snoqualmie Indian Tribe v. Fed.*

25  *Energy Regulatory Comm'n*, 545 F.3d 1207, 1218 (9th Cir. 2008)). In short, under Section 401 the

26  federal agencies' "role . . . is limited to awaiting and then deferring to the final decision of the

27  state." *City of Tacoma, Wash. v. FERC*, 460 F.3d 53, 68 (D.C. Cir. 2006).

28

4

EPA has recognized that the 2020 Rule is inconsistent with federalism principles and for that reason stated that it intended to "reconsider and revise" the 2020 Rule in order to "restore the balance of state, Tribal, and federal authorities consistent with the cooperative federalism principles central to CWA [S]ection 401." Dkt. No. 143-1, ¶ 11. Indeed, EPA admits "that a federal agency's review may result in a state or tribe's certification or conditions being permanently waived as a result of nonsubstantive and easily fixed procedural concerns identified by the federal agency." 86 Fed. Reg. at 29,543.

Federal agencies have relied on the 2020 Rule's federal review and oversight provisions to refuse to accept state certifications and have even declared waivers of state certification authority based on a state's inadvertent omission of written explanations for certification conditions. *See* Dkt. No. 146 at 10-12. Thus, the 2020 Rule's provisions have caused and will continue to cause significant disruption of state and tribal regulatory programs. *See id.* A judgment by this Court finding that the federal oversight provisions of the 2020 Rule are illegal will directly halt the occurrence of these harms.

## II. PLAINTIFFS' RESPONSES TO THE COURT'S ADDITIONAL QUESTIONS FOR REQUESTED BRIEFING

Plaintiffs have endeavored to answer the Court's additional questions (Dkt. No. 221) to the best of their ability. Given the short timeframe, Plaintiffs' responses are not exhaustive but, rather, provide examples of projects of concern and impacts/harms that flow from the 2020 Rule and would be averted should the Court invalidate the rule on summary adjudication.

### A. Response to Question 1

Question 1 focuses on projects "that are likely to be approved" in the time period between a potential merits ruling and the effective date of the Section 401 replacement rule. Dkt. No. 221 at 1. However, the 2020 Rule could affect not only projects for which Section 401 certifications are likely to be approved in that narrower timeframe, but also projects for which certification requests are submitted, but not approved, before the replacement rule takes effect.

5

Regarding the 2020 Rule, EPA issued a factsheet, which explained that "[c]ertification requests that have been submitted or that are currently being processed [before the effective date of the 2020 Rule] . . . should continue to be processed in accordance with existing law" and "requests submitted after the effective date of the [2020 Rule] should be processed" under the 2020 Rule.[4] Plaintiffs expect that EPA will take the same position on certification requests submitted before the replacement rule becomes effective, which means these requests will likely be governed by the 2020 Rule. In light of this, Plaintiffs' response to Question 1 includes both projects for which certification requests are expected to be approved and projects for which certification requests are expected to be submitted for review during the timeframe in Question 1.

<u>California</u>

The following FERC-related certification requests are pending before the California State Water Resources Control Board (SWRCB): Kanaka Hydroelectric Project, No. 7242; Battle Creek Salmon and Steelhead Restoration Project Phase 2 No Regrets, No. 1121; Battle Creek Inskip Diversion Dam Removal Project, No. 1121; Poe Hydroelectric Project, No. 2107; and Lake Isabella Hydroelectric Project, No. 8377. These requests are planned for decision by May 2024.

The SWRCB expects that the following Federal Energy Regulatory Commission (FERC)-related certification requests will likely be submitted before the end of 2023: Kerckhoff Hydroelectric Project, No. 96 (expected to apply in the next 2-4 months, timeline dependent on FERC's Ready for Environmental Analysis (REA) issuance); Bishop Creek Hydroelectric Project, No. 1394 (expected to apply in the next 2-4 months, timeline dependent on FERC's REA); Camp Far West Transmission Line Project, No. 2997 (expected to apply in July 2023, pending applicant submission); Deer Creek Hydroelectric Project, No. 14530 (applicant's waiver petition pending before FERC); Yuba-Bear Hydroelectric Project, No. 2266 (pending outcome of ongoing litigation); Yuba River Development Project, No. 2246 (pending outcome of ongoing litigation and response to FERC's June 26, 2023 letter); Merced River Hydroelectric Project, No. 2179

---

[4] Fact Sheet, Clean Water Act Section 401 Certification Final Rule, *available at* https://www.epa.gov/sites/default/files/2020-06/documents/frequently_asked_questions_fact_sheet_for_the_clean_water_act_section_401_certification_rule.pdf (last visited on June 24, 2023).

6

1   (pending outcome of ongoing litigation); Merced Falls Hydroelectric Project, No. 2467 (pending

2   outcome of ongoing litigation); Borel Hydroelectric Project License Surrender, No. 382 (pending

3   FERC's REA issuance).

4        Colorado

5        Colorado expects in late summer or early fall a Section 401 certification request for the

6   Enlargement of Monument Reservoir No. 1. The project is located in the Leon Creek watershed

7   and would significantly deepen the reservoir and expand it from 446 acre-feet to 5,316 acre-feet.

8        Maine

9        Maine has recently received or expects to receive in the coming months 5-7 additional

10  Section 401 certifications requests for FERC hydropower projects. This is the start of a wave of

11  relicensing applications for projects that began operating in the last century. For example, the

12  operator of the Shawmut Hydroelectric Project No. 2322 on the Kennebec River relied on the 2020

13  Rule to argue that FERC should issue a new license without the protections of a Section 401

14  certification.  *See* Order Addressing Arguments Raised on Rehearing, *Brookfield White Pine*

15  *Hydro LLC*, 182 FERC ¶ 61,169 (March 17, 2023), *pet. for review pending* D.C. Cir. No. 23-

16  1075.  Maine had denied the operator's application without prejudice because: (1) there were

17  unaddressed concerns about the project's impact on federally listed Atlantic Salmon; (2) review of

18  the project's impacts by the National Marine Fisheries Service and FERC were still pending at the

19  time of Maine's denial; and (3) the operator unexpectedly submitted material changes in its

20  application on the eve of the certification deadline.

21       New Mexico

22       New Mexico expects to issue decisions on certification requests for the following projects

23  between the date of a potential merits ruling and the expected effective date of the Section 401

24  replacement rule: CDS Rainmakers Utility, LLC, (wastewater treatment plant (WWTP));

25  Sacramento Camp and Adventure Center (WWTP); City of Gallup (WWTP); Glorieta Adventure

26  Camps (WWTP); PAA-KO Communities Sewer Association (WWTP); Village of Bosque Farms

27  (WWTP); NMDGF Glenwood Fish Hatchery; NMDGF Lisboa Fish Hatchery; City of Elephant

28  Butte (WWTP); Village of Los Lunas (WWTP); Town of Taos (WWTP); Bishop's Lodge Resort

7

(WWTP); Chevron Mining Inc. Questa Mine; Town of Taos (Abeyta Well); Westmoreland San Juan Mine.

New Mexico expects the following Section 401 certification requests will be submitted for review during the relevant timeframe: Town of Springer Water Treatment Plant (WTP); El Paso Electric Company, Rio Grande Plant; Quail Run Services (WWTP); USBOR Cutter Lateral WTP; Camino Real Regional Utility Authority, North WWTP.

New York

The State of New York expects issuing certification decisions on the following projects during 2023: Little Falls Hydroelectric Facility, P-3509; Normanskill Hydroelectric Project at the Watervliet Reservoir Dam, P-2955; West Canada Creek Hydroelectric Project, P-2701; Mongaup Falls Hydropower, P-10481; Groveville Power Project, P- 3511.

Washington

Washington State Department of Ecology (Ecology) has already issued significant decisions on Section 401 certifications under the 2020 Rule. For example, the Goldendale Pump project certification was issued in April 2023 under the requirements of the 2020 Rule, which prevented Ecology from considering state law as a factor in the determination. The certification has been challenged by a Tribal Nation and local conservation groups for not taking state law into consideration, among other things. The appeal alleges the very types of harm that Plaintiffs have identified in this case.  There are dozens of pending projects in Washington that are likely to receive certification decisions in the next few months.

Of the eighty-eight (88) currently pending certifications in Washington, forty-two (42) have statutory deadlines before November 30, 2023. The following eight (8) project applications and/or renewals are expected to determined in August 2023 alone: Whiteman Cove Fish Passage Restoration Project (excavating and regrading a wetland); I-5/East Fork Lewis River Bridge (excavating and regrading a wetland and river to replace a bridge); 1501 S Cavalero Bulkhead Replacement (pulling piling to replace a bulkhead); Des Moines Creek Industrial Development (filling a wetland to prepare the site for industrial use); Shannon Property (filling a wetland to prepare a site for residential use); Chamokane Creek Floodplain Reconnection HPA 22863

(excavating and filling in a waterbody to reconnect a creek and allow sediment delivery downstream); and Upriver Dam Spillway Rehabilitation Phase III (in-water work to repair existing concrete dam spillway piers and spillway hoist deck).

### B.   Response to Question 2

Plaintiffs note that states and tribes rarely deny certification requests and generally resolve requests in a manner that allows projects to move forward under appropriate conditions to protect water quality. Further, a certifying agency's decision on whether to deny a certification request could be primarily based on whether an applicant has provided sufficient information to inform the state about a project's water quality effects.  The 2020 Rule substantially limits the scope of certifying agencies' authority under Section 401 and thereby limits the agencies' ability to impose conditions on projects that would adequately protect water quality. Further, and as discussed in the response to Question 1, there is a substantial risk that the projects for which Section 401 certification applications are submitted before the replacement rule becomes effective would be subject to the 2020 Rule.

A merits ruling by this Court is necessary to ensure that the states and tribes have sufficient information to assess water quality impacts and that their certification conditions will not be subject to impermissible federal agency oversight. Without a ruling on the merits, all of the projects identified in the response to Question 1 will be subject to these unlawful limitations.

### C.   Response to Question 3

This response does not include a comprehensive list of all agencies that are tasked with approving Section 401 certification requests in Plaintiff states and tribes, but only the state agencies that are responsible for approving the applications discussed in the response to Question 1: California – SWRCB, for certification decisions for FERC projects as well as water rights projects and projects in multiple regions in California, and the Regional Water Quality Control Boards for activities/projects within their boundaries; Colorado – the Colorado Department of Public Health and Environment, Water Quality Control Division; Maine – Maine Department of Environmental Protection; New Mexico – New Mexico Environment Department; New York -

9

1    New York Department of Environmental Conservation; Washington – Washington State

2    Department of Ecology.

3         **D.  Response to Question 4**

4         <u>California</u>

5

| Project Name | Project Point Sources of Pollution[5] | Environmental Harm Associated with Point Sources of Pollution |
|---|---|---|
| Kanaka Hydroelectric Project License Surrender, No. 7242 | Potential discharges of stormwater from cement pouring | pH[6] |
| Battle Creek Hydroelectric Project License Amendment – New Phase, No. 1121 | Potential discharges from removal of four dams | Turbidity, Settleable Material, and Suspended Material[7] |
| Battle Creek Hydroelectric License Amendment – Inskip Removal, No. 1121 | Potential discharges from dam removal, including cofferdams/temporary bypasses | Turbidity, Settleable Material, and Suspended Material[8] |
| Poe Hydroelectric Project Amendment, No. 2107 | Temporary discharges of low flows at Poe Dam | Temperature, Dissolved Oxygen[9] |
| Lake Isabella Hydroelectric Project, No. 8377 | Potential discharges from construction of new turbine. | Oils and Grease[10] |
| Kerckhoff Hydroelectric Project, No. 96 | Discharges from Kerckhoff Dam and Kerckhoff 1 and 2 Powerhouses | Temperature[11]  Recreation[12] |
| Bishop Creek Hydroelectric Project, No. 1394 | Discharges from Hillside, Sabrina, and Longley Dams; Plant 2 – 6 Powerhouses; Intake 2 – 6 Dams | Turbidity[13]  Cold Freshwater Habitat, Spawning, and Wildlife Habitat[14] |
| Camp Far West Transmission Line, No. 10821 | No unquestionably point source discharges | Increased turbidity, and potential discharge of oil and |

---

[5] Point sources of pollution listed are prominent examples associated with the project and are not exhaustive.

[6] Discharges from surrendering project facilities could result in pH alterations of pH associated with concrete work to cap the existing outfall at Kanaka Powerhouse.

[7] Removal of dams could result in discharges of historic sediment stored behind the dams that would increase turbidity, settleable material, and suspended material in South Fork Battle Creek and may cause fish mortality.

[8] *Id.*

[9] During construction, lower flows will be released from the 36-inch pipe that could result in warmer temperatures and lower dissolved oxygen, which could impact fish and frog habitat.

[10] Initial use of the hydropower unit may release of oil and grease which could adversely affect aquatic resources.

[11] Discharges alter the flows below Kerckhoff Dam, Kerckhoff Powerhouse 1, and Powerhouse 2 affecting water temperatures which may impact habitat of native hardhead.

[12] Discharges contribute to fluctuating flows which may impact public safety (recreation).

[13] Discharges may result in increased turbidity during project maintenance activities where low-level outlets are used to flush sediment and may adversely affect aquatic habitat.

[14] Discharges from dams alter the flow regime downstream. Discharges impact aquatic species and riparian vegetation habitat availability, and cause changes to growth cues for species.

10

| | | grease[15] |
|---|---|---|
| Deer Creek Hydroelectric Project, No. 14530 | Discharges Deer Creek Forebay Dam, Deer Creek Powerhouse | Cold Freshwater Habitat, Spawning, and Wildlife Habitat[16] |
| Yuba-Bear Hydroelectric Project, No. 2266 | Discharges from Rollins, French Lake, Faucherie Lake, Sawmill Lake, Bowman, Jackson Meadows and Jackson Dam, Rollings, Bowman, Dutch Flat, and Chicago Park Powerhouses | Cold Freshwater Habitat, Spawning, and Wildlife Habitat[17]<br><br>Increased mercury bioavailability[18] |
| Yuba River Development Project, No. 2246 | Discharges from New Colgate and Narrows 2 Powerhouses; New Bullards Bar, Our House, and Log Cabin Dams; Lohman Ridge and Camptonville Diversion Tunnels. | Temperature[19]<br><br>Wildlife Habitat[20]<br><br>Increased mercury bioavailability[21] |
| Merced River Hydroelectric Project, No. 2179 | Discharges from New Exchequer Dam and Powerhouse; McSwain Dam and Powerhouse; Crocker-Huffman Diversion Dam | Increased water temperatures, decreased dissolved oxygen, increased mercury bioavailability[22] |
| Merced Falls Hydroelectric Project; Project No. 2464 | Discharges from Merced Falls Dam and Powerhouse. | Increased water temperatures, decreased dissolved oxygen[23] |
| Borel Hydroelectric Project License Surrender; Project No. 382 | Discharges from Borel Diversion Dam, Canal; Powerhouse Forebay and Powerhouse | Oil and Grease[24] |

<u>Colorado</u>

| Project Name | Project Point Sources of Pollution | Environmental Harm Associated with Point Sources of Pollution |
|---|---|---|
| | | |

---

[15] Project maintenance could result in changes to natural turbidity conditions, settleable material, suspended material and discharges of oil and grease and could impact aquatic resources.

[16] *See* fn. 14.

[17] *Id.* Instream flows for rivers below each dam provide multiple beneficial uses specified in the Sacramento River/San Joaquin River Basin Plan, including cold freshwater habitat, spawning, reproduction, and development, and wildlife habitat.

[18] Methylmercury may be released from dams, in part, as a result of project operations, which can result in fish tissue mercury concentrations in excess of safety objectives.

[19] Discharges from New Bullards Bar Dam, New Colgate Powerhouse and Narrows 2 Powerhouse alter natural temperature patterns in the Yuba River resulting in adverse impacts to anadromous fish life stages through changing migration cues and habitat.

[20] Project discharges alter flows below New Bullards Bar, Log Cabin Diversion Dam, Our House Diversion Dam, and Narrows 2 Powerhouse, resulting in changed cues for species.

[21] *See* fn. 18.

[22] Elevated water temperatures and depressed dissolved oxygen levels significantly reduce habitat suitability for native fish downstream of the dams. Water temperature and dissolved oxygen are primary drivers of the productivity and survival of salmonids. Mercury is a potent neurotoxicant, and mercury pollution negatively impacts many waters of the state.

[23] *See* discussion of impacts from increased water temperatures and depressed dissolved oxygen levels in footnote 22.

[24] Construction activities associated with license surrender can result in the release of oil and grease, which have the potential to harm sensitive species and their habitats.

11

| Expansion of Monument Reservoir No. 1 | Discharges associated with expansion of the surface area and the deepening of the reservoir | (1) inundation of wetlands which provide spawning habitat for Colorado cutthroat trout; (2) exceedances of dissolved oxygen and temperature standards; potential for sediment build up; (3) exceedance of dissolved oxygen standard during the spawning period for Colorado cutthroat trout; potential for thermal shock to the Colorado cutthroat trout in the downstream Monument Creek |

New Mexico

| Project Name | Project Point Sources of Pollution | Environmental Harm Associated with Point Sources of Pollution |
|---|---|---|
| CDS Rainmakers Utility, LLC | Domestic wastewater discharges | pH, dissolved oxygen, E. coli, chloride, suspended solids, |
| Sacramento Camp and Adventure Center | Domestic wastewater discharges | pH, dissolved oxygen, E. coli, chloride |
| City of Gallup | Municipal wastewater discharges | pH, dissolved oxygen, E. coli, chloride, ammonia, fluoride, chloroform |
| Glorieta Adventure Camps | Domestic wastewater discharges | pH, dissolved oxygen, E. coli, chloride, oil and grease, nutrients |
| PAA-KO Communities Sewer Association | Domestic wastewater discharges | pH, dissolved oxygen, E. coli, chloride |
| Village of Bosque Farms | Municipal wastewater discharges | pH, dissolved oxygen, E. coli, chloride |
| NMDGF Glenwood Fish Hatchery | Fish hatchery operation discharges | pH, chloride, Aldrin, suspended solids |
| NMDGF Lisboa Fish Hatchery | Fish hatchery operation discharges | pH, chloride, Aldrin, suspended solids |
| City of Elephant Butte | Municipal wastewater discharges | pH, dissolved oxygen, E. coli, chloride |
| Chevron Mining Inc. Questa Mine | Mine water seepage from tailings facility, stormwater, spring discharges | pH, metals (manganese, fluoride, arsenic, cadmium. Copper, lead, mercury, molybdenum, zinc, aluminum, uranium), cyanide, suspended solids |
| Village of Los Lunas | Municipal wastewater discharges | pH, nitrogen, phosphorus, dissolved oxygen, E. coli, chloride |
| Town of Taos | Municipal wastewater discharges | pH, nitrogen, phosphorus, dissolved oxygen, E. coli, chloride |
| Bishop's Lodge Resort | Domestic wastewater discharges | Unknown (new discharge) |
| Town of Taos (Abeyta Well) | Groundwater discharges | Unknown (new discharge) |
| Westmoreland San Juan Mine | Mine stormwater discharges | pH, aluminum, copper |
| Town of Springer | Municipal potable water (filter | pH, dissolved oxygen, E. coli, |

12

| | backwash) | suspended solids, chloride, boron, arsenic |
|---|---|---|
| El Paso Electric Company | Electric plant stormwater | pH, copper, oil and grease, suspended solids |
| Quail Run Services | Domestic wastewater discharges | pH, suspended solids, E. coli, chloride |
| USBOR Cutter Lateral | Municipal potable water (filter backwash) | pH, suspended solids, chloride |
| Camino Real Regional Utility Authority | Municipal wastewater discharges | pH, dissolved oxygen, E. coli, copper, suspended solids, chloride |

New York

| Project | Environmental Harms Anticipated |
|---|---|
| Little Falls Hydroelectric Facility, P-3509 | Direct harm to fish due to fish intake in the dam and increased turbidity. |
| Normanskill Hydroelectric Project at the Watervliet Reservoir Dam, P-2955 | Dissolved oxygen which threatens and could kill the waterbody's biota. |
| West Canada Creek Hydroelectric Project, P-3509 | Consistent minimum flow downstream, threatening both aquatic fauna survival and public safety. |
| Mongaup Falls Hydropower, P-10481 | Low flows leading to biotic stranding and desiccation, increased water temperature that can stress and kill aquatic biota, low levels of dissolved oxygen |
| Groveville Power Project, P- 3511 | No anticipated adverse environmental impacts. |

### E.   Response to Question 5

The damming of rivers can have multiple adverse environmental effects,[25] which in turn harm human populations, particularly tribes.

Dams alter the natural flows of streams and creeks, as well as the connectivity of watersheds.[26] Alterations to flow lead to a wide range of impacts on species[27] such as: (1) stranding of fish and amphibians[28]; (2) genetic isolation and reduced genetic health of species, such as the foothill yellow-legged frogs[29]; (3) impacts on stream-dwelling insect larvae which are

---

[25] Plaintiffs offer this information in response to the Court's question but do not intend to take a position on all damming of rivers.

[26] Yarnell, S.M., Petts, G.E., Schmidt, J.C., Whipple, A.A., Beller, E.E., Dahm, C.N., Goodwin, P. and Viers, J.H., 2015. Functional flows in modified riverscapes: hydrographs, habitats and opportunities. *BioScience*, 65(10), pp. 963-972.

[27] Lytle, D.A. and Poff, N.L., 2004. Adaptation to natural flow regimes. *Trends in ecology & evolution*, 19(2), pp.94-100; Yarnell, S.M., Viers, J.H. and Mount, J.F., 2010. Ecology and management of the spring snowmelt recession. *Bioscience*, 60(2), pp.114-127.

[28] Kupferberg, S.J., Lind, A.J., Mount, J. and Yarnell, S., 2008. Pulsed flow effects on the Foothill Yellow-legged Frog (Rana boylii): integration of empirical, experimental and hydrodynamic modeling approaches. *Sacramento (CA): California Energy Commission*.

[29] Peek, R.A., O'Rourke, S.M. and Miller, M.R., 2021. Flow modification associated with reduced genetic health of a river-breeding frog, Rana boylii. *Ecosphere*, 12(5), p.e03496.

13

1   an important food source for fish[30]; (4) scouring of fish spawning habitat and fish egg mortality[31];

2   and (5) decrease in habitat complexity and diversity in aquatic organisms.[32]

3         For example, California native fish populations are in rapid decline, partially due to

4   dams.[33] Construction of dams has eliminated: 100% of upstream spawning and rearing habitat for

5   winter-run Chinook salmon; 90% of upstream spawning habitat for late-fall Chinook salmon; and

6   70% of spawning habitat for fall-run Chinook.[34] Altered flow regimes often favor non-native

7   species.[35] Modified flow regimes below dams increase habitat suitability for invasive amphibians

8   such as American bullfrogs.[36]

9         Reservoir operation impacts stream water quality and aquatic life. Reservoir level

10   fluctuations can alter vegetation and aquatic animals, and can cause changes in nutrient levels.[37]

11   Reservoir water temperature can be significantly altered from the natural thermal regime.[38]

12   Reservoir management can result in reduced oxygen in deep waters,[39] which in turn can cause the

13   production of methylmercury.[40] Toxic cyanobacteria may occur in reservoirs.[41]

---

[30] Bunn, S.E. and Arthington, A.H., 2002. Basic principles and ecological consequences of altered flow regimes for aquatic biodiversity. *Environmental management*, *30*, pp. 492-507

[31] May, C.L., Pryor, B., Lisle, T.E. and Lang, M., 2009. Coupling hydrodynamic modeling and empirical measures of bed mobility to predict the risk of scour and fill of salmon redds in a large regulated river. *Water Resources Research*, *45*(5).

[32] Rahel, F.J., 2002. Homogenization of freshwater faunas. *Annual review of ecology and systematics*, *33*(1), pp.291-315.

[33] Moyle, P.B., Katz, J.V. and Quiñones, R.M., 2011. Rapid decline of California's native inland fishes: a status assessment. *Biological Conservation*, *144*(10), pp. 2414-2423.

[34] Hanak, E., 2011. *Managing California's water: From conflict to reconciliation*. Public Policy Instit. of CA.

[35] *See* fn. 29.

[36] Fuller, T.E., Pope, K.L., Ashton, D.T. and Welsh Jr, H.H., 2011. Linking the distribution of an invasive amphibian (Rana catesbeiana) to habitat conditions in a managed river system in northern California. *Restoration Ecology*, *19*(201), pp. 204-213.

[37] Carmignani, J.R., Roy, A.H., Hazelton, P.D. and Giard, H., 2017. Annual winter water level drawdowns limit shallow-water mussel densities in small lakes. *Freshwater Biology*, *64*(8), pp.1519-1533.

[38] Dickson, N.E., Carrivick, J.L. and Brown, L.E., 2012. Flow regulation alters alpine river thermal regimes. *Journal of Hydrology*, *464*, pp. 505-516.

[39] Jane, S.F., Hansen, G.J., Kraemer, B.M., Leavitt, P.R., Mincer, J.L., North, R.L., Pilla, R.M., Stetler, J.T., Williamson, C.E., Woolway, R.I. and Arvola, L., 2021. Widespread deoxygenation of temperate lakes. *Nature*, *594*(7861), pp. 66-70.

[40] Watras, C.J., Morrison, K.A., Kent, A., Price, N., Regnell, O., Eckley, C., Hintelmann, H. and Hubacher, T., 2005. Sources of methylmercury to a wetland-dominated lake in northern Wisconsin. *Environmental science & technology*, *39*(13), pp. 4747-4758.

[41] Jacoby, J.M. and Kann, J., 2007. The occurrence and response to toxic cyanobacteria in

14

1  Dams interrupt the transport of sediment, which results in increased erosion downstream
2  of dams and reduced habitat availability for both aquatic and riparian species.[42]

3  **F.    Response to Question 6**

4  Available information suggests that hydropower is unlikely to reduce the United States'
5  dependence on fossil fuels going forward.[43] Very few large-scale dams are under development in
6  the United States, in part because most of the best sites for hydroelectric generation were already
7  developed and in part because of the recognition of the environmental harms caused by dams.[44]

8  There is mounting evidence that the greenhouse gas (GHG) impacts from hydroelectric
9  dams vary greatly depending on the facility, with some facilities on par with fossil fuels in terms
10  of GHG emissions.[45] The average emissions of hydropower facilities are "much higher than wind
11  and solar and individual plan emissions can even exceed those from fossil fuel plants."[46] Of
12  particular concern, hydroelectric dams flood or otherwise impair ecosystems that act as carbon
13  sinks, reducing their ability to absorb greenhouse gases.[47]

14  Hydroelectric dams impound water that may be used during periods of drought. However,
15  drought conditions reduce the amount of power that can be generated by dams, which increases
16  demand for power from other sources.[48]

17  **G.    Response to Question 7**
18  No.

19

20  the Pacific Northwest, North America. *Lake and Reservoir Management*, *23*(2), pp. 123-143.
   [42] Merz, J.E., Pasternack, G.B. and Wheaton, J.M., 2006. Sediment budget for salmonid
21  spawning habitat rehabilitation in a regulated river. *Geomorphology*, *76*(1-2), pp. 207-228.
   [43] Plaintiffs' response to this question should not be taken as formal findings or
22  declaration of policy.
   [44] *See* Moran, et al., *Sustainable Hydropower in the 21st Century*, (2018), *available at*
23  www.pnas.org/cgi/doi/10.1073/pnas.1809426115.
   [45] *See* Ocko, et al., *Climate Impacts of Hydropower: Enormous Differences among*
24  *Facilities and over Time*, Environmental Science & Technology, 53, at 1407-14082 (2019),
   *available at* http://pubs.acs.org/action/showCitFormats?doi=10.1021/acs.est.9b05083.
25  [46] *Id.* at 14070.
   [47] *See id.*; *see also* Xu, et al., *A Global-scale Framework for Hydropower Development*
26  *Incorporating Strict Environmental Constraints*, Nater Water, Vol 1. at 117 (2023), *available at*
   https://www.nature.com/articles/s44221-022-00004-1.
27  [48] *See, e.g.,* U.S. Energy Information Administration, *Drought Effects on Hydroelectricity*
   *Generation in Western U.S. Differed by Region in 2021* (March 2022), *available at*
28  https://www.eia.gov/todayinenergy/detail.php?id=51839.

15

1   Dated:  June 27, 2023                    Respectfully submitted,

2

                                           /s/ *Tatiana K. Gaur*
3                                          TATIANA K. GAUR

4   ROBERT W. FERGUSON                     ROB BONTA
    Attorney General of Washington         Attorney General of California
5   KELLY T. WOOD (*admitted pro hac vice*)   SARAH E. MORRISON
    Assistant Attorneys General            ERIC KATZ
6   Washington Office of the Attorney General   Supervising Deputy Attorneys General
    Ecology Division                       CATHERINE M. WIEMAN
7     2425 Bristol Court SW                TATIANA K. GAUR
      Olympia, Washington  98501           ADAM L. LEVITAN
8     Telephone:  (360) 586-5109           BRYANT B. CANNON
      E-mail:  Kelly.Wood@atg.wa.gov       Deputy Attorneys General
9                                            300 South Spring Street, Suite 1702
    LETITIA JAMES                            Los Angeles, CA 90013
10    Attorney General of New York           Telephone:  (213) 269-6329
      BRIAN LUSIGNAN (*admitted pro hac vice*)   Fax:  (916) 731-2128
11    Assistant Solicitor General         E-mail:  tatiana.gaur@doj.ca.gov
      Division of Appeals & Opinions
12    The Capitol                         *Attorneys for Plaintiffs States of California,*
      Albany, New York 12224-0341         *New York, Washington, Colorado,*
13    Telephone:  (518) 776-2399          *Connecticut, Illinois, Maine, Maryland,*
      E-mail: Brian.Lusignan@ag.ny.gov    *Michigan, Minnesota, Nevada, New Jersey,*
14                                         *New Mexico, North Carolina, Oregon,*
                                           *Rhode Island, Vermont, Wisconsin, the*
15                                         *Commonwealth of Massachusetts, the*
                                           *District of Columbia, and the California*
16                                         *State Water Resources Control Board*

17
                                           KRISTEN L. BOYLES SBN 158450
18                                         Earthjustice
                                           810 Third Avenue, Suite 610
19                                         Seattle, WA  98104
                                           (206) 343-7340
20                                         kboyles@earthjustice.org

21                                         MONEEN NASMITH (*admitted pro hac vice*)
                                           MICHAEL YOUHANA (*admitted pro hac vice*)
22                                         Earthjustice
                                           48 Wall Street, 15th Floor
23                                         New York, NY 10005
                                           (212) 845-7384/(212) 284-8033
24                                         mnasmith@earthjustice.org
                                           myouhana@earthjustice.org
25
                                           GUSSIE LORD (*admitted pro hac vice*)
26                                         Earthjustice
                                           633 17th Street, Suite 1600
27                                         Denver, CO 80202
                                           (720) 402-3764
28                                         glord@earthjustice.org

                                    16

OLIVIA GLASSCOCK (*admitted pro hac vice*)
Earthjustice
325 4th Street
Juneau, AK 99801
(907) 500-7134
oglasscock@earthjustice.org

*Attorneys for Plaintiffs Suquamish Tribe,*
*Pyramid Lake Paiute Tribe, Orutsararmiut*
*Native Council, Columbia Riverkeeper,*
*and Sierra Club*

ANDREW HAWLEY SBN 229274
Western Environmental Law Center
1402 3rd Avenue, Ste. 1022
Seattle, Washington 98101
hawley@westernlaw.org
tel: 206-487-7250

JASON R. FLANDERS SBN 238007
Aqua Terra Aeris Law Group
4030 Martin Luther King Jr. Way
Oakland, California 94609
jrf@atalawgroup.com
tel: 916-202-3018

PETER M. K. FROST (*admitted pro hac vice*)
SANGYE INCE-JOHANNSEN
(*admitted pro hac vice*)
Western Environmental Law Center
120 Shelton McMurphey Blvd., Ste. 340
Eugene, Oregon 97401
frost@westernlaw.org
sangyeij@westernlaw.org
tel: 541-359-3238 / 541-778-6626

*Attorneys for Plaintiffs American Rivers,*
*American Whitewater, California Trout,*
*Idaho Rivers United*

17

**SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated: June 27, 2022          /s/ Tatiana K. Gaur
                              TATIANA K. GAUR

18

# CERTIFICATE OF SERVICE

Case Name:   **In re Clean Water Act Rulemaking**

Case No.:    **3:20-cv-04636-WHA**

I hereby certify that on June 27, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**PLAINTIFFS' RESPONSES TO UPDATE AND REQUEST FOR INFORMATION (DKT. NO. 220) AND ADDITIONAL QUESTIONS FOR REQUESTED BRIEFING (DKT. NO. 221)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on June 27, 2023 at Los Angeles, California.

| Beatriz Davalos | /s/ Beatriz Davalos |
|:---:|:---:|
| Declarant | Signature |

LA2020302450
63520319.docx